No. 20-11692

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

United States of America,

Plaintiff-Appellee,

v.

Reality Leigh Winner

Defendant-Appellant.

## APPEAL

From the United States District Court for the Southern District of Georgia
(Case 1:17-CR-00034-JRH-BKE)
Hon. J. Randal Hall,
UNITED STATES DISTRICT JUDGE

## APPELLANT'S BRIEF

JOE D. WHITLEY
BRETT A. SWITZER
**BAKER, DONELSON, BEARMAN,**
 **CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Road
Monarch Plaza, Suite 1500
Atlanta, Georgia 30326
Tel. (404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

LAURA E. COLLINS
**BAKER, DONELSON, BEARMAN,**
 **CALDWELL & BERKOWITZ, P.C.**
100 Light Street
Baltimore, Maryland 21202
Tel. (410) 685-1120
LCollins@bakerdonelson.com

*Counsel for Appellant Reality Leigh Winner*

## <u>Certificate of Interested Persons and Corporate Disclosure Statement</u>

*United States of America v. Reality Leigh Winner*, Appeal No. 20-11692

Counsel for Appellant Reality Leigh Winner states that the following is a full and complete list of all entities and persons having an interest in the outcome of this appeal:

Aaron, David C., U.S. Department of Justice

Barnard, Thomas H., Attorney for Appellant

Bell, Jr., John C., Attorney for Appellant

Chester, Matthew S., Attorney for Appellant

Christine, Bobby, L., United States Attorney

Collins, Laura E., Attorney for Appellant

Davids, Justin G., Assistant United States Attorney

Durham, James D., Former Assistant United States Attorney

Edelstein, Julie A., U.S. Department of Justice

Epps, Hon. Brian K., United States Magistrate Judge

Grinter, Alison, Attorney for Appellant

Greenwood, Nancy, Assistant United States Attorney

Hall, Hon. J. Randal, United States District Judge

Larson, Amy E., U.S. Department of Justice

Mannino, Katherine C., Former Attorney for Appellant

McCook, Jill E., Former Attorney for Appellant

Nichols, Titus T., Attorney for Appellant

Rafferty, Brian T., Assistant United States Attorney

Robichaux, Mary Susan, U.S. Department of Justice

Rodriguez-Feo, Carli, CISO, U.S. Department of Justice

Solari, Jennifer G., Assistant United States Attorney

Switzer, Brett A., Attorney for Appellant

United States Department of Justice

Whitley, Joe D., Attorney for Appellant

Winner, Reality Leigh, Appellant

  No publicly traded company or corporation has an interest in the outcome of this case or appeal.

*/s/Joe D. Whitley*
JOE D. WHITLEY
BRETT A. SWITZER
**BAKER, DONELSON, BEARMAN,**
 **CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Road
Monarch Plaza, Suite 1500
Atlanta, Georgia 30326
Tel. (404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

LAURA E. COLLINS
**BAKER, DONELSON, BEARMAN,**
 **CALDWELL & BERKOWITZ, P.C.**
100 Light Street
Baltimore, Maryland 21202
Tel. (410) 685-1120
LCollins@bakerdonelson.com

## <u>Statement Regarding Oral Argument</u>

Appellant respectfully requests oral argument on an expedited schedule, if possible. In the district court below, Appellant moved for an order releasing her based on "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i) because the COVID-19 pandemic, the Bureau of Prisons' insufficient response thereto, and her pre-existing medical conditions make her uniquely susceptible to this extremely contagious disease. Together, and considering other pertinent factors, these circumstances constitute "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i) warranting relief. In summarily denying her motion without a hearing, and without actually considering the evidence in the record, the district court—which did not even allow an expedited briefing schedule in the face of a life-threatening pandemic—committed reversible errors.

This appeal involves at least two (2) issues of first impression in this Circuit: (1) whether the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A)(i) is non-jurisdictional and a claims-processing rule, akin to its 18 U.S.C. § 3582(c)(2) brethren; and (2) whether the Sentencing Commission's outdated policy statement limits the district court's statutory power to modify a sentence. As set forth herein, the district court below construed the First Step Act in a way that renders it meaningless. Instead, it relied on outdated agency guidance over clear statutory

language and intent, in violation and contravention of the federal statute and established Supreme Court precedent.

Moreover, the district court summarily denied Appellant the opportunity to present evidence at a hearing. Nonetheless, the district court's order purports to provide a ruling on the merits. But that is not possible. The district court not only misapplied the law; it also failed to exercise its discretion because it never heard the evidence, and it did not evaluate the evidence that appears in the record–*all* of which compels but one conclusion: that compassionate release is warranted here. At oral argument, Appellant will explain why this Court should reverse and render judgment on the uncontested evidence presented to the district court or, in the alternative, why the matter should be remanded so evidence may be presented to and considered by the district court.

## **Table of Contents**

Certificate of Interested Persons and Corporate Disclosure Statement.................C-1

Statement Regarding Oral Argument ......................................................... i

Statement of Subject-Matter and Appellate Jurisdiction ......................................... xi

Statement of the Issues...................................................................1

Statement of the Case....................................................................2

    1.    The Course of Proceedings and Dispositions in the Court Below..............2

    2.    Statement of the Facts ...............................................4

    3.    Standard of Review ................................................7

Summary of the Argument.................................................................8

Argument and Citations of Authority .........................................................9

    I.    The District Court Erred as a Matter of Law by Ruling that the Exhaustion Requirement of 18 U.S.C. § 3582(c)(1)(A) is Mandatory.........................................................9

    II.    The District Court Erred as a Matter of Law by Allowing an Outdated Agency Guideline to Supersede a Federal Statute.....................14

        a.    The First Step Act removed BOP as gatekeeper. .......................14

        b.    The applicable policy guidance is outdated–creating a gap the Commission cannot presently fix...........................................15

        c.    The district court's logic is backwards–Congress has the power to override any guidance or policy statement, but not *vice versa*. ............18

        d.    The majority of district courts agree—this interpretation is consistent with both the plain language of the statute and the plain language of the guidance.............................................20

    III.    The District Court Erred and Abused Its Discretion in Evaluating the Merits Without Considering the Evidence. .........................21

a.  The Circuit Court should reverse and render judgement on
Reality's uncontested evidence presented to the district court. ............21

b.  In the alternative, the Circuit Court should remand this matter for
the district court to hold a hearing on the merits.................................22

Conclusion ....................................................................................................26

Certificate of Compliance With Type-Volume Limit, Typeface
Requirements, and Type-Style Requirements .........................................28

Certificate of Service ................................................................................29

# Table of Citations

## Cases

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006)........................................................................13

*Bowen v. City of New York*,
476 U.S. 467 (1986)........................................................................11

\* *Fort Bend Cty., Tex. v. Davis*,
139 S. Ct. 1843 (2019)........................................................ 10, 11, 12

*Hamer v. Neighborhood Hous. Servs. of Chicago*,
138 S. Ct. 13 (2017)........................................................................11

