No. 20-11692

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

United States of America,

Plaintiff-Appellee,

v.

Reality Leigh Winner

Defendant-Appellant.

## APPEAL

From the United States District Court for the Southern District of Georgia
(Case 1:17-CR-00034-JRH-BKE)
Hon. J. Randal Hall,
UNITED STATES DISTRICT JUDGE

## APPENDIX TO THE BRIEF OF APPELLANT
## VOLUME I

JOE D. WHITLEY
BRETT A. SWITZER
**BAKER, DONELSON, BEARMAN,**
 **CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Road
Monarch Plaza, Suite 1500
Atlanta, Georgia 30326
Tel. (404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

LAURA E. COLLINS
**BAKER, DONELSON, BEARMAN,**
 **CALDWELL & BERKOWITZ, P.C.**
100 Light Street
Baltimore, Maryland 21202
Tel. (410) 685-1120
LCollins@bakerdonelson.com

*Counsel for Appellant Reality Leigh Winner*

# INDEX OF APPENDIX

**VOLUME ONE**                                          **Docket/Tab No.**

District Court Docket Sheet ...................................................................... A

Presentence Investigation Report (Filed Under Seal).............................. B

Sentencing Transcript .............................................................................. C

Indictment ............................................................................................... 13

Detention Order........................................................................................ 27

Superseding Indictment ........................................................................... 72

Order ........................................................................................................ 115

Judgment on Appeal of Magistrate Judge Decision ............................... 163

Minute Entry re Change of Plea............................................................... 315

Change of Plea ......................................................................................... 316

Minute Entry re Sentencing ..................................................................... 323

Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582 and
Request for Oral Argument....................................................................... 341

Brief in Support of Motion for Compassionate Release Pursuant to 18
U.S.C. § 3582 and Request for Oral Argument (Unredacted Copy Filed
Under Seal)............................................................................................... 341-1

Exhibit 1 – Confidential Medical Records (Filed Under Seal)......................... 341-2

Exhibit 2 - Letter of Support from Brittany Winner, PhD................................. 341-3

Exhibit 3 - Letter of Support from Billie Davis-Winner .................................. 341-4

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served upon the following counsel

of record by first class mail and/or by electronically filing the foregoing with the

Court on this the 22nd day of June, 2020.

Bobby L. Christine
Jennifer G. Solari
Justin G. Davids
Nancy Greenwood
U.S. Attorney's Office
P.O. Box 8970
Savannah, Georgia 31412


*/s/ Joe D. Whitley*
Joe D. Whitley
Georgia Bar No. 756150

*Counsel for Appellant*
*Reality Leigh Winner*

# DOCKET

## *USA v. Reality Winner*
## United States District Court, Southern District of Georgia, Case No. 1:17-cr-00034-JRH-BKE

APPEAL,CLOSED,PROTO

# U.S. District Court
## Southern District of Georgia (Augusta)
## CRIMINAL DOCKET FOR CASE #: 1:17-cr-00034-JRH-BKE All Defendants

| | |
|---|---|
| Case title: USA v. Winner | Date Filed: 06/07/2017 |
| Magistrate judge case number: 1:17-mj-00024-BKE | Date Terminated: 08/24/2018 |

---

**Intervenor**

**Reporters Committee for Freedom of the Press**     represented by     **David E. Hudson**
Hull Barrett, PC
801 Broad Street
7th Floor
P.O. Box 1564
Augusta, GA 30903-1564
706-722-4481
Fax: 706-722-9779
Email: dhudson@hullbarrett.com
*TERMINATED: 04/26/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

Assigned to: Chief Judge J. Randal Hall
Referred to: Magistrate Judge Brian K. Epps

Appeals court case number: 20-11692-CC USCA for the Eleventh Circuit

**Defendant (1)**

**Reality Leigh Winner**
*TERMINATED: 08/24/2018*     represented by     **Brett A. Switzer**
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1600 Monarch Plaza
3414 Peachtree Road, NE
Atlanta, GA 30326
404-577-6000
Fax: 404-238-9799
Email: bswitzer@bakerdonelson.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Jill E McCook**
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
265 Brookview Centre Way
Suite 600
Knoxville, TN 37919
865-549-7129
Email: jmccook@bakerdonelson.com
*TERMINATED: 01/22/2018*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Joe D. Whitley**
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
3414 Peachtree Road, NE
Suite 1600
Atlanta, GA 30326
404-223-2209
Fax: 404-238-9799
Email: jwhitley@bakerdonelson.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**John C. Bell , Jr.**
Bell & Brigham
457 Greene Street
Augusta, GA 30901
706-722-2014
Fax: 706-722-7552
Email: john@bellbrigham.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Katherine Cicardo Mannino**
Baker, Donelson, Bearman, Caldwell &
Berkowitz, P.C.
450 Laurel Street
Baton Rouge, LA 70825
225-381-7027
Email: kcicardo@bakerdonelson.com

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Matthew Scott Chester**
Baker, Donelson, Bearman, Caldwell,
and Berkowitz
201 St Charles Avenue, Suite 3600
New Orleans, LA 70170
504-566-5231
Fax: 504-585-6931
Email: mchester@bakerdonelson.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Thomas H Barnard**
Baker, Donelson, Bearman, Caldwell &
Berkowitz PC
Legg Mason Building
100 Light Street, 19th Floor
Baltimore, MD 21202
410-862-1185
Fax: 443-263-7585
Email: tbarnard@bakerdonelson.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Titus Thomas Nichols**
Nichols Law
945 East Paces Ferry Rd.
Suite 2600
Atlanta, GA 30326
404-239-7072
Fax: 470-632-4446
Email: Titus@nlglawyer.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pending Counts**

Willful Retention and Transmission of
National Defense Information
(1)

**Disposition**

63 months custody BOP; 3 years
supervised release; $100 special

assessment; 100 hours community service

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| WILLFUL RETENTION AND TRANSMISSION OF NATIONAL DEFENSE INFORMATION (1s) | DISMISSED |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| Gathering, Transmitting or Losing Defense Information | |

---

**Interested Party**

**Carli Rodriguez-Feo**              represented by **Carli Rodriguez-Feo**
                                                  Classified Information Security Officer
                                                  Email: carli.rodriguez-feo@usdoj.gov
                                                  PRO SE

---

**Plaintiff**

**USA**                              represented by **Jennifer Gayle Solari**
                                                  U.S. Attorney's Office - Savannah
                                                  P.O. Box 8970
                                                  Savannah, GA 31412
                                                  912-201-2561
                                                  Fax: 912-652-4388
                                                  Email: jennifer.solari@usdoj.gov
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*
                                                  *Designation: Retained*

                                                  **Bobby L. Christine**
                                                  U.S. Attorney's Office - Savannah
                                                  P.O. Box 8970
                                                  22 Barnard Street, Suite 300
                                                  Savannah, GA 31401

912-652-4422
Email: bobby.christine@usdoj.gov
*(Inactive)*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Brian T. Rafferty (AUSA)**
U.S. Attorney's Office - Savannah
P.O. Box 8970
22 Barnard Street, Suite 300
Savannah, GA 31401
912-201-2575
Fax: 912-652-4388
Email: karl.knoche@usdoj.gov
*Designation: Retained*

**James D. Durham, AUSA**
U.S. Attorney's Office - Savannah
P.O. Box 8970
22 Barnard Street, Suite 300
Savannah, GA 31401
912-652-4422
Fax: 912-652-4388
Email: karl.knoche@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Justin G. Davids**
United States Attorney's Office
Southern District of Georgia
22 Barnard St.
Savannah, GA 31401
912-652-4422
Email: justin.davids@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Mary Susan Robichaux**
U.S. Attorney's Office
Assistant U.S. Attorney
22 Barnard St.
Suite 300
Savannah, GA 31412
912-652-4422
Email: mary.robichaux@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Amy E. Larson**
United States Department of Justice
National Security Division-CES

950 Pennsylvania Avenue, NW
Washington, DC 20530
202-353-0267
Email: amy.larson@usdoj.gov
*ATTORNEY TO BE NOTICED*

**David C. Aaron**
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
202-307-5190
Email: david.aaron2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Julie Ann Edelstein**
U.S. Department of Justice
600 E Street NW
10th Floor
Washington, DC 20002
202-233-2260
Email: julie.edelstein@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/03/2017 | 1 | Application for Search Warrant as to Reality Leigh Winner. (Attachments: # 1 Attachment A, # 2 Attachment B, # 3 Affidavit).(rc) [1:17-mj-00024-BKE] (Entered: 06/05/2017) |
| 06/03/2017 | 2 | Search Warrant Issued in case as to Reality Leigh Winner. (Attachments: # 1 Attachment A, # 2 Attachment B, # 3 Affidavit)(rc) [1:17-mj-00024-BKE] (Entered: 06/05/2017) |
| 06/05/2017 | 3 | MOTION to Unseal by Patricia Green Rhodes as to Reality Leigh Winner. REFERRED to Judge Brian K. Epps.(rc) [1:17-mj-00024-BKE] (Entered: 06/05/2017) |
| 06/05/2017 | 4 | ORDER granting 3 Motion to Unseal as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 6/5/2017. (rc) [1:17-mj-00024-BKE] (Entered: 06/05/2017) |
| 06/05/2017 | 5 | COMPLAINT as to Reality Leigh Winner. (Attachments: # 1 Affidavit) (rc) [1:17-mj-00024-BKE] (Entered: 06/05/2017) |
| 06/05/2017 | 6 | Arrest Warrant Issued by Magistrate Judge Brian K. Epps in case as to Reality Leigh Winner. (rc) [1:17-mj-00024-BKE] (Entered: 06/05/2017) |
| 06/05/2017 | 7 | CJA 23 Financial Affidavit by Reality Leigh Winner. (cmr) [1:17-mj-00024-BKE] (Entered: 06/05/2017) |
| 06/05/2017 | 9 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps: Initial Appearance as to Reality Leigh Winner held on 6/5/2017. Defendant |

| | | |
|---|---|---|
| | | waives preliminary hearing. Detention hearing scheduled for Thursday, June 8, 2017, ta 4:00 PM. (Court Reporter FTR.) (rc) [1:17-mj-00024-BKE] (Entered: 06/06/2017) |
| 06/05/2017 | | ORAL MOTION for Detention by USA. REFERRED to Judge Brian K. Epps. (rc) (Entered: 06/09/2017) |
| 06/06/2017 | 10 | NOTICE OF HEARING as to Reality Leigh Winner. Detention Hearing set for 6/8/2017 04:00 PM in Augusta - 1st Floor before Magistrate Judge Brian K. Epps. (rc) [1:17-mj-00024-BKE] (Entered: 06/06/2017) |
| 06/06/2017 | 11 | ORDER terminating appointment of CJA counsel Titus Thomas Nichols and instructing Mr. Nichols to file his CJA voucher on or before June 20, 2017. Signed by Magistrate Judge Brian K. Epps on 6/6/2017. (rc) [1:17-mj-00024-BKE] (Entered: 06/06/2017) |
| 06/06/2017 | 12 | Search Warrant Returned Executed in case as to Reality Leigh Winner. (rc) [1:17-mj-00024-BKE] (Entered: 06/06/2017) |
| 06/07/2017 | 13 | INDICTMENT as to Reality Leigh Winner (1) count 1. (maa) (Additional attachment(s) added on 6/7/2017: # 1 Signature Page) (maa). (Entered: 06/07/2017) |
| 06/07/2017 | 14 | PENALTY CERTIFICATION by Government as to Reality Leigh Winner. (maa) (Entered: 06/07/2017) |
| 06/08/2017 | 16 | NOTICE OF ATTORNEY APPEARANCE: Titus Thomas Nichols appearing for Reality Leigh Winner (Nichols, Titus) (Entered: 06/08/2017) |
| 06/08/2017 | 17 | NOTICE by USA, Reality Leigh Winner, NOTICE OF ATTORNEY APPEARANCE James D. Durham appearing for USA. (Durham, James) (Entered: 06/08/2017) |
| 06/08/2017 | 18 | NOTICE TO RETAINED COUNSEL as to Reality Leigh Winner. (rc) (Entered: 06/08/2017) |
| 06/08/2017 | 19 | NOTICE OF HEARING as to Reality Leigh Winner. Arraignment and Detention Hearing set for 6/8/2017 04:00 PM in Augusta - 1st Floor before Magistrate Judge Brian K. Epps. (rc) (Entered: 06/08/2017) |
| 06/08/2017 | 20 | First MOTION for Disclosure *of all 404(b) evidence* by Titus Thomas Nichols as to Reality Leigh Winner. Responses due by 6/22/2017. (Nichols, Titus) (Entered: 06/08/2017) |
| 06/08/2017 | 21 | First MOTION for Disclosure *OF GRAND JURY TRANSCRIPTS AND POINTS AND AUTHORITIES* by Titus Thomas Nichols as to Reality Leigh Winner. Responses due by 6/22/2017. (Nichols, Titus) (Entered: 06/08/2017) |
| 06/08/2017 | 22 | First MOTION for Jencks Material *In Advance of Trial* by Titus Thomas Nichols as to Reality Leigh Winner. Responses due by 6/22/2017. (Nichols, Titus) (Entered: 06/08/2017) |
| 06/08/2017 | 23 | First MOTION for Release of Brady Materials by Titus Thomas Nichols as to Reality Leigh Winner. Responses due by 6/22/2017. (Nichols, Titus) (Entered: 06/08/2017) |

| | | |
|---|---|---|
| 06/08/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 23 First MOTION for Release of Brady Materials , 20 First MOTION for Disclosure *of all 404(b) evidence*, 21 First MOTION for Disclosure *OF GRAND JURY TRANSCRIPTS AND POINTS AND AUTHORITIES*, 22 First MOTION for Jencks Material *In Advance of Trial*. (cmr) (Entered: 06/08/2017) |
| 06/08/2017 | 26 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps: Arraignment as to Reality Leigh Winner held on 6/8/2017. Not guilty plea entered as to Count 1. Detention Hearing held. Defendant detained pending trial. Government's oral motion to designate this case as complex is granted. Conference regarding planning/discovery to be held at a later date. (Court Reporter FTR.) (rc) (Entered: 06/09/2017) |
| 06/08/2017 | | ORAL MOTION to Designate this Case as Complex by Jennifer Gayle Solari as to Reality Leigh Winner. REFERRED to Judge Brian K. Epps.(rc) (Entered: 06/14/2017) |
| 06/09/2017 | 27 | ORDER OF DETENTION as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 6/9/2017. (rc) (Entered: 06/09/2017) |
| 06/14/2017 | 28 | ORDER granting Motion to Designate this Case as Complex and scheduling the first planning conference for June 27, 2017, at 2:00 P.M. as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 6/14/2017. (rc) (Entered: 06/14/2017) |
| 06/17/2017 | 29 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Arraignment and Detention Hearing as to Reality Leigh Winner held on June 8, 2017, before Judge Brian K. Epps; Transcriber: Victoria L. Root, CCR; Telephone Number: (912) 650-4066; Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view Transcript Redaction Policy) Redaction Request due 7/10/2017. Redacted Transcript Deadline set for 7/18/2017. Release of Transcript Restriction set for 9/15/2017. (Root, Victoria) (Entered: 06/17/2017) |
| 06/19/2017 | 30 | First MOTION for Hearing *Pursuant to Section 2 of Classified Information Procedures Act and for Designation of a Classified Information Security Officer* by Jennifer Gayle Solari as to Reality Leigh Winner. Responses due by 7/3/2017. (Attachments: # 1 Text of Proposed Order Proposed Order Designating CISO)(Solari, Jennifer) (Entered: 06/19/2017) |
| 06/22/2017 | | MOTION as to Reality Leigh Winner REFERRED to Magistrate Judge: 30 First MOTION for Hearing *Pursuant to Section 2 of Classified Information Procedures Act and for Designation of a Classified Information Security Officer* (rc) (Entered: 06/22/2017) |
| 06/27/2017 | 32 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Planning Conference as to Reality Leigh Winner held on 6/27/2017 (Court Reporter FTR.) (lcw) (Entered: 06/30/2017) |
| 06/29/2017 | 31 | |

| | | |
|---|---|---|
| | | NOTICE OF HEARING as to Reality Leigh Winner. Status Conference set for 6/30/2017 10:00 AM in Augusta - 1st Floor before Magistrate Judge Brian K. Epps.(lcw) (Entered: 06/29/2017) |
| 06/29/2017 | | Set/Reset Hearings as to Reality Leigh Winner: The Status Conference previously set for 6/30/2017 at 10:00 AM before Magistrate Judge Brian K. Epps is HEREBY CANCELLED. (lcw) (Entered: 06/29/2017) |
| 06/30/2017 | 33 | SCHEDULING ORDER as to Reality Leigh Winner. See Scheduling Order for specific deadlines. Signed by Magistrate Judge Brian K. Epps on 07/30/2017. (lcw) (Entered: 06/30/2017) |
| 06/30/2017 | 34 | RESPONSE to Motion by USA as to Reality Leigh Winner re 22 First MOTION for Jencks Material *In Advance of Trial* (Solari, Jennifer) (Entered: 06/30/2017) |
| 06/30/2017 | 35 | RESPONSE to Motion by USA as to Reality Leigh Winner re 21 First MOTION for Disclosure *OF GRAND JURY TRANSCRIPTS AND POINTS AND AUTHORITIES* (Solari, Jennifer) (Entered: 06/30/2017) |
| 06/30/2017 | 36 | RESPONSE to Motion by USA as to Reality Leigh Winner re 23 First MOTION for Release of Brady Materials (Solari, Jennifer) (Entered: 06/30/2017) |
| 06/30/2017 | 37 | RESPONSE to Motion by USA as to Reality Leigh Winner re 20 First MOTION for Disclosure *of all 404(b) evidence* (Solari, Jennifer) (Entered: 06/30/2017) |
| 07/07/2017 | 38 | MOTION to Seal by USA as to Reality Leigh Winner. REFERRED to Judge Brian K. Epps.(rc) (Entered: 07/07/2017) |
| 07/07/2017 | 39 | ORDER granting 38 Motion to Seal as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 7/7/2017. (rc) (Entered: 07/07/2017) |
| 07/11/2017 | 42 | MOTION for Protective Order by Jennifer Gayle Solari as to Reality Leigh Winner. Responses due by 7/25/2017. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum of Understanding)(Solari, Jennifer) (Entered: 07/11/2017) |
| 07/11/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 42 MOTION for Protective Order (lcw) (Entered: 07/11/2017) |
| 07/14/2017 | 43 | NOTICE *of intent to respond to Gov.'s motion for protective order* by Reality Leigh Winner (Bell, John) (Entered: 07/14/2017) |
| 07/14/2017 | 44 | ORDER setting briefing deadlines in reference to doc. no. 42 as to Reality Leigh Winner. Defendant shall file her response brief, addressing all remaining protective order disputes, on or before July 20, 2017. The government shall file any reply brief on or before July 24, 2017. Signed by Magistrate Judge Brian K. Epps on July 14, 2017. (rc) (Entered: 07/14/2017) |
| 07/20/2017 | 45 | RESPONSE in Opposition by Reality Leigh Winner re 42 MOTION for Protective Order (Bell, John) (Entered: 07/20/2017) |
| 07/20/2017 | 46 | |

| | | |
|---|---|---|
| | | MOTION for Leave to Appear Pro Hac Vice *of Joe Dally Whitley* Receipt Number 113J-2198681, Fee Amount $200,. Responses due by 8/3/2017. (Attachments: # 1 Text of Proposed Order)(Nichols, Titus) (Entered: 07/20/2017) |
| 07/20/2017 | 47 | MOTION for Leave to Appear Pro Hac Vice *of Matthew Scott Chester* Receipt Number 113J-2198689, Fee Amount $200,. Responses due by 8/3/2017. (Attachments: # 1 Text of Proposed Order)(Nichols, Titus) (Entered: 07/20/2017) |
| 07/21/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 47 MOTION for Leave to Appear Pro Hac Vice *of Matthew Scott Chester* Receipt Number 113J-2198689, Fee Amount $200, 46 MOTION for Leave to Appear Pro Hac Vice *of Joe Dally Whitley* Receipt Number 113J-2198681, Fee Amount $200. (en) (Entered: 07/21/2017) |
| 07/21/2017 | | TEXT ORDER granting 46 Motion to Appear Pro Hac Vice as to Reality Leigh Winner (1); granting 47 Motion to Appear Pro Hac Vice as to Reality Leigh Winner (1), and finding the requirements in Local Rule 83.4 have been satisfied. Signed by Magistrate Judge Brian K. Epps on 7/21/17. (en per BKE) (Entered: 07/21/2017) |
| 07/24/2017 | 48 | NOTICE TO RETAINED COUNSEL Joe D. Whitley and Matthew Scott Chester as to Reality Winner. (en) (Entered: 07/24/2017) |
| 07/24/2017 | 49 | REPLY TO RESPONSE to Motion by USA as to Reality Leigh Winner re 42 MOTION for Protective Order (Solari, Jennifer) (Entered: 07/24/2017) |
| 07/25/2017 | 50 | MOTION for Leave to Appear Pro Hac Vice *of Jill E. McCook* Receipt Number 113J-2201331, Fee Amount $200,. Responses due by 8/8/2017. (Attachments: # 1 Text of Proposed Order)(Bell, John) (Entered: 07/25/2017) |
| 07/25/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 50 MOTION for Leave to Appear Pro Hac Vice *of Jill E. McCook.* Receipt Number 113J-2201331, Fee Amount $200. (thb) (Entered: 07/25/2017) |
| 07/25/2017 | 51 | NOTICE OF ATTORNEY APPEARANCE: appearing for Reality Leigh Winner (Switzer, Brett) (Entered: 07/25/2017) |
| 07/26/2017 | | TEXT ORDER granting 50 Motion to Appear Pro Hac Vice as to Reality Leigh Winner (1), and finding the requirements in Local Rule 83.4 have been satisfied. Signed by Magistrate Judge Brian K. Epps on 7/26/17. (en) (Entered: 07/26/2017) |
| 07/26/2017 | 52 | NOTICE TO RETAINED COUNSEL as to Reality Leigh Winner re Counsel Brett A. Switzer and Jill E McCook (en) (Entered: 07/26/2017) |
| 07/28/2017 | 53 | REPLY TO RESPONSE to Motion by Reality Leigh Winner re 42 MOTION for Protective Order (Bell, John) (Entered: 07/28/2017) |
| 08/01/2017 | 54 | MOTION for Leave to Appear Pro Hac Vice *of Thomas H. Barnard* Receipt Number 113J-2205234, Fee Amount $200,. Responses due by 8/15/2017. (Attachments: # 1 Text of Proposed Order)(Nichols, Titus) (Entered: 08/01/2017) |

| 08/02/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 54 MOTION for Leave to Appear Pro Hac Vice *of Thomas H. Barnard* Receipt Number 113J-2205234, Fee Amount $200, (lcw) (Entered: 08/02/2017) |
| 08/02/2017 | | TEXT ORDER granting 54 Motion to Appear Pro Hac Vice as to Reality Leigh Winner (1), and finding the requirements in Local Rule 83.4 have been satisfied. Signed by Magistrate Judge Brian K. Epps on 08/02/2017. (lcw) (Entered: 08/02/2017) |
| 08/02/2017 | 55 | NOTICE *Pursuant to FRE 404(b) of Other Crimes, Wrongs or Other Acts of the Defendant* by USA (Solari, Jennifer) (Entered: 08/02/2017) |
| 08/03/2017 | 56 | NOTICE TO RETAINED COUNSEL Thomas H. Barnard as to Reality Leigh Winner. (lcw) (Entered: 08/03/2017) |
| 08/03/2017 | 57 | ORDER granting 42 Motion for Protective Order as modified in the simultaneously entered Protective Order as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 08/03/2017. (lcw) (Entered: 08/03/2017) |
| 08/03/2017 | 58 | PROTECTIVE ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 08/03/2017. (lcw) (Additional attachment(s) added on 8/3/2017: # 1 Memorandum of Understanding)(lcw). (Entered: 08/03/2017) |
| 08/15/2017 | 59 | First MOTION for Protective Order *Unopposed Supplemental* by Jennifer Gayle Solari as to Reality Leigh Winner. Responses due by 8/29/2017. (Solari, Jennifer) (Entered: 08/15/2017) |
| 08/15/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 59 First MOTION for Protective Order *Unopposed Supplemental* (lcw) (Entered: 08/15/2017) |
| 08/16/2017 | 60 | SUPPLEMENTAL PROTECTIVE ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 08/16/2017. (lcw) (Entered: 08/16/2017) |
| 08/25/2017 | 61 | NOTICE OF HEARING as to Reality Leigh Winner. Status Conference set for 8/30/2017 09:00 AM in Augusta - 1st Floor before Magistrate Judge Brian K. Epps. (lcw) (Entered: 08/25/2017) |
| 08/25/2017 | 62 | NOTICE *of filing* by USA (Edelstein, Julie) (Entered: 08/25/2017) |
| 08/29/2017 | 63 | MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing* by John C. Bell, Jr as to Reality Leigh Winner. Responses due by 9/12/2017. (Attachments: # 1 Briefs)(Bell, John) (Entered: 08/29/2017) |
| 08/29/2017 | 64 | DECLARATION re 63 MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing* (Bell, John) (Entered: 08/29/2017) |
| 08/30/2017 | 65 | Executed MEMORANDUM OF UNDERSTANDING filed per Protective Order (Doc. 58).(lcw) (Entered: 08/31/2017) |
| 08/30/2017 | 67 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Status Conference as to Reality Leigh Winner held on 8/30/2017 (Court Reporter FTR.) (lcw) (Entered: 09/01/2017) |

| 08/31/2017 | 66 | AMENDED SCHEDULING ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 08/31/2017. (lcw) (Entered: 08/31/2017) |
| 09/01/2017 | 68 | MOTION to Amend/Correct 66 Scheduling Order by Julie Ann Edelstein as to Reality Leigh Winner. Responses due by 9/15/2017. (Attachments: # 1 Text of Proposed Order)(Edelstein, Julie) (Entered: 09/01/2017) |
| 09/05/2017 | 69 | First MOTION Exclude Time From Speedy Trial Calculation by Jennifer Gayle Solari as to Reality Leigh Winner. Responses due by 9/19/2017. (Attachments: # 1 Text of Proposed Order)(Solari, Jennifer) (Entered: 09/05/2017) |
| 09/05/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 69 First MOTION Exclude Time From Speedy Trial Calculation , 68 MOTION to Amend/Correct 66 Scheduling Order (lcw) (Entered: 09/05/2017) |
| 09/05/2017 | 70 | NOTICE OF ATTORNEY APPEARANCE Julie Ann Edelstein appearing for USA. (Edelstein, Julie) (Entered: 09/05/2017) |
| 09/05/2017 | 71 | NOTICE OF ATTORNEY APPEARANCE David C. Aaron appearing for USA. (Aaron, David) (Entered: 09/05/2017) |
| 09/06/2017 | 72 | SUPERSEDING INDICTMENT as to Reality Leigh Winner (1) count(s) 1s. (lcw) (Additional attachment(s) added on 9/7/2017: # 1 Supplement Signature Page) (lcw). (Entered: 09/07/2017) |
| 09/06/2017 | 73 | PENALTY CERTIFICATION by Government as to Reality Leigh Winner. (lcw) (Entered: 09/07/2017) |
| 09/07/2017 | 76 | First MOTION for Extension of Time to File Response/Reply as to 63 MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing* by Jennifer Gayle Solari as to Reality Leigh Winner. Responses due by 9/21/2017. (Attachments: # 1 Text of Proposed Order)(Solari, Jennifer) (Entered: 09/07/2017) |
| 09/07/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 76 First MOTION for Extension of Time to File Response/Reply as to 63 MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing* (lcw) (Entered: 09/07/2017) |
| 09/07/2017 | 77 | NOTICE OF HEARING ON MOTION in case as to Reality Leigh Winner 69 First MOTION Exclude Time From Speedy Trial Calculation , 68 MOTION to Amend/Correct 66 Scheduling Order and Arraignment on Superseding Indictment: Hearing set for 9/14/2017 02:00 PM in Augusta - 1st Floor before Magistrate Judge Brian K. Epps. (lcw) (Entered: 09/07/2017) |
| 09/08/2017 | 78 | ORDER finding as moot 76 Motion for Extension of Time to File Response/Reply as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 09/08/2017. (lcw) (Entered: 09/08/2017) |
| 09/08/2017 | 79 | RESPONSE in Opposition by Reality Leigh Winner re 68 MOTION to Amend/Correct 66 Scheduling Order (Bell, John) (Entered: 09/08/2017) |
| 09/11/2017 | 80 | NOTICE *OF FILING OF DEFENDANT'S OBJECTION TO GOVERNMENTS PROCEEDING EX PARTE UNDER SECTION 4 OF THE CLASSIFIED* |

| | | |
|---|---|---|
| | | *INFORMATION PROCEDURES ACT AND RESPONSE TO GOVERNMENTS NOTICE OF FILING* by Reality Leigh Winner (Bell, John) (Entered: 09/11/2017) |
| 09/11/2017 | 81 | REPLY TO RESPONSE to Motion by USA as to Reality Leigh Winner re 68 MOTION to Amend/Correct 66 Scheduling Order (Edelstein, Julie) (Entered: 09/11/2017) |
| 09/12/2017 | 82 | Defendant's Objection to the Government Proceeding Ex Parte, Response to Government's Notice of Filing [Doc. 62], and Request for a Hearing by Reality Leigh Winner (Bell, John) Modified on 9/13/2017 (lcw). (Entered: 09/12/2017) |
| 09/13/2017 | 83 | NOTICE OF HEARING ON MOTION in case as to Reality Leigh Winner 69 First MOTION Exclude Time From Speedy Trial Calculation , 68 MOTION to Amend/Correct 66 Scheduling Order 82 Defendant's Objection to the Government Proceeding Ex Parte 62 . Motion Hearing set for 9/13/2017 02:00 PM in Augusta - 1st Floor before Magistrate Judge Brian K. Epps. (lcw) (Entered: 09/13/2017) |
| 09/14/2017 | 84 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of (Open) Status Conference Proceedings as to Reality Leigh Winner held on 8/30/2017, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706-823-6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view Transcript Redaction Policy) Redaction Request due 10/5/2017. Redacted Transcript Deadline set for 10/16/2017. Release of Transcript Restriction set for 12/13/2017. (Davenport, Lisa) (Entered: 09/14/2017) |
| 09/14/2017 | 85 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Arraignment as to Reality Leigh Winner (1) Count 1s held on 9/14/2017, Plea of Not Guilty on counts 1s. (Court Reporter Lisa Davenport.) (lcw) (Entered: 09/14/2017) |
| 09/19/2017 | | MOTION TO REOPEN DETENTION HEARING 87 REFERRED to Magistrate Judge Brian K. Epps. (lcw) Modified on 9/22/2017 . (Entered: 09/19/2017) |
| 09/20/2017 | 88 | MEMORANDUM OR RESPONSE in Support by USA as to Reality Leigh Winner re 68 MOTION to Amend/Correct 66 Scheduling Order (Edelstein, Julie) (Entered: 09/20/2017) |
| 09/21/2017 | 89 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Arraignment and Motions Proceedings as to Reality Leigh Winner held on 9/14/17, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706-823-6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view Transcript Redaction Policy) Redaction Request due 10/12/2017. |

