No.  20-11692

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

REALITY LEIGH WINNER,

Defendant-Appellant.

_____

On Appeal From The United States District Court
For The Southern District of Georgia

_____

**BRIEF OF APPELLEE**

_____

<div style="margin-left:40%">

BOBBY L.  CHRISTINE
UNITED STATES ATTORNEY

Justin G.  Davids
Assistant United States Attorney
United States Attorney's Office
22 Barnard Street, Suite 300
Savannah, Georgia 31401
(912) 652-4422

</div>

No. 20-11692
United States v. Winner

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

COMES NOW the United States of America, by and through

Bobby L. Christine, United States Attorney for the Southern District

of Georgia, and files its Certificate of Interested Persons and

Corporate Disclosure Statement as follows:

Aaron, David C., U.S. Department of Justice Attorney

Barnard, Thomas H., Attorney for Appellant

Bell Jr., John C., Attorney for Appellant

Chester, Matthew S., Attorney for Appellant

Christine, Bobby L., United States Attorney

Collins, Laura E., Attorney for Appellant

Davids, Justin G., Assistant United States Attorney

Durham, James D., Former Assistant United States Attorney

Edelstein, Julie A., U.S. Department of Justice Attorney

Epps, Hon. Brian K., United States Magistrate Judge

Greenwood, Nancy C., Assistant United States Attorney

Hall, Hon. J. Randal, Chief United States District Judge

Hudson, David E., Former Attorney for Reporters Committee For

Freedom of the Press

C – 1 of 2

No.  20-11692
United States v.  Winner

Larson, Amy E., U.S. Department of Justice Attorney

Mannino, Katherine C., Attorney for Appellant

McCook, Jill E., Former Attorney for Appellant

Nichols, Titus T., Attorney for Appellant

Rafferty, Brian T., Former Assistant United States Attorney

Reporters Committee For Freedom of the Press

Robichaux, Mary S., Assistant United States Attorney

Rodriguez-Feo, Carli, Interested Party

Solari, Jennifer G., Assistant United States Attorney

Switzer, Brett A., Attorney for Appellant

Whitley, Joe D., Attorney for Appellant

Winner, Reality, Appellant

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case. The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ................................................................ C-1

Statement Regarding Oral Argument ....................................... i

Table of Contents ....................................................... ii

Table of Citations ....................................................... v

Statement of Jurisdiction................................................. 1

Statement of the Issue ................................................... 1

Statement of the Case ................................................... 1

    I.    Procedural History. ............................................. 1

    II.   Statement of the Facts. ......................................... 4

    III.  Standard of Review. . .......................................... 4

Summary of Argument..................................................... 5

Argument................................................................. 6

    The district court did not abuse its discretion when it declined to grant Winner's motion for compassionate Release, where the court applied the correct statutorily-Directed standards when evaluating the motion, Winner Did not first exhaust her administrative remedies as Required under § 3582(c)(1)(A) or allow 30 days to pass after ...................................................... 6

    A. Statutory Background of the Compassionate Release Statute 18 U.S.C. § 3582(c)(1)(A)., . ................................. 7

B. BOP's response to the COVID-19 pandemic. .................. 13

C. The district court did not abuse its discretion by
   holding that even if it had the authority to reduce
   Winner's sentence, it would decline to do so
   because her reasons were neither extraordinary
   nor compelling. ................................................. 16

D. The district court lacked jurisdiction to consider
   Winner's motion under § 3582(c)(1)(A) because she
   failed to meet her burden establishing her exhaustion
   of administrative remedies................................. 23

   1. Winner acknowledges that she not wait the 30-days
      required under § 3582(c)(1)(A) prior to filing her
      Motion...................................................... 23

   2. Assuming, arguendo, that Winner submitted a
      valid RIS request based on compassionate release,
      she did not complete the appropriate 30-day
      administrative exhaustion process required by
      § 3582(c)(1)(A). ........................................ 24

   3. Section 3582(c) is jurisdictional with no judicial
      exception................................................. 28

   4. Winner did not establish the basis for her request
      to BOP. ................................................... 33

E. The district court lacked jurisdiction to consider
   Winner's motion under § 3582(c)(1)(A) because she
   failed to meet her burden of demonstrating an
   extraordinary and compelling reason for relief. .............. 39

F. The First Step Act did not grant district courts
   authority to determine general criteria for sentence
   modification under the compassionate release statute. .. 47

iii

1.  The First Step Act amended who files a
    compassionate release motion in the district court,
    leaving undisturbed the substantive requirements
    for granting compassionate release. ............................ 47

2.  Winner's interpretation would allow district courts
    to become de facto parole boards with almost
    unfettered discretion to determine what constitutes
    an "extraordinary and compelling reason" without
    regard to congressionally mandated sentences,
    enumerated limitations in the Guidelines or
    consistency among the courts. ..................................... 55

G.  Alternatively, application note 1(D) should be limited
    to reasons comparable and analogous to those in
    application notes 1(A) through 1(C). ................................ 62

Conclusion .............................................................................. 63

Certificate of Compliance and Service ..................................... 64

# TABLE OF CITATIONS

## Cases

*Barber v. Corizon Health*, No. 15-997, 2018 WL 1579472 (N.D. Ala.

   Mar. 30, 2018) .................................................................. 5

*Biestek v. Berryhill*, 139 S. Ct. 1148 (2019) ............................................ 23

*Bowles v. Russell,* 551 U.S. 205 (2007) .................................................... 29

*Clay v. Henderson*, 524 F.2d 921 (5th Cir. 1975)................................... 35

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,*

140 S. Ct. 1009 (2020) .................................................................... 49, 53

*Delgado v. U.S. Att'y Gen.*, 487 F.3d 855 (11th Cir. 2007) .............. 50, 53

*Dept. of Homeland Sec. v. MacLean,* 574 U.S. 383 (2015)..................... 53

*Dillon v. United States*, 560 U.S. 817 (2010) ........................................ 7, 9

*Eberhart v. United States,* 546 U.S. 12 (2005)................................. 29, 30

*Fernandez v. United States*, 941 F.2d 1488 (11th Cir.  1991) ................. 9

*Freemanville Water Sys. Inc. v. Poarch Band of Creek Indians,*

563 F.3d 1205 (11th Cir.  2009) ...................................................... 49, 53

*Gonzalez v. United States*, 959 F.2d 211 (11th Cir. 1992)..................... 35

*Harry v. Marchant*, 291 F.3d 767 (11th Cir. 2002)................................ 59

*Johnson v. Hamrick*, 296 F.3d 1065 (11th Cir. 2002)............................ 17

*Landgraf v. USI Film Prods.,* 511 U.S. 244 (1994) ................................ 29

*Ratzlaf v. United States*, 510 U.S. 135 (1994) .......................................59

*Reno v. Koray*, 515 U.S. 50 (1995)............................................................12

*Ross v. Blake*, 136 S. Ct. 1850 (2016).......................................... 30, 31, 32

*Santiago-Lugo v. Warden*, 785 F.3d 467 (11th Cir. 2015).....................35

*Shanks v. Comm'r, Soc. Sec. Admin.*, No. 17-483, 2018

WL 1358382 (N.D. Ga. Mar. 15, 2018)..................................................20

*Villarreal v. R.J.Reynolds Tobacco Co.*, 839 F.3d 958

(11th Cir. 2016) .......................................................................................59

*Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019).................................33

*United States v. Alam*, — F.3d —, 2020 WL 2845694

(6th Cir. 2020) ........................................................................... 27, 29, 30

*United States v. Allen*, No. CR214-024, 2020 WL 2199626

(S.D. Ga. May 6, 2020) ..................................................................... 32, 35

*United States v. Baxter Int'l, Inc.*, 345 F.3d 866 (11th Cir. 2003).........63

*United States v. Brame*, 997 F.2d 1426 (11th Cir. 1993)......................60

*United States v. Brass*, No. 14-216, 2020 WL 2043884

(W.D. La. Apr. 28, 2020)........................................................................34

*United States v. Calderon*, 801 F. App'x 730

(11th Cir. 2020).......................................................................................36

*United States v. Cantu-Rivera*, No. 89-204, 2019 WL 2578272

(S.D. Tex. June 24, 2019) .............................................................. 57, 60

*United States v. Caraballo-Martinez*, 866 F.3d 1233 (11th Cir. 2017) . 16

*United States v. Carter*, 792 F. App'x 660 (11ᵗʰ Cir. 2019) .................... 47

*United States v. Contreras*, 739 F.3d 592 (11th Cir. 2014) ................... 50

*United States v. Courson*, No. CR215-010, 2020 WL 2516392,

(S.D. Ga. May 15, 2020) ............................................................... 24, 34

*United States v. Crosby*, No. CR217-061, 2020 WL 2561778,

(S.D. Ga. May 20, 2020) ...................................................................... 39

*United States v. Daniels*, No. 08-464, 2020 WL 1938973,

(N.D. Ala. Apr. 22, 2020) .................................................................... 27

*United States v. Denson*, -F.3d-, 2020 WL 3445820

(11ᵗʰ Cir., 2020) .................................................................................. 19

*United States v. Dowlings*, No. CR413-171, 2019 WL 4803280

 (S.D. Ga. Sept. 30, 2019) .................................................................. 26

*United States v. Drury*, 396 F.3d 1303 (11th Cir. 2005) ........................ 17

*United States v. Ebbers*, 432 F. Supp. 3d 421 (S.D.N.Y. 2020) ............... 8

*United States v. Eberhart*, No. 13-313, 2020 WL 1450745

(N.D. Cal. Mar. 25, 2020) ................................................................... 44

*United States v. Fox*, No. 14-03, 2019 WL 3046086

(D. Me.  July 11, 2019) .......................................................... 63

*United States v. Gandy*, 710 F.3d 1234 (11th Cir.  2013) ......................... 5

*United States v. Gourdine,* No. CR610-001, 2020 WL 2199624

 (S.D. Ga. May 6, 2020) .......................................................... 32

United States v. Gray, No. 01-07, 2020 WL 2132948

(S.D. Ala.  May 4, 2020) .......................................................... 27

*United States v. Guyton*, 640 F. App'x 854 (11th Cir. 2016) .................... 19