*James v. Jacobson*,
6 F.3d 233 (4th Cir. 1993) ...............................................................23

*Kelley v. Southern Pacific Co.*,
419 U.S. 318, 95 S.Ct. 472 (1974).....................................................22

\* *Media Servs. Grp., Inc. v. Bay Cities Commc'ns, Inc.*,
237 F.3d 1326 (11th Cir. 2001) .........................................................22

*Patchak v. Zinke*,
138 S. Ct. 897 (2018).......................................................................11

*Plaintiff B v. Francis*,
631 F.3d 1310 (11th Cir. 2011) .........................................................23

*Pullman-Standard v. Swint*,
456 U.S. 273, 102 S.Ct. 1781 (1982)..................................................22

*Reynolds v. Giuliani*,
506 F.3d 183 (2d Cir. 2007) .............................................................22

\* *Roe v. Aware Woman Ctr. for Choice, Inc.*,
253 F.3d 678 (11th Cir. 2001) ..........................................................23

*Smith v. Berryhill*,
139 S. Ct. 1765 (2019)......................................................................11

*Stinson v. United States*,
    508 U.S. 36 (1993) ...................................................................................18

*United States v. Alam*,
    --- F.3d ----, 2020 WL 2845694 (6th Cir. June 2, 2020) ....................................13

*United States v. Anderson*,
    686 F.3d 585 (8th Cir. 2012) ..................................................................18

*United States v. Anderson*,
    772 F.3d 662 (11th Cir. 2014) .................................................................12

*United States v. Armstrong*,
    347 F.3d 905 (11th Cir. 2003) ...................................................................8

* *United States v. Beck*,
    425 F. Supp. 3d 573 (M.D.N.C. 2019), 2019 WL 2716505 (M.D.N.C.
    June 28, 2019) .............................................................................. 17, 20

*United States v. Berberena*,
    694 F.3d 514 (3d Cir. 2012) ...................................................................18

*United States v. Booker*,
    543 U.S. 220 (2005) ..........................................................................19

* *United States v. Brown*,
    411 F. Supp. 3d 446 (S.D. Iowa 2019) .................................................. 15, 20

*United States v. Cantu*,
    423 F.Supp.3d 345 (S.D. Tex. 2019) ..................................................... 18, 21

*United States v. Cantu-Rivera*,
    No. H-89-204, 2019 WL 2578272 (S.D. Tex. June 24, 2019) ...........................19

* *United States v. Caraballo-Martinez*,
    866 F.3d 1233 (11th Cir. 2017) ................................................................12

*United States v. Carlton*,
    900 F.3d 706 (5th Cir. 2018) ..................................................................13

*United States v. Chambliss*,
    948 F.3d 691 (5th Cir. 2020) ....................................................................8

*United States v. Colon*,
  707 F.3d 1255 (11th Cir. 2013) ........................................................18

*United States v. Colvin*,
  --- F. Supp. 3d ----, 2020 WL 1613943 (D. Conn. Apr. 2, 2020)......................10

*United States v. Eli Dana,*
  No. 14-cr-405-JMF, ECF No. 108 (S.D.N.Y. Mar. 31, 2020) ...........................10

*United States v. Fox*,
  631 F.3d 1128 (9th Cir. 2011) ........................................................18

\* *United States v. Fox*,
  No. 2:14-cr-03-DBH, 2019 WL 3046086 (D. Me. July 11, 2019)....................20

*United States v. Ga. Power Co.*,
  695 F.2d 890 (5th Cir. 1983) ........................................................22

*United States v. Granados*,
  830 F.3d. 840 (8th Cir. 2016) ........................................................23

*United States v. Haney*,
  --- F. Supp. 3d ----, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) ...................10

*United States v. Horn*,
  679 F.3d 397 (6th Cir. 2012) ........................................................18

*United States v. Johnson*,
  732 F.3d 109 (2d Cir. 2013) ........................................................13

*United States v. Jose Maria Marin*,
  No. 15-cr-252-PKC, ECF Nos. 1325, 1326 (E.D.N.Y. Mar. 30, 2020).............10

*United States v. Koons,*
  850 F.3d 973 (8th Cir. 2017) ........................................................23

*United States v. Kwai Fun Wong,*
  575 U.S. 402 (2015).....................................................................11

\* *United States v. Maumau,*
  No. 2:08-CR-00758, 2020 WL 806121 (D. Utah Feb. 18, 2020) .............. 16, 20

*United States v. May*,
  855 F.3d 271 (4th Cir. 2017) ...............................................................13

*United States v. Moore*,
  541 F.3d 1323 (11th Cir. 2008) .............................................................7

*United States v. Oliver*,
  148 F.3d 1274 (11th Cir. 1998) .............................................................8

*United States v. Perez*,
  --- F. Supp. 3d ----, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) .....................10

*United States v. Phillips*,
  597 F.3d 1190 (11th Cir. 2010) .............................................................7

\* *United States v. Redd*,
  --- F. Supp. 3d ----, 2020 WL 1248493 (E.D. Va. Mar. 16, 2020)........ 14, 15, 20

*United States v. Smith*,
  --- F. Supp. 3d ----, 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020) ...................10

*United States v. Taylor*,
  778 F.3d 667 (7th Cir. 2015) ...............................................................12

\* *United States v. Urkevich*,
  No. 8:03-CR-37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019)................. 17, 20

\* *United States v. Valdez*,
  No. 3:98-CR-0133-01, 2019 WL 7373023 (D. Alaska 2019)...........................20

*United States v. Weatherspoon*,
  696 F.3d 416 (3d Cir. 2012) ...............................................................13

*United States v. White*,
  305 F.3d 1264 (11th Cir. 2002) .............................................................8

*United States v. William Knox*,
  No. 15-cr-445-PAE, ECF No. 1088 (S.D.N.Y. Apr. 10, 2020).........................13

*United States v. Woods*,
  327 F. App'x 170 (11th Cir. 2009)........................................................24

*United States v. Young*,
   No. 2:00-cr-00002-1, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020) ........ 15, 20

*United States v. Zukerman*,
   --- F. Supp. 3d ----, 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020) .....................10

**Statutes**

18 U.S.C. § 3231 ....................................................................................... xi

18 U.S.C. § 3553 .......................................................................................23

18 U.S.C. § 3582 .....................................................................................2, 21

18 U.S.C. § 3582(c)(1) ...............................................................................12

18 U.S.C. § 3582(c)(1)(A) ........................................................ 1, 9, 14, 15

18 U.S.C. § 3582(c)(1)(A)(i) .............................................................. passim

18 U.S.C. § 3582(c)(2) ...............................................................................12

18 U.S.C. § 3624(b) ......................................................................................3

18 U.S.C. § 3852(c) ............................................................................ passim

18 U.S.C. § 793(e) ........................................................................................2

18 U.S.C. § 994(t) ............................................................................... 15, 16

28 U.S.C. § 1291 ...................................................................................... xi

**Other Authorities**

164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) ...............................14