| | | Redacted Transcript Deadline set for 10/23/2017. Release of Transcript Restriction set for 12/20/2017. (Davenport, Lisa) (Entered: 09/21/2017) |
|---|---|---|
| 09/21/2017 | 90 | NOTICE OF HEARING as to Reality Leigh Winner. Second Detention Hearing set for 9/29/2017 10:00 AM in Augusta - 1st Floor before Magistrate Judge Brian K. Epps. COUNSEL FOR THE GOVERNMENT IS DIRECTED TO FILE THEIR BRIEF IN OPPOSITION NO LATER THAN TUESDAY, SEPTEMBER 26, 2017.(lcw) (Entered: 09/21/2017) |
| 09/21/2017 | 91 | ******* MOTION to Withdraw Document , MOTION for Leave to File *Substitute Pleading Regarding Second Detention Hearing* by Brett A. Switzer as to Reality Leigh Winner. Responses due by 10/5/2017. (Attachments: # 1 Text of Proposed Order)(Switzer, Brett) Modified on 9/22/2017 (Hodge, Jamie). (Entered: 09/21/2017) |
| 09/22/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 91 MOTION to Withdraw Document MOTION for Leave to File *Substitute Pleading Regarding Second Detention Hearing* (lcw) (Entered: 09/22/2017) |
| 09/22/2017 | 92 | ORDER granting in part [91-1, 91-2] Motion to Withdraw and for Leave to File Substitute Pleading Regarding Second Detention Hearing as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 09/22/2017. (lcw) (Entered: 09/22/2017) |
| 09/22/2017 | 93 | ORDER granting 69 Motion Exclude Time from Speedy Trial Calculation as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 09/22/2017. (lcw) (Entered: 09/22/2017) |
| 09/22/2017 | 94 | ORDER denying without prejudice Government's Ex Parte In Camera, Under Seal Motion and Memorandum of Law for a Protective Order (See doc. no. 62) as to Reality Leigh Winner. The government may refile, ex parte, their motion on or before 9/28/2017. Defendant shall file ex parte her defense theories on or before October 5, 2017. Signed by Magistrate Judge Brian K. Epps on 09/22/2017. (lcw) (Entered: 09/22/2017) |
| 09/22/2017 | 95 | NOTICE *of Filing* by USA (Edelstein, Julie) (Entered: 09/22/2017) |
| 09/22/2017 | 300 | NOTICE OF FILING OF OFFICIAL CLASSIFIED TRANSCRIPT of Ex parte Hearing Proceedings as to Reality Leigh Winner held on 09/14/2017 before Judge Magistrate Judge Brian K. Epps. Court Reporter/Transcriber Lisa Davenport. (lcw) (Entered: 05/31/2018) |
| 09/23/2017 | 96 | MOTION for Release from Custody by John C. Bell, Jr as to Reality Leigh Winner. Responses due by 10/10/2017. (Attachments: # 1 Briefs, # 2 Exhibit A to brief)(Bell, John) (Entered: 09/23/2017) |
| 09/24/2017 | 97 | AFFIDAVIT by Reality Leigh Winner 96 MOTION for Release from Custody filed by Reality Leigh Winner (Attachments: # 1 Certificate of Service)(Bell, John) (Entered: 09/24/2017) |
| 09/24/2017 | 98 | AFFIDAVIT by Reality Leigh Winner 96 MOTION for Release from Custody filed by Reality Leigh Winner (Attachments: # 1 Certificate of Service)(Bell, John) (Entered: 09/24/2017) |
| | | |

| 09/25/2017 | | DOCKETED IN ERROR (lcw) Modified on 9/25/2017 (lcw). (Entered: 09/25/2017) |
|---|---|---|
| 09/25/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 96 MOTION for Release from Custody (lcw) (Entered: 09/25/2017) |
| 09/27/2017 | 99 | RESPONSE to Motion by USA as to Reality Leigh Winner re 96 MOTION for Release from Custody (Attachments: # 1 Exhibit A)(Solari, Jennifer) (Entered: 09/27/2017) |
| 09/27/2017 | 100 | RESPONSE to Motion by USA as to Reality Leigh Winner re 96 MOTION for Release from Custody *with amended Exhibit A* (Attachments: # 1 Exhibit A - amended)(Solari, Jennifer) (Entered: 09/27/2017) |
| 09/29/2017 | 101 | CLASSIFIED ORDER granting Govt's Motion [Doc. 95] as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 09/25/2017. (lcw) (Entered: 09/29/2017) |
| 09/29/2017 | 103 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Detention Hearing as to Reality Leigh Winner held on 9/29/2017 (Court Reporter Lisa Davenport.) (lcw) (Entered: 10/02/2017) |
| 09/29/2017 | 104 | EXHIBIT LIST by USA as to Reality Leigh Winner (lcw) (Entered: 10/02/2017) |
| 09/29/2017 | 105 | WITNESS LIST by USA as to Reality Leigh Winner (lcw) (Entered: 10/02/2017) |
| 09/29/2017 | 106 | CLASSIFIED EXHIBIT LIST by Reality Leigh Winner (lcw). (Entered: 10/02/2017) |
| 09/29/2017 | 108 | GOVT EXHIBIT 3 by USA. (lcw) (Entered: 10/03/2017) |
| 09/29/2017 | 109 | GOVT EXHIBITS 4, 6 and 7 by USA. (lcw) (Entered: 10/03/2017) |
| 09/29/2017 | 110 | GOVT EXHIBITS 8-14 by USA. (lcw) (Entered: 10/03/2017) |
| 09/30/2017 | 102 | NOTICE *of Filing* by USA (Edelstein, Julie) (Entered: 09/30/2017) |
| 10/03/2017 | 111 | REPLY TO RESPONSE to Motion by Reality Leigh Winner re 96 MOTION for Release from Custody (Switzer, Brett) (Entered: 10/03/2017) |
| 10/03/2017 | 112 | BRIEF *Regarding Certain Elements of the Offense* by Reality Leigh Winner 94 Order, (Attachments: # 1 Exhibit A - Harold Edgar & Benno C. Schmidt, Jr., The Espionage Statutes & Pub. of Def. Info., 73 Colum. L. Rev. 929 (1973)) (Switzer, Brett) (Entered: 10/03/2017) |
| 10/04/2017 | 113 | MOTION for Leave of Absence as to USA for dates of : October 19, 2017 - October 20, 2017. Responses due by 10/18/2017. (Solari, Jennifer) (Entered: 10/04/2017) |
| 10/05/2017 | 114 | ORDER granting 113 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 10/05/2017. (lcw) (Entered: 10/05/2017) |
| 10/05/2017 | 115 | |

| | | |
|---|---|---|
| | | ORDER denying 96 Motion for Release from Custody as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 10/05/2017. (lcw) (Entered: 10/05/2017) |
| 10/05/2017 | 116 | ORDER granting in part 68 Motion to Amend/Correct as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 10/05/2017. (lcw) (Entered: 10/05/2017) |
| 10/05/2017 | 117 | NOTICE *of Filing* by Reality Leigh Winner (Barnard, Thomas) (Entered: 10/05/2017) |
| 10/06/2017 | 118 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Reality Leigh Winner ( Filing fee $ 37 receipt number 113J-2245282.) (Attachments: # 1 Exhibit A - September 14, 2017 Transcript of Proceedings)(Switzer, Brett) Modified on 11/27/2017 (maa). (Entered: 10/06/2017) |
| 10/06/2017 | 119 | NOTICE *of Objection to Government's Second Ex Parte, In Camera, Under Seal Motion and Memorandum of Law Pursuant to CIPA § 4 noticed at DE 102* by Reality Leigh Winner re 102 Notice (Other) (Switzer, Brett) (Entered: 10/06/2017) |
| 10/10/2017 | 299 | NOTICE OF FILING OF OFFICIAL CLASSIFIED TRANSCRIPT of Detention Hearing Proceedings as to Reality Leigh Winner held on 09/29/2017 before Judge Magistrate Judge Brian K. Epps. Court Reporter/Transcriber Lisa Davenport. (lcw) (Entered: 05/31/2018) |
| 10/12/2017 | 120 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of (Open) Detention Proceedings as to Reality Leigh Winner held on 9/29/2017, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706-823-6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view Transcript Redaction Policy) Redaction Request due 11/2/2017. Redacted Transcript Deadline set for 11/13/2017. Release of Transcript Restriction set for 1/10/2018. (Davenport, Lisa) (Entered: 10/12/2017) |
| 10/13/2017 | 121 | MOTION for Leave of Absence as to USA for dates of : October 27, 2017. Responses due by 10/27/2017. (Solari, Jennifer) (Entered: 10/13/2017) |
| 10/13/2017 | 122 | RESPONSE by USA as to Reality Leigh Winner (Attachments: # 1 Exhibit) (Edelstein, Julie) (Entered: 10/13/2017) |
| 10/13/2017 | 123 | RESPONSE by USA as to Reality Leigh Winner re 118 Appeal of Magistrate Judge Decision to District Court (Edelstein, Julie) (Entered: 10/13/2017) |
| 10/16/2017 | 124 | NOTICE *of Intent to File Reply in Support of Defendant's Brief Regarding Certain Elements of the Offense* by Reality Leigh Winner (Switzer, Brett) (Entered: 10/16/2017) |
| 10/16/2017 | 125 | NOTICE *of Intent to File Reply in Support of Defendant's Appeal of Magistrate Judge's Decision* by Reality Leigh Winner (Switzer, Brett) (Entered: 10/16/2017) |

| 10/17/2017 | 126 | THIRD AMENDED SCHEDULING ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 10/17/2017. (lcw) (Entered: 10/17/2017) |
| 10/19/2017 | 127 | ORDER granting 121 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 10/19/2017. (lcw) (Entered: 10/19/2017) |
| 10/19/2017 | 128 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Reality Leigh Winner ( Filing fee $ 37 receipt number 113J-2252597.) (Whitley, Joe) (Entered: 10/19/2017) |
| 10/19/2017 | 129 | NOTICE *of Filing* by Reality Leigh Winner (Barnard, Thomas)(Redacted Document added on 3/1/2018 pursuant to 58 and 172 )(lcw). Modified on 3/1/2018 (lcw). Modified on 3/1/2018 (lcw). (Entered: 10/19/2017) |
| 10/19/2017 | 130 | MEMORANDUM OR RESPONSE in Support by Reality Leigh Winner re 42 MOTION for Protective Order *Pursuant to Sec 3 of Classified Information Procedures Act* (Whitley, Joe) (Entered: 10/19/2017) |
| 10/26/2017 | 131 | RESPONSE by USA as to Reality Leigh Winner re 128 Appeal of Magistrate Judge Decision to District Court (Edelstein, Julie) (Entered: 10/26/2017) |
| 10/26/2017 | 132 | BRIEF *DEFENDANTS REPLY BRIEF REGARDING THE ELEMENTS OF THE OFFENSE UNDER 18 U.S.C. § 793(e) AS THEY RELATE TO THE GOVERNMENTS EX PARTE WITHHOLDING OF DISCOVERY UNDER CIPA § 4* by Reality Leigh Winner 122 Response filed by USA (Barnard, Thomas) (Entered: 10/26/2017) |
| 10/26/2017 | 133 | NOTICE *Of Filing* by Reality Leigh Winner (Barnard, Thomas) (Entered: 10/26/2017) |
| 10/27/2017 | 134 | MOTION for Leave of Absence as to USA for dates of : November 6-8, 2017. Responses due by 11/13/2017. (Attachments: # 1 Text of Proposed Order) (Edelstein, Julie) (Entered: 10/27/2017) |
| 10/27/2017 | 135 | MOTION for Leave of Absence as to USA for dates of : November 6 and 7, 2017. Responses due by 11/13/2017. (Attachments: # 1 Text of Proposed Order)(Aaron, David) (Entered: 10/27/2017) |
| 10/27/2017 | 137 | ORDER as to Reality Leigh Winner. The Court will hold a classified hearing on Defendant's Expedited Motion to Compel (Doc. 129) on 11/3/2017 at 10:00 am in Augusta. Signed by Magistrate Judge Brian K. Epps on 10/27/2017. (lcw) (Entered: 10/27/2017) |
| 10/27/2017 | 138 | ORDER granting 135 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 10/27/2017. (lcw) (Entered: 10/27/2017) |
| 10/27/2017 | 139 | ORDER granting 134 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 10/27/2017. (lcw) (Entered: 10/27/2017) |
| 10/27/2017 | 140 | BRIEF *DEFENDANTS REPLY BRIEF REGARDING OBJECTION TO MAGISTRATE JUDGES SEPTEMBER 22, 2017 ORDER [DOC. NO. 94] AND* |

| | | |
|---|---|---|
| | | *REQUEST FOR A HEARING* by Reality Leigh Winner 118 Appeal of Magistrate Judge Decision to District Court filed by Reality Leigh Winner, 94 Order, (Whitley, Joe) (Entered: 10/27/2017) |
| 10/30/2017 | 141 | NOTICE *DEFENDANT'S NOTICE OF INTENT TO FILE REPLY IN SUPPORT OF DEFENDANT'S APPEAL OF THE MAGISTRATE JUDGE'S DETENTION ORDER AND REQUEST FOR HEARING* by Reality Leigh Winner re 131 Response, 128 Appeal of Magistrate Judge Decision to District Court (Switzer, Brett) (Entered: 10/30/2017) |
| 11/02/2017 | 142 | NOTICE *of Filing* by USA (Edelstein, Julie) (Redacted Document added on 12/21/2017 pursuant to 58 and 172 ) (lcw). Modified on 12/21/2017 (lcw). (Entered: 11/02/2017) |
| 11/02/2017 | 143 | STATUS REPORT *DEFENDANT'S STATUS UPDATE AND MOTION FOR CLARIFICATION AND A HEARING* by Reality Leigh Winner (Attachments: # 1 Exhibit EXHIBIT A)(Whitley, Joe) Modified on 11/3/2017 (lcw). (Entered: 11/02/2017) |
| 11/03/2017 | 144 | CLASSIFIED EX PARTE EXHIBIT LIST by USA as to Reality Leigh Winner (lcw) (Entered: 11/03/2017) |
| 11/03/2017 | 145 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Ex Parte Classified Hearing as to Reality Leigh Winner held on 11/3/2017. (Court Reporter Lisa Davenport.) (lcw) (Entered: 11/03/2017) |
| 11/03/2017 | 146 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Classified Hearing re: Motion to Compel as to Reality Leigh Winner held on 11/3/2017 (Court Reporter Lisa Davenport.) (lcw) (Entered: 11/03/2017) |
| 11/03/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 143 MOTION for Hearing (lcw) (Entered: 11/03/2017) |
| 11/03/2017 | 147 | ORDER granting in part 143 Motion for Clarification as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 11/03/2017. (lcw) (Entered: 11/03/2017) |
| 11/06/2017 | 148 | ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 11/06/2017. The Court orders the parties to file a joint status report on or before 5:00 pm on Monday, 11/13/2017 itemizing all unresolved disputes regarding the Defendant's Motion to Compel. A classified hearing is scheduled for Thursday, 11/16/2017 at 10:00 am in Augusta to resolve any unresolved disputes. (lcw) (Entered: 11/06/2017) |
| 11/06/2017 | 149 | ORDER denying Defendant's appeal (Doc. 118) and affirming the Magistrate Judge's Order (Doc. 94) as to Reality Leigh Winner. Signed by Chief Judge J. Randal Hall on 11/06/2017. (lcw) (Entered: 11/06/2017) |
| 11/07/2017 | 151 | JOINT MOTION to Seal Document (Document Sealed) by Jennifer Gayle Solari, David C. Aaron, Julie Edelstein, Joe D. Whitley, Matthew S. Chester, Brett A. Switzer, John C. Bell, Jr., Titus T. Nichols, Jill E. McCook, and Thomas H. Barnard as to Reality Leigh Winner. REFERRED to Judge Brian K. Epps.(lcw) (Entered: 11/09/2017) |
| | | |

| | | |
|---|---|---|
| 11/08/2017 | 150 | NOTICE *of Filing* by USA (Edelstein, Julie) (Entered: 11/08/2017) |
| 11/09/2017 | 152 | ORDER granting Joint Motion to Seal (Doc. 151) as to Reality Leigh Winner (Document Sealed). Signed by Magistrate Judge Brian K. Epps on 11/09/2017. (lcw) (Entered: 11/09/2017) |
| 11/09/2017 | 153 | JOINT MOTION for Amended Scheduling Order (Document Sealed) by Jennifer Gayle Solari, David C. Aaron, Julie Edelstein, Joe D. Whitley, Matthew S. Chester, Brett A. Switzer, John C. Bell, Jr., Titus T. Nichols, Jill E. McCook, Thomas H. Barnard as to Reality Leigh Winner. REFERRED to Judge Brian K. Epps.(lcw) (Entered: 11/09/2017) |
| 11/09/2017 | 154 | ORDER granting Joint Motion for Amended Scheduling Order (Doc. 153) as to Reality Leigh Winner (Document Sealed). Signed by Magistrate Judge Brian K. Epps on 11/09/2017. (lcw) (Entered: 11/09/2017) |
| 11/09/2017 | 155 | FOURTH AMENDED SCHEDULING ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 11/09/2017. (lcw) (Entered: 11/09/2017) |
| 11/09/2017 | | Set/Reset Hearings as to Reality Leigh Winner: The Status Conference/Hearing on Discovery Disputes scheduled for 11/16/2017 in Augusta has been RESCHEDULED for 11/30/2017 at 10:00 AM in Augusta before Magistrate Judge Brian K. Epps. (lcw) (Entered: 11/09/2017) |
| 11/09/2017 | 156 | BRIEF *Reply Brief in Support of Appeal of the Magistrate Judge's Detention Order and Request for A Hearing of Appeal Detention Order* by Reality Leigh Winner (Whitley, Joe) (Entered: 11/09/2017) |
| 11/14/2017 | 157 | NOTICE *of Intent to File Sur-reply* by USA re 156 Remark, 128 Appeal of Magistrate Judge Decision to District Court (Solari, Jennifer) (Entered: 11/14/2017) |
| 11/21/2017 | 158 | NOTICE *of Filing Defendant's First CIPA § 5 Notice* by Reality Leigh Winner (Whitley, Joe) (Redacted Document added on 3/1/2018 pursuant to 58 and 172 (lcw). Modified on 3/1/2018 (lcw). (Entered: 11/21/2017) |
| 11/21/2017 | 159 | NOTICE *of Filing of Ex Parte Motion for Issuance of Subpoenas Pursuant to Rule 17 of FRCrP and Brief in Support of Motion* by Reality Leigh Winner (Whitley, Joe) (Entered: 11/21/2017) |
| 11/21/2017 | 298 | NOTICE OF FILING OF OFFICIAL CLASSIFIED TRANSCRIPT of Motion to Compel Proceedings as to Reality Leigh Winner held on 11/03/2017 before Judge Magistrate Judge Brian K. Epps. Court Reporter/Transcriber Lisa Davenport. (lcw) (Entered: 05/31/2018) |
| 11/27/2017 | 160 | RESPONSE by USA as to Reality Leigh Winner re 156 Remark (Edelstein, Julie) (Entered: 11/27/2017) |
| 11/27/2017 | 161 | NOTICE OF HEARING as to Reality Leigh Winner. Ex Parte Hearing (Doc. 159) set for 11/30/2017 04:00 PM in Augusta - before Magistrate Judge Brian K. Epps. (lcw) (Entered: 11/27/2017) |
| 11/27/2017 | 162 | |

| | | |
|---|---|---|
| | | NOTICE *of Filing* by USA (Edelstein, Julie) (Redacted document added on 12/21/2017 pursuant to 58 and 172 (lcw). Modified on 12/21/2017 (lcw). (Entered: 11/27/2017) |
| 11/27/2017 | 163 | JUDGMENT ON APPEAL OF MAGISTRATE JUDGE DECISION TO DISTRICT JUDGE as to Reality Leigh Winner re 128 Appeal of Magistrate Judge Decision to District Court. The Court DENIES Defendant's appeal and AFFIRMS the Magistrate Judge's Detention Order of October 5, 2017. (maa) (Entered: 11/27/2017) |
| 11/27/2017 | 164 | ******* MOTION DEFENDANT'S MOTION TO LIFT UNCONSTITUTIONAL LIMITATIONS AND MOTION TO ENFORCE RELEVANT PROVISIONS OF THE PROTECTIVE ORDER; AND REQUEST FOR HEARING by Joe D. Whitley as to Reality Leigh Winner. Responses due by 12/11/2017. (Attachments: # 1 Briefs BRIEF IN SUPOPRT OF MOTION TO LIFT, # 2 Exhibit EXHIBIT A - KIM - REDACTION ORDER DOC 174)(Whitley, Joe). Added MOTION on 12/5/2017 (lcw). Added MOTION on 12/5/2017 (lcw). (Entered: 11/27/2017) |
| 11/27/2017 | 165 | MOTION for Leave to File *MOTION FOR BILL OF PARTICULARS* by Joe D. Whitley as to Reality Leigh Winner. Responses due by 12/11/2017. (Attachments: # 1 Exhibit EXHIBIT 1 - MOTION FOR BILL OF PARTICULARS)(Whitley, Joe) (Entered: 11/27/2017) |
| 11/28/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 164 MOTION DEFENDANT'S MOTION TO LIFT UNCONSTITUTIONAL LIMITATIONS AND MOTION TO ENFORCE RELEVANT PROVISIONS OF THE PROTECTIVE ORDER; AND REQUEST FOR HEARING , 165 MOTION for Leave to File *MOTION FOR BILL OF PARTICULARS* (lcw) (Entered: 11/28/2017) |
| 11/29/2017 | 166 | NOTICE *Notice of Filing* by Reality Leigh Winner (Whitley, Joe) (Entered: 11/29/2017) |
| 11/30/2017 | 170 | CLASSIFIED Minute Entry for proceedings held before Magistrate Judge Brian K. Epps: Discovery Hearing as to Reality Leigh Winner held on 11/30/2017 (Court Reporter Lisa Davenport.) (lcw) (Entered: 12/04/2017) |
| 12/01/2017 | 167 | MEMORANDUM OR RESPONSE in Support by Reality Leigh Winner re 42 MOTION for Protective Order *Pursuant to Sec 3 of Classified Information Procedures Act* (Switzer, Brett) (Entered: 12/01/2017) |
| 12/01/2017 | 168 | NOTICE OF FILING of Defendant's Second CIPA Section 5 Notice by Reality Leigh Winner (lcw) (Redacted Document added on 3/1/2018 pursuant to 58 and 172 ) (lcw). Modified on 3/1/2018 (lcw). (Entered: 12/01/2017) |
| 12/01/2017 | 169 | CLASSIFIED EXHIBIT LIST by Reality Leigh Winner (lcw) (Entered: 12/04/2017) |
| 12/01/2017 | 171 | CLASSIFIED Minute Entry for proceedings held before Magistrate Judge Brian K. Epps: Discovery Hearing as to Reality Leigh Winner held on 12/1/2017 (Court Reporter Lisa Davenport.) (lcw) (Entered: 12/04/2017) |
| 12/05/2017 | 172 | |

| | | |
|---|---|---|
| | | ORDER granting in part and denying in part Defendant's Motion to Compel 129 ; deferring ruling on [164-1] Defendant's request to conduct certain internet searches; granting in part and denying in part [164-2, 164-3] Defendant's requests related to defense communication protocols and redacted filings for the public docket as to Reality Leigh Winner. The Court will hold a classified hearing on 12/19/2017 at 10:00 am in Augusta, Georgia concerning Defendant's First and Second CIPA 5 Notices [158, 168], Defendant's request to conduct certain internet searches [164-1] and Defendant's request for Rule 17 subpoenas. Defense counsel shall file formulated subpoenas incorporating the Court's recent rulings on or before noon on 12/18/2017. The Government shall file their brief specifying the portions of the Defendant's Section 5 filings they deem to be insufficient. Signed by Magistrate Judge Brian K. Epps on 12/05/2017. (lcw) Modified on 12/5/2017 (lcw). (Entered: 12/05/2017) |
| 12/06/2017 | 173 | ORDER granting [102, 150] as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 12/06/2017. (lcw) Modified on 12/6/2017 (lcw). (Entered: 12/06/2017) |
| 12/06/2017 | 174 | CLASSIFIED EX PARTE ORDER granting [102 and 150] as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 12/06/2017. (lcw) (Entered: 12/06/2017) |
| 12/06/2017 | 175 | First MOTION for Reciprocal Discovery by Jennifer Gayle Solari as to Reality Leigh Winner. Responses due by 12/20/2017. (Solari, Jennifer) (Entered: 12/06/2017) |
| 12/07/2017 | 176 | MOTION DEFENDANT'S UNOPPOSED MOTION FOR WRITTEN ORDER AND EXTENSION OF TIME by Joe D. Whitley as to Reality Leigh Winner. Responses due by 12/21/2017. (Whitley, Joe) (Entered: 12/07/2017) |
| 12/08/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 175 First MOTION for Reciprocal Discovery , 176 MOTION DEFENDANT'S UNOPPOSED MOTION FOR WRITTEN ORDER AND EXTENSION OF TIME (lcw) (Entered: 12/08/2017) |
| 12/08/2017 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 63 MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing* (lcw) (Entered: 12/08/2017) |
| 12/08/2017 | 177 | ORDER granting in part and denying in part 176 Motion for Written Order and Extension of Time as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 12/08/2017. The Defendant's request for a written order is denied; the Defendant's request for extensions of time is granted in part. The classified hearing on 12/19/2017 will proceed as scheduled. (lcw) (Entered: 12/08/2017) |
| 12/11/2017 | 178 | NOTICE *DEFENDANT'S NOTICE OF APPEAL OF DETENTION ORDER* by Reality Leigh Winner re 115 Order on Motion for Release from Custody, 27 Order of Detention, 163 Judgment on Appeal of Magistrate Judge Decision, (Attachments: # 1 Exhibit District Judge Order on Detention 163 , # 2 Exhibit Detention Order 27 , # 3 Exhibit Detention Order 115 )(Whitley, Joe) (Entered: 12/11/2017) |
| | | |

| 12/11/2017 | 179 | NOTICE OF APPEAL (Interlocutory) by Reality Leigh Winner re 115 Order on Motion for Release from Custody, 27 Order of Detention. Filing fee $ 505, receipt number 113J-2282578. (Attachments: # 1 Exhibit A-District Judge Order on Detention Doc. 163, # 2 Exhibit B-Initial Detention Order Doc. 27, # 3 Exhibit C-Detention Order Doc. 115)(Whitley, Joe) (Entered: 12/11/2017) |
| --- | --- | --- |
| 12/12/2017 | 180 | Transmission of Notice of Appeal and Docket Sheet as to Reality Leigh Winner to US Court of Appeals. Related Documents: 179 Notice of Appeal - Interlocutory. Other Appeals: No; Judge Appealed: J. Randal Hall; Court Reporter: Lisa Davenport; Fee Paid: Yes. (Attachments: # 1 Docket Sheet) (lcw) (Entered: 12/12/2017) |
| 12/12/2017 | 181 | MOTION to Continue *DEFENDANTS MOTION TO CONTINUE DECEMBER 19, 2017 HEARING REGARDING CIPA NOTICES* by Joe D. Whitley as to Reality Leigh Winner. Responses due by 12/26/2017. (Whitley, Joe) (Entered: 12/12/2017) |
| 12/13/2017 |  | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 181 MOTION to Continue *DEFENDANTS MOTION TO CONTINUE DECEMBER 19, 2017 HEARING REGARDING CIPA NOTICES* (lcw) (Entered: 12/13/2017) |
| 12/14/2017 | 182 | NOTICE *of Filing* by USA (Edelstein, Julie)(Redacted document added on 1/11/2018 pursuant to 58 and 172 (lcw). Modified on 1/11/2018 (lcw). (Entered: 12/14/2017) |
| 12/14/2017 | 183 | ORDER granting 181 Motion to Continue and cancels the 12/19/2017 hearing regarding the sufficiency of Defendant's CIPA notices. The Court will conduct a classified hearing regarding defense Internet searches on 12/19/2017 at 10:00 am in Augusta. The Court will conduct an unclassified hearing on 12/19/2017 at 11:00 am in Augusta to discuss the status of the case and all remaining deadlines. Counsel may attend the unclassified hearing via telephone. See order for additional instructions. Signed by Magistrate Judge Brian K. Epps on 12/14/2017. (lcw) (Entered: 12/14/2017) |
| 12/15/2017 | 184 | MOTION for Leave of Absence as to USA for dates of : January 12-19, 2018. Responses due by 12/29/2017. (Attachments: # 1 Text of Proposed Order) (Edelstein, Julie) (Entered: 12/15/2017) |
| 12/18/2017 | 185 | MOTION for Leave of Absence as to USA for dates of : January 2-5 and January 18, 2018. Responses due by 1/2/2018. (Solari, Jennifer) (Entered: 12/18/2017) |
| 12/18/2017 | 186 | ORDER granting 184 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 12/18/2017. (lcw) (Entered: 12/18/2017) |
| 12/18/2017 | 187 | RESPONSE in Opposition by USA as to Reality Leigh Winner re 165 MOTION for Leave to File *MOTION FOR BILL OF PARTICULARS* (Edelstein, Julie) (Entered: 12/18/2017) |
| 12/18/2017 | 188 |  |