*United States v. Hall*, 714 F.3d 1270 (11th Cir.  2013) ...................... 4, 39

*United States v. Hamilton*, 715 F.3d 328 (11th Cir.  2013) .................... 12

*United States v. Heromin*, No. 11-550, 2019 WL 2411311

 (M.D.  Fla.  June 7, 2019) ................................................. 12, 55

*United States v. Jones*,-F.3d-, 2020 WL 3248113

(11th Cir. 2020) ..................................................................... 47

*United States v. Lovelace*, No. 12-402, 2014 WL 4446176

(N.D. Ga. Sept. 9, 2014) .......................................................... 36

*United States v. Lynn*, 2019 WL 3082202

(S.D. Ala. July 15, 2019) ...................................................... 36, 37

*United States v. Lynn*, No. 89-72, 2019 WL 3805349

(S.D. Ala. Aug. 13, 2019) .................................................................Passim

*United States v. Mabe*, No. 15-133, 2020 U.S. Dist. LEXIS

66269 (E.D. Tenn. April 15, 2020) ........................................................36

*United States v. Maumau*, No. 08-758, 2020 WL 806121

(D. Utah Feb. 18, 2020) ........................................................................56

*United States v. Millan*, No. 91-685, 2020 WL 1674058

(S.D.N.Y.  Apr.  6, 2020).......................................................................60

*United States v. Mills*, 613 F.3d 1070 (11th Cir.  2010) .........................30

*United States v. Mollica*, No. 14-329, 2020 WL 1914956

 (N.D. Ala. Apr.  20, 2020) ..............................................................27, 54

*United States v. Nasirun*, No. 99-367, 2020 WL 686030

(M.D.  Fla.  Feb.  11, 2020)....................................................................54

*United States v. Perez*, — F. Supp. 3d —, 2020 WL 1546422

(S.D.N.Y.  Apr.  1, 2020).......................................................................32

*United States v. Phillips*, 597 F.3d 1190 (11th Cir.  2010)...............19, 41

*United States v. Pope*, No. CR216-024, 2020 WL 1956510

(S.D.  Ga.  Apr.  23, 2020).....................................................................27

*United States v. Raia*, 954 F.3d 594 (3d Cir.  2020) .......................Passim

*United States v. Rivernider*, No. 10-222, 2019 WL 3816671

ix

(D. Conn. Aug. 14, 2019) ....................................................... 63

*United States v. Rodriguez-Orejuela*, — F. Supp. 3d —, 2020

WL 2050434 (S.D. Fla. Apr. 28, 2020) ................................... 44

*United States v. Saldana*, — F.App'x —, 2020 WL 1486892

(10th Cir. 2020) ............................................................... Passim

*United States v. Steward*, 880 F.3d 983 (8th Cir. 2018) .......................... 5

*United States v. Terry,* 758 F. App'x 888, 890 (11th Cir. 2019) ......... 61, 62

*United States v. Urkevich,* 2019 WL 6037391 (D. Neb. Nov. 14, 2019) . 56

*United States v. Webb*, 565 F.3d 789 (11th Cir. 2009) .............................. 4

*United States v. Webster*, No. 3:91CR 138 (DJN), 2020 WL 618828,

(E.D. Va. Feb. 10, 2020) ....................................................... 16

*United States v. White*, 305 F.3d 1264 (11th Cir. 2002) .......................... 4

*United States v. Wilks*, 464 F.3d 1240 (11th Cir. 2006) ....................... 10

*United States v. Willingham*, No. CR113-010, 2019 WL 6733028

(S.D. Ga. Dec. 10, 2019) .............................................. 9, 54, 55

*United States v. Willis*, 382 F. Supp.3d 1185 (D.N.M. 2019) ........... 13, 49

*United States v. Zamor*, — F. Supp. 3d —, 2020 WL 2764282

(S.D. Fla. May 12, 2020) ............................................... 22, 27

*United States v. Zywotko*, No. 19-113, 2020 WL 1492900 (M.D. Fla.

Mar. 27, 2020) ........................................................................27

**Statutes**

18 U.S.C. § 793 (e) ...............................................................1, 2

18 U.S.C. § 924(c) .............................................................56, 57

18 U.S.C. § 3142(g) ..................................................................10

18 U.S.C. § 3553(a) ..................................................................10

18 U.S.C. § 3582(c) ...........................................................Passim

18 U.S.C. § 3582(c)(1)(a) .........................................................37

18 U.S.C. § 3582(c)(1)(A) ..................................................Passim

18 U.S.C. § 3582(c)(2) ..............................................................61

18 U.S.C. § 3621(b) ..................................................................36

18 U.S.C. § 3621(b)(5) ..............................................................36

18 U.S.C. § 3623(c)(2) .......................................................Passim

18 U.S.C. § 3624(c)(2) ..............................................................14

21 U.S.C. § 811(a) ....................................................................33

21 U.S.C. § 841 ........................................................................57

28 U.S.C. § 994(a)(2) ...............................................................50

28 U.S.C. § 994(o) ....................................................................61

28 U.S.C. § 994(t) ................................................................ Passim

28 U.S.C. § 994(u) ...................................................................... 61

28 U.S.C. § 1291 ........................................................................... 1

34 U.S.C. § 60541(g) ..................................................... 14, 35, 37

34 U.S.C. § 60541(g)(1)(A) ........................................................ 36

42 U.S.C. § 1997 e(a) ................................................................. 31

**Sentencing Guidelines**

U.S.S.G. § 1B1.10 ................................................................. 61, 62

U.S.S.G. § 1B1.13 ................................................................ Passim

**Rules**

28 C.F.R. 571.62(b) ................................................................... 37

## STATEMENT OF JURISDICTION

This Court has jurisdiction over appeals of a district court's final order under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion when it declined to grant Winner's motion for compassionate release, where that court applied the correct statutorily-directed standards, Winner did not first exhaust her administrative remedies or allow 30 days to pass after submitting a request for relief to the Bureau of Prisons, and Winner did not meet her burden establishing that her circumstances warranted compassionate release.

## STATEMENT OF THE CASE

### I.    Procedural History.

Winner was charged by criminal complaint, and then by indictment, with willful retention and transmission of national defense information, in violation of 18 U.S.C. § 793(e). (Docs. 5, 13, 27.)[1] She was detained both as a flight risk and a danger to others and the

---

[1] "Doc." refers to the district court's ECF docket in Case No. CR 117-034 (S.D. Ga.).

community.  (Doc.  27.)  She faced a statutory maximum prison term of 10 years.  (PSR ¶ 68.)[2]  Under a binding Rule 11(c)(1)(C) plea agreement, Winner pled guilty to the one § 793(e) count and accepted the facts as outlined in her plea agreement.  (PSR ¶ 4; Doc.  324.)  The parties agreed to a sentence of 63 months in prison followed by 3 years of supervised release.  (Doc.  324, ¶ 4.)  The district court accepted the plea agreement.  (Doc.  323.)  The presentence investigation report (PSR) reflected a total offense level of 29, a criminal history category of I, and an advisory guideline range of 87 to 108 months' imprisonment.  (PSR ¶ 69.)  Consistent with the binding, negotiated plea, Winner was sentenced to 63 months' imprisonment.  (Doc.  327.)

On April 10, 2020, Winner moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A), primarily based upon the COVID-19 pandemic. (Doc.  341.)  She attached two medical reports to her motion.  (*Id*.)  The Government opposed Winner's motion.  (Doc.  345.)  Winner then filed a reply brief (Doc.  347), attaching materials related to how outside agencies viewed the Bureau of Prisons' response to COVID-19 (Docs.

---

[2] "PSR" refers to the presentence investigation report issued in the underlying criminal case.

2

347-1, 347-3, 347-4), and what steps Winner took at FMC Carswell to gain early release or home confinement (Docs. 347-2). The Government filed a notice of intent to file a surreply (Doc. 348), but was unable to submit that filing before the district court ruled on Winner's motion.

On April 24, 2020, the district court denied Winner's motion. (Doc. 349.) First, the court found that Winner failed to exhaust her administrative remedies under § 3582(c)(1)(A), requiring the court to deny her motion. (Doc. 349 at 2-4.) Next, in the alternative, the district court addressed the merits of Winner's motion, finding that Congress intended "the Sentencing Commission, not the judiciary, [to] determine what constitutes an appropriate use of the 'compassionate release' provision," and that Winner had not alleged an "extraordinary and compelling reason" as defined by the statute and applicable Guidelines. (Doc. 349 at 4-7.) Finally, also in the alternative, the district court concluded that, even if it accepted Winner's legal theory that it had the authority to determine what qualified as "extraordinary and compelling circumstances outside of the Sentencing Commission's policy statement, Winner would not be afforded the relief she seeks." (Doc. 348 at 7.) The court's decision was based on Winner's failure to carry her burden

"demonstrating that her specific medical conditions under the particular conditions of confinement at FMC Carswell place her at a risk substantial enough to justify early release." (Doc. 349 at 7-8.)

Winner timely filed a notice of appeal. (Doc. 350.)

## II.    Statement of the Facts.

All facts relevant to this appeal are included in the procedural history section above.