Coronavirus Disease 2019, Cases in the US, CENTERS FOR DISEASE
   CONTROL, (accessed June 2, 2020) .........................................................5

Coronavirus Disease 2019, People Who Are at Higher Risk for Severe
   Illness, CENTERS FOR DISEASE CONTROL ...............................................7

COVID-19 Update, FEDERAL BUREAU OF PRISONS, (last accessed June 12,
   2020) ...................................................................................................5

Dec. of Juan A. Segovia, ECF No. 8-1, *Livas v. Myers*, No. 2:20-cv-422-TAD-KK (Apr. 10, 2020) ...................................................................26

Pub. L. 115-391,132 Stat. 5194 § 603 (Dec. 21, 2018) .............................8

*Sick Staff, Inmate Transfers, and No Tests: How the U.S. Is Failing Federal Inmates as Coronavirus Hits*, VICE, (Mar. 24, 2020, 1:31 PM)..........................6

*The Coronavirus Outbreak Is "Like A Nightmare" For People With Eating Disorders*, BUZZFEED NEWS (Mar. 20, 2020, 10:57 AM)...................................6

**Rules**

Federal Rule of Criminal Procedure 43(b)(4)..........................................24

**Regulations**

Proclamation by the Governor of the State of Texas, OFFICE OF THE TEXAS GOVERNOR (Mar. 13, 2020) ..................................................................5

Proclamation No. 9994, 85 Fed. Reg. 15337 (Mar. 13, 2020) ..................4

U.S.S.G. § 1B1.13................................................................ 17, 19, 20

U.S.S.G. § 1B1.13 cmt. n.1(A)-(D) ..............................................16

U.S.S.G. § 1B1.13, cmt. n.1(D) ...................................................17

U.S.S.G. § 1B1.13, cmt. n.1–4.....................................................16

## **Statement of Subject-Matter and Appellate Jurisdiction**

(A)    The basis for subject-matter jurisdiction in the district court is 18 U.S.C. § 3231, as this case arose from the prosecution of an offense against the laws of the United States of America.

(B)    This Circuit Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which grants jurisdiction of appeals from final decisions of United States District Courts to the United States Courts of Appeals.

(C)    This is an appeal of an order issued in the United States District Court for the Southern District of Georgia on April 24, 2020 [ECF No. 349], regarding Appellant's request for an order releasing her based on "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i). Appellant timely filed a Notice of Appeal on May 1, 2020 [ECF. No. 350], within the time allowed by Federal Rule of Appellate Procedure 4(b)(1)(A)(i).

(D)    This appeal is from a final order, which disposed of Appellant's request for compassionate relief under 18 U.S.C. § 3582(c)(1)(A)(i).

## **Statement of the Issues**

1.    Did the district court commit reversible legal error in ruling that the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) is mandatory?

2.    Did the district court commit reversible legal error by allowing an outdated agency guideline to supersede a federal statute?

3.    Did the district court abuse its discretion in failing to evaluate the evidence, meriting the Circuit Court to now reverse and render its own judgement on the uncontested evidence presented to the district court or remand this matter for the district court to hold a hearing on the merits?

1

## **Statement of the Case**

This matter comes before this Court on appeal of the Order entered April 24, 2020 [ECF No. 349], which denied the Motion for Compassionate Release under 18 U.S.C. § 3582 and Request for Oral Argument [ECF No. 341] ("Motion for Compassionate Release") filed by Reality Winner (hereinafter "Reality" or "Appellant")—a request made in the wake of an unprecedented global pandemic that has upended American life and nearly shut down the entire world.

### 1.    **The Course of Proceedings and Dispositions in the Court Below**

On June 7, 2017, Reality was indicted for leaking a singular report, classified at the Top Secret / SCI level, containing national defense information to a news outlet in violation of 18 U.S.C. § 793(e), a section of the Espionage Act.[1] Unlike almost every other Espionage Act defendant before her, Reality was detained before trial,[2] and nine months after the return of the superseding indictment, she pleaded guilty to the single count charged against her.[3] Importantly, the Government presented no allegations or evidence of actual spying or treason by Reality.

The district court sentenced Reality on August 23, 2018.[4] Accepting the parties' Rule 11(c)(1)(C) plea agreement, the trial court approved a sixty-three (63)

---

[1] *See* ECF Nos. 13, 72.
[2] *See* ECF Nos. 27, 115, 163.
[3] *See* ECF Nos. 315, 316.
[4] *See* ECF No. 323.

month term of imprisonment, as set forth in the proposed plea agreement.[5] Under 18 U.S.C. § 3624(b), Reality will serve approximately 85% of her 63-month sentence—*i.e.*, approximately fifty four (54) months—assuming she receives full credit for "good time" from the Bureau of Prisons ("BOP"). She has now served approximately thirty-six (36) months or two-thirds (66%) of her expected term without incident, leaving approximately eighteen (18) months remaining.

After the declaration of a national emergency, as coronavirus concerns swept across the United States and the federal prison system, Reality filed her Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i) on April 10, 2020.[6] Her Motion requested an order modifying her sentence to allow her to serve the remainder of her term at home in light of the global COVID-19 pandemic, her underlying medical conditions and susceptibilities, and the insufficient response of BOP, including at FMC Carswell, where Reality is currently housed.

Understanding that time was of the essence, and racing against a potentially life-threatening disease, Reality also filed a Motion for Expedited Briefing and Immediate Hearing.[7] On April 15, 2020, the district court entered a puzzling and foreboding Order, denying Reality's Motion for Expedited Briefing and Immediate

---

[5] *Id.*
[6] *See* ECF No. 341.
[7] *See* ECF No. 343.

3

Hearing.[8] The Order equated the court's circumstances with those of an inmate, holding that because COVID-19 has "affected all aspects of the judicial system," it would not accelerate any briefing schedule.[9] On April 20, 2020, the Government filed its Response in Opposition to Defendant's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i) as Amended by the First Step Act of 2018.[10] Reality filed her Reply in Support of her Motion two days later.[11] Within 48 hours, on April 24, 2020, the district court issued its Order denying the Motion for Compassionate Release without a hearing.[12] Reality's Notice of Appeal from that Order was timely filed on May 1, 2020.[13]

### 2.   **Statement of the Facts**

On March 13, 2020, President Trump declared a national emergency concerning the novel COVID-19 disease outbreak.[14] On the same day, Governor Abbott declared a State of Disaster in Texas—where Reality is incarcerated—due to

---

[8] *See* ECF No. 344.
[9] *Id.* at 1.
[10] *See* ECF No. 345.
[11] *See* ECF No. 347.
[12] *See* ECF No. 349.
[13] *See* ECF No. 350.
[14] Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, Proclamation No. 9994, 85 Fed. Reg. 15337 (Mar. 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak.