| | | |
|---|---|---|
| | | NOTICE *of Filing* by USA (Edelstein, Julie)(Redacted document added on 1/11/2018 pursuant to 58 and 172 (lcw). Modified on 1/11/2018 (lcw). (Entered: 12/18/2017) |
| 12/18/2017 | 189 | RESPONSE to Motion by USA as to Reality Leigh Winner re 63 MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Solari, Jennifer) (Entered: 12/18/2017) |
| 12/19/2017 | 190 | NOTICE *of Filing* by USA (Edelstein, Julie) (Redacted document added on 1/11/2018 pursuant to 58 and 172 (lcw). Modified on 1/11/2018 (lcw). (Entered: 12/19/2017) |
| 12/19/2017 | 191 | ORDER granting 185 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 12/19/2017. (lcw) (Entered: 12/19/2017) |
| 12/19/2017 | 192 | ORDER staying all CIPA deadlines until final ruling on discovery appeal; directing the parties to file a joint status report by 01/10/2018; and scheduling a classified status conference with defense counsel and counsel for NSA for 01/23/2018 at 10:00 am in Augusta as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 12/19/2017. (lcw) (Entered: 12/19/2017) |
| 12/19/2017 | 195 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Status Conference as to Reality Leigh Winner held on 12/19/2017 (Court Reporter Lisa Davenport.) (lcw) (Additional attachment(s) added on 1/22/2018: # 1 Supplement) (lcw). (Entered: 12/20/2017) |
| 12/20/2017 | 193 | RESPONSE to Motion by Reality Leigh Winner re 175 First MOTION for Reciprocal Discovery (Whitley, Joe) (Entered: 12/20/2017) |
| 01/03/2018 | 196 | COURT REPORTER ACKNOWLEDGMENT and Notification that Transcript has been filed in District Court for proceedings held on 06/08/2017; 09/29/2017 before Magistrate Judge Brian K. Epps. (maa) (Entered: 01/03/2018) |
| 01/03/2018 | 197 | TRANSCRIPT REQUEST by Reality Leigh Winner for proceedings held on 06/08/2017 and 09/29/2017 before Judge Brian Epps. (Whitley, Joe) (Entered: 01/03/2018) |
| 01/03/2018 | 206 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Classified Discovery Hearing as to Reality Leigh Winner held on 11/30/2017 and 12/1/2017 before Magistrate Judge Brian K. Epps. Court Reporter/Transcriber Lisa Davenport, Telephone number 706-823-6468. (Transcript Redaction Policy Issued or Click here to view Transcript Redaction Policy) Redaction Request due 1/24/2018. Redacted Transcript Deadline set for 2/5/2018. (lcw) (Entered: 01/19/2018) |
| 01/04/2018 | 198 | COURT REPORTER ACKNOWLEDGMENT and Notification that Transcript has been filed in District Court for proceedings held on 06/08/2017 and 09/29/2017 before Magistrate Judge Brian K. Epps. (lcw) (Entered: 01/05/2018) |
| 01/08/2018 | 199 | STATUS REPORT *(Joint)* by USA as to Reality Leigh Winner (Edelstein, Julie) (Entered: 01/08/2018) |

| 01/16/2018 | 200 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Status Conference Proceedings as to Reality Leigh Winner held on 12/19/17, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number (706)823-6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view Transcript Redaction Policy) Redaction Request due 2/6/2018. Redacted Transcript Deadline set for 2/16/2018. Release of Transcript Restriction set for 4/16/2018. (Davenport, Lisa) Modified on 4/9/2018 (lcw). (Entered: 01/16/2018) |
| 01/16/2018 | 201 | NOTICE OF HEARING ON MOTION in case as to Reality Leigh Winner 63 MOTION to Suppress *Defendant's Statements* : Motion Hearing set for 2/27/2018 10:00 AM in Augusta - before Magistrate Judge Brian K. Epps. (lcw) (Entered: 01/16/2018) |
| 01/17/2018 | 202 | MOTION for Leave to File Excess Pages *regarding Defendant's Appeal on Motion to Compel* by Joe D. Whitley as to Reality Leigh Winner. Responses due by 1/31/2018. (Whitley, Joe) (Entered: 01/17/2018) |
| 01/17/2018 | 203 | MOTION to Amend/Correct 202 MOTION for Leave to File Excess Pages *regarding Defendant's Appeal on Motion to Compel* filed by Reality Leigh Winner by Joe D. Whitley as to Reality Leigh Winner. Responses due by 1/31/2018. (Attachments: # 1 Text of Proposed Order)(Whitley, Joe) (Entered: 01/17/2018) |
| 01/18/2018 | 204 | ORDER granting in part 202 Motion for Leave to File Excess Pages as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 01/18/2018. (lcw) (Entered: 01/18/2018) |
| 01/19/2018 | 205 | TEXT ORDER as to Reality Leigh Winner. At the request of defense counsel, the status conference scheduled for January 23, 2018 is cancelled. If there are any remaining issues concerning defense Internet searches, defense counsel shall promptly notify the Court of the need for a hearing. Signed by Magistrate Judge Brian K. Epps on 01/19/2018. (lcw) (Entered: 01/19/2018) |
| 01/19/2018 | 207 | MOTION to Withdraw as Attorney by Jill E. McCook. by Joe D. Whitley as to Reality Leigh Winner. Responses due by 2/2/2018. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Whitley, Joe) (Entered: 01/19/2018) |
| 01/19/2018 | 208 | MOTION for Conference with Expert by Joe D. Whitley as to Reality Leigh Winner. Responses due by 2/2/2018. (Attachments: # 1 Text of Proposed Order)(Whitley, Joe) (Entered: 01/19/2018) |
| 01/22/2018 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 208 MOTION for Conference with Expert (lcw) (Entered: 01/22/2018) |
| 01/22/2018 | 209 | ORDER granting 208 Motion for Conference as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 01/22/2018. (lcw) (Entered: 01/22/2018) |
| 01/22/2018 | 210 | |

| | | ORDER granting 207 Motion to Withdraw as Attorney. Jill E McCook withdrawn from case as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 01/22/2018. (lcw) (Entered: 01/22/2018) |
|---|---|---|
| 01/23/2018 | 211 | MOTION for Extension of Time to File Response/Reply as to 166 Notice (Other), 188 Notice (Other) by Joe D. Whitley as to Reality Leigh Winner. Responses due by 2/6/2018. (Attachments: # 1 Text of Proposed Order) (Whitley, Joe) (Entered: 01/23/2018) |
| 01/23/2018 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 211 MOTION for Extension of Time to File Response/Reply as to 166 Notice (Other), 188 Notice (Other) (lcw) (Entered: 01/23/2018) |
| 01/23/2018 | 212 | ORDER granting 211 Motion for Extension of Time to File Response/Reply as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian L. Epps on 01/23/2018. (lcw) Modified on 1/23/2018 (lcw). (Entered: 01/23/2018) |
| 01/23/2018 | 213 | NOTICE *OF FILING OF DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR BILL OF PARTICULARS* by Reality Leigh Winner re 187 Response in Opposition, 165 MOTION for Leave to File *MOTION FOR BILL OF PARTICULARS* (Switzer, Brett) (Redacted Document added on 2/13/2018 pursuant to 58 and 172 ) (lcw). Modified on 2/13/2018 (lcw). (Entered: 01/23/2018) |
| 01/23/2018 | 214 | NOTICE *OF FILING OF DEFENDANT'S OBJECTIONS AND APPEAL OF MAGISTRATE'S DECISION GRANTING IN PART AND DENYING IN PART DFENDANT'S MOTION TO COMPEL DISCOVERY REQUESTS (AND ATTACHED EXHIBITS)* by Reality Leigh Winner re 129 Notice (Other), 162 Notice (Other) (Whitley, Joe) (Redacted Document added on 2/13/2018 pursuant to 58 and 172 )(lcw). Modified on 2/13/2018 (lcw). (Entered: 01/23/2018) |
| 01/24/2018 | 215 | REPLY TO RESPONSE to Motion by Reality Leigh Winner re 63 MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing -- Reply Brief in Further Support of Motion to Suppress Defendant's Statements and Request for Evidentiary Hearing* (Whitley, Joe) (Entered: 01/24/2018) |
| 01/25/2018 | 216 | MOTION for Leave to File Excess Pages by Julie Ann Edelstein as to Reality Leigh Winner. Responses due by 2/8/2018. (Attachments: # 1 Text of Proposed Order)(Edelstein, Julie) (Entered: 01/25/2018) |
| 01/25/2018 | 217 | ORDER granting 216 Motion for Leave to File Excess Pages as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 01/25/2018. (lcw) (Entered: 01/25/2018) |
| 01/31/2018 | 218 | MOTION Unopposed Motion to Stay Adjudication of Defendant's Motion in Limine Regarding Government's Notice of Evidence Under Rule 404(b) and Related Deadlines by Joe D. Whitley as to Reality Leigh Winner. Responses due by 2/14/2018. (Attachments: # 1 Text of Proposed Order)(Whitley, Joe) (Entered: 01/31/2018) |
| 01/31/2018 | 219 | ******* MOTION Motion to Adopt Redaction Procedures for Transcripts and Motion to Enforce Redaction Procedures for Other Filings and Incorporated |

| | | |
|---|---|---|
| | | Memorandum of Law in Support by Joe D. Whitley as to Reality Leigh Winner. Responses due by 2/14/2018. (Attachments: # 1 Text of Proposed Order)(Whitley, Joe) (Entered: 01/31/2018) |
| 01/31/2018 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 219 MOTION Motion to Adopt Redaction Procedures for Transcripts and Motion to Enforce Redaction Procedures for Other Filings and Incorporated Memorandum of Law in Support (lcw) (Entered: 01/31/2018) |
| 01/31/2018 | 220 | MANDATE of USCA (certified copy) as to Reality Leigh Winner re 179 Notice of Appeal - Interlocutory. (Attachments: # 1 USCA Notice)(lcw) (Entered: 01/31/2018) |
| 02/01/2018 | 221 | ORDER ADOPTING 220 USCA MANDATE as to Reality Leigh Winner. Signed by Chief Judge J. Randal Hall on 02/01/2018. (lcw) (Entered: 02/01/2018) |
| 02/02/2018 | 222 | MOTION for Leave of Absence as to USA for dates of : March 21-23 and March 26, 2018. Responses due by 2/16/2018. (Attachments: # 1 Text of Proposed Order Proposed Order)(Aaron, David) (Entered: 02/02/2018) |
| 02/02/2018 | 223 | MOTION for Leave of Absence as to USA for dates of : March 13-16, 2018. Responses due by 2/16/2018. (Solari, Jennifer) (Entered: 02/02/2018) |
| 02/05/2018 | 224 | ORDER granting 223 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 02/05/2018. (lcw) (Entered: 02/05/2018) |
| 02/05/2018 | 225 | ORDER granting 222 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 02/05/2018. (lcw) (Entered: 02/05/2018) |
| 02/06/2018 | 226 | NOTICE of Filing by USA (Edelstein, Julie))(Redacted document added on 2/22/2018 pursuant to 58 and 172 )(lcw). Modified on 2/22/2018 (lcw). (Entered: 02/06/2018) |
| 02/08/2018 | 227 | NOTICE OF INTENT TO FILE REPLY by Reality Leigh Winner re 214 Notice (Other), 226 Notice (Other) (Barnard, Thomas) (Entered: 02/08/2018) |
| 02/20/2018 | 228 | NOTICE of Filing by Reality Leigh Winner re 214 Notice (Other), 226 Notice (Other) (Barnard, Thomas) (Redacted Document added on 03/26/2018 pursuant to 58 and 172 )(lcw). Modified on 3/26/2018 (lcw). (Entered: 02/20/2018) |
| 02/27/2018 | 230 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Motion Hearing as to Reality Leigh Winner held on 2/27/2018 re 63 MOTION to Suppress *Defendant's Statements by Reality Leigh Winner (Court Reporter Lisa Davenport.) (lcw) (Entered: 02/28/2018)* |
| 02/27/2018 | 231 | WITNESS LIST by USA as to Reality Leigh Winner (lcw) (Entered: 02/28/2018) |
| 02/27/2018 | 232 | EXHIBIT LIST by USA as to Reality Leigh Winner (lcw) (Entered: 02/28/2018) |
| | | |

| 02/27/2018 | 233 | EXHIBIT LIST by Reality Leigh Winner (lcw) (Entered: 02/28/2018) |
| 02/27/2018 | 234 | GOVT EXHIBITS 2-4, and 6 (Suppression hearing) by USA. (lcw) (Entered: 03/02/2018) |
| 02/27/2018 | 235 | DEFENDANT'S EXHIBITS 1-11 (Suppression Hearing) (lcw) (Entered: 03/02/2018) |
| 02/28/2018 | 229 | JUDGMENT ON APPEAL OF MAGISTRATE JUDGE DECISION TO DISTRICT JUDGE as to Reality Leigh Winner re 214 Appeal of Magistrate Judge Decision to District Court. The Court GRANTS IN PART AND DENIES IN PART Defendant's Appeal 214 . (lcw) (lcw). (Entered: 02/28/2018) |
| 03/07/2018 | 236 | *Proposed Joint Scheduling Order* by USA as to Reality Leigh Winner (Edelstein, Julie) Modified on 3/7/2018 (lcw). (Entered: 03/07/2018) |
| 03/07/2018 | 237 | NOTICE OF HEARING as to Reality Leigh Winner. Telephone Conference re: Joint Proposed Scheduled Order set for 3/12/2018 at 03:00 PM before Magistrate Judge Brian K. Epps. The parties will be notified via of the dial-in instructions.(lcw) (Entered: 03/07/2018) |
| 03/12/2018 | 238 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps: Telephone Conference as to Reality Leigh Winner held on 3/12/2018 (Court Reporter Lisa Davenport.) (lcw) Modified on 3/13/2018 (lcw). (Entered: 03/13/2018) |
| 03/15/2018 | 239 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Telephone Conference as to Reality Leigh Winner held on 3/15/2018 (Court Reporter Lisa Davenport.) (lcw) (Entered: 03/15/2018) |
| 03/15/2018 | 240 | FIFTH AMENDED SCHEDULING ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 03/15/2018. (lcw) (Entered: 03/15/2018) |
| 03/19/2018 | 241 | NOTICE OF HEARING as to Reality Leigh Winner. Telephonic Status Conference set for 3/29/2018 03:30 PM in Augusta - 1st Floor before Magistrate Judge Brian K. Epps. (lcw) (Entered: 03/19/2018) |
| 03/21/2018 | 242 | MOTION asking Court to require leave of court for all Rule 17(c) early-production subpoenas, and for the Court to conduct a Nixon inquiry prior to approving issuance of any such subpoena by Jennifer Gayle Solari as to Reality Leigh Winner. Responses due by 4/4/2018. (Solari, Jennifer) (Entered: 03/21/2018) |
| 03/27/2018 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 242 MOTION asking Court to require leave of court for all Rule 17(c) early-production subpoenas, and for the Court to conduct a Nixon inquiry prior to approving issuance of any such subpoena (lcw) (Entered: 03/27/2018) |
| 03/27/2018 | 243 | NOTICE OF ATTORNEY APPEARANCE Amy E. Larson appearing for USA. (Larson, Amy) (Entered: 03/27/2018) |
| 03/29/2018 | 246 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps: Telephonic Status Conference as to Reality Leigh Winner held on 3/29/2018 |

| | | |
|---|---|---|
| | | (Court Reporter Lisa Davenport.) (lcw) Modified on 3/30/2018 (lcw). (Entered: 03/30/2018) |
| 03/30/2018 | 244 | NOTICE OF FILING OF ISSUANCE OF SUBPOENAS by Reality Leigh Winner (Barnard, Thomas) (Entered: 03/30/2018) |
| 03/30/2018 | 245 | NOTICE OF PROFFER REGARDING RULE 17 SUBPOENAS by Reality Leigh Winner (Barnard, Thomas) (Entered: 03/30/2018) |
| 04/04/2018 | 247 | RESPONSE to Motion by Reality Leigh Winner re 242 MOTION asking Court to require leave of court for all Rule 17(c) early-production subpoenas, and for the Court to conduct a Nixon inquiry prior to approving issuance of any such subpoena (Attachments: # 1 Exhibit A)(Whitley, Joe) (Entered: 04/04/2018) |
| 04/06/2018 | 248 | NOTICE of Intent to File Reply re 247 Response by USA. (Edelstein, Julie) (Entered: 04/06/2018) |
| 04/08/2018 | 249 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Suppression Motion Proceedings as to Reality Leigh Winner held on 2/27/2018, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706-823-6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view <a href=redact.pl>Transcript Redaction Policy</a>) Redaction Request due 4/30/2018. Redacted Transcript Deadline set for 5/9/2018. Release of Transcript Restriction set for 7/9/2018. (Davenport, Lisa) (Entered: 04/08/2018) |
| 04/10/2018 | 250 | NOTICE OF HEARING as to Reality Leigh Winner. Classified Hearing for Oral Argument on the Rule 17 Subpoenas set for 4/23/2018 09:00 AM in Augusta - before Magistrate Judge Brian K. Epps. (lcw) (Entered: 04/10/2018) |
| 04/11/2018 | 251 | Consent MOTION to Continue *April 23, 2018 Hearing* by Joe D. Whitley as to Reality Leigh Winner. Responses due by 4/25/2018. (Attachments: # 1 Text of Proposed Order)(Whitley, Joe) (Entered: 04/11/2018) |
| 04/12/2018 | 252 | MOTION for Leave of Absence as to USA for dates of : June 18-21, 2018. Responses due by 4/26/2018. (Solari, Jennifer) (Entered: 04/12/2018) |
| 04/13/2018 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 251 Consent MOTION to Continue *April 23, 2018 Hearing* (lcw) (Entered: 04/13/2018) |
| 04/13/2018 | 253 | ORDER denying 251 Motion to Continue as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 04/13/2018. (lcw) (Entered: 04/13/2018) |
| 04/13/2018 | 254 | ORDER granting 252 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 04/13/2018. (lcw) (Entered: 04/13/2018) |
| 04/13/2018 | 255 | BRIEF *Post-Hearing Brief in Support of Defendant's Motion to Suppress* by Reality Leigh Winner 63 MOTION to Suppress *Defendant's Statements and* |

| | | |
|---|---|---|
| | | *Request for Evidentiary Hearing* filed by Reality Leigh Winner (Whitley, Joe) (Entered: 04/13/2018) |
| 04/13/2018 | 256 | NOTICE *OF FILING* by Reality Leigh Winner. (Whitley, Joe) (Entered: 04/13/2018) |
| 04/16/2018 | 257 | NOTICE OF HEARING as to Reality Leigh Winner. Telephone Conference set for 4/16/2018 01:30 PM in Augusta - 1st Floor before Magistrate Judge Brian K. Epps. (lcw) (Entered: 04/16/2018) |
| 04/16/2018 | 258 | MOTION for Leave to Appear Pro Hac Vice *of Katherine Cicardo Mannino* Receipt Number 113J-2357522, Fee Amount $200,. Responses due by 4/30/2018. (Attachments: # 1 Text of Proposed Order)(Bell, John) (Entered: 04/16/2018) |
| 04/16/2018 | | MOTIONS as to Reality Leigh Winner REFERRED to Magistrate Judge: 258 MOTION for Leave to Appear Pro Hac Vice *of Katherine Cicardo Mannino* Receipt Number 113J-2357522, Fee Amount $200, (lcw) (Entered: 04/16/2018) |
| 04/16/2018 | 259 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Telephone Conference as to Reality Leigh Winner held on 4/16/2018 (Court Reporter FTR.) (lcw) (Entered: 04/17/2018) |
| 04/17/2018 | | TEXT ORDER granting 258 Motion to Appear Pro Hac Vice as to Reality Leigh Winner (1) and finding the requirements in Local Rule 83.4 have been satisfied. Signed by Magistrate Judge Brian K. Epps on 04/17/2018. (lcw) (Entered: 04/17/2018) |
| 04/17/2018 | 260 | ORDER finding as moot [164-1] Motion to Lift Unconstitutional Limitations as to Reality Leigh Winner (1); 175 Motion for Reciprocal Discovery as to Reality Leigh Winner (1); 20 Motion for Disclosure as to Reality Leigh Winner (1); 21 Motion for Disclosure as to Reality Leigh Winner (1); 22 Motion for Jencks Material as to Reality Leigh Winner (1); and 23 Motion for Release of Brady Materials as to Reality Leigh Winner (1). Signed by Magistrate Judge Brian K. Epps on 04/17/2018. (lcw) (Entered: 04/17/2018) |
| 04/17/2018 | 261 | MEMORANDUM OR RESPONSE in Support by Reality Leigh Winner re 42 MOTION for Protective Order (Whitley, Joe) (Entered: 04/17/2018) |
| 04/18/2018 | 262 | NOTICE TO RETAINED COUNSEL as to Reality Leigh Winner; Katherine Cicardo Mannino (lcw) (Entered: 04/18/2018) |
| 04/18/2018 | 263 | NOTICE *Of Filing* by Reality Leigh Winner (Barnard, Thomas) (Additional attachment(s) added on 5/11/2018 pursuant to 58 and 172 (lcw). Modified on 5/11/2018 (lcw). (Entered: 04/18/2018) |
| 04/20/2018 | 264 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Telephonic Status Conference Proceedings as to Reality Leigh Winner held on 3/12/2018, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706-823-6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to |

| | | view Transcript Redaction Policy) Redaction Request due 5/11/2018. Redacted Transcript Deadline set for 5/21/2018. Release of Transcript Restriction set for 7/19/2018. (Davenport, Lisa) (Entered: 04/20/2018) |
|---|---|---|
| 04/20/2018 | 265 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Telephonic Status Conference Proceedings as to Reality Leigh Winner held on 3/15/2018, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706-823-6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view Transcript Redaction Policy) Redaction Request due 5/11/2018. Redacted Transcript Deadline set for 5/21/2018. Release of Transcript Restriction set for 7/19/2018. (Davenport, Lisa) (Entered: 04/20/2018) |
| 04/20/2018 | 266 | RESPONSE in Opposition by USA as to Reality Leigh Winner re 63 MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing* (Edelstein, Julie) (Entered: 04/20/2018) |
| 04/20/2018 | 267 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Telephonic Status Conference Proceedings as to Reality Leigh Winner held on 4/16/2018, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706-823-6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view <a href=redact.pl>Transcript Redaction Policy</a>) Redaction Request due 5/11/2018. Redacted Transcript Deadline set for 5/21/2018. Release of Transcript Restriction set for 7/19/2018. (Davenport, Lisa) (Entered: 04/20/2018) |
| 04/22/2018 | 268 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Telephonic Status Conference Proceedings as to Reality Leigh Winner held on 3/29/2018, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706-823-6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view <a href=redact.pl>Transcript Redaction Policy</a>) Redaction Request due 5/14/2018. Redacted Transcript Deadline set for 5/23/2018. Release of Transcript Restriction set for 7/23/2018. (Davenport, Lisa) (Entered: 04/22/2018) |
| 04/23/2018 | 269 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:CLASSIFIED HEARING RE: RULE 17 SUBPOENAS as to Reality Leigh Winner held on 4/23/2018 (Court Reporter Lisa Davenport.) (lcw) (Entered: 04/24/2018) |
| 04/23/2018 | | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:EX PARTE CLASSIFIED HEARING RE: RULE 17 SUBPOENAS as to Reality Leigh Winner held on 4/23/2018 (Court Reporter Lisa Davenport.) (lcw) (Entered: 04/24/2018) |

| 04/23/2018 | 270 | CLASSIFIED EXHIBIT LIST by Reality Leigh Winner (lcw) (Entered: 04/24/2018) |
| 04/23/2018 | 271 | CLASSIFIED EXPARTE EXHIBIT LIST by Reality Leigh Winner (lcw) (Entered: 04/24/2018) |
| 04/25/2018 | 272 | MOTION for Leave of Absence as to USA for dates of : May 16-21, 2018 and May 24-28, 2018. Responses due by 5/9/2018. (Attachments: # 1 Text of Proposed Order)(Aaron, David) (Entered: 04/25/2018) |
| 04/27/2018 | 273 | ORDER granting 272 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 04/27/2018. (lcw) (Entered: 04/27/2018) |
| 04/27/2018 | 274 | ORDER as to Reality Leigh Winner. The Court REJECTS forty subpoenas in their entirety as overly broad and APPROVES AS MODIFIED the subpoena at docket entry 256 . Signed by Magistrate Judge Brian K. Epps on 04/27/2018. (lcw) (Entered: 04/27/2018) |
| 04/27/2018 | 275 | BRIEF *SUPPLEMENTAL POST-HEARING BRIEF IN SUPPORT OF DEFENDANTS MOTION TO SUPPRESS* by Reality Leigh Winner 266 Response in Opposition filed by USA, 63 MOTION to Suppress *Defendant's Statements and Request for Evidentiary Hearing* filed by Reality Leigh Winner (Attachments: # 1 Exhibit A)(Whitley, Joe) (Entered: 04/27/2018) |
| 04/30/2018 | 276 | NOTICE *of Expert Testimony: SA David Freyman, FBI* by USA (Solari, Jennifer) (Entered: 04/30/2018) |
| 04/30/2018 | 277 | NOTICE *of Filing with the Classified Information Security Officer* by USA (Solari, Jennifer) (Entered: 04/30/2018) |
| 04/30/2018 | 278 | NOTICE *OF INTENT TO FILE APPEAL/OBJECTIONS TO MAGISTRATE JUDGES RULINGS ON DEFENDANTS RULE 17 SUBPOENAS AND UNOPPOSED MOTION TO SET DEADLINE REGARDING SAME* by Reality Leigh Winner re 274 Order (Attachments: # 1 Text of Proposed Order Proposed Order)(Whitley, Joe) Modified on 5/2/2018 (lcw). (Entered: 04/30/2018) |
| 05/02/2018 | 279 | ORDER denying 278 Motion to Set Deadline as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 05/02/2018. The Defendant shall have up to and including 05/11/2018 to file her objections. (lcw) (Entered: 05/02/2018) |
| 05/03/2018 | 280 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps:Telephone Conference as to Reality Leigh Winner held on 5/3/2018 (Court Reporter Lisa Davenport.) (lcw) (Entered: 05/04/2018) |
| 05/04/2018 | 281 | ORDER regarding Defendant's deadline for Rule 16 Expert Disclosures as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 05/04/2018. (lcw) (Entered: 05/04/2018) |
| 05/07/2018 | 282 | NOTICE *of Filing with CISO of Government's Second Notice of Intent to Rely Upon Other Crimes, Wrongs or Acts of Defendant Pursuant to Fed.R.Evid. 404 (b)* by USA (Solari, Jennifer) (Entered: 05/07/2018) |

| 05/07/2018 | 283 | MOTION for Reconsideration re 279 Order on Motion for Extension of Time to File *Objections/Appeal to Magistrate's Ruling Regarding Defendant's Rule 17 Subpoenas* by Joe D. Whitley as to Reality Leigh Winner. Responses due by 5/21/2018. (Whitley, Joe) (Entered: 05/07/2018) |
| --- | --- | --- |
| 05/09/2018 | 284 | ORDER denying 283 Motion for Reconsideration as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 05/09/2018. (lcw) (Entered: 05/09/2018) |
| 05/11/2018 | 285 | NOTICE *OF FILING* by Reality Leigh Winner (Whitley, Joe) (Entered: 05/11/2018) |
| 05/11/2018 | 286 | NOTICE *OF FILING* by Reality Leigh Winner (Whitley, Joe) (Entered: 05/11/2018) |
| 05/11/2018 | 287 | MOTION for Leave to File *EX PARTE SUPPLEMENT TO OBJECTIONS/APPEAL TO MAGISTRATE JUDGE'S RULINGS ON DEFENDANT'S RULE 17 SUBPOENAS* by Joe D. Whitley as to Reality Leigh Winner. Responses due by 5/25/2018. (Whitley, Joe) (Entered: 05/11/2018) |
| 05/11/2018 | 288 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Reality Leigh Winner ( Filing fee $ 37 receipt number 113J-2373952.) (Whitley, Joe) (Entered: 05/11/2018) |
| 05/14/2018 | 289 | ORDER granting 287 Motion for Leave to File Ex Parte Supplement to Objections/Appeal to Magistrate Judge's Rulings on Defendants Rule 17 Subpoenas as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 05/14/2018. (lcw) (Entered: 05/14/2018) |
| 05/14/2018 | 291 | CLASSIFIED EXPARTE ORDER as to Reality Leigh Winner. Signed by Magistrate Judge Brian K. Epps on 05/14/2018. (lcw) (Entered: 05/16/2018) |
| 05/24/2018 | 292 | RESPONSE by USA as to Reality Leigh Winner re 288 Appeal of Magistrate Judge Decision to District Court (Solari, Jennifer) (Entered: 05/24/2018) |
| 05/24/2018 | 293 | NOTICE *OF INTENT TO FILE A REPLY IN RESPONSE TO THE GOVERNMENT'S RESPOSNE TO DEFENDANT'S OBJECTIONS TO RULING ON RULE 17(c) REQUESTS (DOC. 288) [DOC. 292]* by Reality Leigh Winner re 292 Response (Whitley, Joe) (Entered: 05/24/2018) |
| 05/24/2018 | 294 | NOTICE *OF FILING OF DEFENDANT'S FIRST REVISED CIPA § 5 Notice* by Reality Leigh Winner re 168 Notice (Other) (Whitley, Joe) (Redacted document added on 6/18/2018 pursuant to 58 and 172 (lcw). (Entered: 05/24/2018) |
| 05/25/2018 | 295 | NOTICE *DEFENDANTS NOTICE OF EXPERT TESTIMONY J WILLIAM LEONARD* by Reality Leigh Winner (Whitley, Joe) (Entered: 05/25/2018) |
| 05/31/2018 | 296 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Classified Hearing on Rule 17 Subpoenas Proceeding as to Reality Leigh Winner held on 4/23/2018, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706-823-6468. Tape Number: None. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may |