## III.    Standard of Review.

A district court's decision not to reduce a sentence under 18 U.S.C. § 3582(c) is reviewed for abuse of discretion. *See United States v. Webb*, 565 F.3d 789, 793-94 (11th Cir. 2009); *United States v. White*, 305 F.3d 1264, 1267 (11th Cir. 2002). This Court may affirm on any ground that appears in the record, whether or not that ground was relied upon or even considered by the district court. *See United States v. Hall*, 714 F.3d 1270, 1271 (11th Cir. 2013). "That is especially true where, as here, the alternative route for affirming does not require facts that remain to be

4

found by the district court." *United States v. Gandy*, 710 F.3d 1234, 1238 (11th Cir. 2013) (cleaned up).[3]

## SUMMARY OF ARGUMENT

The authority of district courts to grant a defendant's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, is limited. Winner failed to meet her burden establishing eligibility for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Even accepting Winner's legal theory that a district court now has broad authority to define "extraordinary and compelling reasons," the court did not abuse its discretion by finding she had not established her reasons were extraordinary and compelling in light of the medical evidence provided and Winner's place of confinement. Alternatively, she did not exhaust her administrative remedies as required under § 3582(c)(1)(A). Additionally, Winner did not

---

[3] "'Cleaned up' is a new parenthetical used to eliminate unnecessary explanation of non-substantive prior alterations." *See United States v. Steward*, 880 F.3d 983, 986 n.3 (8th Cir. 2018); *see also Barber v. Corizon Health*, No. 15-997, 2018 WL 1579472, at *10 n.10 (N.D. Ala. Mar.30, 2018). "This parenthetical can be used when extraneous, residual, non-substantive information has been removed, in this case, internal quotation marks, brackets, additional quoting parentheticals and an ellipsis." *Steward*, 880 F.3d at 986 n.3. Its purpose is to improve readability. *See Barber*, 2018 WL 1579472, at *10 n.10.

demonstrate an "extraordinary and compelling reason" as defined under the statute and U.S.S.G. § 1B1.13. Finally, the district court appropriately concluded that its authority to determine "extraordinary and compelling reasons" justifying early release was constrained by statute and the Guidelines. For these reasons, the United States respectfully requests this Court affirm the district court's denial of Winner's motion for compassionate release.

## ARGUMENT

**The district court did not abuse its discretion when it declined to grant Winner's motion for compassionate release, where the court applied the correct statutorily-directed standards when evaluating the motion, Winner did not first exhaust her administrative remedies as required under § 3582(c)(1)(A) or allow 30 days to pass after submitting a request to the Bureau of Prisons for relief, and Winner did not meet her burden of establishing that her circumstances warranted compassionate release.**

On appeal, Winner argues that, as a result of the First Step Act's amendments to 18 U.S.C. § 3582(c)(1)(A), and what it calls "outdated agency guidelines," district courts are now empowered to determine what qualifies as an "extraordinary and compelling reason" justifying compassionate release, untethered to the limitations contained in the

statutes or the Sentencing Guidelines. She claims that, under the auspices of compassionate release, the district court should have reduced her sentence below the 63 months to which she originally agreed. Yet, the district court found, even if it had the authority to grant Winner's motion, it would exercise its discretion and decline to do so, because Winner failed to demonstrate that her specific medical conditions under the particular conditions of her confinement – at a medical prison – place her "at a risk substantial enough to justify early release." In any event, the district court found that Winner did not first exhaust the administrative process as required by § 3582(c)(1)(A). Alternatively, it properly concluded that neither § 3582(c)(1)(A) nor U.S.S.G. § 1B1.13 allowed the court to reduce her sentence based on non-qualifying medical reasons. For these reasons, this Court should affirm the decision of the district court.

### A. Statutory Background of the Compassionate Release Statute, 18 U.S.C. § 3582(c)(1)(A).

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *Dillon v. United States*, 560 U.S. 817, 819, 824 (2010). The compassionate release statute, 18 U.S.C.

7

§ 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018,

represents one of the narrow exceptions.  That statute provides, in part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>
> (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)   extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Congress did not define what constitutes "extraordinary and

compelling circumstances" for purposes of § 3582(c)(1)(A), but rather

expressly delegated that authority to the Sentencing Commission.  *See*

28 U.S.C. § 994(t); *see also United States v. Ebbers*, 432 F. Supp. 3d

421, 427 (S.D.N.Y. 2020).  Under 28 U.S.C. § 994(t):

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

Accordingly, the relevant policy statement of the Commission is binding on district courts. *See Dillon*, 560 U.S. at 827 (where 18 U.S.C. § 3582(c)(2), using the same language as § 3582(c)(1)(A), permits a sentence reduction based on a retroactive Guidelines amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court); *United States v. Willingham*, No. CR 113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) ("[T]he Sentencing Commission, not the judiciary, determine[s] what constitutes an appropriate use of the 'compassionate release' provision.").[4] Here, the

---

[4] Prior to the passage of the First Step Act, while the Commission policy statement was binding on a court's consideration of a motion under § 3582(c)(1)(A), such a motion could only be presented by the Bureau of Prisons (BOP). *See, e.g., Fernandez v. United States*, 941 F.2d 1488, 1493 (11th Cir. 1991) (explaining district court cannot review BOP's refusal to file motion for release). The First Step Act added authority for an inmate himself to file a motion seeking relief, after exhausting administrative remedies, or after the passage of 30 days after presenting a request to the warden, whichever is earlier.

district court properly recognized that limit when it considered Winner's motion.  (Doc.  349 at 6.)

The Sentencing Commission's Guidelines policy statement appears at §A 1B1.13, and provides that district courts may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C.  § 3553(a), to the extent that they are applicable," and the court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C.§ 3142(g)."  Critically, in application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release.  *See United States v.  Wilks*, 464 F.3d 1240, 1245 (11th Cir.  2006) ("Commentary and Application Notes of the Sentencing Guidelines are binding on the courts unless they contradict the plain meaning of the text of the Guidelines."  (cleaned up)).  The note, as relevant to the present case, provides:

> 1.  Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

> (A)    Medical Condition of the Defendant.—

10

(i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  .  .  .

(ii)    The defendant is—

(I)    suffering from a serious physical or medical condition,

(II)    suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)    Age of the Defendant.—[relates to defendants at least 65 years old]

(C)    Family Circumstances.—[relates to being a caregiver to minor children, spouse, or registered partner]

(D)    Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G.  § 1B1.13, app.  n.1 (Nov.  2018).  For its part, consistent with

note 1(D), BOP promulgated Program Statement 5050.50 ("PS 5050.50."),

available    at    https://www.bop.gov/policy/progstat/5050_050_EN.pdf,

amended effective January 17, 2019, to set forth its evaluation criteria.[5]
PS 5050.50 describes general circumstances related to medical
conditions, age, and family that are similar to those in application note
1(A) through (C).[6]  *See* PS 5050.50, ¶¶ 3-6.  Congress did not, as Winner
contends, modify or supersede the Guidelines or policy statements when
it passed the First Step Act.  Therefore, the district court properly applied
them in this case.

In general, the defendant has the burden to show circumstances
meeting the test for compassionate release.  *See Saldana*, 2020 WL
1486892, at *4; *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir.
2013); *see also United States v. Heromin*, No. 11-550, 2019 WL 2411311,
at *2 (M.D. Fla. June 7, 2019).  As the terminology in the statute makes
clear, compassionate release is "rare" and "extraordinary."  *See United*

---

[5] As a "permissible construction of the statute," BOP's PS 5050.50
is "entitled to 'some deference.'"  *United States v. Saldana*, — F. App'x
—, 2020 WL 1486892, at *3 (10th Cir. 2020) (citing *Reno v. Koray*, 515
U.S. 50, 61 (1995)).

[6] PS 5050.50 also requires consideration of a list of nonexclusive
factors: "the defendant's criminal and personal history, nature of his
offense, disciplinary infractions, length of sentence and amount of time
served, current age and age at the time of offense and sentencing, release
plans, and '[w]hether release would minimize the severity of the offense.'"
*Saldana*, 2020 WL 1486892, at *3 (quoting PS 5050.50, ¶7).

12

*States v. Willis*, 382 F. Supp. 3d 1185, at 1188-89 (D.N.M. 2019) (citations omitted). As explained below, Winner failed to meet her burden.

### B.    BOP's response to the COVID-19 pandemic.

When responding to Winner's motion, the government detailed the strenuous efforts made by BOP to maintain the health and safety of inmates across the country during the pandemic. Pursuant to a nationwide action plan developed months earlier and implemented in mid-March, BOP has strictly limited visits to the prison, strictly limited inmate movement within the prison, mandated the wearing of masks, isolated inmates who became infected with COVID-19, implemented testing and screening of inmates and staff, and implemented extensive cleaning and sanitizing procedures, among many other preventative measures. (Doc. 345 at 6-10.) The district court was certainly aware of, and sensitive to the issues presented by the COVID-19 pandemic when it denied Winner's request for compassionate release.[7]

---

[7] BOP Implementing Modified Operations, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 5, 2020). Further details regarding these efforts are available at a regularly updated resource page: https://www.bop.gov/coronavirus/ (hereinafter "BOP Resource").

In addition, in March 2020, the Attorney General directed the Director of BOP, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement.  That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g).  Further, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."  On April 3, 2020, the Attorney General issued a memorandum directing BOP to "immediately maximize appropriate transfers to home confinement of all appropriate inmates held at" certain facilities.  *See* Memorandum from the Attorney General to the Director of the Bureau of Prisons (Apr. 3, 2020), *available*

14

at https://www.justice.gov/file/1266661/download (last visited Apr. 6, 2020). As a result, BOP implemented the Attorney General's directive. *See* Update on COVID-19 and Home Confinement: BOP continuing to aggressively screen potential inmates, *available at* https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last visited Apr. 13, 2020). As part of this process, BOP is screening and reviewing all inmates automatically to determine which ones meet the criteria established by the Attorney General, meaning prisoners do not have to apply to be considered for home confinement. *See id.* Based on the Attorney General's directive, BOP has placed an additional 4,555 inmates on home confinement so far, representing an increase of 160 percent.[8] *See* BOP Resource (last visited June 29, 2020).

Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission in a BOP institution, and reflect a careful, evidence-based approach that not only provides an overall strategy, but also allows BOP to respond to the specific challenges faced

---

[8] As of June 28, 2020, 1,422 inmates and 137 BOP staff members nationwide have currently tested positive. *See* BOP Resource. Additionally, 5,114 inmates and 574 staff members have recovered. *See id.* BOP has reported 89 inmate and 1 staff member COVID-19 related deaths nationwide. *See id.*

by particular facilities and inmates.  BOP professionals continue to monitor this situation and adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders. Accordingly, the district court here, rightly, did not take action in this case where there was no immediate risk to Winner.