COVID-19.[15] Despite the relaxing of certain "shelter-in-place" orders throughout the country, the number of COVID-19 cases continue to rise, including in Texas. As of June 1, 2020, the Centers for Disease Control ("CDC") reported a total of 1,787,680 COVID-19 cases throughout the United States, with a total of 104,396 deaths caused by the disease.[16] Of those deaths, 64,287 were reported in Texas.[17]

Reality's underlying conditions make her more susceptible to COVID-19, the virus that is present in her federal prison facility.[18] Reality is susceptible to pneumonia.[19] Reality also suffers from bulimia nervosa and copes with stress, depression, and other symptoms and triggers by binge eating, regurgitation, excessive exercise, or any combination thereof.[20] Reality is immunocompromised due to her various pre-existing medical conditions now exacerbated by the facility "lockdown." Indeed, "many people with eating disorders are immunocompromised,

---

[15] Proclamation by the Governor of the State of Texas, OFFICE OF THE TEXAS GOVERNOR (Mar. 13, 2020), https://gov.texas.gov/uploads/files/press/DISASTER_covid19_disaster_proclamation_IMAGE_03-13-2020.pdf.

[16] Coronavirus Disease 2019, Cases in the US, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (accessed June 2, 2020).

[17] *Id*.

[18] One inmate died of COVID-19 and another confirmed positive with the virus at FMC Carswell. *See* COVID-19 Update, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last accessed June 12, 2020).

[19] *See, e.g.*, ECF No. 347 at 13.

[20] *See* ECF No. 341-1 at 16.

putting them squarely in the group of people for whom COVID-19, the disease caused by the coronavirus, could be most dangerous."[21]

Given Reality's vulnerability to COVID-19, prison is a particularly dangerous place for her. It is undisputed that inmates are confined in close quarters, eat meals in large dining halls, and use communal showers and recreational facilities. These inmates are overseen by employees from the Bureau of Prisons ("BOP") who travel back and forth between the facility and the community, potentially bringing the coronavirus inside the prison. BOP facilities also continue to transfer inmates in and out, increasing the chances for exposure.[22] As a result, experts and BOP employees regard the federal prisons as ripe breeding ground for the coronavirus.[23]

When paired with COVID-19, Reality's well-advised fear is that these illnesses and susceptibilities will spiral into a situation from which she may never recover. Indeed, the CDC and other authorities recognize both immunocompromise

---

[21] *See, e.g.*, Addy Baird, *The Coronavirus Outbreak Is "Like A Nightmare" For People With Eating Disorders*, BUZZFEED NEWS (Mar. 20, 2020, 10:57 AM), https://www.buzzfeednews.com/article/addybaird/coronavirus-quarantines-eating-disorders-recovery.

[22] *See* Keegan Hamilton, *Sick Staff, Inmate Transfers, and No Tests: How the U.S. Is Failing Federal Inmates as Coronavirus Hits*, VICE, (Mar. 24, 2020, 1:31 PM), https://www.vice.com/en us/article/ige4vg/sick-staff-inmate-transfers-and-no-tests-how-the-us-is-failing-federal-inmates-as-coronavirus-hits.

[23] *Id*. ("Federal prison guards warn that a coronavirus outbreak is looming and could be catastrophic, causing 'mass chaos' in a correctional system responsible for more than 175,000 inmates across the United States.").

and susceptibility to pneumonia as dangerous underlying conditions.[24] Reality's depleted mental and physical states—together with BOP's inadequate, dangerous, and inaccurately reported response—make her particularly susceptible to contracting and experiencing severe effects from the disease.

In light of these concerns, on or about April 8, 2020, Reality submitted a written request to the Warden of FMC Carswell in Ft. Worth, Texas, asking that he Petition the BOP for a reduction of her sentence under 18 U.S.C. § 3582(c)(1)(A)(i).[25] As of the date of this filing, Reality remains unaware of any action either her Warden or anybody at BOP has filed for compassionate release on her behalf.

### 3.    <u>Standard of Review</u>

This Court reviews questions of law *de novo*. That standard applies to questions of statutory interpretation, including whether the district court properly determined the scope of its authority for the modifications of a sentence under the First Step Act.[26] Additionally, with regard to questions of jurisdiction of the district

---

[24] *See* ECF No. 347 at 13, n. 51 (citing Coronavirus Disease 2019, People Who Are at Higher Risk for Severe Illness, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html).

[25] *See* ECF No. 347, Ex. B.

[26] *United States v. Phillips*, 597 F.3d 1190, 1194 n.9 (11th Cir. 2010) ("Whether the district court had the authority to modify … [a prisoner's] sentence … is a question of law subject to *de novo* review.") (citing *United States v. Moore*, 541 F.3d 1323, 1326 (11th Cir. 2008); *see also United States v. Armstrong*, 347 F.3d 905, 907 n.2

court, a *de novo* review is appropriate.[27] This Court reviews the adequacy of a sentencing court's explanation for its denial of a reduced sentence under the abuse-of-discretion standard.[28]

### Summary of the Argument

Due to recent amendments to 18 U.S.C. § 3582(c)(1)(A)(i) via the First Step Act,[29] and consistent with the majority of courts across the country, the district court had jurisdiction to consider Reality's request and had the jurisdictional authority to reduce or modify her sentence. The district court's conclusions to the contrary constitute reversible legal error. To the extent the district court purported to exercise its discretion, the district court abused its discretion by applying erroneous legal conclusions, substituting arbitrariness for discretion, and failing to consider the evidence in the record. Because the evidence presented compels only one conclusion, Appellant respectfully requests that this Court reverse and render judgment, granting her compassionate release. Alternatively, at the barest minimum,

---

(11th Cir. 2003) ("We review *de novo* all legal conclusions made by the district court with respect to the scope of its authority pursuant to the Sentencing Guidelines.") (citing *United States v. White*, 305 F.3d 1264, 1267 (11th Cir. 2002)).

[27] *Phillips*, 597 F.3d at 1194 n.9 ("We review *de novo* questions concerning the jurisdiction of the district court.") (quoting *United States v. Oliver*, 148 F.3d 1274, 1275 (11th Cir. 1998)).

[28] *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) ("[A] court abuses its discretion if it 'bases its decision on an error of law or a clearly erroneous assessment of the evidence.'").

[29] Pub. L. 115-391,132 Stat. 5194 § 603 (Dec. 21, 2018).

Appellant respectfully requests that this Court reverse and remand for further proceedings under the correct legal standard.

## Argument and Citations of Authority

### I.    The District Court Erred as a Matter of Law by Ruling that the Exhaustion Requirement of 18 U.S.C. § 3582(c)(1)(A) is Mandatory.

As an initial matter, thirty days have passed since Reality first submitted her administrative request for compassionate release to the FMC Carswell Warden with an express citation to 18 U.S.C. § 3582(c)(1)(A)(i) (allowing modification of an imposed term of imprisonment if the court finds that "extraordinary and compelling reasons" warrant modification or reduction). In other words, the Government's exhaustion argument–that is, that Reality needed to wait thirty (30) days before filing her motion–no longer applies. As of the date of this filing, Reality remains unaware of any action either her Warden or anybody at BOP has filed for compassionate release on her behalf.