| | | be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view Transcript Redaction Policy) Redaction Request due 6/21/2018. Redacted Transcript Deadline set for 7/2/2018. Release of Transcript Restriction set for 8/29/2018. (Davenport, Lisa) (Entered: 05/31/2018) |
|---|---|---|
| 05/31/2018 | 297 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Classified Ex Parte Proceedings as to Reality Leigh Winner held on 4/23/2018, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706-823-6468. Tape Number: None. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view Transcript Redaction Policy) Redaction Request due 6/21/2018. Redacted Transcript Deadline set for 7/2/2018. Release of Transcript Restriction set for 8/29/2018. (Davenport, Lisa) (Entered: 05/31/2018) |
| 06/06/2018 | 301 | NOTICE OF HEARING as to Reality Leigh Winner. CIPA §6 Hearing set for 8/6/2018 10:00 AM in Augusta - 2nd Floor before Chief Judge J. Randal Hall. (lcw) (Entered: 06/06/2018) |
| 06/06/2018 | 302 | NOTICE OF HEARING as to Reality Leigh Winner. Pretrial Conference set for 10/10/2018 10:00 AM in Augusta - 2nd Floor before Chief Judge J. Randal Hall. (lcw) (Additional attachment(s) added on 6/7/2018: # 1 Supplement) (lcw) (Entered: 06/06/2018) |
| 06/06/2018 | 303 | NOTICE OF HEARING as to Reality Leigh Winner. Jury Selection and Trial set for 10/15/2018 09:00 AM in Augusta - 2nd Floor before Chief Judge J. Randal Hall. (lcw) (Additional attachment(s) added on 6/7/2018: # 1 Supplement) (lcw). (Entered: 06/06/2018) |
| 06/07/2018 | 304 | NOTICE *NOTICE OF FILING: CLASSIFIED EX PARTE SUPPLEMENT TO DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE EPPS' RULING ON RULE 17(C) REQUESTS AND SUBMISSION OF REVISED SUBPOENAS* by Reality Leigh Winner re 288 Appeal of Magistrate Judge Decision to District Court, 292 Response, 286 Notice (Other), 274 Order (Barnard, Thomas) (Entered: 06/07/2018) |
| 06/07/2018 | 305 | ORDER as to Reality Leigh Winner. The Court admonishes all present and prospective attorneys who may be associated with this case that no violations of LR 53.1 will be tolerated. Violation of LR 53.1 may result in contempt proceedings or other measures. Signed by Chief Judge J. Randal Hall on 06/07/2018. (lcw) (Entered: 06/07/2018) |
| 06/07/2018 | 306 | RESPONSE by Reality Leigh Winner re 288 Appeal of Magistrate Judge Decision to District Court, 286 Notice (Other), 274 Order *DEFENDANT'S REPLY BRIEF IN SUPPORT OF DEFENDANT'S OBJECTIONS TO RULING ON RULE 17(C) REQUESTS* (Whitley, Joe) (Entered: 06/07/2018) |
| 06/13/2018 | 307 | NOTICE OF HEARING as to Reality Leigh Winner. Telephonic Status Conference set for 6/13/2018 11:00 AM in Augusta - 1st Floor before Magistrate Judge Brian K. Epps. (lcw) (Entered: 06/13/2018) |

| 06/13/2018 | 308 | Minute Entry for proceedings held before Magistrate Judge Brian K. Epps: Telephonic Status Conference as to Reality Leigh Winner held on 6/13/2018 (Court Reporter FTR.) (lcw) (Entered: 06/15/2018) |
|---|---|---|
| 06/20/2018 | 309 | NOTICE OF HEARING as to Reality Leigh Winner. Telephone Conference set for 6/20/2018 11:30 AM in Augusta - 1st Floor before Magistrate Judge Brian K. Epps. (lcw) (Entered: 06/20/2018) |
| 06/20/2018 | 310 | Minute Entry for proceedings held before Magistrate Judge Brian K.Epps: Telephone Conference as to Reality Leigh Winner held on 6/20/2018 (Court Reporter Lisa Davenport.) (lcw) Modified on 6/20/2018 (lcw). (Entered: 06/20/2018) |
| 06/21/2018 | | PLEA AGREEMENT RECEIVED as to Reality Leigh Winner (lcw) (Entered: 06/21/2018) |
| 06/21/2018 | 311 | NOTICE OF HEARING as to Reality Leigh Winner. Change of Plea Hearing set for 6/26/2018 10:00 AM in Augusta - 2nd Floor before Chief Judge J. Randal Hall. (lcw) (Entered: 06/21/2018) |
| 06/22/2018 | 312 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Telephone Conference as to Reality Leigh Winner held on 5/3/2018, before Judge BKE. Court Reporter/Transcriber Lisa Davenport, Telephone number 706-823-6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view Transcript Redaction Policy) Redaction Request due 7/13/2018. Redacted Transcript Deadline set for 7/23/2018. Release of Transcript Restriction set for 9/20/2018. (Davenport, Lisa) (Entered: 06/22/2018) |
| 06/25/2018 | 313 | RESPONSE by Reality Leigh Winner re 58 Order - *Memorandum of Understanding Regarding Receipt of Classified Information* (Whitley, Joe) (Entered: 06/26/2018) |
| 06/26/2018 | 314 | NOTICE OF ATTORNEY APPEARANCE Bobby L. Christine appearing for USA. (maa) (Entered: 06/26/2018) |
| 06/26/2018 | 315 | Minute Entry for proceedings held before Chief Judge J. Randal Hall: Change of Plea Hearing as to Reality Leigh Winner held on 6/26/2018 (Court Reporter Lisa Davenport.) (lcw) (Entered: 06/26/2018) |
| 06/26/2018 | 316 | CHANGE OF PLEA entered by Reality Leigh Winner (1) Guilty Count 1s. (lcw) (Entered: 06/26/2018) |
| 07/03/2018 | 317 | MOTION for Leave of Absence as to USA for dates of : 7/20-23, 7/26-30, and 8/3-10, 2018. Responses due by 7/17/2018. (Attachments: # 1 Text of Proposed Order)(Aaron, David) (Entered: 07/03/2018) |
| 07/09/2018 | 318 | ORDER granting 317 Motion for Leave of Absence as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 07/09/2018. (lcw) (Entered: 07/09/2018) |
| 08/07/2018 | 319 | |

| | | |
|---|---|---|
| | | NOTICE OF HEARING as to Reality Leigh Winner. Sentencing set for 8/23/2018 10:00 AM in Augusta - 2nd Floor before Chief Judge J. Randal Hall. (lcw) (Entered: 08/07/2018) |
| 08/14/2018 | 320 | SENTENCING MEMORANDUM by USA as to Reality Leigh Winner (Edelstein, Julie) (Entered: 08/14/2018) |
| 08/15/2018 | 321 | SENTENCING MEMORANDUM by Reality Leigh Winner (Attachments: # 1 Exhibit A- Joel Sickler Declaration)(Whitley, Joe) (Entered: 08/15/2018) |
| 08/15/2018 | 322 | AMENDED SENTENCING MEMORANDUM by Reality Leigh Winner (Attachments: # 1 Exhibit A - Joel Sickler Declaration)(Whitley, Joe) (Entered: 08/15/2018) |
| 08/23/2018 | 323 | Minute Entry for proceedings held before Chief Judge J. Randal Hall: Sentencing held on 8/23/2018 for Reality Leigh Winner (1). As to Count 1, Def sentenced to 63 months custody BOP; 3 years supervised release; $100 special assessment; 100 hours community service. Def is remanded to custody of USMS. (Court Reporter Lisa Davenport.) (lcw) (Entered: 08/23/2018) |
| 08/23/2018 | 324 | PLEA AGREEMENT as to Reality Leigh Winner (lcw) (Entered: 08/23/2018) |
| 08/23/2018 | | Plea Agreement Accepted as to Reality Leigh Winner (lcw) (Entered: 08/23/2018) |
| 08/23/2018 | 325 | MOTION to Dismiss Superseding Indictment by Jennifer Gayle Solari as to Reality Leigh Winner. (lcw) (Entered: 08/23/2018) |
| 08/23/2018 | 326 | ORDER granting 325 Motion to Dismiss as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 08/23/2018. (lcw) (Entered: 08/23/2018) |
| 08/24/2018 | 327 | JUDGMENT as to Reality Leigh Winner (1). Count 1 Def sentenced to 63 months custody BOP; 3 years supervised release; $100 special assessment; 100 hours community service. Signed by Chief Judge J. Randal Hall on 08/24/2018. (lcw) (Entered: 08/24/2018) |
| 09/11/2018 | 328 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Sentencing Proceedings as to Reality Leigh Winner held on 8/23/2018, before Judge JRH. Court Reporter/Transcriber Lisa Davenport, Telephone number 706-823-6468. Tape Number: FTR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (Transcript Redaction Policy Issued or Click here to view <a href=redact.pl>Transcript Redaction Policy</a>) Redaction Request due 10/2/2018. Redacted Transcript Deadline set for 10/12/2018. Release of Transcript Restriction set for 12/10/2018. (Davenport, Lisa) (Entered: 09/11/2018) |
| 11/29/2018 | 329 | MOTION to Relinquish Funds to the Registry of the Court by Mary Susan Fitzgerald as to Reality Leigh Winner. Responses due by 12/13/2018. (Attachments: # 1 Text of Proposed Order)(Fitzgerald, Mary) (Entered: 11/29/2018) |
| | | |

| 12/19/2018 | 330 | ORDER granting 329 Motion to Relinquish Funds to the Registry of the Court as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 12/18/2018. (lcw) (Entered: 12/19/2018) |
| 12/19/2018 | 331 | CLERK'S CERTIFICATE/ORDER as to Reality Leigh Winner. Signed by Deputy Clerk on 12/19/2018. (evs) (Additional attachment(s) added on 12/19/2018: # 1 Receipt) (evs). (Entered: 12/19/2018) |
| 01/07/2019 | 332 | ORDER as to Reality Leigh Winner. The Clerk shall distribute from the Registry of the Court the sum of $2,073.60 to the Community Foundation for the CSRA for the benefit of the Friends of Augusta Animal Services and $2,073.59 to the Columbia County Animal Rescue. Signed by Chief Judge J. Randal Hall on 01/07/2019. (lcw) (Entered: 01/07/2019) |
| 03/07/2019 | 333 | MOTION to Intervene for the Limited Purpose of Seeking Access to Certain Sealed Court Records Related to this Action by David E. Hudson as to Reality Leigh Winner. Responses due by 3/21/2019. (lcw) (Entered: 03/07/2019) |
| 03/07/2019 | 334 | MEMORANDUM OF LAW in Support by Reporters Committee for Freedom of the Press as to Reality Leigh Winner re 333 MOTION to Intervene for the Limited Purpose of Seeking Access to Certain Sealed Court Records Related to this Action (lcw) (Entered: 03/07/2019) |
| 03/21/2019 | 335 | RESPONSE to Motion by USA as to Reality Leigh Winner re 333 MOTION to Intervene for the Limited Purpose of Seeking Access to Certain Sealed Court Records Related to this Action (Solari, Jennifer) (Entered: 03/21/2019) |
| 03/11/2020 | 340 | ☐RDER as to Reality Leigh Winner. This case having concluded and there being certain items entered into evidence by the Government during the course of said case, It Is Hereby Ordered that the foregoing evidence be returned to the Government. Signed by Magistrate Judge Brian K. Epps on 03/11/2020. (thb) (Entered: 03/11/2020) |
| 04/10/2020 | 341 | ******* MOTION for Release from Custody *Pursuant to 18 U.S.C. § 3582*, MOTION for Hearing by Joe D. Whitley as to Reality Leigh Winner. Responses due by 4/24/2020. (Attachments: # 1 Briefs, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10)(Whitley, Joe) (Additional attachment(s) added on 4/15/2020: # 12 Unredacted Sealed Brief in Support, # 13 Unredacted Sealed Ex 1, # 14 Unredacted Sealed Ex 7) (pts). (Entered: 04/10/2020) |
| 04/10/2020 | 342 | MOTION to Seal Document *Portions of Motion for Compassionate Release and Certain Exhibits Thereto (Dkt 341)* by Joe D. Whitley as to Reality Leigh Winner. Responses due by 4/24/2020. (Attachments: # 1 Briefs, # 2 Text of Proposed Order)(Whitley, Joe) (Entered: 04/10/2020) |
| 04/10/2020 | 343 | MOTION to Expedite *Briefing and for Immediate Hearing* by Joe D. Whitley as to Reality Leigh Winner. Responses due by 4/24/2020. (Whitley, Joe) (Entered: 04/10/2020) |
| 04/15/2020 | 344 | |

| | | ORDER granting 342 Motion to Seal Document as to Reality Leigh Winner (1); denying 343 Motion to Expedite as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 4/15/2020. (pts) (Entered: 04/15/2020) |
|---|---|---|
| 04/20/2020 | 345 | RESPONSE in Opposition by USA as to Reality Leigh Winner re 341 MOTION for Release from Custody *Pursuant to 18 U.S.C. § 3582* MOTION for Hearing (Davids, Justin) (Entered: 04/20/2020) |
| 04/20/2020 | 346 | NOTICE *of Intent to File Reply in Support of Motion for Compassionate Release* by Reality Leigh Winner re 341 MOTION for Release from Custody *Pursuant to 18 U.S.C. § 3582* MOTION for Hearing (Whitley, Joe) (Entered: 04/20/2020) |
| 04/22/2020 | 347 | REPLY TO RESPONSE to Motion by Reality Leigh Winner re 341 MOTION for Release from Custody *Pursuant to 18 U.S.C. § 3582* MOTION for Hearing (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Whitley, Joe) (Entered: 04/22/2020) |
| 04/23/2020 | 348 | NOTICE *of Intent to file Surreply* by USA re 347 Reply to Response, (Davids, Justin) (Entered: 04/23/2020) |
| 04/24/2020 | 349 | ORDER denying 341 Motion for Compassionate Release as to Reality Leigh Winner (1). Signed by Chief Judge J. Randal Hall on 04/24/2020. (thb) (Entered: 04/24/2020) |
| 05/01/2020 | 350 | NOTICE OF APPEAL-OTHER ORDER by Reality Leigh Winner re 349 Order on Motion for Release from Custody, Order on Motion for Hearing. Filing fee $ 505, receipt number AGASDC-2833971. (Whitley, Joe) (Entered: 05/01/2020) |
| 05/04/2020 | 351 | Transmission of Notice of Appeal and Docket Sheet as to Reality Leigh Winner to US Court of Appeals. Related Documents: 350 Notice of Appeal-Other Order, 349 Order. Other Appeals: Yes. Judge Appealed: Chief Judge J. Randal Hall. Court Reporter: Lisa Davenport. Fee Paid: Yes. Pending COA/IFP: No. (Attachments: # 1 Documents for Appeal)(thb) (Entered: 05/04/2020) |
| 05/04/2020 | 352 | Sentencing Document Filed and Sealed as to Reality Leigh Winner (Attachments: # 1 Supplement) (BDS) (Entered: 05/04/2020) |
| 05/05/2020 | 353 | TRANSCRIPT REQUEST by Reality Leigh Winner for proceedings held on (No Transcript Requested) (Whitley, Joe) (Entered: 05/05/2020) |
| 05/05/2020 | 354 | F.R.A.P. CERTIFICATE OF READINESS as to Reality Leigh Winner re 350 Notice of Appeal-Other Order filed by Reality Leigh Winner. **The entire record on appeal is available electronically**. (thb) (Entered: 05/05/2020) |
| 05/08/2020 | 355 | USCA Case Number as to Reality Leigh Winner 20-11692-CC for 350 Notice of Appeal-Other Order. (thb) (Entered: 05/11/2020) |

<div align="center">

**PACER Service Center**

**Transaction Receipt**

</div>

| 06/22/2020 11:31:21 | | | |
|---|---|---|---|
| **PACER Login:** | Donelson1 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:17-cr-00034-JRH-BKE |
| **Billable Pages:** | 25 | **Cost:** | 2.50 |

# Presentence Investigation Report

# (Filed Under Seal)

# Sentencing Transcript

```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF GEORGIA



UNITED STATES OF AMERICA,      )
                               )
               Plaintiff,      )
                               )
               vs.             )      1:17CR34
                               )
REALITY LEIGH WINNER,          )
                               )
               Defendant.      )
_____)



                    SENTENCING HEARING
             BEFORE THE HONORABLE J. RANDAL HALL
            THURSDAY, AUGUST 23, 2018; 10:00 A.M.
                     AUGUSTA, GEORGIA



FOR THE GOVERNMENT:

     Bobby L. Christine, Esquire
     United States Attorney
     Post Office Box 8970
     Savannah, Georgia 31412
     (912)652-4422

     Jennifer G. Solari, Esquire
     U.S. Attorney's Office
     Post Office Box 8970
     Savannah, Georgia 31412
     (912)201-2561

     Julie Ann Edelstein, Esquire
     U.S. Department of Justice
     600 E Street NW, 10th Floor
     Washington, DC 20002
     (202)233-2260

     David C. Aaron, Esquire
     U.S. Department of Justice
     950 Pennsylvania Avenue, NW
     Washington, DC 20530
     (202)307-5190
```

**FOR THE DEFENDANT:**

    John C. Bell, Jr., Esquire
    Titus T. Nichols, Esquire
    Bell & Brigham
    457 Greene Street
    Augusta, Georgia 30901
    (706)722-2014

    Joe D. Whitley, Esquire
    Brett A. Switzer, Esquire
    Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
    3414 Peachtree Road, NE, Suite 1600
    Atlanta, Georgia 30326
    (404)223-2209

    Matthew S. Chester, Esquire
    Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
    201 St. Charles Avenue, Suite 3600
    New Orleans, Louisiana 70170
    (504)566-5231

    Thomas H. Barnard, Esquire
    Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
    Legg Mason Building
    100 Light Street, 19th Floor
    Baltimore, Maryland 21202
    (410)862-1185

**OFFICIAL COURT REPORTER:**

    Lisa H. Davenport, RPR, FCRR
    Post Office Box 5485
    Aiken, South Carolina 29804
    (706)823-6468

```
 1                     (Call to Order at 10:00 a.m.)

 2              THE CLERK:  The court calls case number 1:17CR34.

 3    United States of America v Reality Leigh Winner.  Bobby

 4    Christine, Jennifer Solari, Julie Edelstein, David Aaron for

 5    the Government.  Joe Whitley, Matthew Chester, John Bell, Titus

 6    Nichols, Brett Switzer and Thomas Barnard for the Defendant.

 7    Here for sentencing.

 8              THE COURT:  Good morning.

 9         (Group responds simultaneously.)

10              THE COURT:  Is the Government ready to proceed with

11    sentencing?

12              MR. CHRISTINE:  The Government is ready, Your Honor.

13              THE COURT:  Is the Defense ready?

14              MR. WHITLEY:  Yes, sir, Your Honor.

15              THE COURT:  Realty Leigh Winner appeared before this

16    Court on June 26, 2018, accompanied by several of her attorneys

17    for a Rule 11 proceeding.  Pursuant to a Plea Agreement

18    Ms. Winner plead guilty and was adjudged guilty of count one of

19    the Indictment charging her with willful retention and

20    transmission of national defense information in violation of

21    18, United States Code, Section 793(e).  Upon completion of

22    that Rule 11 proceeding and this Court's acceptance of her

23    guilty plea, the Court then directed the probation office to

24    prepare a Presentence Report and to disclose the report to the

25    Government and to the Defendant.
```

1     Has the Government seen the report and had an opportunity

2  to read it and do you have any objections to its contents?

3          MS. EDELSTEIN:  Yes, Your Honor.  The Government has

4  no objections.

5          THE COURT:  Thank you.

6      Now the Defense -- have you gone through the report with

7  Ms. Winner?

8          MR. WHITLEY:  Yes, sir, Your Honor.  We have.

9          THE COURT:  And I note that you have a single

10  objection to paragraph 81 which is a potential ground for

11  departure under Guideline Section 5K2.14.  Reviewing your

12  Sentencing Memorandum and the addendum to the agreement it

13  appears that that is still an outstanding objection that needs

14  to be addressed; is that correct?

15          MR. WHITLEY:  Your Honor, we would like to make a

16  statement as to that objection, if I might.

17          THE COURT:  Sure.  Go right ahead.

18          MR. WHITLEY:  Your Honor, we believe that it's within

19  the Court's discretion to sentence this defendant under Rule 32

20  without addressing that issue.  We believe that we've

21  adequately addressed it, we hope, for the Court's benefit in

22  our pleadings that we filed with the court.  We read the

23  Presentencing Report and there is something -- some authority

24  in the Circuit that would support saying this would be double

25  counting in this particular situation.  However, we believe

1    we've adequately addressed it and we would defer further

2    discussion of it and we would rest with the Court's decision on

3    acceptance of the 11(c)(1)(C) plea in the situation as opposed

4    to going into an extended presentation with the Court this

5    morning.

6              THE COURT:  Any thoughts from the Government on that

7    objection?

8              MS. EDELSTEIN:  Your Honor, the Government agrees

9    with the Defense that the objection need not be resolved in

10   this case.  The Government thinks that this is a

11   potentially-applicable policy statement in the sentencing

12   guidelines.  However, the Government is not in this case

13   seeking an upward departure or a sentence above the sentencing

14   guidelines; therefore, the Government agrees with the Defense

15   that this objection need not be addressed.

16             THE COURT:  Very well.  With the parties consenting,

17   I'll move forward then.

18             MR. WHITLEY:  Yes, sir.

19             THE COURT:  All right.  The Court will adopt the

20   factual statements in the advisory guidelines that are

21   contained in the report and in doing so the Court will now

22   announce that the applicable advisory guidelines for purposes

23   of this morning's sentencing are total offense level 29,

24   criminal history category I, 87 to 108 months of imprisonment,

25   one to three years of supervised release, $30,000 to $250,000

1    fine, and a $100 special assessment.

2        All right.  With that, obviously, we all recognize we have

3    an 11(c)(1)(C) Plea Agreement here which is really our focus

4    this morning, but I'll be glad to hear from -- Mr. Whitley,

5    from you or whoever else you'd like to address any information

6    in mitigation or more likely, I guess, in support of the Plea

7    Agreement.

8        Ms. Winner, as with every defendant in a sentencing

9    hearing, the law gives you the right to make a personal

10   statement to the Court.  If that is a right that you wish to

11   exercise and make a statement, I'll be glad to hear from you,

12   but I'll leave that up to you and your counsel.

13       So, Mr. Whitley, the floor is yours, sir.

14           MR. WHITLEY:  Yes, sir, Your Honor.  Thank you for

15   that.  I would defer to my co-counsel, John Bell, to speak

16   first --

17           THE COURT:  All right.

18           MR. WHITLEY:  -- and then I'll speak second, Your

19   Honor.

20           THE COURT:  Very well.

21           MR. WHITLEY:  And then after that, Your Honor, our

22   client will make an allocution to the Court.  Is that

23   acceptable, Your Honor?

24           THE COURT:  Yes, sir.

25           MR. WHITLEY:  Thank you.

1                 THE COURT:  Mr. Bell?

2                 MR. BELL:  Yes, Your Honor, and I will try not to

3     speak at length and I am not here to reargue the underlying

4     facts.  They are set up.  I think the Court is quite familiar

5     with the legal issues and the factual basis.  What I do want to

6     state -- and I take seriously anything I say in a court and I

7     try to take seriously what I say outside of a court for I

8     believe the candor -- not just honesty, but candor of a lawyer

9     is essential to the functioning of our system of justice.

10          Over a little more than a year I spent a good bit of time

11    with this young lady.  I am the father of four very interesting

12    daughters and each very different in their own way.  I have

13    been very extremely impressed with her as a person and I'm

14    quite familiar with the imperfectibility of mankind for we have

15    all seen folks including lawyers and bank presidents and

16    politicians and even judges do things that they have to have

17    known that they should not have done, and in some cases it

18    reflects an evil and defective heart and sometimes it's just

19    the imperfectibility of mankind.

20          She's a really good person.  I never -- I have not heard

21    any expressions of meanness, anger.  I had talked with her at

22    length independently on this Plea Agreement -- I didn't want

23    anybody else around -- to make sure this is really what she

24    wants to do and fully accepts that and she does.  I believe

25    that her acceptance of responsibility, including responsibility

1   that necessarily even under the Plea Agreement involves the

2   loss of her freedom for a good portion of her life,

3   particularly in her youth years when people are getting on with

4   life, it's real, but she's never told me anything that I had

5   reason to doubt as being truthful.

6        She's never expressed anything to me that would reflect

7   disloyalty to the United States outside of how one might view

8   what she's charged with.  She is an honorably-discharged

9   veteran.  She is a person coming before this Court with no

10  criminal history.  She is a person who did amazingly well in

11  school, received honors from the Air Force, who has shown a lot

12  of humanity and interest in -- not in gaining wealth, but in

13  serving others, trying to get jobs with non-profits and such.

14       We are here asking the Court to go with the plea bargain,

15  but I say these words because the person before you is a very

16  good person who has done something that she should not have

17  done and she knew she shouldn't have done it and it is

18  something that our federal laws do not concur, but she is not

19  an evil person.  I have no doubt that she will never again see

20  the inside of a courtroom in a similar position and I give you

21  those assurances from the bottom of my heart.

22            THE COURT:  Thank you, Mr. Bell.

23            MR. WHITLEY:  Your Honor, I'll say a few words.

24  There is an expression -- maybe Benjamin Franklin said it -- "I

25  would have written you a shorter letter but I didn't have

 1   time."  You may have heard it and today what I want to do is

 2   keep brief and succinct in my remarks.

 3       We have spent a good bit of time in this case over many,

 4   many months and I really thank the Court for the opportunity

 5   this morning to say a few words.  It is part of our system and

 6   it's what makes our country exceptional and I have been working

 7   with exceptionally-great lawyers here in Augusta for many

 8   months -- John Bell and Titus Nichols -- two great lawyers here

 9   in this city.

10       I want to thank you again for the opportunity to speak on

11   behalf of Reality.  On behalf of her entire family, her defense

12   team, I want to thank the Court, the prosecutors who sit back

13   to my left here, the investigators who are back there -- there

14   are people here from the intelligence community -- for the

15   courtesy they've shown our client in this matter.  There is

16   something to be said for our adversarial system under our

17   Constitution and Bill of Rights that protects a defendant's

18   rights even if those to which she committed wrongful conduct

19   that was controversial and arguably provocative.  I believe our

20   client is deeply remorseful as John said and apologetic for her

21   actions and any harm that she may have caused the United States

22   and the intelligence community.

23       The Court has earlier indicated that it will support a

24   recommendation for a BOP facility requested by Ms. Winner which

25   is FMC Carswell facility in Fort Worth, Texas.  We thank the

1    Government also for not opposing this request.  To that end for

2    the reasons set forth in the declaration of Joel Sickler, an

3    expert in correctional facilities, Mr. Sickler believes that

4    FMC Carswell is the best facility for our client based on, Your

5    Honor, three things:  Location, safety, and available programs.

6    And I won't go into all the details.

7        Now what is this case about?  Not to minimize it, but this

8    is a case that's unique in that every case is unique, but it is

9    about one single document, Your Honor, on one single occasion

10   that was shared with one media outlet sent by what is called

11   "snail mail" today, but old fashioned mail.  There were no --

12   fortunately, there were no foreign governments involved.

13       Reality Winner in this case acted alone, Your Honor, on

14   naive political impulse.  This was a poorly-considered act of

15   political passion and protest with no financial benefit

16   received by her.  This was not a cyber crime that involved the

17   use of cyber-related resources, Your Honor, or advanced

18   technology of any kind.  As to harm, Reality has admitted that

19   she knew that the release of the information could potentially

20   harm the United States.  However, at the time I believe Reality

21   never intended, Your Honor, to harm the United States.

22       There are a few key facts about Reality, the person, and

23   John has touched on those.  Reality is just 26 years old, Your

24   Honor.  She has had no prior criminal history.  Again, as John

25   suggested, her background is, indeed, exceptional.  She was an

1   accomplished scholar in high school.  She was offered a

2   scholarship, Your Honor, to attend college at Texas A&M, but

3   she turned that down to serve her country in the United States

4   Air Force.

5      Reality excelled, Your Honor, in the Air Force.  Colonel

6   Ricky Mills, her commanding officer, said in 2016 in a

7   commendation letter that Reality was selected over 60 of her

8   peers to serve as a subject matter expert.  Colonel Mills cited

9   that she facilitated 816 intelligence missions, 3236

10   time-sensitive reports, and removed 100 enemies from the

11   battlefield as well as aided in 650 enemy captures and 600

12   enemies killed in action.

13      There are some other personal circumstances worthy of

14   consideration.  Despite her laudable military service, Reality

15   has faced personal family adversity all recounted quite well in

16   Officer Chris Ingall's PSR.  Specifically, there was a loss of

17   her father in December of 2016 just months before her arrest.

18   Dr. Adrian Davis, a clinical psychologist, has noted that

19   Reality suffers from longstanding depression and she suffers

20   and struggles with an eating disorder called bulimia. Dr. Davis

21   said in the months leading up to the offense it was a time in

22   Reality's life when she was "both depressed and suffering from

23   bulimia."  This contributed to her poor decision making in this

24   situation when the situation required really clear thinking and

25   sound judgment.

```
 1          I want to briefly touch on the letters of support because

 2     we're not calling any witnesses, Your Honor, this morning to

 3     talk about Reality Winner.  I believe the Court probably has

 4     had the opportunity to read those letters written by friends

 5     and family members.  I wanted to highlight a few points about

 6     those letters.  Really, it deals with the types of people who

 7     wrote those letters and they range from neighbors, people who

 8     served with her in the military, a friend in dog rescue, a

 9     fitness instructor, her aunt, her mother, stepfather, sister,

10     adults in the small rural Texas town she grew up in.  They're

11     all supportive of the Reality Winner -- the Reality Winner that

12     they know.  These letters suggest that Reality has a high

13     potential for rehabilitation and reentry into society.

14          Taken together with Reality's personal statement which you

15     have heard or read in the materials and her allocution in a few

16     moments, I believe it will suggest that Reality will in the

17     next few years return to her freedom as a law-abiding citizen.

18     During the last year of her confinement in Lincoln County

19     Reality has acknowledged in my conversations with her

20     repeatedly the mistakes she made and the regrets that she

21     feels.

22          In summing up, I would remind the Court of a few points.

23     The charged offense in this case is non-violent.  There was no

24     profit received and it was not cyber related.  Reality is a

25     first-time offender who has a strong potential for
```

1   rehabilitation, Your Honor.  Accordingly, we respectfully ask

2   the Court to accept the 63-month plea deal and endorse our

3   request that she be designated to FMC Carswell in Fort Worth,

4   Texas and be offered the opportunity to participate in the

5   prison's inmate helper program for other inmates.

6       This institution is also proximate to her family's home in

7   Texas.  It is a suitable location for her health to be

8   monitored, Your Honor, and, in particular, we would ask if

9   she's not designated to that facility that she be designated to

10  a low-security facility if not FMC Carswell.

11      I want to conclude by saying that this has been a real

12  long journey for all of us working on this case.  For most of

13  us the journey is ending, but for Reality Winner her journey

14  will continue and we hope that it continues on with the Court's

15  acceptance of this Plea Agreement.  We thank Your Honor for

16  your attention to our request and that's all I have this

17  morning to share with you.  Thank you very much.