### C.   *The district court did not abuse its discretion by holding that even if it had the authority to reduce Winner's sentence, it would decline to do so because her reasons were neither extraordinary nor compelling.*

To begin, whether Winner exhausted her administrative remedies (she did not) or whether the district court had a new-found broad authority to determine "extraordinary and compelling reasons" (it does not) is ultimately immaterial because the district court concluded that, even if it had that authority, it would exercise its discretion and decline to grant Winner a reduced sentence.  *See* 18 U.S.C.  § 3582(c)(1)(A) (explaining court "may reduce the term of imprisonment"); *see also United States v. Webster*, No.  3:91CR138 (DJN), 2020 WL 618828, at *5 (E.D. Va. Feb. 10, 2020).  This Court reviews "a district court's decision to grant or deny a sentence reduction only for abuse of discretion."  *See United States v.  Caraballo-Martinez*, 866 F.3d 1233, 1238 (11th Cir.

16

2017). "[W]hen employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *United States v. Drury*, 396 F.3d 1303, 1315 (11th Cir. 2005). A district court's "finding of fact is clearly erroneous only 'if the record lacks substantial evidence to support it.'" *Johnson v. Hamrick*, 296 F.3d 1065, 1074 (11th Cir. 2002). "[U]nder the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call." *Drury*, 396 F.3d at 1315.

Here, the district court explained:

> Even if the Court were to conclude that the First Step Act gave it discretion to consider what constitutes extraordinary and compelling circumstances outside of the Sentencing Commission's policy statement, Winner would not be afforded the relief she seeks. Winner has not carried the burden of demonstrating that her specific medical conditions under the particular conditions of confinement at FMC Carswell place her at a risk substantial enough to justify early release. In fact, the Court is constrained to observe that Winner is in a medical prison, which is presumably better equipped than most to deal with any onset of COVID-19 in its inmates. . . . In short, even if the Court had discretion in this matter, Winner has not demonstrated an extraordinary and compelling reason to reduce her sentence.

(Doc. 349 at 7-8.)

Thus, Winner cannot complain that the district court applied the wrong legal standard in determining whether she established an "extraordinary and compelling reason." In essence, Winner argued that the district court, when determining whether there exists an "extraordinary and compelling reason" as required by § 3582(c)(1)(A)(i), was no longer constrained by the limitations included in the statute or U.S.S.G. § 1B1.13. Here, for the purposes of exercising its discretion, the district court accepted that legal premise—a premise that, other than 28 U.S.C. § 994(t)'s condition that rehabilitation alone cannot justify a sentence reduction, imposes no statutory limitations on the district court's discretion to determine what qualifies as an "extraordinary and compelling reason." Thus, it is incongruous for Winner to now assert that the district court applied the wrong legal standard when it adopted that standard at her request.

More incongruous still are Winner's claims that, because the court did not grant an expedited briefing schedule or grant a hearing, the district court "substituted an arbitrary, pre-determined ruling for any actual exercise of discretion when it denied [Winner's] request," and

18

"ignored" the evidence when reaching its decision.[9] (Winner Br. at 22, 24.) To the contrary, the district court's decision was supported by substantial evidence in the record.

The medical records Winner provided to the court were a July 1, 2018 psychological evaluation report (Doc. 341-2) and therapy–session records from between March 5, 2014 and January 12, 2015 (Doc. 341-8). The 2018 psychological report, prepared by a licensed psychologist,

---

[9] The district court was not required to hold a hearing on Winner's motion  *See* S.D. Ga. R. 7.2 ("Motions shall generally be determined upon the motion and supporting documents filed as prescribed herein."); *United States v. Denson*, — F.3d —, 2020 WL 3445820, at *1 (11th Cir. 2020) (holding that "the First Step Act does not require district courts to hold a hearing with the defendant present before ruling on a defendant's motion for a reduced sentence under the Act"); *United States v. Phillips*, 597 F.3d 1190, 1198 n.18 (11th Cir. 2010) ("[T]he district court in a § 3582(c)(2) matter is not required to have a sentencing hearing at all, a defendant need not be present, and a supplemental PSR is not required."); *United States v. Guyton*, 640 F. App'x 854, 856 (11th Cir. 2016) ("[N]othing in the statutory language of § 3582(c) requires a hearing."); *see also* Fed. R. Crim. P. 43(b)(4) (explaining defendant's presence is not required for § 3582(c) proceeding). Here, the materials that the district court relied upon for its decision were those provided by Winner with her initial motion (which, as explained below, were insufficient to meet her burden), the Government's response, and Winner's reply, which included additional documents. The court was not required to consider anything more. *See Phillips*, 597 F.3d at 1198 n.18. ("[T]he district court has discretion to decide whether to allow the parties to contest new information either in writing or at a hearing.").

reflected diagnostic impressions of "bulimia nervosa," "obsessive compulsive personality disorder," and "dysthymic[10] disorder." (Doc. 341-2.) The older therapy session records, prepared by her therapists, related to her bulimia. (Doc. 341-8.) None of the records, however, detailed how COVID-19 would impact these conditions or how those conditions placed Winner at greater risk or COVID-19. And none were particularly recent, having been prepared before her original sentencing.

For the first time on appeal, Winner suggests that more recent medical records held by BOP may have some bearing on this issue. (Winner Br. at 39.) But she made no such claims below, nor did she suggest in any earlier filing that medical records held by BOP were not available to her or her counsel, as she implies now.[11] Instead, in the district court, Winner rested her argument on her earlier records when

---

[10] "Dysthymia is a mild form of chronic depression that lingers for long periods of time, sometimes years. Those who suffer from dysthymia are usually able to function adequately, but seem consistently unhappy." *Shanks v. Comm'r, Soc. Sec. Admin.*, No. 17-483, 2018 WL 1358382, at *3 n.6 (N.D. Ga. Mar. 15, 2018).

[11] Winner attached to her reply brief a declaration by counsel related to her communications with BOP and Winner. (Doc. 347-2.) None suggest any failed attempts to gather Winner's medical records.

20

claiming that she was immunocompromised, which is one of the conditions that CDC says "might be at an increased risk for severe illness from COVID-19."[12]  But the documentation provided to the district court did not establish this.  Neither the 2018 psychological report nor the 2014-2015 therapy records was authored by a physician who concluded that Winner was immunocompromised.  Rather than submit a medical opinion, Winner merely noted her bulimia diagnosis and then cited a Buzzfeed News article[13] stating that "many" (but not all) people with

_____

[12] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last revised June 25, 2020) (hereinafter "CDC Medical Conditions"). Recent CDC information suggests that people with an "[i]mmunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines" *might be at an increased risk* due to COVID-19.  *Id.*  This is due to "limited data and information about the impact of the underlying medical conditions and whether they increase the risk for severe illness from COVID-19." *Id.*  Whereas the CDC believes that people with an "[i]mmunocompromised state . . . from solid organ transplant" "*are at increased risk*."  *Id.* (emphasis added).

[13] The Buzzfeed News article cites a WebMD entry from 2002, which discusses a study that suggests that an eating disorder may result from an "immune system abnormality that causes other difficult-to-treat diseases like rheumatoid arthritis, multiple sclerosis, and lupus."  Eating Disorders Linked to Immune System, WebMd (Dec. 11, 2002), *available at* https://www.webmd.com/mental-health/eatingdisorders/news/

21

eating disorders are immunocompromised. (Doc. 341 at 16 & n.56, n. 58). Winner did not provide any more authoritative studies or support for that general assertion, and offered no medical evidence establishing that she, herself, is immunocompromised.

Based on this record, the district court properly found that Winner failed to demonstrate that her specific medical conditions and conditions of confinement at FMC Carswell were inclined to uniquely and adversely affect her to the point of justifying early release. (Doc. 349 at 7-8.) *See United States v. Zamor*, — F. Supp. 3d —, 2020 WL 2764282, at *1 (S.D. Fla. May 12, 2020) ([W]ithout any information, detail, or evidence of a severe medical condition that places him at a high risk of contracting a severe case of Covid-19, Zamor cannot show that extraordinary and compelling reasons support his release . . . .”). The documentation did not demonstrate that BOP's COVID-19 plan was inadequate or that FMC

---

20021211/eating-disorders-linked-to-immune-system (last visited Apr. 23, 2020). Contrary to Winner's implicit argument, the WebMD article suggests it is "the immune system [gone] awry" that causes the eating disorder, not the other way around. *See id.* Winner did not allege or provide medical evidence establishing that she suffered from a disease like rheumatoid arthritis, multiple sclerosis, or lupus that has caused her bulimia. In any event, neither article suggests that every person with an eating disorder also has a compromised immune system.

Carswell was unable to adequately treat her. As of April 19, 2020, FMC Carswell reported that two inmates and no staff members had testified positive for COVID-19.[14] Winner was not being treated any differently than any other inmate, and she did not establish that BOP could not adequately address any potential medical issues she might face during this period. Because the documentation in the record did not demonstrate how COVID-19 specifically affected Winner (apart from speculation), or show that BOP's plan was inadequate, or prove that FMC Carswell was unable to adequately treat her, substantial evidence supports the district court's decision, and it did not abuse its discretion by finding that Winner had not established an "extraordinary and compelling reason" justifying early release from custody. *Cf. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019) ("Substantial evidence, this Court has said, is 'more than a mere scintilla.' . . . It means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"). Its decision should be affirmed.

---

[14] BOP Resource (visited on Apr. 20, 2020). As of June 28, 2020, FMC Carswell reported zero inmates and one staff member were currently positive. *See id.* (last visited June 29, 2020).

23

**D.    The district court lacked jurisdiction to consider Winner's motion under § 3582(c)(1)(A) because she failed to meet her burden establishing her exhaustion of administrative remedies.**

**1.    Winner acknowledges that she did not wait the 30-days required under § 3582(c)(1)(A) prior to filing her motion.**

Alternatively, the district court properly concluded that Winner failed to establish that she fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on her behalf, or that 30 days had lapsed from the receipt of such a request by the warden of Winner's facility, as required by § 3582(c)(1)(A).  To show that she had exhausted her administrative remedies, Winner was required to prove two things: (1) the date on which she submitted her request, triggering the 30-day clock under § 3582(c)(1)(A); and (2) the basis for her request to BOP, which would reflect whether she started an administrative process under § 3582(c)(1)(A).  A defendant who does not provide evidence demonstrating both the date of submission to BOP and the basis for the request does not provide enough information to establish that she first exhausted her administrative remedies.  *See, e.g., United States v. Courson*, No.  CR 215-010, 2020 WL 2516392, at *1 (S.D.  Ga.  May 15, 2020) (dismissal necessary where defendant "has not provided the Court

24

with enough information to conclude he has exhausted his administrative remedies").