The Eleventh Circuit has not considered whether the exhaustion requirement in the sub-section at issue, 18 U.S.C. § 3582(c)(1)(A), is mandatory and jurisdictional or whether it is a non-jurisdictional, claims-processing rule that district courts can waive. [30] The requirement that a defendant exhaust administrative

---

[30] The "exhaustion" issue has not stopped other lower courts from considering a prisoner's compassionate release motion before the passage of 30 days considering the exigent circumstances created by the COVID-19 pandemic. *See, e.g.*, *United States v. Haney*, --- F. Supp. 3d ----, 2020 WL 1821988, at *1 (S.D.N.Y. Apr. 13,

9

remedies or await the passage of 30 days before applying directly to a district court for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is a "claim-processing" rule and is not jurisdictional. Because of this, it may be waived by the parties or the court for three reasons.[31]

First, the Supreme Court recently explained the distinction between these two types of rules in *Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843 (2019). As the Court noted, the term "jurisdictional" is generally "reserved to describe the classes of cases a court may entertain (subject-matter jurisdiction) or the persons over whom a court

---

2020); *United States v. Perez*, --- F. Supp. 3d ----, 2020 WL 1546422, *1–3 (S.D.N.Y. Apr. 1, 2020); *United States v. Zukerman*, --- F. Supp. 3d ----, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *United States v. Colvin*, --- F. Supp. 3d ---- , 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Eli Dana*, No. 14-cr-405-JMF, ECF No. 108 (S.D.N.Y. Mar. 31, 2020) (granting compassionate release motion without exhaustion of administrative remedies, where government consented); *United States v. Jose Maria Marin*, No. 15-cr-252-PKC, ECF Nos. 1325, 1326 (E.D.N.Y. Mar. 30, 2020) (waiving exhaustion requirement and granting compassionate release to defendant based on special risks he faced from COVID-19).

[31] *See, e.g.*, *United States v. Smith*, --- F. Supp. 3d ----, 2020 WL 1849748, at *2–4 (S.D.N.Y. Apr. 13, 2020) (after observing the government's waiver of the exhaustion requirement in other recent COVID-19-based cases, holding that "the Court is of the opinion that the First Step Act did not empower the Government with the sole authority to decide when and under what conditions exhaustion may be waived, and it agrees with certain of its sister courts that judicial waiver is permissible in light of the extraordinary threat certain inmates face from COVID-19"—"'[T]he Court concludes that Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the emergency before it is potentially too late.'"—concluding, "substance takes precedence over form" (citations omitted)).

may exercise adjudicatory authority (personal jurisdiction)."[32] The court or a party may raise "jurisdictional" prerequisites to a suit at any time, and these prerequisites are not subject to forfeiture or waiver.[33] In contrast, non-jurisdictional, claim-processing rules, including statutory exhaustion requirements, can be waived by a party if they are not timely asserted and may be subject to equitable waiver by a court.[34]

In *Davis*, the Supreme Court held that a similar rule under review was a non-jurisdictional, "claim-processing rule" because the statute spoke to a party's "procedural obligations," requiring the party "to submit information to [a particular administrative agency] and to wait a specified period before commencing a civil action."[35] The provision did not speak to the court's authority or refer in any way to

[32] *Fort Bend Cty., Tex.. v. Davis*, 139 S. Ct. 1843, 1846 (2019).

[33] *See id.* at 1849; *see also Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017).

[34] *See Davis*, 139 S. Ct. at 1849 & n.5 (noting the Supreme Court has reserved question of whether mandatory claim-processing rules are subject to equitable exceptions); *see also Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019) (stating that non-jurisdictional statutory exhaustion requirements can be waived by courts); *Patchak v. Zinke*, 138 S. Ct. 897, 906 (2018) (explaining difference between jurisdictional requirements versus "claim-processing rule[s]," "like a filing deadline or an exhaustion requirement," which require the parties to take certain procedural steps at certain specified times); *United States v. Kwai Fun Wong*, 575 U.S. 402, 405 (2015) (ruling that certain statutory claim-processing rules are subject to equitable tolling); *Bowen v. City of New York*, 476 U.S. 467, 482–83 (1986) (waiving statutory exhaustion requirements, in part, because claimants would suffer irreparable injury if exhaustion requirements were enforced against them).

[35] *Davis*, 139 S. Ct. at 1851.

11

the jurisdiction of the district courts.[36] Therefore, the statute's requirement was "a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."[37]

Second, like the statute at issue in *Davis*, Section 3582(c)(1)(A) contains a non-jurisdictional, claim-processing rule. The Eleventh Circuit has not ruled on whether this specific subsection of the statute is jurisdictional. But, in the context of other Section 3582(c) motions, the Eleventh Circuit has joined the majority of circuits in determining that the exhaustion requirement in Section 3582(c)(2) of the same statute is *not* a jurisdictional requirement.[38] This Court holds that the statute contains "[no] …potential restrictions … articulated in jurisdictional terms...."[39] Accordingly, "it [is] improper to read a jurisdictional limitation … into the § 3582(c)(2) statute."[40] The same logic applies for § 3582(c)(1).

Notably, this accords with the opinions of most Circuits on the issue– including the Second, Third, Fourth, Fifth, Sixth, and Seventh–which have found that it is improper and incorrect to characterize Section 3582(c) as jurisdictional.[41]

---

[36] *Id.* at 1850–51 (citations omitted).

[37] *Id.*

[38] *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1245 (11th Cir. 2017) (citing *United States v. Anderson*, 772 F.3d 662 (11th Cir. 2014)).

[39] *Id.*

[40] *Id*.

[41] *See United States v. Taylor*, 778 F.3d 667, 670–71 (7th Cir. 2015) (explaining in context of § 3582(c)(2) motions that "§ 3582 is not part of a jurisdictional portion of the criminal code" and stating "[t]he general rule that has emerged is that 'when

This logic also makes sense considering the remaining statutory provisions. Section 3582(c) sets forth different circumstances under which a district court may modify a previously imposed sentence. The statute *presumes* a court's jurisdiction over these sentences because it is the court that originally imposed that sentence. It is not the statutory provision that grants that jurisdiction.

Third and finally, the fact that the government has waived exhaustion and/or the 30-day waiting period in certain cases, and that courts have accepted this waiver, confirms the statute is not jurisdictional.[42] Succinctly stated, if the 30-day waiting period were a jurisdictional requirement, a court would not have the power to waive it even if the government consented. However, the government frequently consents to waiver, when it serves their purposes.[43] For these reasons, it is clear that Section

---

Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character'") (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006)); *United States v. Carlton*, 900 F.3d 706, 710–11 (5th Cir. 2018) (finding this statute is not jurisdictional and stating that when Congress does not clearly characterize a statutory limitation as jurisdictional, courts should not treat it as jurisdictional); *United States v. May*, 855 F.3d 271, 274–75 (4th Cir. 2017) (same); *United States v. Weatherspoon*, 696 F.3d 416, 421 (3d Cir. 2012) (same); *United States v. Alam*, --- F.3d ----, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) (same); *United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013) (holding that Section 3582(c) is not jurisdictional because the source of a court's jurisdiction over a federal sentence, and the question of whether a federal sentence could be reduced, derived from other sources).