18              THE COURT:  Thank you, Mr. Whitley.

19          Ms. Winner, would you like to speak?

20              THE DEFENDANT:  Yes, sir, Your Honor.

21              THE COURT:  Very well.  You may proceed.

22              THE DEFENDANT:  I would like to begin by expressing

23  my gratitude toward this Court, the Department of Justice, the

24  FBI, and our Government, and sincerely apologize and take full

25  responsibility for my action.  You have all treated me with the

1    most professionalism during my arduous time in my life which I

2    greatly appreciate.  I will spare the Court the details of my

3    childhood and youth, save a few key details that shaped me into

4    the person I am today.

5        I grew up with my mother, father, and sister in Ricardo,

6    Texas -- a small town approximately 3 miles south of

7    Kingsville, Texas.  In 1997 my father moved about 80 miles

8    south to Harlingen.  To say my father was unique would be an

9    understatement.  Bless his heart and rest his soul.  A

10   psychology and theology major, he expected us to engage in

11   intellectual discourse by the time we were out of diapers.

12       Despite his obvious intelligence, he never quite found a

13   sense of belonging anywhere much as I have experienced in my

14   own life.  While he had some trouble in his life with the law,

15   opioids, and questionable philosophies, he taught me some of

16   the most profound and influential insights into our world that

17   undeniably led me to my chosen career.

18       His chosen education had especially impacted the nature of

19   our discussions in the years following the tragedy of

20   September 11, 2001.  Like many Americans, this event greatly

21   changed us.  However, part of our change was the intellectual

22   pursuit of answers through research and discussion of the

23   event, the cultures, and the languages of the people in

24   countries involved as the global war on terror remained in the

25   headlines.  Language became a topic of sincere interest to me.

1   In school my favorite subject happened to be Latin -- in

2   essence, the very structure of language itself.

3       An additional positive influence in my life came in the

4   blessing of my stepdad.  He was everything a dad should be:

5   Discipline, structure, fun, my first soccer coach.  The rock of

6   our family, he redefined our family as normal for the first

7   time and also expanded the small immediate family of my mother,

8   sister, and me by more than double with my three additional

9   step-siblings.  A staunch conversative, I couldn't help but

10  notice his pride when my oldest stepbrother joined the U.S. Air

11  Force and it was then when I first learned about the military

12  language programs.

13      By the time I became old enough to enlist my heart was set

14  in joining the military in my stepbrother's footsteps and

15  pursue a career as a linguist eventually learning Farsi, Dari,

16  and Pashto within my six-year enlistment in the U.S. Air Force.

17  By the end of my first year at my first assignment in Fort

18  Meade I was a cryptological language analyst, the dream I had

19  -- the career I had dreamed of.  Pardon me, Your Honor.

20      By the final year of my enlistment our country was well

21  into its second decade of the war in Afghanistan.  Aside from

22  my military career I had always participated in supporting

23  various charities, most notably the Samaritan's Purse Operation

24  Christmas Child in which shoe boxes are distributed across the

25  world to refugee children or those afflicted by abject poverty

Case 1:17-cr-00034-JRH-BKE   Document 328   Filed 09/11/18   Page 16 of 30
USCA11 Case: 20-11692   Document: 23-1   Date Filed: 06/22/2020   Page: 60 of 163

16

1  and famine.  More than anything I dreamt of the day where

2  linguistic meets compassion, strategy, and peace.

3      As my time in the military came to an end I decided that I

4  intended to establish a life centered on obtaining the

5  experience and education I would need to vie for a position

6  within an organization like the UNHCR, USAID or UNICEF.  To

7  help that transition I decided to find a job where I could rely

8  on and improve the language skills I developed in the Air Force

9  and took a job as a contractor in Augusta.  Aside from the

10  potential job, I chose Augusta because I love this city.

11      It is not to be understated my understanding of the

12  gravity of my circumstance; however, I implore the chance to

13  share a few personal interests of mine that stand as the

14  justification of my request for the Southern District of

15  Georgia Augusta Division's judiciary recommendation and the

16  Bureau of Prisons' amenity to our request that I serve my

17  sentence at the Federal Medical Center, Carswell, in Fort

18  Worth, Texas.

19      On the surface it is the BOP federal facility nearest to

20  my family home in Kingsville, Texas.  It will be nearly a full

21  day's drive for my parents on visitation occasions, but it will

22  be less of a strain than the airfare, lodging, and

23  transportation logistics should I be placed out of my home

24  state.  Furthermore, I do intend to resettle in Texas and so

25  the transition from incarceration to halfway house to

1    supervised release will benefit me more greatly if it all were

2    to occur within the state of Texas.

3        On a personal note, one of my goals over the following

4    years of my life, incarcerated or otherwise free, is to seek

5    extensive treatment for bulimia, a condition that has been an

6    inescapable part of my life for over 12 years now.  I pray that

7    FMC Carswell would provide the adequate mental healthcare level

8    to allow me the opportunity to begin a lasting rehabilitation

9    and relief.  The disorder is a constant struggle for me and

10   even now is the most pressing internal challenge in my

11   day-to-day survival.  My greatest fear would be assignment to a

12   facility in which the mental health services are lacking and

13   that conditions will provoke my bulimia to not only grow worse

14   but also serve as my only coping mechanism of incarceration.

15       Lastly, as I am able to recover and strengthen my own self

16   I understand that FMC Carswell is a unique facility in which

17   inmates may progress to caretaking positions to serve fellow

18   inmates.  For both my health needs and vocational education

19   interests as well as proximity to my home of record, FMC

20   Carswell is a suitable facility in my opinion, and I humbly

21   request that the Court and the BOP to consider my placement in

22   Carswell.

23       Losing nearly everything has taught me that nothing is

24   worth the time spent away from loved ones.  Time removed from

25   such dearness has allowed me to reflect thus far on what an

 1    undeniable mistake I made in committing such a severe crime

 2    against the government of the United States.  I would like to

 3    apologize profusely for my actions which have resulted in the

 4    damages caused and resources expended by the Government and

 5    this Court, and, in particular, I want to apologize to my

 6    family.

 7         My actions were a crucial betrayal of my nation's trust

 8    placed in me, one for which I will spend my life in service of

 9    our communities as atonement.  Nothing will be more greatly

10    prized than the most simple pleasures of serving others, my

11    family's love, or being out in the sunlight of another day,

12    and, therefore, nothing would ever be done by me to jeopardize

13    my lasting commitment to the government or to my own liberty

14    ever again.  I would, again, like to thank this Honorable Court

15    and its servants for their time and fair consideration in this

16    matter.

17              THE COURT:  Thank you, Ms. Winner.

18              MR. WHITLEY:  Thank you, Your Honor.  We would ask a

19    bit of housekeeping.  We have Dr. Adrian Davis' report.  We'd

20    like to move that to be part of the record, Your Honor, if

21    that's acceptable, and I don't believe -- I don't know what the

22    Government's position is, but I believe there's -- is there any

23    objection?

24              MS. EDELSTEIN:  There is no objection, Your Honor.

25              THE COURT:  I think what I'll order is that the

1   report be provided to the BOP but not incorporated as an

2   attachment --

3            MR. WHITLEY:  Okay.

4            THE COURT:  -- into the PSR, but I will order that it

5   be provided.

6            MR. WHITLEY:  Yes, sir.  Thank you.  Thank you, Your

7   Honor.  That's preferential.

8            THE COURT:  Anything further, then?

9            MR. WHITLEY:  No, sir, Your Honor.  We thank you for

10  your courtesy this morning.  Thank you.

11           THE COURT:  All right.  Does the Government want to

12  make its comments from the lecturn or from the table?

13           MS. EDELSTEIN:  Whatever is easier for Your Honor.

14           THE COURT:  Are they long remarks or no?

15           MS. EDELSTEIN:  I can keep them very short.

16           THE COURT:  Okay.  You can stay right here.  My

17  normal practice is to let the counsel and defendant remain at

18  the lecturn.  If you'd like to stay right where --

19           MR. WHITLEY:  Yes, sir.

20           THE COURT:  -- you are, that will keep you from

21  having to get up and down.

22           MR. WHITLEY:  Thank you.

23           MS. EDELSTEIN:  Your Honor, the Government's position

24  is fully set forth in our Sentencing Memorandum as to why the

25  disposition of this case that was agreed to by the parties is

1    an appropriate disposition -- 63 months of imprisonment and

2    three years of supervised release.  There are a few points I'd

3    like to briefly highlight.

4        In terms of the seriousness of the Defendant's offense, it

5    cannot be understated.  The Defendant when she began work as a

6    contractor with Pluribus in February of 2017 and signed

7    paperwork -- important paperwork -- showing that she was

8    agreeing to keep our secrets secret and that she was doing so

9    without any mental reservation or purpose of evasion at the

10   same time was taking actions that were clearly contrary to what

11   she was swearing to.

12       The Defendant also was not a newcomer to handling our

13   nation's secrets.  She had had a security clearance for a good

14   part of her six years that she was in the Air Force and knew

15   the importance of protecting our national security information

16   and the damages that unauthorized disclosure can cause.

17   Nonetheless, just two days before starting work with Pluribus

18   the Defendant at the same time was just looking on her phone

19   and captured an image of a web page that listed a number of

20   sites that were seeking leaked classified information.

21       On May 5th an intelligence community agency published a

22   report internally on classified databases that was classified

23   at the Top Secret Special Compartmented Information level.  The

24   Top Secret designation shows that the disclosure of this report

25   had potential to cause exceptionally grave damage to our

1   national security and what we call the "SCI" designation showed

2   that it was even more protected than other Top Secret

3   information, in part because it concerned our nation's sources

4   and methods.

5      Nonetheless, on May 9th the Defendant purposefully

6   searched for, identified, and printed this intelligence report.

7   Instead of handling it in the proper procedures, she removed it

8   from the secure facility where she worked.  She put it in an

9   envelope and she addressed that envelope to a news outlet.  As

10   she admitted to the Federal Bureau of Investigation she did so

11   with intent that the news agency publish the content of that

12   report, and as the Defendant admitted when she pleaded guilty,

13   this act was not an accident; it was not a mistake; and it was

14   not done for any innocent reason.  Rather, the Defendant acted

15   willfully.  She knew what she was doing was against the law.

16   In so doing she knowingly and intentionally jeopardized the

17   national security.

18      I gave you previously the definition of Top Secret

19   information that it has potential to cause exceptionally grave

20   damage, and in this instance the U.S. subject matter experts

21   have assessed that the Defendant's disclosure did exactly that.

22   It caused exceptionally grave damage to our national security.

23      The Defendant has now accepted responsibility for this

24   crime and the parties agree that 63 months is an appropriate

25   sentence.  It reflects the seriousness of this crime.  It is a

1    long prison sentence.  The Defendant understood the harm that

2    her disclosure could cause and she blatantly violated the trust

3    that was placed in her.

4        In addition, the sentence confers significant benefit to

5    the Government.  It avoids the complex issues that would have

6    been posed by a Classified Information Procedures Act

7    proceeding both before this Court and on a potential appeal and

8    it avoids the potential dangers of discussing a case which has

9    at its core classified information in front of a jury which

10   inevitably leads to the disclosure of more classified

11   information.

12       Given the balance that we must strike in all of those

13   cases as the Government between the needs to prosecute an

14   individual and the damage that further disclosure of classified

15   information can cause, this is a good result for the

16   Government.  The prosecutors have confirmed both with the

17   Federal Bureau of Investigation and the members of the

18   intelligence community who are affected by the Defendant's

19   disclosure, and all agree.  We also think that this sentence

20   will avoid unwarranted sentencing disparities in light of other

21   cases that have been prosecuted under 783 for unauthorized

22   disclosure of classified information.

23       Unless the Court has any questions, Your Honor, that's all

24   the Government has.  Thank you.

25            THE COURT:  All right.  Thank you.  The Court is now

1   ready to impose the sentence in this case.  I have listened to

2   the Defendant and her counsel.  I have carefully reviewed the

3   Presentence Report prepared by the United States Probation

4   Office.  I have also considered letters of support filed by the

5   Defense in this case and I have carefully considered the

6   Sentencing Memorandums filed by both the Government and the

7   Defense and, finally, have listened to argument of counsel in

8   open court this morning.

9        In arriving at the Court's decision, I have carefully

10  considered the 18 U.S.C. § 3553(a) sentencing factors.  Based

11  upon this the Court hereby approves the Plea Agreement under

12  Rule 11(c)(1)(C) and will now sentence accordingly.  Pursuant

13  to the Sentencing Reform Act of 1984 then it is the judgment of

14  this Court that the Defendant, Reality Leigh Winner, is hereby

15  committed to the custody of the Bureau of Prisons to be

16  imprisoned for a term of 63 months.

17       Now imposing -- in imposing this sentence this morning

18  this Court has conducted a variance from the advisory guideline

19  range pursuant to Rule 11(c)(1)(C) and the Plea Agreement in

20  this case again and including the relevant 18 U.S.C. § 3553(a)

21  factors.  In particular, in approving this agreement and the

22  sentence that the Court has imposed, I have carefully

23  considered the very serious nature and circumstances of the

24  offense committed by this defendant and I have considered very

25  carefully her history and characteristics.

1          This sentence by the Court reflects the seriousness of

2     this espionage offense.  It is designed to provide just

3     punishment for this offense, and, very importantly, to promote

4     respect for the law and, also, very importantly, to avoid

5     adequate deterrence to future criminal conduct.  While the

6     Court doesn't have any -- has no sense, rather, that there is a

7     need to protect the public from any further crimes of this

8     defendant, the Court does believe that the public deterrence

9     factor is very important in the Court's decision to approve

10    this 11(c)(1)(C) agreement and to impose the sentence called

11    for by that agreement.  For all of these reasons this Court now

12    finds that the sentence -- that a sentence outside of the

13    advisory guideline range is appropriate and has imposed such a

14    sentence.

15         It is recommended that Ms. Winner be evaluated by BOP

16    officials to establish her participation in an appropriate

17    program of mental health treatment and counseling during her

18    term of incarceration.  In addition, the Court orders that the

19    psychological examination prepared by Dr. Adrian C. Davis dated

20    July 1, 2018, shall be provided to the Bureau of Prisons as

21    part of the record in this case but shall not be incorporated

22    into the Presentence Report.

23         After considering the Sentencing Guideline 5E1.2D factors

24    and in light of paragraph four of the Plea Agreement, the Court

25    has -- will not impose a fine today upon Ms. Winner.  I do,

1  however, order that she shall pay to the United States a $100

2  special assessment which is due immediately.

3      Pursuant to the approval of the Plea Agreement Ms. Winner

4  shall forfeit her interest in the items mentioned in paragraph

5  12 of that agreement.

6      Upon release from imprisonment Ms. Winner shall be placed

7  on supervised release for three years.  While on supervised

8  release she shall comply with the standard conditions of

9  supervision adopted by this court and the mandatory conditions

10  required by 18 U.S.C. § 3583 which will include, but not be

11  limited to, urine testing, a prohibition against possession of

12  any firearm or other dangerous weapon, and a prohibition

13  against the violation of any law.  Further, she shall cooperate

14  in the collection of a DNA sample as directed by the probation

15  officer pursuant to 18 U.S.C. § 3583.

16      While on supervised release Ms. Winner shall comply with

17  certain special conditions imposed by this court.  The Court

18  has considered various factors set forth in 18 U.S.C. § 3553

19  and 3583 along with relevant policy statements issued by the

20  United States Sentencing Commission and has determined that

21  these special conditions involve no greater deprivation of

22  liberty than is reasonably necessary to achieve the purposes of

23  sentencing; therefore, the following special conditions are

24  imposed on her term of supervised release.

25      She must participate in a mental health treatment program

1   and follow the rules and regulations of that program.  The

2   probation officer, in consultation with her treatment provider

3   or providers, will supervise her participation in such a

4   program.  She must pay the cost of treatment in an amount to be

5   determined by the probation officer based on her ability to pay

6   or the availability of third-party payment.  She must take all

7   mental health medications that are prescribed by her treating

8   physician.  She must pay the cost of such medication in an

9   amount to be determined by her probation officer based on her

10  ability to pay or the availability of third-party payment.

11      She must provide the probation officer with access to any

12  requested financial information and authorize the release of

13  any financial information.  The probation office may share

14  financial information with the United States Attorney's office.

15  She shall not maintain more than one financial institution

16  account or be a signer on any financial institution account

17  without the prior approval of the probation officer.

18      She must complete 100 hours of community service within 12

19  months of her supervised release.  The probation officer will

20  supervise her participation in the program by approving the

21  program and verifying the completed hours.

22      She must submit her person, property, house, residence,

23  office, vehicle, papers, computers, other

24  electronic-communications or data-storage devices or media to a

25  search conducted by a United States Probation Officer.  Failure

1   to submit to a search may be grounds for revocation of her

2   supervised release.  Failure -- rather, she must warn any other

3   occupants that the premises may be subject to searches pursuant

4   to this condition.  The probation officer may conduct a search

5   under this condition only when reasonable suspicion exists that

6   she has violated a term or condition of her supervision and

7   that areas to be searched contain evidence of the violation.

8   Any search must be conducted at a reasonable time and in a

9   reasonable manner.

10       A curfew will apply during the term of supervised release.

11   She must comply with the conditions of a curfew from 10 p.m. to

12   6 a.m. daily.  During the curfew time she will remain at her

13   place of residence and shall not leave except when the leave is

14   approved in advance by her probation officer.

15       She shall not collaborate on or consult about or otherwise

16   assist or be involved in any communication of information

17   related to classified subject areas to which she was exposed

18   while working as an employee of or contractor for the United

19   States Government with any other person or entity without first

20   obtaining the express written permission of all relevant

21   agencies or components of the United States Government.

22       She shall not circumvent her assignment to the United

23   States of any compensation, profits, proceeds, fee, honorarium,

24   money, or payments of any kind which she may otherwise be

25   entitled to receive in connection with any publication or

1   dissemination of information related to her work as an employee

2   of or contractor for the United States Government and the facts

3   and circumstances of the investigation of her activities or her

4   prosecution, sentencing, or incarceration in this matter by

5   assigning the rights to her story to an associate or to a

6   current, former, or future member of her family or to any other

7   person or entity who would provide some financial benefit to

8   her, to her associates, or to a current, former, or future

9   member of her family.  Moreover, she shall not circumvent this

10  assignment by communicating with an associate or family member

11  for the purpose of assisting or facilitating their profiting

12  from a public or private dissemination whether or not such

13  associate or other family member is personally or directly

14  involved in such dissemination.

15      The probation officer is now directed to provide

16  Ms. Winner with a written statement setting forth all of the

17  conditions to which her term of supervised release is subject.

18  The Court has accepted this Rule 11(c)(1)(C) sentencing

19  agreement that departs from the applicable guideline range

20  because the Court is satisfied that there are justifiable

21  reasons for accepting this agreement that I have previously set

22  forth in this sentencing statement.

23      Consistent with the Court's judgment then it is ordered

24  that Ms. Winner is remanded to the custody of the United States

25  Marshal.  This Court will recommend to the Bureau of Prisons

1    that she be assigned to FMC Carswell, Texas to serve her

2    incarceration -- term of incarceration.  As a backup, the Court

3    would recommend her assignment to another facility of the same

4    risk level and with the same programs and other facilities that

5    Carswell offers.

6        Pursuant to the Plea Agreement, with limited exceptions,

7    Ms. Winner has waived all rights conferred by 18 U.S.C. § 3742

8    to appeal this sentence.  She has also waived the right to

9    appeal this sentence on any other ground and has waived the

10   right to attack the sentence in any post-conviction proceeding.

11       The sentence in this case has now been pronounced by this

12   Court.  Other than any objections which may have previously

13   been stated for the record, does anyone now have any objections

14   to the Court's findings of fact, its conclusions of law, or to

15   the manner in which the sentence was pronounced by this Court?

16       Government?

17           MS. EDELSTEIN:  No, Your Honor.  Thank you, Your

18   Honor.

19           MR. WHITLEY:  No, Your Honor.

20           THE COURT:  Very well.  With that, the sentencing

21   hearing is now concluded.

22       (The hearing is concluded.)

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5          I, Lisa H. Davenport, Federal Official Court Reporter, in

6     and for the United States District Court for the Southern

7     District of Georgia, do hereby certify that pursuant to Section

8     753, Title 28, United States Code that the foregoing is a true

9     and correct transcript of the stenographically-reported

10    proceedings held in the above-entitled matter and that the

11    transcript page format is in conformance with the regulations

12    of the Judicial Conference of the United States.

13                                        Digitally signed by
                                          Lisa H. Davenport
14                                        Date: 2018.09.07
                                          14:40:13 -04'00'
15                            Lisa H. Davenport, RPR, FCRR
                              Federal Official Court Reporter
16

17

18

19

20

21

22

23

24

25

# 13

# Indictment



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

2017 JUN -7 PM 4: 15

OF GA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO. |
| v. | * | 1:17 CR 34 |
| | * | Willful Retention and Transmission of |
| REALITY LEIGH WINNER, | * | National Defense Information, 18 U.S.C. |
| | * | § 793(e) |
| Defendant. | * | |
| | * | |
| | * | |
| ****** | | |

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment:

### General Allegations
### The Defendant

1.      Defendant **Reality Leigh Winner ("WINNER")** was a resident of Augusta,

Georgia.

2.      Beginning in or about February 2017, and continuing through in or about June

2017, **WINNER** was employed as a contractor with Pluribus International Corporation assigned

to a U.S. Government Agency facility in Georgia. In connection with her employment, **WINNER**

held a TOP SECRET//SCI security clearance and had access to classified national defense

information.

### Classified Information

3.      Pursuant to Executive Order 12958 signed on April 17, 1995, as amended by

Executive Order 13292 on March 25, 2003, and Executive Order 13526 on December 29, 2009,

national security information was classified as "TOP SECRET," "SECRET," or

1

"CONFIDENTIAL." National security information was information owned by, produced by, produced for, and under the control of the United States government that was classified as follows:

      a.     Information was classified as TOP SECRET if the unauthorized disclosure of that information reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority was able to identify and describe.

      b.     Information was classified as SECRET if the unauthorized disclosure of that information reasonably could be expected to cause serious damage to the national security that the original classification authority was able to identify and describe.

      c.     Information was classified as CONFIDENTIAL if the unauthorized disclosure of that information reasonably could be expected to cause damage to the national security that the original classification authority was able to identify and describe.

4.     Access to national security information classified at any level could be further restricted through compartmentation in Sensitive Compartmented Information (SCI) categories. Only individuals with the appropriate security clearance and additional SCI permissions could have authorized access to such classified national security information.

5.     Classified information, including SCI, was marked according to its classification and applicable SCI compartments, following standard formats for different types of media, including headers and footers stating the highest classification level and SCI compartments of information a document contained and individual classifications markings for each paragraph.

6.     Information classified at any level could only be lawfully accessed by persons determined by an appropriate United States government official to be eligible for access to classified information, who had signed an approved non-disclosure agreement, who received a security clearance, and who had a "need to know" the classified information. Classified information could only be stored in an approved facility and container.

2

## WINNER's Access to National Defense and Classified Information

7.      From in or about December 2010 through in or about December 2016, **WINNER** was affiliated with the United States Air Force.  During various times during this period, **WINNER** held a TOP SECRET//SCI security clearance.

8.      From in or about February 2017 through in or about June 2017, **WINNER** was employed as a contractor with Pluribus International Corporation, assigned to a U.S. Government Agency facility in Georgia.   In connection with her employment, **WINNER** held a TOP SECRET//SCI security clearance.

9.      **WINNER** received training regarding classified information, including the definitions of classified information, the levels of classification, and SCI, as well as the proper handling, marking, transportation, and storage of classified materials.  **WINNER** received training on her duty to protect classified materials from unauthorized disclosure, which included complying with handling, transportation, and storage requirements.   **WINNER** knew that unauthorized removal of classified materials and transportation and storage of those materials in unauthorized locations risked disclosure and transmission of those materials, and therefore could endanger the national security of the United States and the safety of its citizens.  In particular, **WINNER** had been advised that unauthorized disclosure of TOP SECRET information reasonably could be expected to cause exceptionally grave damage to the national security of the United States, and that violation of rules governing the handling of classified information could result in criminal prosecution.

## WINNER's Removal and Transmission of National Defense Information

10.      Because **WINNER** held a security clearance and was assigned as a contractor to a U.S. Government Agency, the United States government entrusted **WINNER** with access to

3

sensitive government materials, including information relating to the national defense that was closely held by the government ("National Defense Information") and classified documents and materials.

11.     On or about May 9, 2017, **WINNER** printed and improperly removed classified intelligence reporting, which contained classified National Defense Information and was dated on or about May 5, 2017 (the "intelligence reporting") from an Intelligence Community Agency (the "U.S. Government Agency") and unlawfully retained it.  The intelligence reporting describes intelligence activities by a foreign government directed at targets within the United States.

12.     WINNER did not have a "need to know" the information contained in the intelligence reporting.

13.     Approximately two days after May 9, 2017, **WINNER** unlawfully transmitted the intelligence reporting to an online news outlet (the "News Outlet").

14.     The intelligence reporting that **WINNER** removed, retained, and transmitted bore standard markings indicating that it contained highly classified information of the United States, including TOP SECRET, as well as SCI, information.

15.     **WINNER** knew that the intelligence reporting contained classified information that related to the national defense.

16.     **WINNER** was never authorized to remove the intelligence reporting from the U.S. Government Agency and retain and transmit it.

17.     **WINNER** knew that she was not authorized to remove the intelligence reporting from the U.S. Government Agency and retain and transmit it.

18.     The News Outlet to which **WINNER** transmitted the intelligence reporting was not entitled to receive or possess it.

4

19.     **WINNER** knew that the News Outlet was not entitled to receive or possess the intelligence reporting.

## COUNT ONE

### 18 U.S.C. § 793(e)
### (Willful Retention and Transmission of National Defense Information)

20.     Paragraphs 1-19 of this Indictment are incorporated by reference and realleged as if set forth fully herein.

21.     Beginning on or about May 9, 2017, and continuing until on or about a date unknown but no later than June 3, 2017, in Richmond County, in the Southern District of Georgia, and elsewhere, the defendant,

### REALITY LEIGH WINNER,

having unauthorized possession of, access to, and control over a document containing information relating to the national defense, willfully retained the document and failed to deliver it to the officer or employee of the United States entitled to receive it, and willfully transmitted the same to a person not entitled to receive it: to wit, **WINNER** retained the intelligence reporting and transmitted it to the News Outlet.

All in violation of 18 U.S.C. § 793(e).

A TRUE BILL

5

James D. Durham
Acting United States Attorney

Brian R. Rafferty
Chief, Criminal Division
Assistant United States Attorney

Jennifer G. Solari*
Assistant United States Attorney

*Lead counsel

6

# 27

# Detention Order

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 117-034 |
| | ) | |
| REALITY LEIGH WINNER | ) | |

DETENTION ORDER

For the reasons stated at the detention hearing on June 8, 2017, the Court finds by preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required; and by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community.

Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of any attorney for the Government, the person in charge of the corrections facility shall deliver Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

SO ORDERED this 9th day of June, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

# 72

# Superseding Indictment

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | SUPERSEDING INDICTMENT |
| | * | CR 1:17-34 |
| v. | * | |
| | * | Willful Retention and Transmission of |
| REALITY LEIGH WINNER, | * | National Defense Information, 18 U.S.C. |
| | * | § 793(e) |
| Defendant. | * | |
| | * | |
| | * | |
| | ******* | |

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment:

### General Allegations
### The Defendant

1.     Defendant **Reality Leigh Winner ("WINNER")** was a resident of Augusta, Georgia.

2.     Beginning in or about February 2017, and continuing through in or about June 2017, **WINNER** was employed as a contractor with Pluribus International Corporation assigned to a U.S. Government Agency facility in Georgia.  In connection with her employment, **WINNER** held a TOP SECRET//SCI security clearance and had access to classified national defense information.

### Classified Information

3.     Pursuant to Executive Order 12958 signed on April 17, 1995, as amended by Executive Order 13292 on March 25, 2003, and Executive Order 13526 on December 29, 2009, national   security   information   was   classified   as   "TOP   SECRET,"   "SECRET,"   or

1

"CONFIDENTIAL." National security information was information owned by, produced by,

produced for, and under the control of the United States government that was classified as follows:

      a.     Information was classified as TOP SECRET if the unauthorized disclosure of that information reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority was able to identify and describe.

      b.     Information was classified as SECRET if the unauthorized disclosure of that information reasonably could be expected to cause serious damage to the national security that the original classification authority was able to identify and describe.

      c.     Information was classified as CONFIDENTIAL if the unauthorized disclosure of that information reasonably could be expected to cause damage to the national security that the original classification authority was able to identify and describe.

4.     Access to national security information classified at any level could be further

restricted through compartmentation in Sensitive Compartmented Information (SCI) categories.

Only individuals with the appropriate security clearance and additional SCI permissions could

have authorized access to such classified national security information.

5.     Classified information, including SCI, was marked according to its classification

and applicable SCI compartments, following standard formats for different types of media,

including headers and footers stating the highest classification level and SCI compartments of

information a document contained and individual classifications markings for each paragraph.

6.     Information classified at any level could only be lawfully accessed by persons

determined by an appropriate United States government official to be eligible for access to

classified information, who had signed an approved non-disclosure agreement, who received a

security clearance, and who had a "need to know" the classified information.   Classified

information could only be stored in an approved facility and container.

2

**WINNER's Access to National Defense and Classified Information**

7.      From in or about December 2010 through in or about December 2016, **WINNER** was affiliated with the United States Air Force. During various times during this period, **WINNER** held a TOP SECRET//SCI security clearance.

8.      From in or about February 2017 through in or about June 2017, **WINNER** was employed as a contractor with Pluribus International Corporation, assigned to a U.S. Government Agency facility in Georgia. In connection with her employment, **WINNER** held a TOP SECRET//SCI security clearance.

9.      **WINNER** received training regarding classified information, including the definitions of classified information, the levels of classification, and SCI, as well as the proper handling, marking, transportation, and storage of classified materials. **WINNER** received training on her duty to protect classified materials from unauthorized disclosure, which included complying with handling, transportation, and storage requirements. **WINNER** knew that unauthorized removal of classified materials and transportation and storage of those materials in unauthorized locations risked disclosure and transmission of those materials, and therefore could endanger the national security of the United States and the safety of its citizens. In particular, **WINNER** had been advised that unauthorized disclosure of TOP SECRET information reasonably could be expected to cause exceptionally grave damage to the national security of the United States, and that violation of rules governing the handling of classified information could result in criminal prosecution.