> ### 2. Assuming, arguendo, that Winner submitted a valid RIS request based on compassionate release, she did not complete the appropriate 30-day administrative exhaustion process required by § 3582(c)(1)(A).

The compassionate release statute reads, in relevant part, that "the court *may not* modify a term of imprisonment once it has been imposed except that in any case the court, upon motion of the defendant *after* the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, *may* reduce the term of imprisonment."  18 U.S.C. § 3582(c)(1)(A) (cleaned up and emphasis added).  Regardless of the nature of Winner's original request, she does not dispute that she submitted a request to BOP on April 8, 2020.  (Doc. 341-1 at 4.)  Two days later, she filed her motion in the district court.  (Doc. 341.)  Thus, Winner did not (and cannot) demonstrate that the warden ultimately denied her request, that she exhausted her administrative appellate remedies, or that 30 days had

passed since she submitted her request to BOP. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("As noted, Raia failed to comply with § 3582(c)(1)(A)'s exhaustion requirement: BOP has not had thirty days to consider Raia's request to move for compassionate release on his behalf, and there has been no adverse decision by BOP for Raia to administratively exhaust within that time period . . . ."); *see also United States v. Dowlings*, No. CR 413-171, 2019 WL 4803280, at \*1 (S.D. Ga. Sept. 30, 2019) ("Defendant has not shown that he requested compassionate release from the Bureau of Prisons or exhausted his administrative remedies.").

In *Raia*, the defendant argued that he faced a "heightened risk of serious illness or death from the [COVID-19] virus" because he was 68-years old and suffered from Parkinson's Disease, diabetes and heart problems. *See Raia*, 954 F.3d at 596. The Third Circuit explained that, despite this, remand to the district court would be futile because Raia had not yet exhausted his administrative remedies. *See id.* at 597. As particularly relevant in this case, that Court of Appeals emphasized:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone

26

> cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.

*Id.* Similarly, in *United States v. Alam*, — F.3d —, 2020 WL 2845694 (6th Cir. 2020), the Sixth Circuit cited *Raia* with approval, holding that the 30-day administrative exhaustion period was a claim-processing rule, making it "a mandatory condition" which must be enforced if the government raises it. *Id.* at *2-*3. District courts in this circuit have applied similar reasoning in enforcing the exhaustion requirement and in denying motions for compassionate release based on general COVID-19 allegations. *See Zamor*, 2020 WL 2764282, at *1; *United States v. Gray*, No. 01-07, 2020 WL 2132948, at *6 (S.D. Ala. May 4, 2020); *United States v. Pope*, No. CR 216-024, 2020 WL 1956510, at *1 (S.D. Ga. Apr. 23, 2020); *United States v. Daniels*, No. 08-464, 2020 WL 1938973, at *3 (N.D. Ala. Apr. 22, 2020); *United States v. Mollica*, No. 14-329, 2020 WL 1914956, at * 6 (N.D. Ala. Apr. 20, 2020); *United States v. Zywotko*, NO. 19-113, 2020 WL 1492900, at *1-*2 (M.D. Fla. Mar. 27, 2020). Therefore, regardless of whether the restriction is deemed "jurisdictional" or a "claims-processing" rule, as Winner contends, when

27

the government asserts that restriction, it precludes a district court from considering a compassionate release motion.

Here, Winner concedes that she did not attempt to exhaust her administrative remedies for at least 30 days prior to filing her motion in district court, the government asserted the exhaustion and time-lapse requirements, and the district court correctly found that it could not consider Winner's premature claim.[15]   This Court should affirm the district court decision to dismiss Winner's motion.

### 3.    There is no judicial exception to § 3582(c)(1)(A)'s administrative exhaustion requirement.

Winner suggests that—despite the statutory language that the district court can only reduce a sentence "upon motion of the defendant *after* the defendant has fully exhausted all administrative rights"—there exists a judicial exception to § 3582(c)(1)(A)'s administrative exhaustion requirement that allows a district court to still consider compassionate

---

[15] On appeal, Winner asserts that, regardless, 30 days have now passed making her motion timely. (Winner Br. at 9.) But, nothing in § 3582(c)(1)(A) allows defendants to "pre-file" their motions with the assumption that at some point during the course of litigation, they will eclipse the 30-day requirement.  In any event, the district court ruled on Winner's motion on April 24, 2020 (Doc.  349), well before the 30-day timeframe triggered by Winner's April 8, 2020 request (if triggered at all), so the district court was without jurisdiction.

release motions.  (Winner Brf.  9-14.)  As reflected in the decisions cited above, this is not correct.  *See Alam*, 2020 WL 2845694, at \*3-\*4 (rejecting argument that there is a judicial exception to the 30-day administrative exhaustion requirement).

Given the plain language and purpose of § 3582(c)(1)(A), the requirements for filing a sentence reduction motion—including the requirement that a defendant exhaust administrative remedies or wait 30 days before moving in court for compassionate release—are properly viewed as jurisdictional.  Section 3582(c) states that a "court may not modify" a term of imprisonment except in enumerated circumstances.  18 U.S.C. § 3582(c).  It thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," *Landgraf v.  USI Film Prods.*, 511 U.S.  244, 274 (1994) (citation omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" *Bowles v.  Russell*, 551 U.S.  205, 212-13 (2007) (quoting *Eberhart v.  United States*, 546 U.S.   12, 16 (2005)).  Accordingly, courts have understood Section 3582(c) to confer upon them the jurisdictional authority they previously lacked to modify otherwise final sentences

29

under specific circumstances.[16] *See, e.g., United States v. Mills*, 613 F.3d 1070, 1078 (11th Cir. 2010) ("The law is clear that a sentencing court lacks jurisdiction to consider a § 3582(c)(2) motion, even when an amendment would lower the defendant's otherwise-applicable Guidelines sentencing range, when the defendant was sentenced on the basis of a mandatory minimum.").

While judicially created exhaustion requirements may sometimes be excused, it is well settled that a court may not ignore a statutory command such as that presented in § 3582(c)(1)(A). *See Alam*, 2020 WL 2845694, at *3-*4. The Supreme Court reaffirmed this principle in *Ross v. Blake*, 136 S. Ct. 1850 (2016), where the Court rejected a judicially created "special circumstances" exception to the exhaustion requirement stated in the Prison Litigation Reform Act of 1995 (PLRA). That Act mandates that an inmate exhaust "such administrative remedies as are available" before bringing suit to challenge prison conditions. 42 U.S.C.

---

[16] Even if the exhaustion requirement of § 3582(c)(1)(A) is not jurisdictional, it is at least a mandatory claim-processing rule and must be enforced if a party "properly raise[s]" it. *See Eberhart*, 546 U.S. at 19; *Alam*, 2020 WL 2845694, at *2 (holding that administrative exhaustion requirement of § 3582(c)(1)(A) is claim-processing rule). The Government has properly raised the rule here, and it must be enforced.

30

§ 1997e(a).  Rejecting the "freewheeling approach" adopted by some appellate courts, under which some prisoners were permitted to pursue litigation even when they had failed to exhaust available administrative remedies, *Ross*, 136 S. Ct. at 1855, the Court demanded fidelity to the statutory text, explaining that the "mandatory language" of the exhaustion requirement "means a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances, *id.* at 1856. The Supreme Court explained that, under a statutory exhaustion provision, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to.  For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."  *Id.* at 1857.

That rule plainly applies to the statutory text here.  Section 3582(c)(1)(A) unambiguously permits a motion to the Court only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[17]

Winner's suggestion, in a footnote, that this Court may ignore the exhaustion requirement in light of the COVID-19 pandemic is incorrect. First, there is, no "futility" exception to § 3582(c)(1)(A)'s requirement, *see United States v. Gourdine*, No. CR 610-001, 2020 WL 2199624, at *2 (S.D. Ga. May 6, 2020), *United States v. Allen*, No. CR 214-024, 2020 WL 2199626, at *2 (S.D. Ga. May 6, 2020) ("There is no futility exception to § 3582(c)(1)(A)'s administrative exhaustion requirement, and the Court declines to invent one"), and the Supreme Court has made clear that courts have no authority to invent an exception to a statutory exhaustion requirement.

In *Alam*, the Sixth Circuit rejected the argument that there was an exception to § 3582(c)(1)(A)'s administrative exhaustion requirement. *See* 2020 WL 2845694, at *3-*5. And the holding in *United States v. Perez*, — F. Supp. 3d —, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020), provides Winner no relief because, that court incorrectly excused

---

[17] Unlike the exhaustion provision in *Ross*, which required only exhaustion of "available" administrative remedies, 136 S. Ct. at 1858, the compassionate release statute contains no such exception.

exhaustion of a claim based on COVID-19 as "futile," relying only on *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019), which addressed a judicially-created (rather than statutory) exhaustion requirement to 21 U.S.C. § 811(a) (relating to the classification of drugs under the Controlled Substances Act).

In any event, a request in this context is not futile, because BOP fully considers requests for compassionate release, when properly submitted. As the Third Circuit stated in *Raia*, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Raia*, 954 F.3d at 597.

### 4. *Winner did not establish the basis for her request to BOP.*

Next, apart from failing to meet the 30-day requirement, Winner did not establish the basis for the release request she made to BOP. Specifically, the information she attached in her reply brief did not show whether Winner herself requested a reduction-in-sentence (RIS) based on compassionate release and the COVID-19 pandemic, or whether she requested home confinement, which is a completely different request. In fact, Winner did not attach any documents establishing the actual

33

contents of her request to BOP.[18] (Docs. 341-1 at 4, 347-2 at 8-12.)  *See, e.g., United States v. Brass*, No. 14-216, 2020 WL 2043884, at *1 (W.D. La. Apr. 28, 2020) ("The statute specifically states that the 'defendant' must exhaust, not that someone may exhaust on his behalf. As Brass did not seek relief from Warden Garrido himself, his claim is not exhausted and cannot be considered by this court."). Absent a showing that Winner's request was an RIS based on compassionate release—rather than a request that BOP designate her to home confinement—the district court did not have jurisdiction to review her motion. *See United States v. Courson*, No. CR 215-010, 2020 WL 2516392, at *1 (S.D. Ga. May 15, 2020) ("Because Courson has not provided the Court with enough

---

[18] In preparing its district court response, the Government contacted BOP legal counsel at FMC Carswell and requested any information they had about Winner requesting a reduction-in-sentence (RIS) based on compassionate release. (Doc. 345 at 11 n.4.) In turn, the social worker responsible for reviewing all of the institution's compassionate release requests, said that, as of April 20, 2020, BOP had not yet received an RIS request from Winner. (Doc. 345 at 11 n.4.) After receiving Winner's reply, the Government learned from BOP legal counsel that the letter BOP received from Winner was interpreted as a request for designation to home confinement, not an RIS request. As will be discussed *infra*, BOP follows different administrative processes for those request categories.

information to conclude he has exhausted his administrative remedies, the Court must dismiss his motion.").