[42] *See supra* notes 30-31.

[43] *See, e.g.*, *United States v. William Knox*, No. 15-cr-445-PAE, ECF No. 1088 (S.D.N.Y. Apr. 10, 2020) (granting defendant's motion for compassionate release after Government waived objection to exhaustion requirement).

13

3582(c)(1)(A)'s exhaustion requirement is a non-jurisdictional rule that may be waived, and the district court erred in holding it was mandatory before it could consider Reality's request.

## II.    The District Court Erred as a Matter of Law by Allowing an Outdated Agency Guideline to Supersede a Federal Statute.

For years, the compassionate release statute was rarely invoked. Then, Congress enacted the First Step Act, landmark legislation of criminal justice reform designed to combat mass incarceration and provide additional avenues for courts to reduce sentences.[44]

### a.    The First Step Act removed BOP as gatekeeper.

Federal courts may now reduce a prisoner's sentence under the circumstances outlined in 18 U.S.C. § 3852(c). Substantively, under Section 3852(c)(1)(A)(i), a court may reduce a prisoner's sentence "if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."

---

[44] *See, e.g.*, *United States v. Redd*, --- F. Supp. 3d ----, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020) ("The First Step Act was passed against the backdrop of documented infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants."); 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement of Sen. Cardin, co-sponsor of the First Step Act) ("[T]he bill expands compassionate release . . . and expedites compassionate release applications.").

Prior to 2018, only the BOP Director could file these "compassionate-release motions."[45] The First Step Act amended § 3852(c)(1)(A)(i) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive "gatekeeper" role.[46] The amendment to § 3852(c)(1)(A)(i) provided prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the defendant's facility, "whichever is earlier."[47] These changes gave the "district judge . . . the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to the prisoner's compassionate release request in a timely manner."[48]

> b.  <u>The applicable policy guidance is outdated–creating a gap the Commission cannot presently fix.</u>

Congress never defined the term "extraordinary and compelling reasons" in Section 3852(c), except to state that "[r]ehabilitation . . . alone" does not suffice.[49]

---

[45] *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019).

[46] *See also United States v. Redd*, --- F. Supp. 3d ----, 2020 WL 1248493, at *7.

[47] 18 U.S.C. § 3852(c)(1)(A).

[48] *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020).

[49] 18 U.S.C. § 994(t). Section 994(t) reads, in its entirety, as follows: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction,

Rather, Congress directed the Sentencing Commission to define the term.[50] The Commission did so *prior to* the passage of the First Step Act via a policy statement, but it has not since updated the policy statement.[51] Therefore, because they did not consider Congress's purpose, intent, and language of the First Step Act, the Sentencing Commission's policy statements are outdated. Since the passage of the First Step Act, the Commission has been unable to update the Sentencing Guidelines because it has at all relevant times lacked a quorum of appointed commissioners.[52]

The outdated application notes (i.e. commentary) cite to health, age, and familial reasons as "extraordinary and compelling" grounds justifying release, but the Commission also made clear that it is impossible to package all "extraordinary and compelling" circumstances into neat categories.[53] For example, the commentary's fourth, catch-all provision states:

> "Other Reasons. *As determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and

---

including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."

[50] *See* 18 U.S.C. § 994(t).

[51] *See* U.S.S.G. § 1B1.13 cmt. n.1(A)-(D).

[52] *See, e.g.*, *United States v. Maumau*, No. 2:08-CR-00758, 2020 WL 806121, at *1 n. 3 (D. Utah Feb. 18, 2020).

[53] Nothing in the Commentary suggests this list or these categories is exclusive and exhaustive. *See generally* U.S.S.G. § 1B1.13, cmt. n.1–4. Read in their entirety, the examples listed in the application note and Commentary cannot and do not capture all extraordinary and compelling circumstances. *See id.* Indeed, they do not cover a global pandemic.

16

compelling reason **other than, or in combination with, the reasons described in subdivisions (A) through (C)**."[54]

Thus, even before the First Step Act provided a direct avenue of redress to inmates, the Commission articulated its guidance as non-exclusive and envisioned the statute as a catchall, explicitly recognizing that other "compelling reasons" could exist.[55]

Here, the district court erroneously latched onto the above italicized language in note 1(D) of the outdated commentary to support its ruling that Reality's medical condition, age, and family circumstances are the _only_ factors the court may consider in determining whether extraordinary and compelling reasons exist and, indeed, that because BOP must determine those factors, the district court was _without authority_ to adjudicate this dispute.[56] This interpretation of the First Step Act and Section 1B1.13 would permit courts to grant sentence reductions _only if_ a reduction would be consistent with BOP criteria or based on a determination by the BOP–not where there is an "extraordinary and compelling reason **other than, or in combination with, the reasons described in subdivisions (A) through (C)**" and not in situations where BOP failed to timely evaluate the defendant's administrative request (like

---

[54] U.S.S.G. § 1B1.13, cmt. n.1(D) (emphasis added).

[55] _See United States v. Urkevich_, No. 8:03-CR-37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) (noting that Section 1B1.13 never "suggests that [its] list [of criteria] is exclusive"); _United States v. Beck_, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019) ("Read as a whole, the application notes suggest a flexible approach . . . [and] recognize that the examples listed in the application note do not capture all extraordinary and compelling circumstances.").

[56] _See generally_ ECF No. 349.

here), necessitating a direct plea for relief to the district court. The district court's interpretation (which is at odds with the majority of courts to have considered the issue)[57] has the effect of leaving it without authority to hear a plea by an inmate that demonstrates "extraordinary and compelling" circumstances justifying a sentence modification. The district court's interpretation is clearly an abuse of discretion because it failed to consider the First Step Act, and, in so doing, incorrectly overruled plain language in the federal statute and clear intent of Congress in favor of outdated policy guidance. And, as set forth below, the district court's interpretation is at odds with the vast majority of courts to have considered this issue.

     c.     <u>The district court's logic is backwards–Congress has the power to override any guidance or policy statement, but not *vice versa*.</u>

Congress has the power to override any guideline or policy statement.[58] Guideline commentary and policy statements are similar to an agency's interpretation of its own legislative rules.[59] Such commentary is authoritative unless

---

[57] *See infra* note 63.

[58] *United States v. Cantu*, 423 F.Supp.3d 345, 350 (S.D. Tex. 2019) (stating that "Congress may override the Commission's policy statements by statute"); *United States v. Colon*, 707 F.3d 1255, 1261 (11th Cir. 2013) ("Congress can override any guideline or policy statement by statute."); *United States v. Berberena*, 694 F.3d 514, 524–25 (3d Cir. 2012) ("Congress can ... pass a law overruling the Commission's [policy] determination 'at any time.'") (quoting *United States v. Horn*, 679 F.3d 397, 405–06 (6th Cir. 2012)); *United States v. Anderson*, 686 F.3d 585, 591 (8th Cir. 2012) ("Congress ... can modify or override the Commission's policy statements."); *United States v. Fox*, 631 F.3d 1128, 1131 (9th Cir. 2011) ("Congress of course can override both Guidelines and policy statements by statute.").