**WINNER's Removal and Transmission of National Defense Information**

10.      Because **WINNER** held a security clearance and was assigned as a contractor to a U.S. Government Agency, the United States government entrusted **WINNER** with access to

sensitive government materials, including information relating to the national defense that was closely held by the government ("National Defense Information") and classified documents and materials.

11.    On or about May 9, 2017, **WINNER** printed and improperly removed classified intelligence reporting, which contained classified National Defense Information and was dated on or about May 5, 2017 (the "intelligence reporting") from an Intelligence Community Agency (the "U.S. Government Agency") and unlawfully retained it.   The intelligence reporting describes intelligence activities by a foreign government directed at targets within the United States.

12.    WINNER did not have a "need to know" the information contained in the intelligence reporting.

13.    On or about May 9, 2017, **WINNER** unlawfully transmitted the intelligence reporting to an online news outlet (the "News Outlet").

14.    The intelligence reporting that **WINNER** removed, retained, and transmitted bore standard markings indicating that it contained highly classified information of the United States, including TOP SECRET, as well as SCI, information.

15.    **WINNER** knew that the intelligence reporting contained classified information that related to the national defense.

16.    **WINNER** was never authorized to remove the intelligence reporting from the U.S. Government Agency and retain and transmit it.

17.    **WINNER** knew that she was not authorized to remove the intelligence reporting from the U.S. Government Agency and retain and transmit it.

18.    The News Outlet to which **WINNER** transmitted the intelligence reporting was not entitled to receive or possess it.

4

19.    **WINNER** knew that the News Outlet was not entitled to receive or possess the intelligence reporting.

<div align="center">

**COUNT ONE**

**18 U.S.C. § 793(e)**
**(Willful Retention and Transmission of National Defense Information)**

</div>

20.    Paragraphs 1-19 of this Indictment are incorporated by reference and realleged as if set forth fully herein.

21.    On or about May 9, 2017, in Richmond County, in the Southern District of Georgia, the defendant,

<div align="center">

**REALITY LEIGH WINNER,**

</div>

having unauthorized possession of, access to, and control over a document containing information relating to the national defense, willfully retained the document and failed to deliver it to the officer or employee of the United States entitled to receive it, and willfully transmitted the same to a person not entitled to receive it: to wit, **WINNER** retained the intelligence reporting and transmitted it to the News Outlet.

All in violation of 18 U.S.C. § 793(e).

Foreperson

James D. Durham
Acting United States Attorney

Brian R. Rafferty
Assistant United States Attorney

Jennifer G. Solari*
Assistant United States Attorney

*Lead counsel

6

# 115

# Order

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 117-034 |
| | ) | |
| REALITY LEIGH WINNER | ) | |

**ORDER**

In consideration of the legal briefs, oral argument, and testimony at the second detention hearing last Friday, September 29, 2017, the Court **DENIES** Defendant's motion for release from custody (doc. no. 96) and **FINDS** (1) by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community; and (2) by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required.

**I.     Overview of Bail Reform Act**

The Bail Reform Act of 1984 ("Act") mandates the pretrial release of a defendant unless the government carries its burden of proving there is no bond condition or combination of conditions that would "reasonably assure" the defendant's appearance in court or the safety of the community.  18 U.S.C. § 3142(c), (f).  There is no statutory presumption of detention arising from the nature of the charge against Defendant.  See 18 U.S.C. § 3142(e)(2).  The government's burden with respect to dangerousness is by clear and convincing evidence and the government's burden as to appearance in court is by a preponderance of the evidence.  United States v. Quartermaine, 913 F.2d 910, 917 (11th Cir.

1990); 18 U.S.C. § 3142(f)(2). "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f)(2).

The Act specifies the factors considered in determining whether there are conditions to reasonably assure safety and appearance as (1) the nature and circumstances of the offense charged, including whether it is a crime of violence or terrorism, or involves a minor victim, controlled substance, firearm, or explosive device; (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4). These factors weigh heavily in favor of detention, as explained below.

## II.   Discussion

### A.   Nature and Circumstances of the Offense Charged

The superseding indictment alleges Defendant violated 18 U.S.C. § 793(e) by willfully transmitting classified information to an online news outlet despite knowing disclosure could cause specific, articulable, and "exceptionally grave damage to the national security . . . ." (Superseding Indict., doc. no. 72, ¶ 3.) The nature and circumstances of the offense weigh in favor of detention because of the ongoing risk to national security posed by releasing Defendant in light of her alleged criminal disclosure and the potential for additional disclosures given her access to a wealth of classified information during her service in the Air Force and with NSA.

Defendant argues the nature of this case weighs against detention because complexities necessitated pushing the trial date back to March of next year. As the Eleventh Circuit has previously explained, "the prospect of eight to ten months of pretrial detention,

2

without more, does not mandate the release of a defendant for whom pretrial detention is otherwise appropriate." Quartermaine, 913 F.2d at 918. This is particularly true here since Defendant requested the delay in trial, and the risks of flight and danger to the community are high as explained *infra*. Id.; (see doc. no. 84, Aug. 30, 2017 Status Conf. Tr. ).

The Court has also carefully considered Defendant's arguments concerning the scope of § 793(e) and finds the code section broad enough to encompass Defendant's purported conduct. Nor is the Court persuaded by Defendant's argument "the vast majority of courts have held that defendants charged with similar offenses were entitled to be released pending trial." (Doc. no. 96-1, p. 14.) Defendant provided a chart listing thirteen cases in which courts granted pretrial release to defendants whom Defendant contends were similarly situated. (Id. at 14-20.) However, the detention analysis under the Act does not lend itself to easy comparisons across cases because of its intense focus on the unique facts of each case and the unique characteristics of each defendant.

Additionally, as the government points out, many of the cases touted by Defendant are materially distinguishable. (See doc. no. 100, pp. 9-10.) Two defendants received misdemeanor convictions and sentences of probation only. United States v. Nishimura, No. 2:15-CR-145-KJN, doc. no. 7 (E.D. Cal. Aug. 12, 2015); United States v. Patraeus, No. 3:15-cr-47-DCK, doc. no. 24 (W.D.N.C. Apr. 29, 2015). Two other defendants entered plea agreements within days of their initial charges, and one received a sentence of probation on a misdemeanor conviction. United States v. Leibowitz, No. 8:09-cr-632, doc. no. 25 (D. Md. May 25, 2010) (twenty months of imprisonment); United States v. Berger, No. 1:05-MJ-175-DAR, doc. no. 17 (D.D.C. Sept. 13, 2005) (two years of probation for plea to misdemeanor charge).

**B.      Weight of the Evidence**

For purposes of this detention analysis only, the Court finds at this early stage of the case that the evidence against Defendant is strong.  During her initial interview with law enforcement, Defendant admitted she leaked classified information to a news outlet. Defendant also made damning admissions regarding the same in recorded jail phone conversations with her mother and sister.  Gov't Exs. 3, 6; (doc. no. 96-2, p. 2).   The circumstantial evidence corroborates Defendant's admissions.   FBI Special Agent Justin Garrick testified (1) Defendant was one of six NSA workers who accessed the leaked document; (2) Defendant was one of two NSA workers who printed the leaked document; (3) Defendant was the only NSA worker for which there is proof of contact with the news outlet during the period of time when the leak occurred; and (4) the leaked document was mailed from Augusta, Georgia to the news outlet one day after Defendant printed it.  See also Gov't Ex. 3.  Defendant further admitted she knew the document contained information regarding sources and methods of collecting classified information that would be valuable to adversaries of the United States.  Id. at USAO 08172-08173.

**C.      History and Characteristics of the Person**

When considering the history and characteristics of a person in the context of determining pretrial detention, courts consider the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning appearance at court proceedings, and whether at the time of the current offense or arrest the person was on a conditional release.  See 18 U.S.C. § 3142(g)(3).

4

Characteristics weighing in favor of Defendant's pretrial release are her service in the Air Force, clean criminal history, and loving and committed parents. Substantially outweighing these positive characteristics, however, are Defendant's state of mind, short length of time residing in the community, few community ties, and past conduct. Indeed, the Court finds, based on compelling evidence presented by the government, that Defendant admittedly "hates" America, misused a top-secret computer during her Air Force career, admires Edward Snowden and Julian Assange, and began preparations to leak classified information from the very outset of her work as an NSA subcontractor.

First, one need look no further than Defendant's own writings to surmise that she hates the United States and has plotted against the government. On February 25, 2017, during training for her new NSA job, Defendant wrote her sister that she would fail a polygraph because of questions concerning whether she had ever plotted against the United States Government. Gov't Ex. 11. On the same day, Defendant wrote her sister she hated America. Id. When her sister responded with incredulity, Defendant proclaimed again she hated America and explained she feels this way because America is "literally the worst thing to happen to the planet." Id.

Second, Defendant admittedly misused a top-secret computer during her service with the Air Force. On November 9, 2016, approximately one month before her discharge, Defendant searched the Internet to determine whether it is possible to insert a thumb drive into a top-secret computer without being detected. Gov't Ex. 3, USAO 08144, 08170-08171; (doc. no. 29, p. 21). On the same day as the Internet search, Defendant did insert a thumb drive into a top-secret computer for two minutes. Gov't Ex. 3, USAO 08170-08171. The

government has been unable to determine why Defendant inserted the thumb drive, whether she saved anything to the thumb drive, or where the thumb drive is located today.

Third, Defendant admittedly admires Edward Snowden and Julian Assange. On February 9, 2017, Defendant messaged her sister through Facebook it was "hard not to laugh" when an NSA security officer emphasized during training the enormity of the security threat posed by insiders such as Edward Snowden. Gov't Exs. 9, 11. On March 7, 2017, in Facebook messages with her sister, Defendant lauded a recent Wikileaks cache of classified information as "awesome" because it "crippled" a government program, and explained to her sister she is on the side of Assange and Snowden. Gov't Ex. 12.

Fourth, Defendant made an extended effort to develop stealth Internet capabilities during the same time period she began her employment as an NSA subcontractor. Defendant's first day working as an NSA subcontractor was February 9, 2017. Just days before starting her NSA job, Defendant downloaded a Tor browser that allows anonymous Internet operations. In the following weeks, Defendant researched how to send information anonymously to news outlets, attempted to set up a single-use email account for anonymous email, and researched how to unlock her cell phone and use it anonymously. (See doc. no. 100, pp. 19-20.) Viewed in totality, SA Garrick described these activities as preparation of a "covert communications package." The timing strongly suggests Defendant was planning to leak classified information from the outset of her NSA employment, while all the while swearing allegiance to the United States and promising to safeguard its national secrets.

### D.    Nature and Seriousness of Danger to Community

As the Eleventh Circuit has explained, "[t]he term 'dangerousness,' as used in the Bail Reform Act of 1984, has a much broader construction than might be commonly

understood in everyday parlance." United States v. King, 849 F.2d 485, 487 n.2 (11th Cir. 1988). Indeed, the Act broadly references the safety of any person and the safety of the community at large. While the primary focus of the former is the risk of physical violence toward a particular person such as a victim or witness, the latter refers to any risk a defendant may pose to the well-being of a community. Id. Examples include the potential corruption of a union or the obvious perils drug trafficking poses to a community. Id.

By her own words and actions, Defendant has painted a disturbing self-portrait of an American with years of national service and access to classified information who hates the United States and desires to damage national security on the same scale as Julian Assange and Edward Snowden. The nature and seriousness of the danger she poses to our nation is high.

### E.     Risk of Flight

Defendant has few ties to Augusta, Georgia, and her desire to live abroad is understandably strong given her intense dislike for the United States. Fluent in Farsi, Dari, and Pashto, Defendant described her "big plan" to SA Garrick as deploying to Afghanistan as a Pashto linguist. Gov't Ex. 3, USAO 08124-08125, 08139. Defendant further explained she left the Air Force and took the NSA job in Augusta to regain her clearance in the hopes of getting a deployment. Id. at 08174. SA Garrick testified that, as Defendant's time with the Air Force came to a close in October and November 2016, she scoured the Internet for airline tickets, jobs, and housing in places such as Kurdistan, Iraq, Afghanistan, and Jordan. See also Gov't Ex. 8. The incentive to relocate overseas has to be no less tempting now that a grand jury has charged her with a felony offense carrying a maximum penalty of ten years in prison.

The risk of flight is also heightened because Defendant has the financial means to flee the country, as evidenced by her solo, three-day trip to Belize over the 2017 Memorial Day weekend, during which she flew to Belize Saturday morning and flew back to Georgia Monday morning. Gov't Ex. 3, USAO 08149-08150. While Defendant has surrendered her passport and cannot obtain another one in her own name, this obstacle provides little assurance given her self-described desire to "burn the White house down" and "[f]ind somewhere in Kurdistan to live . . . or Nepal." Gov't Ex. 7.

## III.    Conclusion

The Court **DENIES** Defendant's motion for release from custody. (Doc. no. 96.) Defendant shall remain in the custody of the Attorney General or his designated representative for confinement pursuant to the terms of the Court's first Detention Order entered June 9, 2017. (Doc. no. 27.)

SO ORDERED this 5th day of October, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

8

# 163

# Judgment on Appeal of Magistrate Judge Decision

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

UNITED STATES OF AMERICA      *
                              *
      vs.                     *          CR 117-034
                              *
REALITY LEIGH WINNER          *

---

**O R D E R**

---

Pursuant to 18 U.S.C. § 3145(b), Defendant Reality Leigh Winner has filed an appeal from the United States Magistrate Judge's Detention Order of October 5, 2017.[1]   After an independent and *de novo* review of the detention proceedings before the Magistrate Judge, the arguments of counsel in brief, and the relevant law, the Court finds that detention is appropriate and therefore affirms the Detention Order.

### I.   LEGAL STANDARD

When the Government seeks to detain a defendant pending trial under the Bail Reform Act, the Court must determine whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and

---

[1]   Section 3145(b) contemplates that the detained defendant will file a motion to revoke the detention order rather than an "appeal."   Because there is no substantive difference, the Court will use the term chosen by Defendant.

the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). A hearing for that purpose will be conducted upon motion of the Government in a case that involves "a serious risk that such person will flee."[2] 18 U.S.C. § 3142(f)(2)(A). The Government bears the burden of demonstrating a serious risk of flight by a preponderance of the evidence. United States v. Medina, 775 F.2d 1398, 1402 (11th Cir. 1985).

This Court's review of the Magistrate Judge's decision is de novo. United States v. Hurtado, 779 F.2d 1467, 1481 (11th Cir. 1985) (stating that the district court "is not constrained to look for abuse of discretion or to defer to the judgment of the prior judicial officer" when reviewing detention decisions). In assessing the Government's proof, the Court shall consider the following relevant factors: (1) the nature and circumstances of the offense charged; (2) the

---

[2] The Government cannot move for detention on the basis that Defendant poses a danger to the community under 18 U.S.C. § 3142(f)(1) because she does not meet any of the criteria set forth therein. United States v. Giordano, 370 F. Supp. 2d 1256, 1258-62 (S.D. Fla. 2005); accord United States v. Twine, 344 F.3d 987 (9th Cir. 2003); United States v. Byrd, 969 F.2d 106, 110 (5th Cir. 1992); United States v. Friedman, 837 F.2d 48 (2d Cir. 1988); United States v. Himler, 797 F.2d 156 (3d Cir. 1986). Importantly, the "dangerousness" of this Defendant is still a factor to be considered under 18 U.S.C. § 3142(g)(4). Giordano, 370 F. Supp. 2d at 1261 n.1. Moreover, the "dangerousness" of Defendant as a factor also "emanates" from § 3142(e)(1)'s requirement that the Court consider whether any condition(s) may reasonably assure the safety of the community. See King, 849 F.2d at 487.

weight of the evidence against Defendant; (3) the history and characteristics of Defendant, including character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release.  18 U.S.C. § 3142(g).  In conducting the review, this Court may rely entirely on the pleadings and evidence developed during the Magistrate Judge's detention proceedings, or it may conclude that additional evidence is necessary and conduct its own evidentiary hearing.  United States v. King, 849 F.2d 485, 490 (11th Cir. 1988).  Here, the Court has determined that another hearing would not aid in this decision, particularly because the Court had the benefit of the transcripts of two prior detention hearings and the thorough and reasoned briefs of counsel.  Further, no additional evidence is required, and there are no relevant factual disputes that require further evidence.  Thus, Defendant's request for a hearing on this matter is denied.

3

## II.  ANALYSIS

On appeal, Defendant argues that the Magistrate Judge ignored certain favorable evidence, made findings that are unsupported by the evidence, and as a whole, improperly balanced the evidence.  Consequently, the Magistrate Judge erred in finding that Defendant is a serious risk of flight. Defendant also argues that the Magistrate Judge failed to consider factors and conditions that would reasonably assure the safety of the community and her appearance at trial.

After conducting a *de novo* review of the entire record, including the transcripts of the two detention hearings, the Court finds that the Order of Detention accurately and thoroughly sets forth both the facts and the law.  Despite Defendant's contentions, the Magistrate Judge properly considered the factors giving rise to detention and properly concluded that no condition or combinations of conditions would reasonably assure the safety of the community and Defendant's appearance at trial.  This Court will now examine the factors set forth in the Bail Reform Act, 18 U.S.C. § 3142(g), all of which weigh against Defendant, while addressing Defendant's assertions of error on appeal.

A.   Nature and Circumstances of the Offense Charged

Defendant is charged with a violation of 18 U.S.C. § 793(e), which provides in relevant part:

4

> Whoever having unauthorized possession of, access to, or control over any document . . . related to the national defense, willfully communicates, delivers, transmits, or causes to be communicated, delivered or transmitted . . . to any person not entitled to receive it . . . shall be fined . . . or imprisoned.

The Magistrate Judge concluded that the "nature and circumstances of the offense weigh in favor of detention because of the ongoing risk to national security posed by releasing Defendant . . . ." (Detention Order, at 2.) While a violation of 18 U.S.C. § 793(e) does not create a rebuttable presumption in favor of detention,[3] the superseding indictment nevertheless charges that Defendant willfully transmitted a classified, top-secret[4] document without authority to an online news outlet, which was not entitled to receive it. (See generally Superseding Indict., Doc. 72.) A plain reading of the indictment demonstrates the serious nature of the offense. Coupled with evidence that Defendant had access to classified information during her service in the Air Force and with the NSA, particularly in light of the "covert

---

[3]   Contrary to Defendant's emphasis on this point, the fact that the offense charged does not create a rebuttable presumption of detention is not determinative of this particular factor; if it was, there would be no reason to list this factor as an independent relevant consideration.

[4]   A document is classified "TOP SECRET if the unauthorized disclosure of that information could be expected to cause ***exceptionally grave damage to the national security.***" (Superseding Indict., ¶ 3 (emphasis added).)

5

communications package" (discussed _infra_) that she had created around the time of taking the NSA position and her apparent antipathy toward the United States of America, the gravity of Defendant's alleged crime is unassailable.   The fact that Defendant has been charged with one count-related to one transmission of one document-does not mitigate the serious nature of the offense, especially given that the matter may affect national security.[5]

B.   Weight of the Evidence

At the time of the execution of the search warrant of her home, Defendant admitted to FBI Special Agent Justin Garrick that she willfully secreted the classified document out of the NSA and mailed it to the online news outlet, which did not have authority to receive it.[6]   (Tr. of

---

[5]   Defendant harps on the fact that she has only been charged with the disclosure of "one document, one time, to one recipient, with no allegations of financial gain."   (_E.g._, Def.'s Appeal Br., Doc. 128, at 13.)   The Court finds this fact to be of little importance because it may reasonably be said that the Government caught this Defendant before any more damage could be done.   Indeed, Defendant had only recently begun her employment with the NSA contractor, Pluribus International, and had only recently researched how to disclose information to news outlets anonymously.   Also, financial gain is not the only reason a person may disclose classified information to a news outlet.   These other takes on the "only once" argument are reasonable given the evidence discussed _infra_ regarding Defendant's development of a "covert communications package," her antipathy toward America, and her research into living and working abroad.

[6]   In fact, Defendant initially denied taking any document out of the NSA building. (Tr. of Interview, at 08145-

6

Interview, Doc. 100, Ex. A, at 08161-62.) While Defendant has disputed the specific elements of this crime, particularly whether the classified document was related to the national defense[7] and whether she possessed the requisite *mens rea* to be found guilty, at this point in the proceeding, her admission to these relevant facts appear to hit upon all the elements of the crime.

Defendant complains that the Magistrate Judge did not consider that the initial statements to the FBI during the execution of the search warrant are subject to a pending motion to suppress.  The motion to suppress, however, has not been fully vetted and is certainly not resolved; thus, at this point it is immaterial.  Besides, in addition to the admissions to the Special Agent, Defendant has also made statements to her sister that she "screwed up" and that she "leaked a document."  (Detention Hr'g Tr., Sept. 29, 2017, Doc. 109, Ex. 6.)  The use of the word "leaked" indicates a

---

46.)  And, when she admitted that she had printed a classified document, she initially claimed to have placed it in the burn bag and denied taking it out of the building or mailing it to anyone.  (Id. at 08152-08158.)  This suggests a certain level of deception.

[7]   As pointed out by the Magistrate Judge, Defendant admitted that she knew the document contained information regarding sources and methods of collecting classified information that would be valuable to adversaries of the United States.  (Detention Order, at 4; Tr. of Interview, at 08172.)

certain consciousness of wrongdoing because lawful possession and transmission would not be called a "leak." Moreover, as expressed by the Magistrate Judge (Detention Order, at 3), the investigatory facts which led the FBI to the independent conclusion that Defendant was the source of the leaked document will be compelling evidence against her.[8]

   C.   History and Characteristics of Defendant

   The Court first notes that Defendant believes the Magistrate Judge overlooked the positive characteristics and history of Defendant, such as her honorable service to the country, her humanitarian aspirations, her strong family ties, and her lack of a criminal history.   In point of fact, the Magistrate Judge opened his discussion of this factor noting: "Characteristics weighing in favor of Defendant's pretrial release are her service in the Air Force, clean criminal

---

[8]   At the detention hearing on September 29, 2017, Special Agent Garrick testified that of the six individuals that printed the subject document, only two had printed both the Intelligence Report and the attachment, both of which ended up in the possession of the online news outlet.  Of the two, the investigation revealed that the document was printed by Defendant on May 9, 2017, that the document was mailed from Augusta, Georgia on May 10, 2017, and that Defendant had contacted the recipient news media outlet.  (Detention Hr'g Tr., Sept. 29, 2017, at 22-24.)   The investigation also revealed that on the day the classified document was printed, Defendant had researched online how to anonymously submit information to two news outlets.  (Id. at 27.) After that date, Defendant performed several searches for those news outlets and information related to the potential leak of classified information to see "if leaked information had been published by those particular media outlets."  (Id.)

history, and loving and committed parents." (Detention Order, at 5.) The Magistrate Judge then went on to find that negative factors outweighed the positive, pointing to her state of mind, few community ties, and past relevant conduct. Specifically, the Magistrate Judge found compelling evidence to support this finding: "Defendant admittedly 'hates' America, misused a top-secret computer during her Air Force career, admires Edward Snowden and Julian Assange, and began preparations to leak classified information from the very outset of her work as an NSA subcontractor." (Id.) Defendant takes particular umbrage at the characterization that she "hates" America and that she "admires" Edward Snowden and Julian Assange.

Upon a *de novo* review of the evidence submitted at the detention hearing of September 29, 2017, particularly the testimony of Special Agent Garrick, this Court similarly concludes that the negative implications from the evidence pertaining to Defendant's character, her mental state, her conduct in the months before her arrest, and her lack of community ties significantly outweigh the positive aspects of her family ties, commendable service in the Air Force, care for environmental issues and animals, humanitarianism, and lack of criminal record.

The Court will now recount the evidence that supports this finding:

9

- On November 9, 2016, while in the waning days of her service in the Air Force, Defendant researched whether a top secret computer will detect a thumb drive. On this same day, Defendant inserted a thumb drive into a top secret computer for approximately two minutes. (Detention Hr'g Tr., Sept. 29, 2017, at 48-49.) The Government has not located the thumb drive.

- Immediately after removing the thumb drive, Defendant printed a top secret intelligence report which was "not associated in any way with [her] duties/assignments." The Government does not know what Defendant did with the document. (Id. at 49.)

- Defendant performed multiple searches for jobs requiring a security clearance in November 2016 at the same time that she researched for information pertaining to the Taliban and for information about an organization called Anonymous, an affiliation of hackers. (Id. at 50-51.)

- In handwritten notes apparently regarding employment opportunities, Defendant writes "I want to burn the whitehouse down. Find somewhere in Kurdistan to live . . . or Nepal haha maybe." (Id. at 32, Ex. 7.)

- Included in Defendant's handwritten notes are references to Taliban military leaders. (Id. at 37, Ex. 7.) Defendant also performed internet searches in October, November, and December of 2016 for the Taliban media website, the Taliban office in Qatar, and the Taliban YouTube channel. (Id. at 37-38, Ex. 8.)

- Other internet searches involve traveling, working and living in Kuridstan, Iraq, Afghanistan, Jordan and Palestinian territories, to include information pertaining to flights to Kurdistan and Erbil, moving to Palestine, and obtaining visas for Kurdistan and Afghanistan. (Id. at 40-42, Ex. 8.)

- On February 7, 2017, two days prior to her first day of employment with the NSA contractor, Pluribus International, Defendant captured a screenshot of how to securely drop information to eight different news outlets. The image is titled, "If you see abuse. Leak it." (Id. at 26, Ex. 4.)

10

- On February 9, 2017, immediately after undergoing her initial security training with the NSA, Defendant sent a message to her sister, in which she said of her security training "it was hard not to laugh" when the security officer said "'yeah so uh we have guys like Edward Snowden who uhh thought they were doing the right thing, but you know, they weren't so us we uh have to keep an eye out for that insider threat, especially with contractors.'" (Id. at 42-43, Ex. 9.)

- On February 25, 2017, Defendant messaged her sister, "I have to take a polygraph where they're going to ask if I've ever plotted against the gov't. #gonnafail." She then said, "Look, I only say I hate America like 3 times a day." When Defendant's sister asked, "But you don't actually hate America, right?", Defendant responded: "I mean yeah I do it's literally the worst thing to happen on the planet. We invented capitalism the downfall of the environment." (Id. 44, Ex. 11.)

- On March 7, 2017, Defendant messaged her sister that Vault 7[9] was "so awesome" and that it had "crippled the program." When her sister asked, "So you're on Assange's side," Defendant responded, "Yes. And Snowden." (Id. at 45, Ex. 12.)

- Defendant wrote notes describing how to download and install Tor[10] on its most secure setting; researched how to swap SIM cards on her phone; researched burner email accounts (e.g., slippery.email); and wrote down the URL for a burner email account. (Id. at 32-36.)

---

[9] Vault 7 is Wikileak's alleged compromise of classified government information. (Detention Hr'g Tr., Sept. 29, 2017, at 45.)

[10] The Tor network "is a method in which someone can access the internet -- not only the internet, but also the deeper, dark web on a completely anonymous level." (Detention Hr'g Tr., Sept. 29, 2017, at 34.) The Tor network was installed on a computer in Defendant's home on February 1, 2017, several days after Defendant was hired by Pluribus International and ten days prior to her start date. (Id. at 34; Tr. of Interview, at 08144.)

- On the note about the burner email account, there is "specific identifying information related to foreign intelligence targets associated with terrorism activity being followed by the U.S. Government as part of its national security mission." (Id. at 39-40.)

The first point to take from this evidence is that the use of the word "hate" by the Magistrate Judge was not of his choosing, but was the word that Defendant herself used in her message to her sister. "Hate" is also an apt word to describe a person's emotion that noted she would like to burn the White House down. And while Defendant, through the testimony of her sister, would pass this off as "hyperbole" (Detention Hr'g Tr., Sept. 29, 2017, at 104), the conclusion that Defendant hates America is justifiable. Also, while Defendant offered other non-nefarious reasons that a person may research TOR, burner email accounts, and SIM cards, Special Agent Garrick testified that "taken into its totality, it appears as though it's a covert communications package or could be one. . . . [It] is a way in which an individual can communicate anonymously with another." (Id. at 36.) The credit that the Magistrate Judge and this Court give to the agent's testimony, over Defendant's proffer that there are benign reasons for each of these acts taken alone, is reasonable, especially in light of evidence that Defendant researched ways to send information to news outlets anonymously and accessed classified information outside of her job duties. In short,

12

Defendant attacks the Magistrate Judge's reasonable conclusions from the evidence as "sweeping" and "unsupported" (Def.'s Appeal Br. at 9), yet taking all the evidence in its totality, the Court finds the Magistrate Judge's Detention Order to be sustainable and indeed, correct in its ultimate ruling.[11]

In conclusion, the aforementioned evidence shows a person who sought out employment in a classified position with the intent to anonymously share information with news outlets and to cover her tracks while doing so. Defendant argues that she had a legitimate interest in the Middle East and religion, given her background and education. She also has strong humanitarian and environmental bents, as well as an interesting sense of humor, that can explain some of her comments. But Defendant's gloss on the evidence, painted primarily through the testimony of her sister, is but one view of the story. Certainly, the Magistrate Judge and now this Court are free to reject Defendant's gloss-the minimalization of her admitted behavior-and accept the reasonable inference

---

[11]  While Defendant quibbles with the Magistrate Judge's characterization of Defendant as an admirer of Snowden and Assange, her comments to her sister endorse the conduct of these men. No matter the word choice, the point to be taken from the evidence is that Defendant condoned divulging classified information as she was "on their side." What the Magistrate Judge did not do in his Detention Order, contrary to Defendant's assertion, was equate Defendant's conduct to the "extreme conduct" of Snowden and Assange. (See Def.'s Appeal Br., at 2.)

from the evidence that Defendant's past conduct and state of mind are of serious concern.

D.   Nature and Seriousness of Danger Posed by Release

Having found that Defendant may have accepted a position with the NSA with intentions to leak information to news outlets, it is not a leap to find Defendant's potential release troubling.   The classified document she printed and the thumb drive she inserted while in the employ of the Air Force are unaccounted for.   Further, while the Government has not been able to conclude that Defendant has or had in her possession other classified documents, it has not concluded that she has not had further access to classified information. (Detention Hr'g Tr., Sept. 29, 2017, at 91.)   Given the uncertainty with respect to Defendant's level of knowledge or possession of classified information, together with evidence that she planned to anonymously release information to online news outlets and that she has antipathy toward the United States, the Court finds that releasing Defendant prior to trial would pose a danger to the community, particularly to the national security.