The distinction between requesting home confinement and requesting a reduction in sentence based on compassionate release is an important, and determinative, one. "It is important to understand that a request for home confinement under the CARES Act is different than a reduction-in-sentence (RIS) request based upon compassionate release." *See Allen*, 2020 WL 2199626, at *1. BOP is utilizing its authority under 18 U.S.C. § 3623(c)(2) and 34 U.S.C. § 60541—not the compassionate release provision of 18 U.S.C. § 3582(c)—to effectuate the Attorney General's March 26, 2020 and April 3, 2020 memoranda. *See id.*

Under § 3623(c)(2) and § 60541, it is BOP's responsibility to compute a prisoner's sentence, including home confinement designation. *See Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992), *abrogated on other grounds by Santiago-Lugo v. Warden*, 785 F.3d 467 (11th Cir. 2015); *Clay v. Henderson*, 524 F.2d 921, 924 (5th Cir. 1975) ("[T]he Board of Prisons, through the Attorney General, possesses the absolute authority, absent a showing of abuse of discretion, to designate the place of a prisoner's confinement and to administer transfer

matters."); *see also United States v. Lovelace*, No. 12-402, 2014 WL 4446176, at *2 (N.D. Ga. Sept. 9, 2014) ("[T]he Court has no authority to grant Defendant's request and order the Bureau of Prisons to release Defendant to a halfway house." (citing 18 U.S.C. §§ 3621(b) & (b)(5))). These statutes "do[] not authorize a federal court to order the BOP to release a prisoner . . . ." *See United States v. Calderon*, 801 F. App'x 730, 731-32 (11th Cir. 2020) (explaining that under § 60541(g)(1)(A) the Attorney General "may" release eligible elderly offenders, and district court was without jurisdiction to grant relief); *United States v. Lynn*, No. 89-72, 2019 WL 3082202, at *3 (S.D. Ala. July 15, 2019) ("Congress has made the decision whether to place a prisoner in home confinement pursuant to Section 60541(g) exclusively that of the Attorney General and BOP, not the courts."). Thus, under those statutes, BOP can administratively determine the inmate's place of confinement—including home confinement—without seeking authority from the district court (and, in fact, the district court is precluded from doing so). *See United States v. Mabe*, No. 15-133, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("However, the CARES Act places decision making authority solely within the discretion of the Attorney General and the

36

Director of Prisons. . . . This Court therefore does not have the power to grant relief under Section 12003 of the CARES Act.").

On the other hand, 18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13 & app. n. 1, and PS 5050.50 address compassionate release requests. This statute, guideline, and program statement involve a different procedure and analysis than § 60541(g) and § 3623(c)(2). *See, e.g., Lynn*, 2019 WL 3082202, at *3 (explaining that "Section 60541(g) addresses home confinement, not release under Section 3582(c)(1)(a)"). Importantly, as part of the compassionate-release RIS process, the inmate requests that the Director of the BOP file a motion for compassionate release on his behalf in the district court. *See* 18 U.S.C. § 3582(c)(1)(A); PS 5050.50. Where a compassionate release request is granted by the court, "the Warden of the institution where the inmate is confined shall release the inmate forthwith." PS 5050.50 at 14 (citing 28 C.F.R. § 571.62(b)). In short, when an inmate requests an RIS based upon compassionate release, she is asking BOP to agree to file a motion on her behalf with the district court.

Even considering the information Winner supplied to the district court in her reply brief, she did not meet her burden demonstrating the

37

basis for her request to BOP.  None of those documents establish what Winner actually submitted to BOP, or whether it was an RIS based on compassionate release, or a request to be placed on home confinement. Some evidence, though, suggests Winner actually asked for home confinement, not an RIS under § 3582(c)(1)(A):

> ● In her initial compassionate release brief, she asked the district court to designate her to home confinement. (Doc. 341-1 at 4 ("Reality asks this Court to commute her sentence to home confinement . . . .")).

> ● Attachments to Winner's initial motion included the Attorney General's March 26, 2020 memorandum on home confinement, as well as the Attorney General's April 6, 2020 memorandum. (Doc. 341-5; Doc. 341-6.)

> ● An attachment to her reply brief was a copy of a letter from the Federal Public and Community Defenders to the Attorney General on the increased use of home confinement. (Doc. 347-2.)

> ● In another reply attachment, an affidavit from one of Winner's attorneys stated that she mailed a form to Winner so that Winner could "request[] that she be permitted to serve the remainder of her sentence in home confinement . . . ." (Doc. 347-2 at 2.)

If Winner submitted a request for home confinement, instead of an RIS based on compassionate release, then she never even started the administrative procedure required under § 3582(c)(1)(A) and her compassionate release motion in district court was untimely.  Because

her reply-brief exhibits do not reflect that Winner requested an RIS based on § 3582(c)(1)(A) and PS 5050.50, Winner did not meet her burden, and the district court was without jurisdiction. *See United States v. Crosby*, No. CR 217-061, 2020 WL 2561778, at *1 (S.D. Ga. May 20, 2020).

Accordingly, here, the district court properly dismissed Winner's motion because she did not attempt to exhaust her administrative remedies for the statutorily required 30 days. Additionally, the district court was without jurisdiction because Winner did not establish the basis for her request to BOP. *See Hall*, 714 F.3d at 1271. For these reasons, this Court should affirm the district court's order.

### E. *The district court lacked jurisdiction to consider Winner's motion under § 3582(c)(1)(A) because she failed to meet her burden of demonstrating an extraordinary and compelling reason for relief.*

Even if the district court could have excused the administrative exhaustion requirement, it still lacked jurisdiction because Winner failed to establish an "extraordinary and compelling reason" under the statute and Guidelines. In this case, Winner contended that her bulimia and depression made her susceptible to COVID-19 and those conditions were exacerbated by the measures BOP implemented to protect inmates and

staff members from infections.[19]  Winner's bulimia and depression were the basis of the district court's original recommendation at sentencing, which BOP accepted, to commit her to FMC Carswell, a medical prison. They are not, though, among the physical or mental conditions so serious that they qualify her for compassionate release under the statute and associated Guidelines and policy.

As noted above, once all the conditions precedent have been met, the First-Step-Act-amended 18 U.S.C. § 3582(c)(1)(A) allows a district court to modify a term of imprisonment if it finds "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." *Cf. Cruz-Pagan*, 486 F. App'x at 78. Title 28, United States Code, Section 994(t) provides the authority for the Sentencing Commission to define the meaning of "extraordinary and compelling reasons" under § 3582(c)(1)(A). Section 994(t) explicitly states that "[r]ehabilitation of the defendant alone shall not be considered an

---

[19] Addressing Winner's arguments, the district court remarked that it "would be remiss not to point out Winner's incongruous complaint that she is at greater risk because of the preventative measures undertaken by the prison in response to COVID-19." (Doc. 349 at 8.)

extraordinary and compelling reason." Sentencing Guideline § 1B1.13, application note 1, defines "extraordinary and compelling reasons" to encompass three categories: (1) medical condition of the defendant, (2) age of the defendant, and (3) family circumstances. The statute and Guidelines therefore limit compassionate release for extraordinary and compelling reasons to these particular circumstances. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13 & app. n.1; *see also United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010) ("The authority of a district court to modify an imprisonment sentence is narrowly limited by statute."); *Saldana*, 2020 WL 1486892, at *3-*4 (where defendant argued for compassionate release based on his claim he was no longer a Guidelines career offender based on new caselaw, holding court did not have jurisdiction to release because that claim did not satisfy any category of § 3582(c)).

Guidelines § 1B1.13 includes a fourth category, entitled "other reasons," which is left specifically to the determination of the Director of BOP. *See* U.S.S.G. § 1B1.13, app. n.1(D). As such, under the plain language of § 1B1.13, the district court is without authority to determine "other extraordinary and compelling reasons" outside of the situations in

41

application note 1 (A) through (C). However, recognizing the discretion given to BOP under subsection (D), the court also may look to the grounds set forth in the relevant BOP regulation governing compassionate release. *See* PS 5050.50; *see also United States v. Lynn*, No. 89-72, 2019 WL 3805349, at *3 (S.D. Ala. Aug 13, 2019) (disagreeing that under the First Step Act, court may include, under U.S.S.G. § 1B1.13, app. n.1(D), additional extraordinary and compelling reasons apart from BOP's determination). While BOP's regulations may provide more detail regarding implementation of the grounds contained in application note 1 (A) through (C), they still limit "extraordinary or compelling circumstances" to medical circumstances, elderly inmates, death or incapacitation of the family-member caregiver, or incapacitation of a spouse or registered partner. *See* PS 5050.50 at 3-12.

Winner bore the burden of meeting these criteria, but failed to do so. She did not claim that she was suffering from a terminal illness; she is not 65 years old; she made no claim regarding the death or the incapacitation of the caregiver of any minor children; and did not claim that she would be the only available caregiver for an incapacitated spouse or registered partner. *See* § 1B1.13, app. n.1(C)(i)-(ii). Moreover, none

42

of her stated reasons are extraordinary or compelling under BOP's regulations.  *See* PS 5050.50 at 3-19.