[59] *Stinson v. United States*, 508 U.S. 36, 45 (1993).

it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, the law it interprets.[60]

In passing the First Step Act, Congress clearly intended to override those portions of Section 1B1.13 and its commentary suggesting that only the BOP director could file a motion. This includes the first clause of application note 1(D) restricting the catch-all provision to criteria determined by the BOP.[61] Now that Congress has unequivocally established by federal statute that the BOP is <u>not</u> the gatekeeper for sentence reductions, these portions of the outdated commentary policy statement cannot be reconciled with and contravene the federal statute.[62]

---

[60] *Id.*

[61] *See United States v. Cantu-Rivera*, No. H-89-204, 2019 WL 2578272 at *2 n.1 (S.D. Tex. June 24, 2019) ("Because the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect").

[62] The pertinent question is whether Congress would want to render Section 3582(c)(1)(A)(i) inoperable due to the Commission's inability to revise Section 1B1.13 and its commentary, or whether Congress would want to sever the legislatively invalidated portions of the guideline and its commentary, whereby allowing the enacted statute to serve its intended function. *See, e.g.*, *United States v. Booker*, 543 U.S. 220, 247 (2005) ("[W]e must decide whether we would deviate less radically from Congress' intended system (1) by superimposing the constitutional requirement [Sixth Amendment jury trial] announced today or (2) through elimination of some provisions of the statute."). The answer is evident given Congress' stated goal to curb mass incarceration through sentence reduction, removal of the BOP as gatekeeper, and provision of direct relief to inmates.

19

d. <u>The majority of district courts agree—this interpretation is consistent with both the plain language of the statute and the plain language of the guidance.</u>

Consistently, the majority of district courts to have considered the interplay between the First Step Act and the commentary to Section 1B1.13 have concluded that, though the commentary may contain helpful guidance, it "does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."[63]

---

[63] *Maumau*, 2020 WL 806121, at *2 (finding that an interpretation of the old policy statement as binding on the new procedure is likely inconsistent with the Commission's statutory role and inconsistent with the First Step Act); *see also United States v. Valdez*, No. 3:98-CR-0133-01, 2019 WL 7373023, at *2-3 (D. Alaska 2019) (a court is "no longer bound to look to the director of the Bureau of Prisons for a definition of extraordinary and compelling reasons beyond application note 1(A) through (C)"); *United States v. Urkevich*, No. 8:03-CR-37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) (noting that Section 1B1.13 never "suggests that [its] list [of criteria] is exclusive"); *United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019) ("Read as a whole, the application notes suggest a flexible approach . . . [and] recognize that the examples listed in the application note do not capture all extraordinary and compelling circumstances."); *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019) ("[T]he only way direct motions to district courts would increase the use of compassionate release is to allow district judges to consider the vast variety of circumstances that may constitute "extraordinary and compelling."); *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts."); *United States v. Redd*, --- F. Supp. 3d ----, 2020 WL 1248493, at *3 (E.D. Va. Mar. 16, 2020) ("In that regard, the First Step Act effectively amended U.S.S.G. § 1B1.13 by eliminating the requirement that a sentence reduction under § 3582(c)(1)(A) be "upon motion of the Director of Bureau of Prisons," as U.S.S.G. § 1B1.13 requires.."); *Young*, 2020 WL 1047815, at *6 ("[T]the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that

Before the First Step Act, "it made sense that the BOP would have to determine any extraordinary and compelling reasons - only the BOP could bring a motion for a reduction of sentence under § 3582."[64] Now that defendants no longer need the blessing of the BOP to seek a sentence reduction, it makes no sense to constrain courts to the criteria set forth in the outdated policy statement.[65] "For if the Director of the BOP were still the sole determiner of what constitutes an extraordinary and compelling reason, the amendment's allowance of defendants' own § 3582(c) motions for reduction of sentence would be to no avail."[66]  The district court's interpretation—which ignored Congress's intent in passing the First Step Act and contradicted the majority of courts to have considered this issue—was erroneous.

## III.    The District Court Erred and Abused Its Discretion in Evaluating the Merits Without Considering the Evidence.

### a.    The Circuit Court should reverse and render judgement on Reality's uncontested evidence presented to the district court.

Where a district court's "findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution

---

is inconsistent with the amendments implemented by the First Step Act. . . federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.").

[64] *Cantu*, 2019 WL 2498923 at *4.

[65] *Id.*

[66] *Id.*

of the factual issue."[67] And while rare, appellate courts, including this Court, have rendered judgment in favor of a litigant where the record compels but one conclusion.[68] Here, in view of the fact that the *only* evidence submitted before the district court—which it ignored—justified release,[69] the "record compels but one conclusion," *i.e.*, compassionate release for an immunocompromised inmate, who has served the vast majority of her sentence, in the face of a global pandemic. Accordingly, this Court should reverse and render judgment, granting Reality compassionate release.

> b.  <u>In the alternative, the Circuit Court should remand this matter for the district court to hold a hearing on the merits.</u>

The district court's decision was effectively made as soon as it decided not to hear any evidence in favor of Reality's circumstance on April 15, 2020—*before the Government filed its responsive briefing*.[70] Because the district court's ruling was

---

[67] *Pullman-Standard v. Swint*, 456 U.S. 273, 292, 102 S.Ct. 1781, 1792 (1982) (citing *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 331-32, 95 S.Ct. 472, 479-80 (1974)).

[68] *See Reynolds v. Giuliani*, 506 F.3d 183, 197 (2d Cir. 2007) (rendering judgment in favor of litigant where opposing party could not prevail on basis of record and collecting cases holding same); *Media Servs. Grp., Inc. v. Bay Cities Commc'ns, Inc.*, 237 F.3d 1326, 1330 (11th Cir. 2001) (finding remand unnecessary because record compelled only one conclusion); *United States v. Ga. Power Co.*, 695 F.2d 890, 892-93 (5th Cir. 1983) (noting prior opinion in same case holding that remand was unnecessary in light of factual record which compelled only one conclusion).

[69] *See* ECF Nos. 341-1 at 15-25; 341-2; 341-3; 341-4; 341-5; 341-6; 341-7; 341-8; 341-9; 341-10; 347 at 2-9, 13-14; 347-1; 347-2; 347-3; 347-4.

[70] *See generally* ECF No. 344 (order denying hearing).

premised solely on its improper interpretation of the law, review by this Court is *de novo*.[71] However, to the extent the district court commented on the facts to explain that "even if the Court were to conclude that the First Step Act gave it discretion to consider what constitutes extraordinary and compelling circumstances …, Winner would not be afforded the relief she seeks,"[72] it only further abused its discretion.