As discussed, the statutory factors for consideration each weigh in favor of the Government.   Additionally, the Government has presented other significant evidence relative to Defendant's risk of flight.   As mentioned, Defendant has few ties to this community, she has shown a strong intent to

14

live and work abroad, and she has demonstrated an interest in matters of the Taliban. She even researched airline flights to Kurdistan and Erbil and work visas in Afghanistan. This desire to live abroad is no doubt quickened by facing a felony charge brought by United States of America. Further, the Court finds that Defendant's fluency in Farsi, Dari, and Pashto would enable her to live and sustain herself in many Middle Eastern countries, and the $30,000 in her bank account will provide her with a start. Finally, just prior to her arrest, Defendant demonstrated her propensity for travel with a three-day solo trip to Belize. This evidence takes the chances of Defendant fleeing the jurisdiction of this Court beyond the mere theoretical and into the realm of probable. Indeed, the Court finds by a preponderance of the evidence that Defendant is a serious flight risk.

Defendant complains that the Magistrate Judge did not discuss, and therefore did not consider, whether the proposed conditions on her release would reasonably assure her appearance. The Court, however, need not enunciate every consideration in its Order. It suffices that this Court has considered the proposed conditions (for instance, the surrender of her passport, the posting of a property bond, and her agreement to wear a monitoring bracelet) and reasonably concludes that, based upon evidence that Defendant does not wish to be in America, may even wish to cause harm to national

15

security, and has the means to live abroad, Defendant will flee despite these conditions and assurances.  Moreover, Defendant's promises to remain in the county, wear a monitoring bracelet, and refrain from internet usage and contact with the media[12] do not adequately protect against potential further unauthorized disclosures.  Classified information cannot be retrieved or un-disclosed once it is released, so the potential of harm to national security is too great a risk to place upon the promises of this Defendant.[13]

### III.  CONCLUSION

Upon a *de novo* review of the record, the Court concludes that the Magistrate Judge did not err in ordering Defendant Reality Leigh Winner detained pending trial.  While Defendant urges this Court to adopt its view of the evidence, indeed painting a very different picture of Defendant, the Court cannot ignore another reasonable and supported picture of

---

[12] The Government states in a footnote that Defendant had put a member of the media on her jail visitor list and that this visitor came to see Defendant in jail on October 14, 2017.  While the jail terminated the visit, this encounter took place just a few days prior to Defendant filing her appeal.  (Gov't Br. in Opp'n, Doc. 131, at 18 n.7.)

[13] See King, 849 F.2d at 487 n.2 (explaining that the Senate Judiciary Committee intended a broad construction of "danger to the community" to encompass the risk that the defendant may engage in criminal activity to the detriment of the community (quoting the Report of the Senate Committee on the Judiciary, S. Rep. No. 98-225, 98th Cong., 2d Sess. (1984))).

Defendant. Through its considered view of the evidence, the Court finds by a preponderance of the evidence that Defendant is a serious flight risk and no condition or combination of conditions will reasonably assure the safety of the community (particularly national security) or the appearance of Defendant as required. Accordingly, the Court **DENIES** Defendant's appeal (doc. 128) and **AFFIRMS** the Magistrate Judge's Detention Order of October 5, 2017.

**ORDER ENTERED** at Augusta, Georgia, this ___27th___ day of November, 2017.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

# 315

# Minute Entry re Change of Plea

# United States District Court

## SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

## CHANGE OF PLEA/ENTRY OF PLEA MINUTES

Case No. **CR117-034**

United States of America

vs.

**REALITY LEIGH WINNER / 26**

**Bobby L. Christine, Jennifer Solari**

U. S. Attorney

**Joe D. Whitley, John C. Bell, Jr.**

_____

Defendant/Age

Attorney for Defendant

- [✓] Plea agreement  **(Received).**    [✓] Defendant Sworn    [ ] Counsel Waived.
- [ ] Plea agreement previously filed.
- [ ] Arraigned and plead _____ to count(s) _____ .
- [✓] Plea of not guilty withdrawn and plea of _____ **Guilty** _____ entered as to count(s)

_____ **One** _____ of the indictment.        **FBI Sp. Agent Justin Garrick**

- [✓] Factual basis **Established.  Oral.   Plea Accepted** Witness for factual basis _____ .
- [✓] Adjudication of guilt   **Made.**
- [✓] Referred to probation office for pre-sentence investigation **Yes.**
- [✓] Sentencing Scheduled for _____ **a later date** _____ at _____ .
- [ ] Bond Continued   ___   Bond modified to _____ .
-    Bond set at _____   _____
- [✓] Bond not made defendant in jail.
- [✓] Defendant remanded to custody of United States Marshal.

1002- 1045 am

| | |
|---|---|
| Honorable **J. Randal Hall, U. S. District Court Judge** | Date **June 26, 2018** |
| Court Reporter     **Lisa Davenport** | Probation Officer **Chris Ingalls/Craig Dallas** |
| Courtroom Deputy Clerk   **Lisa Widener** | U.S. Marshal **Tim Keen/Mike Brant** |

# 316

# Change of Plea

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

U.S. DISTRICT COURT
Southern District of Georgia
Filed in Open Court

_____ 10·45 ₢ M.

06|26|   20 18

_Deputy Clerk_

CHANGE OF PLEA IN   USA V. REALITY LEIGH WINNER

CRIMINAL NO. __CR117-034__ AT __AUGUSTA, GEORGIA__

_____ .

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

WITH CONSENT OF THE COURT, THE

DEFENDANT __REALITY LEIGH WINNER__ , HAVING

PREVIOUSLY ENTERED A PLEA OF __NOT GUILTY__ ,

HEREBY WITHDRAWS THAT PLEA AND ENTERS A PLEA

OF __GUILTY__ TO __COUNT ONE__

IN THE INDICTMENT.

THIS _26th_ DAY OF _____JUNE_____ , 2018.

NOLLE PROSSE AS

_____
REALITY LEIGH WINNER   DEFENDANT

TO COUNT(S) _____

_____
COUNSEL FOR DEFENDANT
JOE D. WHITLEY AND JOHN C. BELL, JR

# 323

# Minute Entry re Sentencing

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

SENTENCING MINUTES

CRIMINAL CASE NO. CR 117-034          DATE: 08/23/2018

USA V. Reality Leigh Winner          TIME: 10:01 am to 10:43 am

JUDGE: Honorable J. Randal Hall          COURTROOM DEPUTY: Lisa Widener

COURT REPORTER: Lisa Davenport

ATTORNEY(S) FOR THE GOVERNMENT:          ATTORNEY(S) FOR THE DEFENDANT:

Bobby Christine, Jennifer Solari,          Joe Whitley, Matthew Chester,
Julie Edelstein, David Aaron          John Bell, Titus Nichols,
PROBATION OFFICER:          Brett Switzer, Thomas Barnard
          DEFENDANT SENTENCED ON COUNTS(S):

Craig Dallas / Chris Ingalls          One

---

**Y** PSI reviewed in full          Custody: 63 months

**N** Objections to factual basis

**Y** Objections to Guideline Calculations (1)          Supervised Release: 3 years

**N** Changes ordered _____

          **Y** Standard and Special Conditions of Release
          to be explained by USPO and a written copy to be
**N** Factual Witnesses _____          provided to defendant

**Y** Statement by Counsel          Probation _____

**Y** Statement by Defendant          Fine $ —0—

**Y** Appeal rights of defendant explained / (waived)          Restitution $ —

Facility requested/recommended:          Special Assessment $ 100

FMC Carswell TX          Community Service: 100 hours within
          12 months of release

Defendant remanded **Y**          Dismiss Count(s) _____

Voluntary surrender —          Plea agreement accepted **Y**

Departure from guidelines variance          Upward —   Downward —

# 341

# Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582 and Request for Oral Argument

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | |
| **v.** | * | **NO. 1:17-CR-00034** |
| | * | |
| **REALITY LEIGH WINNER** | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582 AND REQUEST FOR ORAL ARGUMENT

Defendant Reality Leigh Winner ("Reality" or the "Defendant") files this Motion for Compassionate Relief Pursuant to 18 U.S.C. § 3582 and Request for Oral Argument and respectfully asks this Court for an order releasing her based on the "extraordinary and compelling reasons" pursuant to the recently amended 18 U.S.C. § 3582(c)(1)(A)(i). Due to the exigent nature of this Motion and the various observations and limitations explained by this Honorable Court in its recent Standing Orders (MC 120-4 and MC 120-5) issued by Chief Judge Randall Hall, Reality also respectfully requests video or telephonic oral argument on this motion as soon as possible after a reasonable opportunity for the United States of America to by heard. Counsel for Defendant conferred with DOJ prior to the filing of this motion. DOJ stated they would take a position on the motion after reviewing it and seeking other information. Defendant has filed a supporting brief contemporaneously with this motion.

Respectfully submitted,

BY:   */s/ Joe D. Whitley*
Joe D. Whitley (Bar No. 756150)
Admitted *Pro Hac Vice*
Brett A. Switzer (Bar No. 554141)

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Rd., NE Suite 1600
Atlanta, GA  30326
(404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

Matthew S. Chester (La. Bar No. 36411)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
201 St. Charles Ave., Suite 3600
New Orleans, LA  70170
(504) 566-5200
MChester@bakerdonelson.com

Thomas H. Barnard (Az. Bar No. 020982)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
100 Light Street.
Baltimore, MD  21202
(410) 685-1120
TBarnard@bakerdonelson.com

**ATTORNEYS FOR DEFENDANT REALITY LEIGH WINNER**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record for all parties.

/s/ Joe D. Whitley
Joe D. Whitley

# 341-1

# Brief in Support of Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582 and Request for Oral Argument

# (Unredacted Copy Filed Under Seal)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | |
| **v.** | * | **NO. 1:17-CR-00034** |
| | * | |
| **REALITY LEIGH WINNER** | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## BRIEF IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582

Defendant Reality Leigh Winner ("Reality" or the "Defendant") respectfully moves this Court for an order releasing her based on the "extraordinary and compelling reasons" discussed below, pursuant to the recently amended 18 U.S.C. § 3582(c)(1)(A)(i). Due to the exigent nature of this Motion and the various observations and limitations explained by this Honorable Court in its recent Standing Orders (MC 120-4 and MC 120-5) issued by Chief Judge Randall Hall, Reality also respectfully requests that this Court address the instant Motion on an expedited basis and, if needed, counsel is available to participate in video or telephonic oral argument on this Motion after a reasonable opportunity for the United States of America to by heard.

## INTRODUCTION

We are in the middle an unprecedented pandemic. American life as we know it has slowed to a near-halt, and COVID-19 has largely shut down the entire world. On March 13, 2020, President Trump declared a National Emergency concerning the novel COVID-19 disease outbreak,[1] and on the same day, Governor Abbott declared a State of Disaster in Texas – where

---

[1] *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, The White House (Mar. 13, 2020), at

Reality is incarcerated -- due to COVID-19.[2] It is unclear when we will be able to return to any

sort of normalcy.  And we have been told the worst is yet to come. The disease could potentially

infect and kill anywhere from 200,000 to 1.7 million Americans, depending on the intervention

and precautions each municipality and individual takes.[3] As members of the general public, we are

instructed to keep a minimum six-foot distance from any other human being and practice social

isolation to prevent the spread of a highly contagious disease for which there is no approved cure,

treatment, or vaccine to prevent.  This is difficult for those of us who enjoy general freedoms; but

for those incarcerated, like Reality, it is near impossible, as COVID-19 infections, as

acknowledged by the Department of Justice, continue to run rampant in federal prison facilities

where the conditions are not conducive to the type of "social distancing," mask wearing, or

isolation that has been mandated by the White House, the Centers for Disease Control, or other

governmental authorities.[4]   In the end, Reality signed up to serve her sentence under the care,

custody, and safety of the Bureau of Prisons – she did not agree (nor did this Court require her) to

be confined to an institution that was caught unprepared for this virus (having, among other things,

---

https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[2] *Governor Abbott Declares State of Disaster In Texas Due To COVID-19*, Office of the Texas Governor (Mar. 13, 2020), at https://gov.texas.gov/news/post/governor-abbott-declares-state-of-disaster-in-texas-due-to-covid-19.

[3]  Sheri Fink, *Worst-Case Estimates for U.S. Coronavirus Deaths*, The N.Y. Times (Mar. 18, 2020), at https://www.nytimes.com/2020/03/13/us/coronavirus-deaths-estimate.html; *see also* Bobby Allyn, *Fauci Estimates That 100,000 To 200,000 Americans Could Die From The Coronavirus*, National Public Radio (Mar. 29, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/03/29/823517467/fauci-estimates-that-100-000-to-200-000-americans-could-die-from-the-coronavirus, for the original proposition that the death toll from COVID-19 would be much higher than initially anticipated.

[4] Richard Harris, *White House Announces New Social Distancing Guidelines Around Coronavirus*, National Public Radio (Mar. 16, 2020), at https://www.npr.org/2020/03/16/816658125/white-house-announces-new-social-distancing-guidelines-around-coronavirus; *Recommendation Regarding the Use of Cloth Face Coverings, Especially in Areas of Significant Community-Based Transmission*, Centers for Disease Control and Prevention (last reviewed Apr. 3, 2020), at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html.

run out of hand sanitizer), placed in close quarters with other inmates in a facility that has already been infested by this deadly and contagious disease, literally putting her health and life in danger.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 7, 2017, Reality was indicted for leaking a singular report, classified at the Top Secret / SCI level, and containing national defense information to a news outlet in violation of 18 U.S.C. § 793(e), a section of the "Espionage Act."[5]  The Government returned a superseding indictment alleging the same factual conduct and legal violation on September 6, 2017.[6]  Unlike almost every Espionage Act defendant before her, Reality was detained before trial,[7] and nine months after the return of the superseding indictment, she pleaded guilty to the single count charged against her.[8]  To be clear, the Government presented neither an allegation of nor a shred of evidence of actual spying or treason committed by Reality.

This Honorable Court sentenced Reality on August 23, 2018.[9]  Accepting the parties' Rule 11(c)(1)(C) plea agreement, this Honorable Court approved a sixty-three (63) month term of imprisonment, as set forth in the proposed plea agreement.[10]  Under 18 U.S.C. § 3624(b), she will serve approximately 85% of her 63-month sentence – i.e., approximately fifty four (54) months – assuming she receives full credit for "good time" from BOP.  She was 26 years old when she was sentenced, and at that time, COVID-19 did not exist.

At sentencing, Reality acknowledged and took responsibility for leaking a single document that contained national defense information, a single time, to a single news outlet.[11]  As the Court

---

[5] *See* ECF No. 13.
[6] *See* ECF No. 72.
[7] *See* ECF Nos. 27, 115, 163.
[8] *See* ECF Nos. 315, 316.
[9] *See* ECF No. 323.
[10] *Id.*
[11] *See* ECF No. 328 at pp.13-14.

is aware, this was not a Wikileaks-like "dump" of massive amounts of sensitive data, nor was it a disclosure of military secrets to a foreign intelligence service.[12]  It was, as Reality has admitted, a naive attempt to "change things," in which she abused her security clearance and ran afoul of federal law -- an act which she acknowledges was criminally wrong.[13]  For her mistake, the Court sentenced Reality to the stipulated sentence of sixty-three (63) months.[14]

As of today's date, Reality has served over thirty-four (34) months of her sentence as of the filing of this motion.  Under 18 U.S.C. § 3624(b), she calculates approximately twenty (20) months remain on her term.  By filing this Motion, Reality respectfully requests she receive relief from the extraordinary circumstances COVID-19 presents under the recent amendments to 18 U.S.C. § 3582(c)(1)(A)(i) via the First Step Act.[15]

On or about April 8, 2020, Reality submitted a written request to the Warden of FMC Carswell in Ft. Worth, Texas, asking that he Petition the Bureau of Prisons ("BOP") for a reduction of her sentence under 18 U.S.C. § 3582(c)(1)(A)(i). As of the date of this filing, to Reality's knowledge, the Warden has not filed a Petition with the BOP on Reality's behalf nor has he responded to Reality's request.

Because of the recent amendments to Section 3582(c)(1)(A)(i), the Court has jurisdiction to consider this request and may reduce Reality's sentence, and indeed, modify it by releasing her and permitting her to finish her sentence on home confinement, for the reasons set forth below.[16] Now, by and through counsel, Reality asks this Court to commute her sentence to home confinement so that she may carry out the balance of her term under the care of her family, and

---

[12] *See id.* at p.10.
[13] *Id.* at p.13-14.
[14] *See* ECF No. 327.
[15] First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018).
[16] *See* P.L. 115-391, 132 Stat. 5194 § 603 (Dec. 21, 2018).

avoid the fate of so many others currently incarcerated in federal prison facilities – including FMC Carswell – that have contracted this contagious and deadly virus.

## ARGUMENT

### A. This Court has Jurisdiction to Decide Whether Extraordinary and Compelling Reasons Exist to Grant Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

Federal courts may reduce a prisoner's sentence under the circumstances outlined in 18 U.S.C. § 3852(c). Substantively, under § 3852(c)(1)(A)(i), a court may reduce a prisoner's sentence "if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."

Procedurally, prior to 2018, only the Director of the BOP could file these kinds of "compassionate-release motions."[17] The First Step Act amended § 3852(c)(1)(A) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive "gatekeeper" role.[18] The amendment to § 3852(c)(1)(A) provided prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the defendant's facility, "whichever is earlier." 18 U.S.C. § 3852(c)(1)(A). These changes gave the "district judge . . . the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to the

---

[17] *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019).

[18] S*ee also United States v. Redd*, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020) ("The First Step Act was passed against the backdrop of documented infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants."); 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement of Senator Cardin, co-sponsor of the First Step Act) ("[T]he bill expands compassionate release . . . and expedites compassionate release applications.").

prisoner's compassionate release request in a timely manner."[19]   The substantive criteria of §
3582(c)(1)(A)(i) remained the same.

As set forth in detail below, and as other district courts across the country have done, this
Court may consider the circumstances of the instant request under the "extraordinary and
compelling" rubric set forth in the applicable statute (rather than the explicitly-enumerated grounds
set forth in the statute), and may further consider Reality's direct request for release (as opposed
to requiring that the motion be filed by the Bureau of Prisons).

### a. The Term "Extraordinary and Compelling" Is Not Limited by Those Explicitly-Listed Reasons Set Forth in the Sentencing Commission's Policy Statement.

Congress never defined the term "extraordinary and compelling reasons" in Section
3852(c), except to state that "[r]ehabilitation . . . alone" does not suffice. 18 U.S.C. § 994(t).[20]
Rather, Congress directed the Sentencing Commission to define the term.[21] The Commission did
so prior to the passage of the First Step Act, but it has not since updated the policy statement.[22]

Presently, the Commission is unable to update the Sentencing Guidelines because it
currently lacks enough appointed commissioners to take this action.[23]   However, while the
application notes cite to health, age, and familial reasons as "extraordinary and compelling"
grounds justifying release, the Commission also made clear that it is impossible to package all

---

[19] *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 3, 2020).

[20] "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 18 U.S.C. § 994(t).

[21] *Id.*

[22] *See* U.S.S.G. §1B1.13 cmt. n.1(A)-(D).

[23] *See, e.g.*, *United States v. Maumau*, No. 08-cr-00785, 2020 WL 806121, at *1 n.3 (Feb. 18, 2020).

"extraordinary and compelling" circumstances into neat categories and thus created a non-exclusive catchall that recognized that other "compelling reasons" could exist.[24]

While a small number of courts (including this one) have concluded that the Sentencing Commission's policy statement prevents district courts from considering any "extraordinary and compelling reasons" outside of those expressly listed the policy statement,[25] most district courts have concluded the opposite.[26]   Indeed, the cases which this Court previously relied on "rest upon a faulty premise that the First Step Act somehow rendered the Sentencing Commission's policy statement an inappropriate expression of policy" and thus, this Court's prior view is clearly out of step with the majority of recently-issued American First Step Act jurisprudence.[27] Therefore, while the policy statement may provide "helpful guidance," it does not limit the Court's independent assessment of whether "extraordinary and compelling reasons" exist under § 3582(c)(1)(A)(i).[28] And, as courts have recently held from across the country, and as further detailed below, the global

---

[24] *See United States v. Urkevich*, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) (noting that §1B1.13 never "suggests that [its] list [of criteria] is exclusive"); *United States v. Beck*, --- F. Supp. 3d ----, 2019 WL 2716505, at *8 (M.D.N.C. June 28, 2019) ("Read as a whole, the application notes suggest a flexible approach . . . [and] recognize that the examples listed in the application note do not capture all extraordinary and compelling circumstances.").

[25] *See, e.g., United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019); *United States v. Lynn,* No. 89-0072-WS, 2019 WL 3805349, at *2-*5 (S.D. Ala. Aug. 12, 2019).

[26] *United States v. Beck*, --- F. Supp. 3d ---- , No. 13-cr-186-6, 2019 WL 2716505 (M.D.N.C. June 28, 2019); *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019); *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086 (D. Me. July 11, 2019); *United States v. Redd*, No. 1:97-cr-00006-AJT, 2020 WL 1248493 (E.D. Va. Mar. 16, 2020); *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020); *United States v. Maumau*, No. 08-cr-00785, 2020 WL 806121 (Feb. 18, 2020).

[27] *See Willingham*, 2019 WL 6733028, at *2.

[28] *See Beck*, 2019 WL 2716505, at *6; *Fox*, 2019 WL 3046086, at *3 ("I agree with the courts that have said that the Commission's existing policy statement provides helpful guidance . . . [but] is not ultimately conclusive given the statutory change.").

pandemic of COVID-19 facing the world clearly constitutes a "extraordinary and compelling" reason to grant release.[29]

### b. This Court Can Consider This Request From Reality Under the Sentencing Commission's Policy Statement in Light of the First Step Act.

In earlier times, a motion for compassionate release could only reach the court through a motion made by the BOP. Indeed, the minority cases previously followed by this Court specifically require that the BOP (and not the inmate) file the request.[30] The First Step Act, however, significantly altered the landscape of compassionate-release motions and, consistent with more recent jurisprudence, permits the Court to consider inmate-filed compassionate release motions.

The rationale for this shift in jurisprudence is easy to understand, is consistent with the legislative intent and purpose of the First Step Act, and comports with fundamental fairness. In providing the catchall provision, the Commission recognized it may be impossible to predict what reasons may qualify as "extraordinary and compelling." Rather than attempt to make a definitive prediction, the Commission covered its bases by ensuring that *every motion* to reach the court would have an opportunity to be assessed under the flexible catchall provision. At the time the Commission wrote the catchall provision's BOP-focused language,[31] it accomplished that task, because prior thereto (i.e., pre-Amendment), every motion to reach the court necessarily had to be filed and approved by the BOP.

The First Step Act explicitly allows inmates to file compassionate-release motions—under the 30-day lapse provision—when their warden *never* responds to their request for relief. Thus, Congress specifically envisioned situations where inmates could file direct motions in cases where

---

[29] *See infra*, Part C.
[30] *Willingham*, 2019 WL 6733028, at *2.
[31] *See* U.S.S.G. §1B1.13 cmt. n.1(D) (providing for relief if, "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).").

8

nobody in the BOP *ever decided* whether the motion qualified for relief under the catchall provision that the Commission originally sought to apply to *all* motions. It would be a strange remedy if Congress intended that prisoners whose wardens failed to respond in such a situation could only take advantage of the thirty-day lapse provision by accepting a pared-down standard of review that omitted the flexible catchall standard.

Under the minority view previously accepted by this Court, that is exactly what would happen: prisoners in this situation would never have the chance for the BOP to assess their claim under the catchall provision and would never get the chance for this kind of flexible review in this district court, since under the minority view this Court would be constrained to the specific criteria in subsections (A)-(C) of the policy statement.[32]  This would have the perverse effect of *penalizing* prisoners who take advantage of the First Step Act's fast-track procedures and rewarding prisoners who endure the BOP-related delay, which is precisely what the Act sought to alleviate.  Indeed, it would discriminate against prisoners like Reality who happen to be young, single, and childless (in other words, those moving under the "catchall provision"), but nonetheless, face extraordinary and compelling circumstances warranting compassionate release. For reference, the COVID-19 virus does not stop to inquire as to Reality's age, relationship status, or desire for children before invading her body; it does not discriminate on any grounds at all.

The minority view, of course, would be antithetical to the First Step Act. The First Step Act—and the critical 30-day lapse route it provided—directly responded to a compassionate-release system so plagued by delay that prisoners sometimes died while waiting for the BOP to

---

[32] The minority bases this view on the BOP-focused language of the policy statement's catchall provision. *See* U.S.S.G. §1B1.13 cmt. n.1(D) (asking only the BOP Director to determine if other extraordinary and compelling circumstances exist).

decide.[33]  Under the minority view, Congress would have created a two-tiered system that poses a "catch-22" to prisoners with unresponsive wardens: (1) opt for quicker relief at the cost of a disadvantageous standard with no catchall; or (2) endure delay—and, possibly, complete inaction—to retain a more flexible standard. Congress sought to help, not hinder, these sorts of prisoners, and clearly did not intend to create this outcome. Nothing in the text of the old policy statement calls for it, since that statement expressly limits itself to motions filed by the BOP and was written before this situation was even possible to envision.

Continuing to subscribe to the minority view, then, would undermine the purpose of the First Step Act and create an inconsistent and unintended definition of the term "extraordinary and compelling."  Because the Sentencing Commission has not yet been able to issue a policy statement addressing post-First Step Act procedures, it certainly has not mandated that courts take such an approach.  Moreover, there remains a procedural gap that the Sentencing Commission—currently lacking a quorum and unable to act—has not yet had the chance to fill.  Importantly, nothing in § 3852(c)(1)(A)(i) requires courts to sit on their hands in situations like these. Rather, the statute's text directly instructs courts to "find that" extraordinary circumstances exist.

Of course, the Sentencing Commission's policy statement remains informative.[34] However, it should not constrain the Court.  In fact, courts have held that, in view of the Sentencing

---

[33] *Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice); *see also* 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement of Senator Cardin, co-sponsor of First Step Act) ("[T]he bill expands compassionate release . . . and expedites compassionate release applications.").

[34] *See, e.g.*, *Fox*, 2019 WL 3046086, at *3 ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive . . . ."); *Beck*, 2019 WL 2716505, at *7 ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment . . . ."); *United States v. Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [defendant] has raised an extraordinary and compelling

Commission's inaction in the face of the First Step Act, district courts <u>are not</u> limited to the express grounds contained in the old policy statements previously promulgated:

> There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act. By its terms, the old policy statement applies to motions filed by the [BOP] Director and makes no mention of motions filed by defendants. . . . The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants.[35]

The introductory sentence of §1B1.13, "*[u]pon motion of the Director of the [BOP . . . the court may reduce a term of imprisonment*," limits the policy statement's scope to a procedural scheme exclusively involving the BOP that does not exist anymore.  And comment 4 of §1B1.13's Application Note expressly states that "[a] reduction *under this policy statement may be granted only upon motion by the Director of the [BOP]*."

Accordingly, by its own terms, the scope of the old policy statement is clearly outdated and, at the very least, does not apply to the entire field of post-First Step Act motions.  In other words, for prisoner-filed motions, there is a gap left open that no "applicable" policy statement has addressed.  Because Congress intended for this Court to be able to determine whether extraordinary and compelling circumstances exist to reduce Reality's sentence, this Court may consider her direct request (as opposed to a request from the BOP).

**B. Reality is Not Required to Exhaust Her Administrative Remedies Before Bringing this Motion Under 18 U.S.C. § 3582(c).**

**a.   The Statutory Language of 18 U.S.C. § 3582(c) Does Not Mandate Exhaustion.**

The Supreme Court has held that a court's power to create exceptions to a statutory exhaustion requirement depends on the language of the statute.[36]  "[A] statutory exhaustion

---

reason for compassionate release . . . [but §1B1.13's policy statement] remain[s] as helpful guidance to courts . . . .").

[35] *Beck*, --- F. Supp. 3d ----, 2019 WL 2716505, at *5 (citations omitted).

[36] *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).

provision stands on a different footing [from a judicially created one]. There, Congress sets the rules — and courts have a role in creating exceptions only if Congress wants them to."[37] In the context of cases under the Prison Litigation Reform Act of 1995 ("PLRA"), for example, such as *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court ruled that courts do not have the power to create emergency exceptions to the exhaustion requirement where Congress expressly created a mandatory requirement.[38]

The Court reached this conclusion because the PLRA used mandatory language in setting out the administrative remedies exhaustion standard: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such* administrative remedies as are available are exhausted."[39] The "no action shall be brought . . . until" language in the PLRA motivated the Court's ruling in Ross. "Statutory interpretation, as we always say, begins with the text."[40]

"[T]he PLRA's text suggests no limits on an inmate's obligation to exhaust — irrespective of any 'special circumstances.'"[41] Given this mandatory language, the Court concluded "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account."[42] In contrast, the 18 U.S.C. 3582(c)(1)(A) language has nothing akin to the type of mandatory language found by the *Ross* court to be controlling. In fact, the text of the statute simply allows for the passing of time of 30 days, regardless of progress on administrative procedures, before this Court may modify a term of imprisonment. Reality acknowledges 30-days

---

[37] *Id.*

[38] *Id.* at 1856.

[39] *Ross*, 136 S. Ct. at 1856; 42 U.S.C. §1997e(a) (emphasis added).

[40] *Ross*, 136 S. Ct. at 1856 (internal citation omitted).

[41] *Id.*; *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (proper exhaustion of administrative remedies is necessary).

[42] *Id.*

have not passed since she submitted her request to the Warden under 18 U.S.C. § 3582(c)(1)(A). But, based on the statutory language, this passage of time is not a mandatory pre-requisite for bringing this motion. Also, notably, 30 days *have* passed since the COVID-19 outbreak giving rise to this motion, including 30 days since the World Health Organization declared the novel coronavirus outbreak a global pandemic.[43]   Therefore, whether viewed through the prism that administrative exhaustion is not required under the applicable statute, or whether that requirement has been satisfied in light of the passage of 30 days since the declaration of the COVID-19 pandemic, this Motion is timely.