Sentencing Guidelines § 1B1.13, app.  n.1(A)(ii) also does not cover Winner's situation.  The application note applies to defendants who suffer from a serious physical or medical condition, or from a serious functional or cognitive impairment only if that condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" and the defendant "is not expected to recover" from the condition.  *Id*.  Winner did not allege, and did not provide evidentiary support to show, that her bulimia and depression were so serious that she was unable to provide self-care within the environment of a correctional facility.  Recognizing that her conditions were the basis of this Court's recommendation at sentencing that she be incarcerated at FMC Carswell, the circumstances she described did not rise to the level of being "unable to provide self-care."  Thus, on their own, Winner's alleged bulimia and depression did not qualify as an "extraordinary and compelling reason" under the statute and Guidelines.

Winner did not really dispute this in the district court; her argument was only that these conditions put her health at high-risk

during the COVID-19 pandemic. The mere existence of the COVID-19 pandemic, though, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597; *see also United States v. Eberhart*, No. 13-313, 2020 WL 1450745 at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."); *United States v. Rodriguez-Orejuela*, — F. Supp. 3d —, 2020 WL 2050434, at *8 (S.D. Fla. Apr. 28, 2020) ("While the April 3 memo does prioritize the use of home confinement as a tool for combatting COVID-19, it is 'not a get-out-of-jail-free card for every incarcerated person.'"). To classify COVID-19 as an extraordinary and compelling reason, on its own, would not only be inconsistent with the

text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens. It could also result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis under § 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,[20] that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even

---

[20] *See* CDC Medical Conditions.

45

if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I). But as part of its analysis of the totality of circumstances, a district court should consider whether the inmate is more likely to contract COVID-19 if she is released than if she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at her institution.

Here, Winner asserted that she suffers from bulimia, making her more vulnerable to becoming seriously ill should she contract COVID-19. This claim did not establish an "extraordinary and compelling reason" because bulimia and depression are not among the conditions identified by the CDC as increasing a person's risk for developing serious illness from COVID-19.

Next, as discussed above, Winner did not provide sufficient documentation to support her asserted medical conditions and therefore did not meet her burden establishing that she qualified for a sentence reduction. Though, depending on the circumstances, being immunocompromised might be one of the CDC's at-risk categories, Winner did not establish that she is presently immunocompromised. She

46

also did not provide evidence establishing how COVID-19 would specifically affect her to the level of then qualifying under § 1B1.13, application note 1.

In the end, as the district court properly found, Winner's failure to allege a qualifying medical condition or qualifying family reason was fatal to her claim. *See Saldana*, 2020 WL 1486892, at *3-*4; *see also United States v. Jones*, — F.3d —, 2020 WL 3248113, at *5 (11th Cir. 2020) (explaining under § 3582(c) that "district court lacks the inherent authority to modify a term of imprisonment" except "to the extent that a statute expressly permits"); *United States v. Carter*, 792 F. App'x 660, 662 (11th Cir. 2019) (explaining "district courts are permitted to modify a term of imprisonment to the extent expressly permitted by statute"). This Court should affirm the district court's judgment.

### F.    The First Step Act did not grant district courts authority to determine general criteria for sentence modification under the compassionate release statute.

#### 1.    The First Step Act amended who files a compassionate release motion in the district court, leaving undisturbed the substantive requirements for granting compassionate release.

Winner argues, though, that district courts, post-First Step Act amendments, now have the broad authority under Guidelines § 1B1.13,

47

application note 1(D), to determine what "other reasons" qualify as "extraordinary and compelling" justifying early release from prison. As presently written, that section requires the Director of BOP to determine whether the prisoner has adequately demonstrated extraordinary and compelling reasons other than, or in combination with, the reasons described in subdivisions (A) through (C), *i.e.*, medical condition, age and family circumstances. Winner's contention is that application note 1(D)'s reference to the Director of BOP conflicts with the recently amended § 3582(c)(1)(A), so now the Guidelines should be read to grant that same authority to the district court. That argument fails to recognize the difference between (1) the First Step Act's amendments related to the procedural requirements for seeking compassionate release in the district court and (2) the un-amended substantive requirements that permit courts to grant compassionate release.

Though the First Step Act amended § 3582(c)(1)(A) to allow defendants to move the district court directly for compassionate release; it did not change the general criteria the district court should use in making that decision, or shift the authority to develop those criteria from the Sentencing Commission to the courts. *See Ebbers*, 432 F. Supp. 3d at

48

427. Rather, "Congress in fact only expanded access to the courts; it did not change the standard." *Id.* (citing *Willis*, 382 F. Supp. 3d at 1187).

This interpretation of the statute recognizes, as it must, what the First Step Act did not change. Specifically, the First Step Act left in place 28 U.S.C. § 994(t)'s requirement that "[t]he [Sentencing] Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); *see also Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1018 (2020) ("And where, as here, Congress has simultaneously chosen to amend one statute in one way and a second statute in another way, we normally assume the differences in language imply differences in meaning."); *Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1209 (11th Cir. 2009) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation

49

marks omitted)); *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007) ("[W]here Congress knows how to say something but chooses not to, its silence is controlling." (cleaned up)). Likewise, Congress left in place § 3582's requirement that any sentence modification be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). It further left in place the Commission's role as arbiter, through its policy statement, of the "appropriate use" of § 3582(c). 28 U.S.C. § 994(a)(2).

Because the Act did not reassign responsibility to establish general criteria from the Sentencing Commission to the district courts, the First Step Act's amendment left in place U.S.S.G. § 1B1.13's application note 1(D), which concerns the substantive question of whether certain circumstances are extraordinary and compelling rather than the prior, procedural question, of who may move the court for relief. *See United States v. Contreras*, 739 F.3d 592, 594 (11th Cir. 2014) ("When construing the meaning of sentencing guidelines, we are bound by the guidelines commentary."). Because the First Step Act amended the latter while leaving the former undisturbed, application note 1(D) remains binding on the court. In other words, a court should look to BOP's PS 5050.50 to

decide whether the defendant has shown "other reasons" that are extraordinary and compelling.

Recently, in the only appellate decision on point so far, the Tenth Circuit followed this approach. *See Saldana*, 2020 WL 1486892. There, similar to Winner, the defendant argued that the district court, under the compassionate release statute, could reduce his sentence because of his rehabilitative efforts and because he would no longer be a career offender under the Guidelines due to subsequent caselaw. *See id.* at *2-*3. The Tenth Circuit rejected that argument and affirmed the district court's dismissal of Saldana's compassionate release motion, explaining that "Mr. Saldana does not explain how his request overcomes our cases stating that § 3582(c) . . . does not authorize a sentence reduction based on new case law . . . including developments in 'crime of violence' case law . . . ." *Id.* That circuit noted that "neither the § 1B1.13 commentary nor BOP Program Statement 5050.50 identify post-sentencing developments in case law as an 'extraordinary and compelling reason' warranting a sentence reduction," and rehabilitation alone does not qualify as an extraordinary and compelling reason. *Id.* at *3. In other words, the defendant's claim that, based on new caselaw, he was no

51

longer subject to the career offender enhancement was not "one of the specific categories authorized by section 3582(c)." *Id.* The reasoning in *Saldana* applies equally here—if subsequent changes in caselaw do not justify compassionate release under the First Step Act, then neither do other non-qualifying health-related issues.

While the First Step Act clearly amended § 3582(c)(1)(A) and, by implication, those parts of § 1B1.13 and its commentary discussing that only the BOP director could file a compassionate release motion, Winner's legal arguments make an illogical leap from the procedural question of *who* files a motion to the substantive question of *what criteria* supports compassionate release. True, the First Step Act's amendment to § 3582 allowing a defendant to move (after exhausting administrative remedies) for compassionate release does conflict with the portions of § 1B1.13 that prohibit the court from modifying a sentence absent a motion from the Director of the Bureau of Prisons. *See, e.g.,* U.S.S.G. § 1B1.13 ("Upon motion of the Director of the Bureau of Prisons . . . ."); *id.* § 1B1.13, app. n.4 ("Motion by the Director of the Bureau of Prisons.—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons . . . ."). But "there is no

52

comparable inherent incompatibility between a statute allowing defendants to move for compassionate release and a policy statement allowing BOP a role in determining whether compassionate release is warranted, and thus no basis for deeming the policy statement overridden." *See Lynn*, 2019 WL 3805349, at *4. In other words, just because Congress's change to § 3582's procedural mechanism conflicts with the Guidelines' prior restatement of that procedural mechanism does not change either Congress's prior substantive criteria or the Sentencing Commission's criteria adopted as an exercise of its statutory authority under § 994(t).

It bears repeating that, when it passed the First Step Act, Congress certainly could have also amended § 994(t)—but it did not. *See Comcast*, 140 S. Ct. at 1018; *Freemanville*, 563 F.3d at 1209; *Delgado*, 487 F.3d at 862; *cf. Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another."). It also could have toppled the earlier Sentencing Commission Guidelines, reflected at U.S.S.G. § 1B1.13, stating, as Winner does, that it is outdated—but it did not.

Importantly, Winner's statutory analysis ignores § 994(t) and would leave district courts with complete discretion to reduce sentences under § 3582(c)(1)(A) based on any criteria they choose, so long as they do not rely on rehabilitation alone. *See* 28 U.S.C. § 994(t). Under such an interpretation, any circumstance that a court deemed "extraordinary and compelling" could justify a reduction in sentence, with no consistency between the courts—either within a district, within a circuit or between the circuits.

In this case, Winner contends that the district court had the authority to grant her relief based on her medical conditions and COVID-19, even though her medical conditions did not qualify under any statutory or Guidelines category, and she failed to establish COVID-19's specific effects on her health. That theory rests upon a faulty premise that the First Step Act rendered the Sentencing Commission's policy statement an inappropriate expression of policy. *See, e.g., United Mollica*, 2020 WL 1914956, at *4; *Willingham*, 2019 WL 6733028, at *2; *see also United States v. Nasirun*, No. 99-367, 2020 WL 686030, at *2 & n.2 (M.D. Fla. Feb. 11, 2020) (citing *Willingham*). "This interpretation, and it appears to be an [ ] interpretation gleaned primarily from the

54

salutary purpose expressed in the title of Section 603(b) of the First Step Act, contravenes express Congressional intent that the Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision." *See Willingham*, 2019 WL 6733028, at *2 (citing 28 U.S.C. § 994(t)). Indeed, § 3582(c)(1)(A) as amended by the First Step Act *still* requires courts to abide by policy statements issued by the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A). And the First Step Act did not alter § 994(t) and its delegation of authority to the Sentencing Commission to define "extraordinary and compelling reasons" justifying compassionate release.