To exercise its discretion (*i.e.*, to rule in a way that does not constitute error), a district court must consider the evidence presented within the correct legal framework. Abuses of discretion occur when (1) the court fails to actually exercise discretion, deciding instead as if by general rule or even arbitrarily; (2) the court fails to take relevant facts constraining its exercise of discretion into account; or (3) its decision is based on erroneous conclusions of law or fact.[73] The district court abused its discretion because it ran afoul of these important constraints, failed to consider the relevant factors, misapprehended the facts, and misapplied the law.

---

[71] *Compare United States v. Koons,* 850 F.3d 973, 976 (8th Cir. 2017) (reviewing the defendant's eligibility for a sentence reduction *de novo*), with *United States v. Granados*, 830 F.3d. 840, 842 (8th Cir. 2016) (applying an abuse of discretion standard where defendant was eligible for a § 3582 sentence reduction, but court exercised its discretion to deny a reduction based on its consideration of the sentencing factors set forth in 18 U.S.C. § 3553).

[72] *See* ECF No. 349 at 7.

[73] *See, e.g., Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 691 (11th Cir. 2001) (*citing James v. Jacobson*, 6 F.3d 233, 242 (4th Cir. 1993)); *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011) (same).

In Sections I and II of this Brief, Appellant has explained the district court's misapplication of law. Yet, this is not the only way the district court abused its discretion. The district court substituted an arbitrary, pre-determined ruling for any actual exercise of discretion when it denied Reality's request for an opportunity to present evidence at a hearing. In effect, the district court effectively foreclosed the premise that inmates in the custody of BOP may find themselves in extraordinary and compelling circumstances requiring prompt judicial review and intervention to avoid Eighth Amendment violations including death. Indeed, the district court's order compared the situations of inmates in BOP facilities—*where 78 inmates have died in BOP custody and more than 6,000 have been infected*—to the circumstances of judicial staff in the Southern District of Georgia.[74] The district court immediately signaled that Reality's motion was an effort in futility—there would be no hearing and, indeed, the government need not even respond.[75]

---

[74] *See* Order of April 15, 2020, ECF No. 344 at 1–2 ("The current global pandemic wrought by COVID-19 has affected all aspects of the judicial system in some capacity. The Court will therefore not accelerate the briefing schedule for this matter.").

[75] *Id.* ("The Government may, but is not required to, submit its response to the motion before its fourteen-day response time elapses. Moreover, a hearing in this matter is not a certainty. Nothing in § 3582 (c) requires a hearing, and Federal Rule of Criminal Procedure 43(b)(4) does not require the presence of the defendant in a proceeding to correct or reduce sentence under § 3582(c)) (emphasis added). *See also United States v. Woods*, 327 F. App'x 170, 172 (11th Cir. 2009) ('[D]ue process does not mandate a hearing on a § 3582(c)(2) motion.') Accordingly, Defendant's motion for expedited briefing and immediate hearing (doc. 343) is DENIED.").

In her filings, Reality supplied evidence for the court's consideration. She provided available medical records that explained her history with bulimia, related complications including immunocompromise, and her susceptibility to pneumonia—all factors that increase her susceptibility to COVID-19, as recognized by the CDC.[76] More recent medical records, of course, are in the custody of BOP— the same agency that claims they never received her administrative request for compassionate release in the first place.[77] The government is the sole custodian of more recent medical records and testimony Reality and her counsel intended to elicit at a hearing–she was never afforded that opportunity, yet the government and the district court held that against her.[78] Reality also submitted various scholarly articles, witness letters, expert opinions, scientific data and reports (including published via the government's own resources), and other primary and secondary source materials in support of her request.[79] She provided the district court with up-to-date public reports about the conditions at FMC Carswell.[80]

On the other hand, the government submitted no evidence to the court for consideration. Its only submissions were legal arguments made by counsel. There were no declarations, no facts presented to contest the evidence submitted by

---

[76] *See* Mot. for Compassionate Release, Exs. 1, 7, ECF Nos. 341-2, 341-8.

[77] *See* Dec. of Alison Johnston Grinter, ECF No. 347-2.

[78] *See* ECF Nos. 345 at 19-25; 349 at 7.

[79] *See generally* ECF Nos. 341; 341-3 to -7; 341-10; 347-1 to -4.

[80] *See* ECF No. 347 at 7–9.

Appellant, no stakeholder testimony. BOP was not ordered to rebut the allegations and explain how its response is sufficient and the conditions are safe, like in other districts.[81]

Yet somehow, the court still concluded that "…even if the Court had discretion in this matter, Winner has not demonstrated an extraordinary and compelling reason to reduce her sentence."[82] Of course, this is a curious statement, since the district court denied Appellant the opportunity to present evidence at a hearing, and because the *only* evidence in the record supported the request for relief.[83] The district court did not exercise its discretion because it did not consider the evidence, and any evidence it did consider was considered under the wrong legal framework, one that contravenes the purpose, intent, and express language of the federal statute at issue.

## <u>Conclusion</u>

For these reasons, Appellant respectfully prays that this Court REVERSE the district court's order on each of the enumerations of error set forth herein and

---

[81] *See, e.g.*, Dec. of Juan A. Segovia, ECF No. 8-1, *Livas v. Myers*, No. 2:20-cv-422-TAD-KK (Apr. 10, 2020) (available online at https://www.fd.org/sites/default/files/covid19/bop_jail_policies_and_information/8 -1_warden_affidavit.pdf).

[82] *See* ECF No. 349 at 8.

[83] Even more curiously, the district court made the "observation" that Reality was in a *better* situation because of her housing in a medical prison, which the district court concluded, without any evidence whatsoever, "is presumably better equipped than most to deal with any onset of COVID-19 in its inmates." ECF No. 344 at 8.

REMAND for a modification of her sentence under 18 U.S.C. § 3582(c)(1)(A)(i) or

further proceedings and application of the correct legal framework by the district

court, to include a hearing at which time Reality will have the ability to put on

additional evidence and BOP will be ordered to show cause as to why the district

court should not grant the relief requested by Reality, and for such different or

additional relief to which she may justly entitled.

## <u>Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements</u>

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i). This document contains 6,919 words, excluding those parts of the motion exempt by the Eleventh Circuit Rule 26.1-3(c) and Fed. R. App. P. 32(f). This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

Respectfully submitted,

*s/ Joe D. Whitley*
Joe D. Whitley

Georgia Bar No. 756150

*Counsel for Appellant*
*Reality Leigh Winner*

28

## **Certificate of Service**

I hereby certify that the foregoing has been served upon the following counsel of record by first class mail and/or by electronically filing the foregoing with the Court on this the 15th day of June, 2020.

Bobby L. Christine
Jennifer G. Solari
Justin G. Davids
Nancy Greenwood
U.S. Attorney's Office
P.O. Box 8970
Savannah, Georgia 31412

*s/ Joe D. Whitley*
Joe D. Whitley
Georgia Bar No. 756150

*Counsel for Appellant*
*Reality Leigh Winner*