### b.  This District Court has the Discretion to Excuse Exhaustion.

Even still, "[d]istrict courts have discretion to excuse exhaustion…"[44] "Exhaustion may be excused if a litigant can show: (1) that requiring exhaustion will result in irreparable harm; (2) that the administrative remedy is wholly inadequate; or (3) that the administrative body is biased, making recourse to the agency futile."[45]

All three of these exceptions apply here. Requiring exhausting will result in irreparable harm as exigent circumstances exist. Positive cases of COVID-19 have been reported in FMC Carswell and given the extremely contagious nature of the disease, it is only a matter of time before Reality is exposed to it. An administrative remedy would be wholly inadequate because Reality would never receive it in time. Finally, Congress's enactment of the First Step Act and decision

---

[43] *See* WHO Director-General's Opening Remarks at the Media Briefing on COVID-19, Mar. 11, 2020, available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last visited Apr. 10, 2020).

[44] *Georgia by & through Georgia Vocational Rehab. Agency v. United States by & through Shanahan*, 398 F. Supp. 3d 1330, 1343 (S.D. Ga. 2019) (internal citation omitted) (allowing plaintiff to bring claim even though plaintiff failed to exhaust administrative remedies under federal statute).

[45] *Id.* (internal citation omitted); *see also McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992) (But [even] where Congress has not clearly required exhaustion," a court may still impose it as an act of "sound judicial discretion.).

to give prisoners the ability to petition Courts directly is evidence that a remedy from the BOP is frequently inadequate and futile.[46]

The provision allowing prisoners to bring motions under § 3582(c) was added by the First Step Act in order to "increas[e] the use and transparency of compassionate release."[47] Requiring exhaustion generally furthers that purpose, because the BOP is best situated to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release.[48] In Reality's case, however, administrative exhaustion would defeat, not further, the policies underlying § 3582(c).

Here, delaying release amounts to denying relief altogether. Pursuing the administrative process would be a futile endeavor; Reality is unlikely to receive a final decision from the BOP, and certainly will not see 30 days lapse before COVID-19 becomes, if it has already not become, rampant in her facility. Remaining incarcerated for even a few weeks increases the risk that the other underlying conditions from which she suffers, discussed *infra*, will be aggravated and cause her greater harm.  Requiring exhaustion, therefore, would be directly contrary to the purpose of identifying and releasing individuals whose circumstances are "extraordinary and compelling." Accordingly, this Court should hold that Reality's underlying health issues, combined with the high risk of contracting COVID-19, justifies waiver of the exhaustion requirement.

---

[46] *See also Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exists where "the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal quotation marks, citation, and alterations omitted)); *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992) ("[I]f the delay attending exhaustion would subject claimants to deteriorating health, . . . then waiver may be appropriate."); *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even . . . death").
[47] 132 Stat. 5239.
[48] 18 U.S.C. § 3582(c)(1)(A)(i).

14

**C. Extraordinary and Compelling Circumstances Warrant a Reduction to Reality's Sentence.**

Reality's circumstances—particularly the outbreak of COVID-19 and her history of respiratory illnesses as well as eating disorders place her at a high risk should she contract the disease—present "extraordinary and compelling reasons" to reduce her sentence. Black's Law Dictionary defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common."[49] It defines "compelling need" as a "need so great that irreparable harm or injustice would result if it is not met." [50]

Reality has shown extraordinary and compelling reasons to reduce her sentence. First, as referenced in the materials previously provided to the Court at sentencing, she suffers from bulimia nervosa and a propensity for respiratory illnesses that render her especially vulnerable to COVID-19. Second, prison – a population dense petri dish already infested with this disease – is a particularly dangerous place for Reality at this moment. Neither of these reasons alone is extraordinary and compelling. Taken together, however, they constitute reasons for reducing her sentence "[b]eyond what is usual, customary, regular, or common," and reasons "so great that irreparable harm or injustice would result if [the relief] is not [granted]."[51]

**a. Reality's Health Conditions Make Her Especially Vulnerable to COVID-19.**

On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[52] Reality suffers from depression and bulimia nervosa.[53]  She copes with stress and

---

[49] Extraordinary, Black's Law Dictionary (11th ed. 2019).
[50] Compelling Need, Black's Law Dictionary (11th ed. 2019).
[51] Extraordinary, Black's Law Dictionary (11th ed. 2019); Compelling Need, Black's Law Dictionary (11th ed. 2019).
[52] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020), at     https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.
[53] Taylor Barnes, Reality Winner Battles an Eating Disorder Behind Bars, (Nov 24, 2018), at https://theintercept.com/2018/11/24/reality-winner-prison-eating-disorder/.

uncertainty, such as incarceration and the invasion of a novel disease, by binge eating, regurgitation, excessive exercise, or any combination thereof.  For example, Reality will push herself to participate in "push up challenges" or run laps barefoot around a prison yard.[54]

> People with eating disorders have a high risk of relapsing or worsening the severity of their disorder, due to infection fears and the effect of the quarantine … Infection fears tend to increase the feeling of not being in control that, in people with eating disorders, is often managed with an increase of dietary restrictions or other extreme weight control behaviors or with binge-eating episodes.[55]

Reality's routines allow her to cope and hold the things she is unable to control together, which is monumental to her survival in an environment where she controls nothing, like prison. The COVID-19 outbreak only adds another element of her life she cannot control and threatens her overall health.[56]

Moreover, ███████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████[57]  Indeed, "many people with eating disorders are immunocompromised, putting them squarely in the group of people for whom COVID-19, the disease caused by the coronavirus, could be most dangerous."[58]  When paired with an unknown

---

[54] *Id.*

[55] Riccardo Dalle Grave M.D., *Coronavirus Disease 2019 and Eating Disorders*, (Mar. 21, 2020), at https://www.psychologytoday.com/us/blog/eating-disorders-the-facts/202003/coronavirus-disease-2019-and-eating-disorders.

[56] *See, e.g.*, Addy Baird, The Coronavirus Outbreak Is "Like A Nightmare" For People With Eating Disorders, (Mar. 20, 2020), at https://www.buzzfeednews.com/article/addybaird/coronavirus-quarantines-eating-disorders-recovery.

[57] *See* Psychological Evaluation of Reality Winner by Adrienne Davis, dated July 1, 2018, attached hereto as **Exhibit 1**.

[58] *See* Fn. 56, *supra.*

virus, Reality's illness could spiral from a daily struggle that merely makes it difficult to get out of bed in the morning to a fully compromising situation from which she may never recover.

Furthermore, the federal prison system is currently under a "modified lockdown."[59] Inmates are currently locked in their cells or quarters with their movement and group gatherings "significantly decrease[d.]"[60]   Normally, it is these times outside of her cell when Reality can engage in the



[61] Without these routines, Reality's health is in peril. Reality has stated:

[62]                 [63]   Indeed, the

people who know Reality the best attest to the importance of exercise for her self-worth and validation.[64]   Reality's depleted mental and physical states -- with no way to exercise any coping mechanism for the stress of her own underlying conditions and now the added stress of battling a novel virus present in her facility -- make her particularly susceptible to COVID-19.

### b.   Reality Cannot Adequately Protect Herself Against Infection in Prison.

Given Reality's vulnerability to COVID-19, prison is a particularly dangerous place for her. Inmates are confined in close quarters, eat meals in large dining halls, and use communal showers and recreational facilities. These inmates are overseen by BOP employees who travel

---

[59]   Courtney Buble, *Federal Prison System Goes Into 'Modified Lockdown'*, *Government Executive*, (Apr. 1, 2020), at https://www.govexec.com/management/2020/04/federal-prison-system-goes-modified-lockdown/164286/.

[60]   *Id.*

[61]   *See* **Ex. 1**.

[62]   *Id.*

[63]   *Id.*

[64]   *See* Letter of Support from Brittany Winner, dated July 31, 2018, attached hereto as **Exhibit 2** ("[H]er behavior is an attempt to exert control in her life where she has none."); *see also* Letter of Support from Billie Davis-Winner, dated July 29, 2018, attached hereto as **Exhibit 3** (Reality also suffers from depression, anxiety, and an eating disorder…I worry about her mental health daily, and am concerned about the stress she is under….").

back and forth between the facility and the community, potentially bringing the coronavirus inside

the prison.  BOP facilities also continue to transfer inmates in and out, increasing the chances for

exposure.[65] As a result, experts and BOP employees regard the federal prisons as ripe breeding

ground for coronavirus.[66] In China, officials have confirmed the coronavirus spreading at a rapid

pace in Chinese prisons, counting 500 cases.[67] Indeed, in the past week, at least one inmate has

texted positive at Reality's facility,[68] and, separate from concerns over the amount of food

available for inmates when most stores are rapidly running out of sustenance, she reports FMC

Carswell has recently run out of hand sanitizer, a basic need in times of rapidly-spreading

infectious diseases. A prison inmate like Reality cannot "shelter-in-place" and avoid contact with

others.  Instead, she is stuck in a densely populated breeding ground for disease.

As of April 9, 2020, there are 283 federal inmates and 125 BOP staff who have confirmed

positive test results for COVID-19 nationwide.  Only 14 inmates and 7 staff have recovered.  There

have been 8 federal inmate deaths attributed to COVID-19 disease. FCI Oakdale, where five

inmates have already died from the coronavirus, is a case study in the disease's rapid spread.[69]

Now that the virus is at FMC Carswell, it is only a matter of time before the virus infiltrates the

---

[65] *See* Keegan Hamilton, *Sick Staff, Inmate Transfers, and No Tests: How the U.S. Is Failing Federal Inmates as Coronavirus Hits*, *Vice News* (Mar. 24, 2020) at https://www.vice.com/en_us/article/jge4vg/sick-staff-inmate-transfers-and-no-tests-how-the-us-is-failing-federal-inmates-as-coronavirus-hits.

[66] *Id.* ("Federal prison guards warn that a coronavirus outbreak is looming and could be catastrophic, causing 'mass chaos' in a correctional system responsible for more than 175,000 inmates across the United States.").

[67] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials, Business Insider* (Feb. 21, 2020) at https://www.businessinsider.com/500-coronavirus-cases-reported-in-jails-in-china-2020-2.

[68] *See* Federal Bureau of Prisons, COVID-19 Cases,  https://www.bop.gov/coronavirus/  (last accessed on April 8, 2020).

[69] Sadie Gurman, Zusha Elinson, Deanna Paul, *Coronavirus Puts a Prison Under Siege*, https://www.wsj.com/articles/inside-oakdale-prison-our-sentences-have-turned-into-death-sentences-11586191030 (updated April 6, 2020) (last accessed on April 8, 2020).

prison population like it has done at FCI Butner (44 inmates, 16 staff positive), FCI Danbury (36 inmates, 15 staff positive), FCI Oakdale (36 inmates, 14 staff positive, 5 dead), etc.[70]  These are just the confirmed case numbers reported on the BOP website. Notably, and logically, they are increasing each day as additional test results come in on a delay.

The best chance that Reality has to weather this pandemic is to be released and be permitted to live with her family in rural Texas, where she can appropriately "shelter in place" and avoid interacting with others.  Congress and the Department of Justice are increasingly recognizing the danger of COVID-19 outbreaks in prisons and encouraging steps to release some inmates where appropriate. Indeed, Attorney General William Barr has directly addressed the extreme vulnerability of the men and women in the federal prison system by issuing his March 26, 2020 Memorandum to the Bureau of Prisons, which specifically encourages the Bureau of Prisons to transfer inmates to home confinement, where appropriate.  A true and correct copy of Attorney General William Barr's Memorandum, dated March 26, 2020, is attached hereto as **Exhibit 4**. And on April 6, 2020, he issued a Memorandum to Heads of Department Components and All United States Attorneys, mandating that while resolving pre-trial detention issues, all prosecutors must consider the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic. A true and correct copy of Attorney General William Barr's Memorandum, dated April 6, 2020, is attached hereto as **Exhibit 5**.  The Court can infer from these Memorandums that a deference should be given to home confinement, when possible and when appropriate, as it is here.

---

[70] *See* Federal Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed on April 9, 2020).

### c. Courts are Releasing Prisoners into Home Confinement on Similar Requests.

This is a rapidly developing phenomenon. The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to society for reasons that need no elaboration.  It presents a heightened risk for incarcerated defendants like Ms. Winner who suffer from underlying conditions and compromised immune systems.

Federal district courts around the country are releasing prisoners like Reality into home confinement on similar requests.  Attached hereto as **Composite Exhibit 6** are orders entered in a handful of similar cases within the past ten (10) days, including the cases of Daniel Hernandez (a rapper with gang ties known as Tekashi69), *United States v. Hernandez*, No. 1:18-cr-00834-PAE, ECF No. 451 (S.D.N.Y. Apr. 2, 2020), Jeremy Rodriguez (a drug offender serving a 20-year sentence), *United States v. Rodriguez*, No. 2:03-cr-00271-AB, ECF No. 135 (E.D. Pa. Apr. 1, 2020), Wilson Perez (a conspirator to kidnapping), *United States v. Wilson Perez*, No. 1:17-cr-513-AT, ECF No. 98 (S.D.N.Y. Apr. 1, 2020), and Teresa Gonzalez (a conspirator to wire and mail fraud), *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020).

Federal courts across the Country are being asked to intervene because the BOP response is insufficient, and the Sentencing Commission's policy statement and corresponding commentary give the courts this power – i.e., a court may reduce a "sentence for 'extraordinary and compelling reasons,' including where the defendant is 'suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[71]  Like

---

[71] *Hernandez*, No. 1:18-cr-00834-PAE, ECF No. 451, at p.4 (*citing* 1 U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A)); *see also Rodriguez*, No. 2:03-cr-00271-AB, ECF No. 135 (E.D. Pa. Apr. 1, 2020) (granting compassionate release); *Perez*, No. 1:17-cr-513-AT, ECF No. 98 (same); *Gonzalez*, 2020 WL 1536155 (same); *United States v. Campagna*, No. 16 Cr. 78-01 (LGS), 2020 WL 1489829

20

the many other defendants who have been released in the face of this global health care crisis,
release is appropriate here for Reality.

### D.    Reality is Not a Danger to Others or the Community.

The Commission's policy statement, which provides helpful guidance, provides for granting
a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the
community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

Section 3142(g) sets out the factors courts must consider in deciding whether to release a
defendant pending trial. These factors weigh both the defendant's possible danger to the community
and the defendant's likelihood to appear at trial. Only the former is relevant here. The factors that
weigh danger to the community include "the nature and circumstances of the offense charged," "the
history and characteristics of the person," including "the person's character, physical and mental
condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and]
criminal history," and "the nature and seriousness of the danger to any person or the community that
would be posed by the person's release."[72]

Reality has briefed the Court at length regarding the various reasons she is not a danger to
the community in the context of her pre-trial detention.[73] Years removed from that briefing, having

---

(S.D.N.Y. Mar. 27, 2020) (same); *United States v. Williams*, No. 3:04-cr-00095-MCR-CJK, ECF
No. 91 (N.D. Fl. Apr. 1, 2020) (same); *United States v. Garcia*, No. 2:95-cr-00142-JPS, ECF No.
196 (E.D. Wi. Mar. 27, 2020) (same); *United States v. Edwards*, No. 6:17-cv-3-NKM, ECF No.
134 (W.D. Va. Apr. 2, 2020) (same); *United States v. West*, No. 1:17-cr-00390-AT; ECF No. 53
(N.D. Ga. Mar. 30, 2020) (same); *United States v. Powell*, No. 1:94-cr-00316-ESH (D.D.C. Mar.
28, 2020) (same); *United States v. Copeland*, No. 2:05-cr-00135-DCN, ECF No. 662 (D.S.C. Mar.
24, 2020) (same); *United States v. Huneeus*, No. 1:19-cr-10117-IT, ECF No. 642 (D. Ma. Mar 17,
2020) (same); *United States v. Resnick*, No. 1:12-cr-00152-CM, ECF No. 461 (S.D.N.Y. Apr. 2,
2020) (same); *United States v. Hernandez*, No. 1:16-cr-20091-KMW, ECF No. 561 (S.D. Fl. Apr.
3, 2020) (same); *United States v. Barkman*, No. 3:19-cr-00052-RCJ-WGC, ECF No. 21 (D. Nv.
Mar. 17, 2020) (same).
[72] 18 U.S.C. § 3142(g).
[73] *See* ECF No. 128, 156, 176, *et al.*

accepted responsibility for her conduct, and having served nearly three (3) years of her sentence, any risk to the community that may have existed previously no longer exists.

Importantly, Reality has been evaluated by several physicians, who have all concluded that Reality is not a danger to herself or others.[74] Notes from every single visit/evaluation received by counsel confirm that Reality's physicians have never been concerned about danger to herself or the community.[75] Indeed, this is consistent with the comprehensive psychological evaluation and report of Dr. Adrienne Davis.[76]

Moreover, in both the pre-trial detention context and at sentencing, people close to Reality have reiterated these points to the Court and that Reality will have incredible support upon her release. For example, below are excerpts taken from letters of support submitted to this Honorable Court:

> **Brittany Winner (Reality's Sister):**
> "She calls me almost every day and we write to each other often. I am a huge part of her support system, and she is a huge part of mine. I will continue to support her during the transition to this new chapter of her life, and I am wholeheartedly prepared to take on a much larger role if necessary in the future."
>
> **Billie Davis Winner (Reality's Mother):**
> "Those who know her know that she is not a danger in any way to anyone….We have rearranged everything in our lives to support her and we will continue to do so. My husband and I have already begun planning to build or move a small home unto a section of our property here in Texas, for her to live upon release. Our family and friends continue to be very supportive and will always assist Reality in any way possible."

---

[74] *See e.g.*, true and correct copies of ████████████████ ██████, attached hereto as **Exhibit 7** ████████████

[75] *Id.*

[76] *See* **Ex. 1** ████████████████████████████

**Indira Garcia:**
"Reality is a good person with a strong sense of doing what is right.  She has a strong support system from her family and friends.  Her parents have been positive role models and have the proper support.  I cannot say enough positive things about Billie and Gary and their dedication and commitment to their children.  Reality is their life and they do anything to guide and support her."

**Shani Messerschmidt**
"As family, Reality will always have our support, whether that means providing her continued emotional support through continuous contact or a place to stay upon her release."[77]

Notably, the Letters of Support also emphasize the importance of a healthy diet, a stringent exercise routine, and access to medical treatment for Reality's overall well-being.[78]  Of course, these are all things that are currently being deprived under the current COVID-19 lock down protocols, which increases her susceptibility to the deadly disease, discussed *supra*.

**E.  The Sentence Reduction is Consistent with the Section 3553(a) Factors.**

Finally, the Court must "consider[] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable."[79] The applicable sentencing factors warrant a sentence reduction for Reality. Because section 3553(a) establishes factors to consider in initially imposing a sentence, not every factor applies here. The applicable factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[77] *See* **Exs. 2, 3**; *see also* Letter of Support of Indira Garcia, undated, attached hereto as **Exhibit 8**; *see also* Letter of Support of Shani Messerschmidt, dated July 20, 2018, attached hereto as **Exhibit 9**.
[78] *See id.*
[79] 18 U.S.C. § 3582(c)(1)(A).

. . . [and]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.][80]

The statute also mandates: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)."[81]

Reality's Sentencing Memorandum, ECF No. 321, addressed Section 3553's factors at length.  For sake of brevity, she will summarize the application of those factors here.  But, she attaches the complete discussion from her Sentencing Memorandum hereto as **Exhibit 10**, should the Court wish to revisit that analysis in full.

The first factor is "the nature and circumstances of the offense and the history and characteristics of the defendant."[82] As stated above, Reality's singular offense was an unfortunate act in an otherwise commendable life of service. While her offense did involve a matter of national security, it was non-violent and involved a single document of classified material, not a disclosure analogous in size to the Pentagon Papers or Wiki Leaks.  She has shown good conduct over the course of serving her sentence and while in service to her country.  Those nearest her vouch for her character.

The second factor is the need for the sentence imposed to serve the enumerated purposes of punishment.[83] The court should "impose a sentence sufficient, but not greater than necessary, to comply with [these] purposes."[84] Reality has served nearly three years of her five years sentence, most of the original sentence imposed. Three years is a long time—long enough to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of Reality.  Indeed, a three

---

[80] 18 U.S.C. § 3553(a).

[81] *Id.*

[82] *Id.* § 3553(a)(1).

[83] *Id.* at § 3553(a)(2).

[84] *Id.* at § 3553(a).

year term is longer than every or almost every other case cited in her Sentencing Memorandum.[85]  Her continued incarceration during the COVID-19 pandemic may induce irreparable harm to her health. To prolong her incarceration further would be to impose a sentence "greater than necessary" to comply with the statutory purposes of punishment.

The final relevant factor is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[86]  Reality has served the majority of her mandatory sentence and is approximately two years away from release. Granting this Motion would resolve the sentence disparities between her and similarly situated defendants because her prison term was more than many prior Espionage Act prosecutions from the start – including those with arguably *worse* conduct.[87]  A reduction in sentence and commuting her sentence to home confinement would correct – not create -- any disparity.[88]

## CONCLUSION

For the foregoing reasons, this Court should grant Reality Compassionate Release under 18 U.S.C. § 3583(c)(1)(A) and allow her to serve the remainder of her sentence at home with her family in light of the COVID-19 pandemic.

Respectfully submitted,

BY:   */s/ Joe D. Whitley*
      Joe D. Whitley (Bar No. 756150)
      Admitted *Pro Hac Vice*
      Brett A. Switzer (Bar No. 554141)
      **BAKER, DONELSON, BEARMAN,**
      **CALDWELL & BERKOWITZ, P.C.**
      3414 Peachtree Rd., NE Suite 1600

---

[85] *See* ECF No. 321 at Section V(B)(4).

[86] 18 U.S.C. § 3553(a)(6).

[87] *See* ECF No. 321 at pp. 16-17.

[88] *See, e.g.*, Reality Winner, Former N.S.A. Translator, Gets More Than 5 Years in Leak of Russian Hacking Report, N.Y. Times (Aug. 23, 2018), at https://www.nytimes.com/2018/08/23/us/reality-winner-nsa-sentence.html.  (confirming Reality received the harshest sentence in the history of the Espionage Act at the time for a journalist leak).

25

Atlanta, GA  30326
(404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

Matthew S. Chester (La. Bar No. 36411)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
201 St. Charles Ave., Suite 3600
New Orleans, LA  70170
(504) 566-5200
MChester@bakerdonelson.com

Thomas H. Barnard (Az. Bar No. 020982)
Admitted *Pro Hac Vice*
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
100 Light Street.
Baltimore, MD  21202
(410) 685-1120
TBarnard@bakerdonelson.com

**ATTORNEYS FOR DEFENDANT**
**REALITY LEIGH WINNER**

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record for all parties.

/s/ Joe D. Whitley
Joe D. Whitley

# 341-2

# Exhibit 1 – Confidential Medical Records

# (Filed Under Seal)

# 341-3

# Exhibit 2 – Letter of Support from Brittany Winner, PhD

# EXHIBIT 2

July 31, 2018

Honorable J. Randal Hall
Chief Judge
Southern District of Georgia

RE: Reality Winner

     My name is Brittany Winner, PhD, a postdoctoral research associate at the United States Army Medical Research Institute of Chemical Defense in Gunpowder, Maryland. I am the elder sister of Reality Winner by approximately 15 months, an age gap that practically guaranteed our extremely close relationship. We grew up in the same household and lived together for 18 years, after which I left to go to college. We maintained close contact since then via texting and phone calls. I have known her my whole life and can confidently say that I know her better than anyone else.

     Growing up, Reality and I were very close despite a normal dose of inevitable sibling rivalry. We both excelled academically and competed for better grades, securing places at the top of our respective classes. Our world came crashing down when our parents divorced: I was 10 and my sister was 8. The divorce devastated our family, even though my sister and I now recognize how necessary it was—our father was addicted to opioid painkillers and refused to acknowledge his addiction or seek help. Still, the destabilizing effect of the divorce on our family took its toll and we had to grow up quickly. We both emerged from it scarred, but we supported each other during this time, and it set the stage for us to always support each other through tough times.

     I remember being surprised to hear that Reality was planning to join the Air Force rather than go to college like all the rest of her classmates (or like me), but when she told me she wanted to study linguistics, suddenly everything made sense. She wanted to make a difference and help people in a unique, challenging way—and to serve her country by doing so. She looked up to our older stepbrother Cole Davis who is also an Air Force linguist and was inspired by him to take a similar path. In addition, Reality has great appreciation for other cultures and worldviews, which lead her to want to learn languages predominantly spoken in Middle Eastern countries such as Iran and Afghanistan. She has always cared so much about less fortunate people in war-torn and impoverished regions of the world. Her dream job, she once confided to me, was to work with the charity Samaritan's Purse and volunteer to help women and children in Afghanistan. One year, she asked me to donate money to a charity to build an orphanage rather than buy her a Christmas present. In addition, like clockwork each year, she always put together shoeboxes of toys and goods for children in other countries through Operation Christmas Child and vigorously encouraged everyone around her to do the same. Time and time again, my sister has demonstrated her dedication to helping people less fortunate than her by eschewing personal comfort and material possessions. These acts of selflessness demonstrate the type of person she is.

     Although Reality has so much compassion for complete strangers, she is also deeply committed to her family. She has a close relationship with our mother and stepfather and had a close relationship with our late father, who passed away in December 2016. His death hit her

particularly hard. He was one of the great pillars of her life, and his passing was sudden and unexpected. She told me she cried every single day for six months after he died, and her trip to Belize was a tribute to his memory. She still talks about Dad and how much she misses him, and whether he would still be proud of her. I know he would, because he loved her dearly. Recently, my sister experienced a new loss: when she learned I was pregnant, she cried because she so desperately wanted to be there for me but was also extremely happy and elated to be an aunt. Two weeks ago, when she heard that I lost my baby at 20 weeks, she was devastated that she couldn't come to the hospital when I had to deliver my dead child. In addition to these recent distressing losses, my sister suffers from mental illness. I know that she has an eating disorder, but beyond that, I do not know of any other formal diagnoses. She has struggled with body image issues most of her adult life and it appears to manifest itself in extreme choosiness about food types and obsession with exercise. Clearly, her behavior is an attempt to exert control in her life where she has none. She requires mental health support would benefit from therapy in an adequate environment suited to meet her needs.

My sister Reality is a complex and frequently misunderstood individual: intelligent yet compassionate; meticulous yet generous; seemingly irreverent yet sincere; at times, frustrating, but ultimately endearing. She is, admittedly, not the easiest person to get to know or to understand. As her big sister, I know her better than anyone else and feel responsibility to always care for her, watch over her, and love her. Now, after all we've been through, my relationship with Reality is closer than ever. She calls me almost every day and we write to each other often. I am a huge part of her support system, and she is a huge part of mine. I will continue to support her during the transition to this new chapter of her life, and I am wholeheartedly prepared to take on a much larger role if necessary in the future.

I respectfully ask that you consider her plea deal and any recommendations from her attorneys.

Sincerely,

Brittany Michele Winner, PhD

# 341-4

# Exhibit 3 – Letter of Support from Billie Davis-Winner

# EXHIBIT 3

Billie J. Winner-Davis
420 East County Road 2190
361/522-7816

07/29/2018

Honorable J. Randal Hall, Chief Judge
US District Court-Southern District of Georgia
600 James Brown Blvd
Augusta, GA 30901

Dear Honorable J. Randal Hall, Chief Judge,

I am writing you today as a mother, asking for your consideration for my daughter, Reality Leigh
Winner. Reality has plead guilty to one charge of willful retention and transmission of national
security information, an extremely serious charge, and she accepts responsibility and
consequences for this. As her mother, I ask that you consider her age, character, history, service
to America, medical and mental health needs, and her importance to me and our family as you
decide on her case and fate.

Reality is my youngest child, and will always be considered my Baby Girl. She has always been
extremely intelligent, strong willed, and loving. She is talented and artistic. She is deeply
compassionate and giving. I am so very proud of her and the things she chooses to do, such as
her volunteer work with Athletes Serving Athletes, Samaritan's Purse, Veterans Groups, and
Hands to Paws Dog Rescue, to name a few. She was raised in a home in which volunteering and
serving others was valued, and she has exceeded my expectations many times over. I know of no
other person her age who has such compassion and selflessness and who has gone out of her
way to help the world and others. I also know of no other person that exhibits such love for
others. She sacrifices herself, to give to others, to make sure others feel loved and valued. She
has always been sentimental and the most wonderful, giving daughter I can imagine having.

While the prosecution presented information that portrayed Reality as a person who hates
America and is sinister, I ask that you look at her actions and accomplishments and who she is
as a human being, a daughter, and a humanitarian. Reality was in the top ten club in High
School, and took many AP and dual credit courses. She volunteered in the community, excelled
in sports and art, and was loved by her teachers, neighbors, and friends. She was never in
trouble and required no discipline or correction.

Although Reality was offered a scholarship from Texas A&M University Kingsville, she chose to
join the Air Force. She wanted to be a linguist like her older step-brother, and wanted to make a
difference for our country. Reality served honorably in the US Air Force for 6 years, earning a
medal of commendation for going above and beyond. She protected this country many times
over and was fiercely loyal and valuable. She had no infractions that I am aware of and has
never had any criminal behavior.

Reality has volunteered and given to every community she has ever lived in and donated to
organizations to help and protect others. She took college courses while in the military, and also

completion of training and certification in Spinning and Yoga, and truly loved being able to help
others achieve fitness and life goals.  She is loved and respected by many and those who know
her know that she is good, honest, and loyal to her community and country.  Those who know
her know that she is not a danger in any way to anyone.

Reality also suffers from depression, anxiety, and an eating disorder.  Growing up, she exhibited
many signs of obsessive compulsive disorder and anxiety, but she always found ways to manage
these issues.  I worry about her mental health daily, and am concerned about the stress she is
under and whether she will receive treatment needed to keep her healthy and safe. She was
deeply impacted by her father's death, as they were extremely close and she relied on him for
advice and emotional strength.  She hides her pain and struggles from me, as she has always
taken on the role of caretaker for me.  Throughout this entire situation, she has focused on
making sure that I am ok and taken care of.

Reality's arrest and charges have impacted me and our family greatly.  Having her in jail has
been the hardest thing we as a family have had to deal with, and it has changed us in every way
possible.  We have rearranged everything in our lives to support her and we will continue to do
so.  My husband and I have already begun planning to build or move a small home unto a
section of our property here in Texas, for her to live upon release.   Our family and friends
continue to be very supportive and will always assist Reality in any way possible.

Again, I ask that you consider Reality's age, service, character, history, and actions when making
a determination for her sentence and future.  I ask that you remember that she is a young
woman, a sister, and a daughter.  I ask that you see the good in her and her actions.  I pray that
there will be justice and that her sentence and punishment be fair when all things are
considered.  I thank you for your time, service, and consideration.

Respectfully

Billie J. Winner-Davis