Accordingly, here, the district court properly followed the policy statement in § 1B1.13 and denied Winner's motion because she did not meet the specific examples of extraordinary and compelling reasons and the Director of BOP did not determine that circumstances outside of these examples exist to afford her relief. *See, e.g., Lynn*, 2019 WL 3805349, at *4 ("If the policy statement needs tweaking in light of Section 603(b) [of the First Step Act], that tweaking must be accomplished by the [Sentencing] Commission, not by the courts."); *United States v. Heromin*,

No. 11-550, 2019 WL 2411311 (M.D. Fla. June 7, 2019); *Willis*, 382 F. Supp. 3d 1185.

> ### 2. Winner's interpretation would allow district courts to become de facto parole boards with almost unfettered discretion to determine what constitutes an "extraordinary and compelling reason" without regard to congressionally mandated sentences, enumerated limitations in the Guidelines or consistency among the courts.

This Court can already observe the results of Winner's interpretation: some district courts across the country have taken the opportunity to release defendants prior to their serving lawful, mandatory sentences based on circumstances that have no relationship to those established by the Sentencing Commission. For example, multiple district courts have concluded that "stacked" sentences under 18 U.S.C. § 924(c) present extraordinary and compelling circumstances, even though Congress did not (even though it could have) make its § 924(c) amendments retroactive. In *United States v. Maumau*, No. 08-758, 2020 WL 806121 (D. Utah Feb. 18, 2020), the district court concluded that it had the authority to grant a sentence modification to a defendant decades before he completed his mandatory, lawful minimum sentence. *See id.* at \*4-\*5. Similarly, in *United States v. Urkevich*, No.

56

03-37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019), the district court reduced a defendant's sentence by 40 years after concluding that his stacked sentences—admittedly undisturbed by the First Step Act's amendments to § 924(c)—were an extraordinary and compelling reason to reduce an otherwise completely lawful sentence. *See id.* at *3-*4.

Relatedly, another court reduced an otherwise lawful mandatory life sentence under 21 U.S.C. § 841, at least in part, for reasons having nothing to do with those set out by the Sentencing Commission. In *United States v. Cantu-Rivera*, No. 89-204, 2019 WL 2578272 (S.D. Tex. June 24, 2019), the district court reduced the mandatory minimum life sentence under § 3582(c)(1)(A), in part, because it believed that the defendant's age, health, and rehabilitation—combined with 'the fundamental change to sentencing policy carried out in the First Step Act's elimination of life imprisonment as a mandatory sentence solely by reason of a defendant's prior convictions"—satisfied application note 1(D)'s requirement for extraordinary and compelling reasons. *See id.* at *2. But if Congress had intended for the First Step Act's changes to apply to the defendant in *Cantu-Rivera*, it could have made them retroactive. It did not. *See* First Step Act, § 401(c). By ignoring Congress's expressed

intent that the First Step Act's changes not apply retroactively, these courts expanded application note 1(D) so far that it no longer placed any real bound on the courts' discretion.

It is easy to see, then, the risk of adopting Winner's interpretation. Under her theory, other than the 30-day requirement to first exhaust administrative remedies, there is no minimum amount of time a defendant must serve in prison before he or she can file a compassionate release request under § 3582(c)(1)(A). Further, a district court that disagreed with Congress's mandate requiring minimum sentences for certain crimes could sentence a defendant and then, not much more than 30 days later, immediately reduce that sentence under the auspices of compassionate release. Moreover, without any structure or guidance, different courts, left to almost unconstrained discretion, could choose to either grant or deny compassionate release to similarly situated defendants, resulting in arbitrary outcomes completely driven by a defendant's blind luck of which judge handles his case. Whatever Congress intended when passing the First Step Act, it certainly did not

intend for district courts to become independent, de facto parole boards with unbound discretion to judicially veto lawfully enacted statutes.[21]

Contrary to Winner's claims, there are good reasons why application note 1(D) remains within the authority of the Director of BOP. Section 3582(c)(1)(A) specifically requires that a defendant first submit his or her compassionate release request to BOP for an administrative determination. Because BOP makes the first determination, it is reasonable that the Sentencing Commission could conclude that, to promote consistency and avoid disparate treatment of defendants, the Director of BOP should be responsible for determining what other reasons qualify as "extraordinary and compelling" apart from

---

[21] Winner states that Congress's intent in passing the First Step Act was to "combat mass incarceration and provide additional avenues for courts to reduce sentences." (Winner Br. at 14.) But a statute's interpretation is based on its plain meaning, not legislative intent. "Even if a statute's legislative history evinces an intent contrary to its straightforward statutory command, 'we do not resort to legislative history to cloud a statutory text that is clear.'" *Harry v. Marchant*, 291 F.3d 767, 772 (11th Cir. 2002) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994)). Instead, a court's "job is to follow the text even if doing so will supposedly undercut a basic objective of the statute." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 969 (11th Cir. 2016) (cleaned up).

those specifically enumerated in the Guidelines.[22]    Applying the Guidelines' policy in this way provides for consistency in decision-making, not only between the courts but also between BOP and the courts.

Moreover, Winner's suggested expansion of application note 1(D) would make applications notes 1(A) through 1(C) superfluous and irrelevant.  *See United States v.  Brame*, 997 F.2d 1426, 1428 (11th Cir. 1993) ("This court must interpret a statute so as to give effect to each of its provisions; any interpretation which renders parts or words in a statute inoperative or superfluous is to be avoided.").  Under Winner's theory, a district court could certainly find that medical conditions, age, or family circumstances qualify, whether or not listed in application notes 1(A) through 1(C).  *Cf.  United States v.  Millan*, No.  91-685, 2020 WL 1674058, at *7 (S.D.N.Y.  Apr.  6, 2020) (citing *Cantu-Rivera* as "instructive with regard to court's newfound authority to reduce sentences based on 'extraordinary and compelling reasons' (even if those

---

[22] The United States Sentencing Commission is currently without quorum.  *See* Organization, United States Sentencing Commission, *available at* https://www.ussc.gov/about/who-we-are/organization (last visited May 7, 2020).

reasons do not relate to medical condition, age or family circumstances)").

Not only would Winner's interpretation allow district courts to find medical conditions, age, or family circumstances that justify release, despite the limitations on those reasons contained in application notes 1(A) through 1(C), such an interpretation would appear to contradict § 3582(c)(1)(A)'s requirement that any reduction must be consistent with the Guidelines' policy statement.

Similarly, Winner's interpretation would make § 3582(c)(2) superfluous. Section 3582(c)(2) allows a district court to reduce a sentence where the Sentencing Commission has both lowered the applicable Guidelines and made that change retroactive. *See* 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10 (listing covered Guidelines amendments); *see also* 28 U.S.C. §§ 994(o), (u). Nothing in the statute, though, requires the Sentencing Commission to make its Guidelines' amendments retroactive. *See United States v. Terry*, 758 F. App'x 888, 890 (11th Cir. 2019) ("Under § 3582(c)(2), however, a court may only grant a sentence reduction on the basis of a Guidelines amendment that the Sentencing Commission has expressly given retroactive effect."). If Winner's interpretation prevails, a district court could find that a Guidelines

change that the Sentencing Commission refused to make retroactive still presented extraordinary and compelling circumstances under § 3582(c)(1)(A), appropriating the discretion that Congress gave to the Sentencing Commission under § 994(u), and rendering § 3582(c)(2) irrelevant. *Cf. Terry*, 758 F. App'x at 890 ("'Allowing a petitioner to bypass the restrictions of § 1B1.10 simply by invoking the writ of *audita querela* would effectively render those restrictions null and void.'").

Accordingly, despite Winner's contentions, the First Step Act's amendments to § 3582(c)(1)(A) did not alter § 994(t)'s delegation of authority to the Sentencing Commission, and did not excise § 1B1.13, application note 1(D)'s reference to the Director of BOP. Therefore, this Court should reject Winner's claim of unfettered district court discretion and, instead, affirm the district court's analysis which considered whether extraordinary and compelling reasons existed by referring to either § 1B1.13, application notes 1(A) through 1(C), or PS 5050.50. *See Saldana*, 2020 WL 1486892, at *2-*3.

### G.    *Alternatively, application note 1(D) should be limited to reasons comparable and analogous to those in application notes 1(A) through 1(C).*

Even if this Court disagrees, it should join those courts that conclude the "other reasons" criteria of application note 1(D) must be at least comparable and analogous to those in application notes 1(A) through 1(C). *See United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 906 (11th Cir. 2003) ("Under the doctrine of *ejusdem generis*, 'when an enumeration of specific things is followed by some more general word or phrase, then the general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated."); *see also, e.g., United States v. Fox*, No. 14-03, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *Lynn*, 2019 WL 3805349, at *4; *United States v. Rivernider*, No. 10-222, 2019 WL 3816671, at *3 (D. Conn. Aug. 14, 2019).

## CONCLUSION

For the above reasons, the United States respectfully requests that this Court affirm the district court's denial of Winner's motion for compassionate release.

63

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY


*/s/ Justin G. Davids*

Justin G. Davids
Assistant United States Attorney
Missouri Bar No. 57661
justin.davids@usdoj.gov

Post Office Box 8970
Savannah, Georgia 31412
Telephone Number: 912-652-4422

64

## CERTIFICATE OF COMPLIANCE AND SERVICE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains <u>12,975</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief was filed today through the Court's ECF system, and thereby served on counsel of record, Joe Whitley, at his Court-registered email address JWhitley@bakerdonelson.com, under Fed. R. App. P. 25(c)(1)(C) and 11th Cir. R. 25-3(a).

Dated: June 29, 2020.

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

***/s/ Justin G. Davids***
Justin G. Davids
Assistant United States Attorney
Missouri Bar No. 57661
justin.davids@usdoj.gov

Post Office Box 8970
Savannah, Georgia 31412
Telephone Number: 912-652-4422