No. 20-11692

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

United States of America,

Plaintiff-Appellee,

v.

Reality Leigh Winner

Defendant-Appellant.

**APPEAL**

From the United States District Court for the Southern District of Georgia
(Case 1:17-CR-00034-JRH-BKE)
Hon. J. Randal Hall,
UNITED STATES DISTRICT JUDGE

**APPELLANT'S REPLY BRIEF**

JOE D. WHITLEY
BRETT A. SWITZER
**BAKER, DONELSON, BEARMAN,**
 **CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Road
Monarch Plaza, Suite 1500
Atlanta, Georgia 30326
Tel. (404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

LAURA E. COLLINS
**BAKER, DONELSON, BEARMAN,**
 **CALDWELL & BERKOWITZ, P.C.**
100 Light Street
Baltimore, Maryland 21202
Tel. (410) 685-1120
LCollins@bakerdonelson.com

*Counsel for Appellant Reality Leigh Winner*

## Certificate of Interested Persons and Corporate Disclosure Statement

*United States of America v. Reality Leigh Winner*, Appeal No. 20-11692

Counsel for Appellant Reality Leigh Winner states that the following is a full and complete list of all entities and persons having an interest in the outcome of this appeal:

Aaron, David C., U.S. Department of Justice

Barnard, Thomas H., Attorney for Appellant

Bell, Jr., John C., Attorney for Appellant

Chester, Matthew S., Attorney for Appellant

Christine, Bobby, L., United States Attorney

Collins, Laura E., Attorney for Appellant

Davids, Justin G., Assistant United States Attorney

Durham, James D., Former Assistant United States Attorney

Edelstein, Julie A., U.S. Department of Justice

Epps, Hon. Brian K., United States Magistrate Judge

Grinter, Alison, Attorney for Appellant

Greenwood, Nancy, Assistant United States Attorney

Hall, Hon. J. Randal, United States District Judge

Larson, Amy E., U.S. Department of Justice

Mannino, Katherine C., Former Attorney for Appellant

McCook, Jill E., Former Attorney for Appellant

Nichols, Titus T., Attorney for Appellant

Rafferty, Brian T., Assistant United States Attorney

Robichaux, Mary Susan, U.S. Department of Justice

Rodriguez-Feo, Carli, CISO, U.S. Department of Justice

Solari, Jennifer G., Assistant United States Attorney

Switzer, Brett A., Attorney for Appellant

United States Department of Justice

Whitley, Joe D., Attorney for Appellant

Winner, Reality Leigh, Appellant

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/Joe D. Whitley
JOE D. WHITLEY
BRETT A. SWITZER
**BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.**
3414 Peachtree Road
Monarch Plaza, Suite 1500
Atlanta, Georgia 30326
Tel. (404) 577-6000
JWhitley@bakerdonelson.com
BSwitzer@bakerdonelson.com

LAURA E. COLLINS
**BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.**
100 Light Street
Baltimore, Maryland 21202
Tel. (410) 685-1120
LCollins@bakerdonelson.com

# **Table of Contents**

Certificate of Interested Persons and Corporate Disclosure Statement.................C-1

Table of Citations....................................................................................... iii

Introduction .................................................................................................1

Argument.....................................................................................................3

I.    18 U.S.C. § 3582(c)(1)(A) is Non-Jurisdictional, and Exhaustion
May be Waived...................................................................................3

    A.    Every Circuit Court to consider the issue has determined the
statute at issue contains no jurisdictional requirements. .........................3

    B.    The statute's plain language and legislative intent confirm the
exhaustion requirement is not mandatory and may be waived. ..............5

    C.    The Government's obsession with Reality's administrative
request and the inept response thereto prove why waiver and the
futility doctrine are apt. ........................................................12

II.    The Government's Arguments to Strip the District Court of
Authority to Determine "Extraordinary and Compelling"
Circumstances Contravene Federal Statutory Law, Other
Applicable Authorities, and Congressional Intent. ...................................14

    A.    Federal statutory law and case law grant the district court the
authority to decide what qualifies as "extraordinary and
compelling" reasons under the commentary to the Sentencing
Commission's policy statement. ...........................................14

    B.    The Government ignores history: Congress enacted 18 U.S.C. §
3582 because its abolished parole, placing resentencing in the
hands of the Court. ..........................................................18

III.    The Government's New Merits-Based Arguments Further
Demonstrate the District Court's Abuse of Discretion. ............................20

Conclusion ................................................................................................22

i

Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements ..........................................................23

Certificate of Service ...............................................................................24

# Table of Citations

**Cases**

*Avila-Santoyo v. U.S. Atty. Gen.*,
713 F.3d 1357 (11th Cir. 2013) ........................................................................10

*Cantrell v. Rhodes*,
No. 14-cv-02754-GPG, 2014 WL 6755971 (D. Colo. Dec. 1, 2014) ...............22

*Coastal Wellness Centers, Inc. v. Progressive Am. Ins. Co.*,
309 F. Supp. 3d 1216 (S.D. Fla. 2018) .............................................................22

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
140 S. Ct. 1009 (2020) .....................................................................................16

*Day v. Persels & Assocs., LLC*,
729 F.3d 1309 (11th Cir. 2013) ........................................................................13

*Delgado v. U.S. Att'y Gen.*,
487 F.3d 855 (11th Cir. 2007) ..........................................................................16

*Dep't of Homeland Sec. v. MacLean*,
574 U.S. 383 (2015) ..........................................................................................16

*Dickerson v. State of Ala.*,
667 F.2d 1364 (11th Cir. 1982) ........................................................................22

*Exxon Mobil Corp. v. Allapattah Servs.*, Inc.,
545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) ....................................4

*Fort Bend County v. Davis*,
---U.S. ----, 139 S. Ct. 1843, 204 L.Ed.2d 116 (2019) ....................................4, 8

*Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*,
563 F.3d 1205 (11th Cir. 2009) ........................................................................16

*Hamer v. Neighborhood Hous. Servs. of Chicago*,
583 U.S. ----, 138 S. Ct. 13, 199 L. Ed. 2d 249 (2017) ....................................5, 8

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .............................................................................................8

*McCarthy v. Madigan*,
     503 U.S. 140 (1992)...................................................................................8, 11

*Media Servs. Grp., Inc. v. Bay Cities Commc'ns, Inc.*,
     237 F.3d 1326 (11th Cir. 2001) ...................................................................2, 20

*Paese v. Hartford Life & Acc. Ins. Co.*,
     449 F.3d 435 (2d Cir. 2006) ...............................................................................11

*Pullman–Standard v. Swint*,
     456 U.S. 273, 102 S. Ct. 1781, 72 L. Ed. 2d 66 (1982) ......................................2

*Ross v. Blake*,
     136 S. Ct. 1850 (2016).....................................................................................8, 9

*Triplet v. Franklin*,
     365 Fed. App'x 86 (10th Cir. Feb. 5, 2010) .......................................................22

*United States v. Alam*,
     960 F.3d 831 (6th Cir. June 2, 2020)....................................................... 2, 4, 10

*United States v. Anderson*,
     772 F.3d 662 (11th Cir. 2014) ..............................................................................4

*United States v. Armstrong*,
     347 F.3d 905 (11th Cir. 2003) ..............................................................................1

*United States v. Caraballo-Martinez*,
     866 F.3d 1233 (11th Cir. 2017) ............................................................................4

*United States v. Carlton*,
     900 F.3d 706 (5th Cir. 2018) ................................................................................2

*United States v. Colvin*,
     --- F. Supp. 3d ----, 2020 WL 1613943 (D. Conn. Apr. 2, 2020).........................5

*United States v. Contreras*,
     739 F.3d 592 (11th Cir. 2014) ............................................................................17

*United States v. Eli Dana*,
     No. 14-cr-405-JMF, ECF No. 108 (S.D.N.Y. Mar. 31, 2020) ............................5

iv

*United States v. Haney*,
No. 19-cr-541 (JSR), 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) ......... passim

*United States v. Johnson*,
732 F.3d 109 (2d Cir. 2013) .................................................................1

*United States v. Jose Maria Marin*,
No. 15-cr-252-PKC, ECF Nos. 1325 (E.D.N.Y. Mar. 30, 2020) ......................5

*United States v. Koons,*
850 F.3d 973 (8th Cir. 2017) .............................................................2

*United States v. May*,
855 F.3d 271 (4th Cir. 2017) .............................................................2

*United States v. Moore*,
541 F.3d 1323 (11th Cir. 2008) ...........................................................1

*United States v. Nkanga*,
No. 18-cr-713 (JMF), ECF No. 117-1, 2020 WL 1695417 (S.D.N.Y.) ..............6

*United States v. Oliver*,
148 F.3d 1274 (11th Cir. 1998) ...........................................................1

*United States v. Perez*,
--- F. Supp. 3d ----, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) ......................5

*United States v. Phillips*,
597 F.3d 1190 (11th Cir. 2010) ..........................................................1

*United States v. Raia*,
954 F.3d 594 (3d Cir. 2020) .......................................................4, 10

*United States v. Redd*,
No. 1:97-cr-00006 (AJT), 2020 WL 1248493, (E.D. Va. Mar. 16, 2020) ..........9

*United States v. Russo*,
No. 16-cr-441 (LJL), ECF No. 54, 2020 WL 1862294 (S.D.N.Y. Apr. 3,
2020) ........................................................................ 6, 7, 8, 11

*United States v. Saldana*,
807 F. App'x 816 (10th Cir. 2020) .................................................17

*United States v. Saldana*,
　No. 6:16-cr-00012-RAW, ECF No. 58 at 5–6 (Oct. 16, 2019) ..........................18

*United States v. Taylor*,
　778 F.3d 667 (7th Cir. 2015) ...............................................................................2

*United States v. Weatherspoon*,
　696 F.3d 416 (3d Cir. 2012) .................................................................................1

*United States v. White*,
　305 F.3d 1264 (11th Cir. 2002) ...........................................................................1

*United States v. William Knox*,
　No. 15-cr-445-PAE, ECF No. 1088 (S.D.N.Y. Apr. 10, 2020)............................5

*United States v. Zukerman*,
　--- F. Supp. 3d ----, 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020) .......................5

*Walden v. U.S. Parole Comm'n*,
　114 F.3d 1136 (11th Cir. 1997) .........................................................................18

*Washington v. Barr*,
　925 F.3d 109 (2d Cir. 2019) ..............................................................................11

**Statutes**

18 U.S.C. § 3582...................................................................................................18

18 U.S.C. § 3582(c) .............................................................................. 9, 16, 18, 19

18 U.S.C. § 3582(c)(1)(A) ................................................................................3, 14

18 U.S.C. § 3582(c)(1)(A)(1) ................................................................................4

18 U.S.C. § 3582(c)(1)(A)(i) ...............................................................................13

18 U.S.C. § 3582(c)(2)........................................................................................1, 2

28 U.S.C. § 994 ............................................................................................... 14, 15

28 U.S.C. § 994(t) ................................................................................................15

U.S.S.G. § 1B1.13................................................................................................15

**Other Authorities**

164 Cong. Rec. S7314-02, 2018 WL 6350790 ........................................................9

Brakkton Booker, *Michael Cohen Released From Prison Due To Coronavirus Concerns*, NPR (May 21, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/05/21/860204544/michael-cohen-released-from-prison-due-to-coronavirus-concerns ..............................................................20

COVID-19 Update, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed July 6, 2020) .......................22

Katherine Faulders & Luke Barr, *Former Trump campaign chairman Paul Manafort released to home confinement amid coronavirus concerns*, ABCNEWS (May 13, 2020), https://abcnews.go.com/Health/trump-campaign-chairman-paul-manafort-released-home-confinement/story?id=70642927 .......................................................20

**Rules**

Fed. R. Evid. P. 201 ................................................................22

## **Introduction**

The Government's sixty-five (65) page *Brief of Appellee* confuses various critical issues before this Court. By lumping together three distinct issues, the Government improperly attempts to alter the applicable standard of review to a more convenient (for it) *abuse of discretion* standard. To the contrary, as set forth in Appellant Reality Leigh Winner's ("Reality") Brief, a *de novo* standard of review applies for two of the three issues presented because, *inter alia*, the district court below applied erroneous conclusions of law.[1] More particularly, the district court's legal conclusions on (a) jurisdictional and exhaustion issues,[2] and (b) its authority to hear, and statutory rubric for evaluating, inmate claims for release for "extraordinary and compelling reasons"[3] are reviewed *de novo*–as each Circuit Court of Appeals to have considered these issues has held.[4] Because the district court misconstrued and

---

[1] *See* Reality's Br. at 23 & n.73.

[2] *United States v. Phillips*, 597 F.3d 1190, 1194 n.9 (11th Cir. 2010) ("We review *de novo* questions concerning the jurisdiction of the district court.") (quoting *United States v. Oliver*, 148 F.3d 1274, 1275 (11th Cir. 1998)).

[3] *Phillips*, 597 F.3d at 1194 n.9 ("Whether the district court had the authority to modify … [a prisoner's] sentence … is a question of law subject to *de novo* review.") (citing *United States v. Moore*, 541 F.3d 1323, 1326 (11th Cir. 2008)); *see also United States v. Armstrong*, 347 F.3d 905, 907 n.2 (11th Cir. 2003) ("We review *de novo* all legal conclusions made by the district court with respect to the scope of its authority pursuant to the Sentencing Guidelines.") (citing *United States v. White*, 305 F.3d 1264, 1267 (11th Cir. 2002)).

[4] *United States v. Johnson*, 732 F.3d 109, 113 (2d Cir. 2013) (applying *de novo* review in concluding defendant was not eligible for sentence reduction pursuant to section 18 U.S.C. § 3582(c)(2)); *United States v. Weatherspoon*, 696 F.3d 416, 420 (3d Cir. 2012) ("When the district court determines that a defendant is ineligible for

misapplied the law, this Court can–and should–apply a *de novo* standard of review on the merits determination as well, as it has done in other instances,[5] and as the Eighth Circuit recently did in a sentence reduction case.[6]

Viewed with the appropriate standard of review, three simple conclusions emerge from the fog presented by the Government's lengthy appeal brief. <u>*First*</u>, the "exhaustion" requirement is a non-jurisdictional claims-processing rule that may be (and frequently is) waived–including by the Government itself. <u>*Second*</u>, the district court has express statutory authority to evaluate what circumstances constitute "extraordinary and compelling" reasons under the compassionate release statute–it is not bound by outdated sentencing policy guidance that contravenes the express

---

relief under 18 U.S.C. § 3582(c)(2), our review is plenary."); *United States v. May*, 855 F.3d 271, 276 (4th Cir. 2017) ("We review de novo the district court's conclusion regarding the scope of its legal authority. . ."); *United States v. Carlton*, 900 F.3d 706, 710 (5th Cir. 2018) ("[A] district court's conclusion that it could not reduce a sentence based on an interpretation or application of the Guidelines is reviewed *de novo*."); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. June 2, 2020) (applying *de novo* review in analyzing jurisdictional and exhaustion requirement of §3582(c)(1)(A)); *United States v. Taylor*, 778 F.3d 667, 670–71 (7th Cir. 2015) (applying *de novo* standard of review to district court's decision to dismiss motion for reduced sentence for lack of jurisdiction).

[5] *See Media Servs. Grp., Inc. v. Bay Cities Commc'ns, Inc.*, 237 F.3d 1326, 1330 (11th Cir. 2001) (citing *Pullman–Standard v. Swint*, 456 U.S. 273, 291–92, 102 S. Ct. 1781, 72 L. Ed. 2d 66 (1982) ("When 'a district court has failed to make a finding because of an erroneous view of the law … remand is proper unless the record permits only one resolution of the factual issue.'")).

[6] *United States v. Koons,* 850 F.3d 973, 976 (8th Cir. 2017) (reviewing the defendant's eligibility for a sentence reduction *de novo*).

language and clear intent of a revised federal statute. _Third_, on the merits, notwithstanding the Government's gloss on the evidence Reality presented in the district court (arguments which it did _not_ make below), the _only_ evidence in the record on appeal supports the relief requested, which this Court may grant. Indeed, new evidence the Government _just revealed_ in the last week confirms an active _outbreak_ of COVID-19 cases _right now_ at FMC Carswell–a 4,500% increase over the July 4th holiday weekend–further support for the exigency of Reality's request and the need for prompt review and relief from this Court that the district court unjustly denied.

## **Argument**

### I.    **18 U.S.C. § 3582(c)(1)(A) is Non-Jurisdictional, and Exhaustion May be Waived.**

The Government contends the district court lacked jurisdiction to consider Reality's motion for compassionate release because she failed to wait thirty (30) days after submission of her administrative request before filing her motion for compassionate release. This conclusion, and those that follow, are erroneous conclusions of law.

### A.    Every Circuit Court to consider the issue has determined the statute at issue contains no jurisdictional requirements.

As an initial matter, in one part of its brief, the Government contends the

3

exhaustion requirement is "jurisdictional"[7]–presumably because jurisdictional requirements cannot be waived.[8] This Circuit, however, refuses to impute a jurisdictional requirement where no explicit limitation in the statutory text exists.[9] In fact, the Sixth Circuit in *United States v. Alam*, an authority relied upon by the Government, held that the very statute relied upon here (18 U.S.C. § 3582(c)(1)(A)(1)) was non-jurisdictional.[10] Likewise, the majority of Circuit Courts to have considered the issue (albeit many in the context of another sub-part of the statute at issue here) have all held that § 3582(c) is *not* jurisdictional.[11] Undersigned counsel are not aware of (and the Government did not cite) a single Circuit Court opinion holding otherwise.[12] While the Third and Sixth Circuits have determined that exhaustion is mandatory (connotating a separate meaning altogether),[13] it is certainly not jurisdictional, and that was not the holding in those cases.

---

[7] *See e.g.,* Gov't's Br. at 24, 27, 29, 30, 34, 36, 39 & n.15.

[8] *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988, at *2 (S.D.N.Y. Apr. 13, 2020) (citing *Exxon Mobil Corp. v. Allapattah Servs.*, Inc., 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005)).

[9] *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1245 (11th Cir. 2017) (citing *United States v. Anderson*, 772 F.3d 662, 667 (11th Cir. 2014)) (analyzing 18 U.S.C. § 3582(c)(2)).

[10] *Alam*, 960 F.3d at 833 ("*Alam's* failure to satisfy this administrative exhaustion requirement does not deprive us of subject-matter jurisdiction.") (citing *Fort Bend County v. Davis*, --- U.S. ----, 139 S. Ct. 1843, 1850, 204 L.Ed.2d 116 (2019)).

[11] *See* Reality's Br, at 12-13 & n.41.

[12] The Government does cite to additional district court cases, but those cases suffer from the same legal defects presently on appeal, and of course, they are not binding on the Eleventh Circuit.

[13] *Alam*, 960 F.3d at 835; *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

B.    <u>The statute's plain language and legislative intent confirm the exhaustion requirement is not mandatory and may be waived.</u>

Defending the district court's erroneous conclusion, the Government argues that the exhaustion requirement is nonetheless "mandatory"–focusing on two out-of-Circuit appellate decisions.[14] Notwithstanding its argument here, the exhaustion requirement can be and is frequently waived when it is convenient for the Government,[15] and courts likewise have waived the requirement, even over the Government's objection.[16] How can, on the one hand, this requirement be waived yet, on the other hand, be "mandatory," as the Government asserts? The short answer is this: the Government cannot have it both ways, as the legislative intent confirms the exhaustion requirement is *not* mandatory.

The disconnect in the district court's ruling and the Third and Sixth Circuits'

---

[14] *See* Gov't's Br. at 28-33 (citing *Alam*, 960 F.3d 831 and *Raia*, 954 F.3d 594).

[15] *See, e.g.*, *United States v. William Knox*, No. 15-cr-445-PAE, ECF No. 1088 (S.D.N.Y. Apr. 10, 2020) (granting defendant's motion for compassionate release after Government waived objection to exhaustion requirement); *United States v. Eli Dana*, No. 14-cr-405-JMF, ECF No. 108 (S.D.N.Y. Mar. 31, 2020) (granting compassionate release motion without exhaustion of administrative remedies, where government consented); *see also Hamer v. Neighborhood Hous. Servs. of Chicago*, ––– U.S. ––––, 138 S. Ct. 13, 17, 199 L. Ed. 2d 249 (2017) (claim-processing rules "may be waived").

[16] *See* Reality's Br. at 9-10 & n.30 (citing *e.g.*, *Haney*, 2020 WL 1821988 at *1; *United States v. Perez*, --- F. Supp. 3d ----, 2020 WL 1546422, *1-3 (S.D.N.Y. Apr. 1, 2020); *United States v. Zukerman*, --- F. Supp. 3d ----, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *United States v. Colvin*, --- F. Supp. 3d ----, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Jose Maria Marin*, No. 15-cr-252-PKC, ECF Nos. 1325, 1326 (E.D.N.Y. Mar. 30, 2020)).

holdings hearkens from a misunderstanding of the clear statutory language and intent of Congress in passing the First Step Act. In *United States v. Haney*, Judge Rakoff explained *why* district courts have discretion to waive the exhaustion requirement <u>based on the express language and clear Congressional intent of the statute</u>.[17] The 30-day rule was intended "as an accelerant to judicial review" because "at the time the First Step Act passed, a 30-day period before which to seek judicial review would have seemed exceptionally quick."[18]

> But in these unprecedented times, [enforcement of the exhaustion requirement] is having the opposite effect. Because of the pandemic, prisoners have inundated the BOP with requests for release. Frustrated with the agency's inability to adjudicate their petitions quickly, these prisoners are coming to courts <u>en masse</u> irrespective of the 30-day rule. Thus, courts determined to enforce the waiting period are essentially forced to consider each such motion twice, first to conclude that the exhaustion provision is not satisfied, and then again, days or at most a few weeks later, to reach the merits once the requisite time has elapsed. Courts that have attempted in recent days to avoid this situation by ordering the BOP to decide the underlying petition quickly have been effectively rebuffed.[19]

---

[17] *Haney*, 2020 WL 1821988 at *3 (explaining that § 3582(c)(1)(A) does not contain an exhaustion requirement in the traditional sense and the district court must uphold the twin purposes of protecting administrative agency authority and promoting judicial efficiency, with emphasis on the latter, and clear congressional intent for the defendant to have a meaningful and prompt judicial determination of whether [s]he should be released).

[18] *Id.* (citing *United States v. Russo*, No. 16-cr-441 (LJL), ECF No. 54, at 4, 2020 WL 1862294 (S.D.N.Y. Apr. 3, 2020)).

[19] *Id.* at *4 (citing Affidavit, *United States v. Nkanga*, No. 18-cr-713 (JMF), ECF No. 117-1, at ¶ 10, 2020 WL 1695417 (S.D.N.Y.) ("Due to the nature of the review and the volume of incoming requests, the BOP cannot set forth a firm date by which the BOP will reach a decision on Petitioner's pending application."); *see also* Letter

6

Indeed, "…Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but in the current extreme circumstances, *actually favors* such waiver, allowing courts to deal with the emergency before it is potentially too late."[20]

"It would be ironic, and *certainly inconsistent with congressional intent*, for the thirty days to serve as a substantial obstacle to effective judicial relief" precisely because "the plain language of Section 3582(c) evinces congressional intent that a defendant has a right to a prompt and meaningful judicial determination of whether she should be compassionately released, regardless of whether administrative remedies have been exhausted."[21] As *Haney* (and other cases like it, such as *United States v. Russo*) recognize, it would be absurd to require exhaustion (as the district court did) where doing so would obviate the plain language and intent of Congress (i.e. to provide a judicial avenue for sentencing relief to inmates presented with "extraordinary and compelling reasons" like the confluence of a global pandemic and Reality's unique susceptibilities to COVID-19) by foreclosing the very judicial relief Congress contemplated until it might be too late. And as *Haney* illustrated, it would be inefficient to force the trial court to consider a motion *twice*: first, to force

---

from Assistant U.S. Attorney to Judge Liman, dated April 2, 2020, *United States v. Russo*, No. 17-cr-441 (LJL), ECF No. 53 (S.D.N.Y.)  ("[T]he Bureau of Prisons is unable to give a specific time frame ….")).

[20] *Id.* (emphasis added).

[21] *Russo*, 2020 WL 1862294, at *6 (emphasis added).

the waiting period; and second, to weigh the merits.[22]

Next, the Government cites to *Ross v. Blake* for the proposition that the statute's plain language prevents the district court from applying waiver and other equitable doctrines (like the doctrine of futility) to the exhaustion requirement.[23] But *Ross v. Blake* is distinguishable and does not stand for that proposition. In fact, the Supreme Court (in a different opinion) has expressly reserved judgment on the issue of whether mandatory claim-processing rules, like the exhaustion requirement applicable here, are subject to equitable exceptions,[24] although it has confirmed (in *Ross* and other opinions) that Congressional intent drives this inquiry, consistent with the analysis of *Haney* and *Russo*.[25] Here, as *Haney* and *Russo* instruct, the

---

[22] *Haney*, 2020 WL 1821988 at *4. For this reason, to the extent this Court believes the exhaustion requirement is mandatory (despite the case authorities cited herein), cannot be waived (despite the present unprecedented circumstances), and should be enforced against Appellant, Reality respectfully requests that this Court address the other issues on appeal (*see* Section II *infra*) for the sake of judicial efficiency.

[23] *Ross v. Blake*, 136 S. Ct. 1850, 1855-57 (2016) (analyzing a different statute); *see also* Gov't's Br. at 30-32.

[24] *Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 & n.5 (2019) (citing *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. ----,----, n.3, 138 S. Ct. 13, 17, 199 L. Ed. 2d 249 (2017)); *compare Mathews v. Eldridge*, 424 U.S. 319, 321 (1976) ("Although respondent concededly did not exhaust the Secretary's internal-review procedures and ordinarily only the Secretary has the power to waive exhaustion, this is a case where the claimant's interest in having a particular issue promptly resolved is so great that deference to the Secretary's judgment is inappropriate.")

[25] *See Ross*, 136 S. Ct. at 1853 (analyzing the text, history, and intent of the PLRA); *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (noting that congressional intent is "paramount" in determining whether a particular statute's exhaustion regime is amenable to exception).

language and intent of Congress in passing the First Step Act support, if not mandate, application of waiver and/or other equitable doctrines.

*Ross* addressed the Prison Litigation Reform Act (the "PLRA"), which set forth statutory hurdles in unambiguous terms and removed earlier qualifiers that administrative remedies be "plain, speedy, and effective," that they satisfy federal minimum standards, and that exhaustion be "appropriate in the interests of justice."[26] By stark contrast, the First Step Act's amendments to 18 U.S.C. § 3582(c) were "passed against the backdrop of documented infrequency with which the BOP filed motions for sentence reduction on behalf of defendants"[27] and designed to "expand[] compassionate release … and expedite compassionate release applications."[28] In short, Congress designed the First Step Act to provide inmates expedient access to the courts; the PLRA, on the other hand, was designed to *limit* access.

Moreover, much of the Supreme Court's analysis of the text and history of the PLRA centers on a single word–"available"–that is not found in 18 U.S.C. § 3582(c).[29] The Court's holdings regarding the PLRA in *Ross v. Blake* are inapposite to the issues here, except for its instruction to look to the <u>text</u>, <u>intent</u>, and <u>history</u> of

---

[26] *Ross*, 136 S. Ct. at 1853.

[27] *United States v. Redd*, No. 1:97-cr-00006 (AJT), 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020).

[28] 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement of Sen. Cardin, co-sponsor of the First Step Act).

[29] *Ross*, 136 S. Ct. at 1853–54 (focusing its analysis of the text and history of the PLRA on the term "available").

the statute for instruction as to Congress' intent regarding judicial discretion. And, as noted above, and as Judge Rakoff explained in *Haney*, the legislative text and history support the conclusion that the exhaustion requirement is not mandatory and is subject to equitable doctrines. In reaching the opposite conclusion without completely and effectively undertaking this analysis,[30] the overly restrictive holdings in *Raia* and *Alam* from the Third and Sixth Circuits are erroneous.

In addition to the waiver grounds noted above, the weight of other Supreme Court authority suggests other equitable doctrines (like futility) may also apply to the exhaustion requirement.[31] It was in light of such Supreme Court authorities that the Eleventh Circuit recently held at least one other non-jurisdictional claim-processing rule is subject to equitable exceptions.[32] Likewise, the Second Circuit explained that "claim-processing rule[s]" are "subject to equitable considerations

---

[30] In addition to abandoning the clear intent of Congress, the reasoning in *Raia* and *Alam* suffers from the same defects discussed in Section II, *infra*, inasmuch as it expands BOP's role in contravention of federal statute. It is clear that BOP is no longer the "gatekeeper" and that Congress intended to inject judicial discretion into the analysis of "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i).

[31] *See* Reality's Br. at 11, n. 34 (citing relevant Supreme Court authorities).

[32] *See e.g., Avila-Santoyo v. U.S. Atty. Gen.*, 713 F.3d 1357, 1359–61 (11th Cir. 2013) (explaining the Court's reversal of earlier precedent was important to "reduce the reckless use of the jurisdictional label" and applying a three-factor test based on the plain language of the statute, the provision's overall placement in the statute, and the "characteristics of the review scheme").

such as waiver, estoppel or futility."[33] "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue."[34] Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief."[35] Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice."[36]

Here, as *Haney* and *Russo* instruct, and contrary to the holdings of the applicable cases noted above, the district court abandoned the primary purpose of the compassionate release statute and the clear intent of Congress to provide the defendant a meaningful and prompt judicial determination regarding whether she should be released in light of the "extraordinary and compelling reasons" presented below. The district court foreclosed her opportunity to meaningfully present her case to the ultimate decision maker before it ever got started. As explained in Section II, *infra*, Congress doubtlessly desired to inject judicial discretion into the compassionate release process, and thus, the district court's holding that the exhaustion requirement was mandatory and left it without discretion was erroneous.

---

[33] *See Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006); *see also Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (citing *McCarthy v. Madigan*, 503 U.S. at 146) .
[34] *Washington*, 925 F.3d at 118.
[35] *Id.* at 119.
[36] *Id.*

C.   <u>The Government's obsession with Reality's administrative request and the inept response thereto prove why waiver and the futility doctrine are apt.</u>

In a final effort to deprive the district court of what it calls "jurisdiction," the Government spends six pages of its brief pursuing its non-sensical theory that Reality's request was not a request under the compassionate release statute–a position the district court did not even embrace.[37] The entire colloquy is emblematic of the Government's position regarding Reality's compassionate release request and its scatter-shot approach to the COVID-19 pandemic at large.[38] In short, because BOP was not prepared for this type of pandemic, a prisoner's last and only resort is the district court, as Congress recognized in passing the First Step Act.[39]

Originally, in response to Reality's motion for compassionate release,[40] the Government claimed that neither the BOP nor the Warden at FMC Carswell had received her request.[41] On reply in the district court, Reality included a Declaration under penalty of perjury from her Texas-based counsel, confirming the substance and form of the request and all relevant details.[42] Later, only *after* this appeal was

---

[37] *See* Gov't's Br. at 33-39 (Section D(4)).

[38] *See e.g.*, ECF No. 347 at 1-7, Ex. A, C, and D.

[39] *See* additional discussion regarding legislative intent in Section II, *supra*.

[40] *See* ECF Nos. 341 ("Motion for Compassionate Pursuant to 18 U.S.C. § 3582 and Request for Oral Argument"), 343 ("Defendant's Motion for Expedited Briefing and Immediate Hearing").

[41] *See* ECF No. 345 at 11 & n.4.

[42] *See* ECF No. 347 at 4-5, Ex. B ("Declaration of Alison Johnston Grinter, Esq.").

filed, the Government amended its position to state that her request was received but the Government chose to treat it under a different statute,[43] despite the fact that *Reality cited the specific compassionate release statute* (18 U.S.C. § 3582(c)(1)(A)(i)) in *both* requests she submitted and in every filing submitted to the district court below,[44] and notwithstanding that the Government was in active discussions with BOP and the Warden during the pendency of her motion.[45]

Thus, the *only* evidence in the record confirms that Reality did exactly what the statute requires.[46] The Government's absurd position confirms what Reality explained to the district court in the first instance–exhaustion was futile, the administrative process was incapable of granting adequate relief, and agency review would subject Reality to undue prejudice and harm in the midst of a global pandemic.[47] Consistent with the First Step Act's language and purpose, unlocking the keys to the courthouse was (and still is) her only remedy.

---

[43] *See* Gov't's Resp. to Winner's Mot. to Expedite Appeal at 4-8 & n.3.

[44] *See* ECF Nos. 341–1 at 1 (Defendant Reality Leigh Winner respectfully moves … pursuant to 8 U.S.C. § 3582(c)(1)(A)(i).), 5, 6, 7, 10, 12, 14, 25; 347 at 1, 10, 11, 12, 13.

[45] *See* ECF No. 345 at 2, 3, 4, 6, 11, 14, 15, 16, 17, 19, 20, 21, 23, 24, 25, & n.4.

[46] *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1325 (11th Cir. 2013) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court. We have explained that, if we were to address issues that had not been raised before the district court, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court.") (internal citations omitted).

[47] *See* ECF Nos. 341, 343.

## II.    The Government's Arguments to Strip the District Court of Authority to Determine "Extraordinary and Compelling" Circumstances Contravene Federal Statutory Law, Other Applicable Authorities, and Congressional Intent.

Much like the balance of its brief, the Government's response to Reality's second argument–that the district court committed legal error in holding it did not have the authority to hear Reality's request–is convoluted and difficult to follow.

It appears the Government argues: (1) if Congress wanted the Sentencing Commission to update its policy guidance to match the amended 18 U.S.C. § 3582(c)(1)(A), Congress should have likewise amended 28 U.S.C. § 994; (2) the Sentencing Commission's policy statement, albeit outdated, is still the controlling expression of policy; and (3) the Court lacked jurisdiction, and therefore authority, to hear Reality's request because she failed to meet her evidentiary burden. These arguments are misguided and are addressed below.

### A.    Federal statutory law and case law grant the district court the authority to decide what qualifies as "extraordinary and compelling" reasons under the commentary to the Sentencing Commission's policy statement.

Initially, though, the Government does not dispute what even the district court below had to concede: that the majority of courts have held that the commentary at § 1B1.13 does not constrain a court's independent assessment of whether "extraordinary and compelling" reasons warrant a sentence reduction under Section

14

3582(c)(1)(A)(i).[48] But for a confusing argument chastising Congress for not amending a *separate* statute, this concession would end the issue of whether the district court had the authority to rule on Reality's request.

To support the district court's erroneous holding, the Government asserts that Congress's failure to amend 28 U.S.C. § 994(t)–which states that the Sentencing Commission promulgates policy statements regarding sentence modifications–means that a district court is *without power* to decide what constitutes "extraordinary and compelling" circumstances under U.S.S.G. § 1B1.13 cmt n.1(D)'s "catch-all" provision. As previously briefed, and as the Government ignores, Congress can override any Agency guideline or policy statement by statute.[49] And that–as the majority of courts have held–is precisely what happened here: the First Step Act overrode the Sentencing Commission's policy statement[50] (and, by extension, 28 U.S.C. § 994's charge that the Sentencing Commission promulgate sentencing modification guidance).[51]

It would be illogical if, as the Government posits, Congress passed the historic

---

[48] *See* Reality's Br. at 20, n.63; Order, ECF No. 349 at 5.

[49] *See* Reality's Br. at 18, n.58.

[50] *See* Reality's Br. at 20, n.63 (collecting cases holding a court is no longer bound to look to the BOP Director for a definition of "extraordinary and compelling" reasons beyond application note 1(A) through (C) but can decide for itself under the circumstances).

[51] Of course, as acknowledged by the Government, the Sentencing Commission could update its policy guidance, but it currently lacks a quorum. Gov't Br. at 60, n.22.

First Step Act, providing an unprecedented procedural avenue for inmates in certain circumstances to petition courts for a review of their sentences–only to be denied substantive relief because a separate statute provides that the Sentencing Commission must dictate that relief, not the courts. In support of its position, the Government cites four cases that deal with statutory amendments incongruent to the present matter[52]—while ignoring the majority of courts that have held against it. The Government's unreasoned argument, that a majority of courts reject, should be dismissed.

Separately, the Government takes the position—and is correct—that Section 3582 still requires the Court to consult the Sentencing Commission's policy statements as guidance in making an "extraordinary and compelling" determination.[53] But, even here, the Government's own cited authorities belie its argument: "When construing the meaning of sentencing guidelines, we are bound

---

[52] First, *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1018 (2020) dealt with Congress's simultaneous amendments of two statutes that resulted in a difference in meaning. Second, *Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1209 (11th Cir. 2009) addressed two amendments in the *same* Act. Third, *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007) again involved two sections in the *same* Act. Fourth, *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015) involved an amendment and failure to amend parts of the same statute. None of these cases support the argument the Government is trying to make here: that an amendment to one Act and the abstention to amend in an entirely different Title of the United States Code must mean Congress's intent to maintain the status quo.

[53] 18 U.S.C.A. § 3582(c).

by the guidelines commentary. **The commentary is 'authoritative unless it violates the Constitution or a federal statute**…."[54] Importantly, the Government *omitted* this bold type from their response brief–an inexplicable oversight detrimental to its position.[55] Because the First Step Act clearly superseded those portions of Section 1B1.13 and its commentary, the Sentencing Commission's policy statements are not controlling and are outdated.

Third, in a bewildering argument, the Government asserts the "district court lacked jurisdiction" to consider Reality's request because she "failed to establish an extraordinary and compelling" reason for her release.[56] In other words, the Government, in a first-of-its-kind position, claims an inmate must "establish" that she has an "extraordinary and compelling" reason for a sentence modification as a "*condition precedent*" to the district court having jurisdiction.[57] No court *anywhere* has reached that holding. Indeed, even the district court, which did all it could to close the courthouse doors for Reality (including denying expedited briefing during a global pandemic, failing to hold a hearing, and implying that the Government need not even respond to Reality's request), did not reach that conclusion.[58] This

---

[54] *United States v. Contreras*, 739 F.3d 592, 594 (11th Cir. 2014) (emphasis added) (citation omitted).
[55] Gov't's Br. at 50.
[56] Gov't's Br. at 39.
[57] Gov't's Br. at 39-40 (emphasis added).
[58] In support of this off-base contention, the Government cites *United States v. Saldana*, 807 F. App'x 816 (10th Cir. 2020), but *Saldana* does not support the

argument, too, should be rejected.

B.    The Government ignores history: Congress enacted 18 U.S.C. § 3582 because its abolished parole, placing resentencing in the hands of the Court.

The Government asserts at the end of its brief that district courts are without jurisdiction to consider requests like Reality's because to do so would turn them into "de facto parole boards," vested with "unconstrained discretion" in deciding compassionate release claims, likely resulting in "arbitrary outcomes…"[59]

But, the Government fails to recall history: Congress's goals in passing the Comprehensive Crime Control Act and enacting the statute at issue here, 18 U.S.C. § 3582(c), were to abolish federal parole and create a "completely restructured guidelines sentencing system."[60] Recognizing that parole historically played a key

_____

Government's argument. In that case, Saldana sought compassionate release based on a change in law that shifted his offense from violent to non-violent. *Id.* at 818. The trial court dismissed his motion because even under U.S.S.G. § 1B1.13 cmt n.1(D)'s broad "catch-all" provision, it did not find a change in the law to be an "extraordinary and compelling" circumstance warranting a sentence reduction. *See United States v. Saldana*, No. 6:16-cr-00012-RAW, ECF No. 58 at 5–6 (Oct. 16, 2019). On appeal, the Tenth Circuit held that because the trial court could not grant Mr. Saldana relief based on a change in federal law under the auspices of Section 3582(c)(1)(A) alone, the trial court must have lacked jurisdiction. 807 F. App'x at 820. Here, Reality moved for compassionate release for medical reasons based on a global pandemic and her pre-existing health conditions, squarely within 18 U.S.C. § 3582(c)(1)(A). *Saldana* did not create any "conditions precedent" that an inmate "establish" its "extraordinary and compelling reason[]" *before* the district court can have jurisdiction to adjudicate the request.

[59] Gov't's Br. at 58.

[60] S. Rep No. 98–225, at 52, 53 n.74, 98th Cong. (1983); *see also Walden v. U.S. Parole Comm'n*, 114 F.3d 1136, 1138 (11th Cir. 1997) ("It is well settled that the

role in responding to changed circumstances, the Senate Committee stressed how some individual cases may still warrant a second look at resentencing:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which **other extraordinary and compelling circumstances justify a reduction** …, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment.[61]

Rather than have the Parole Commission review every federal sentence focused only on an offender's rehabilitation, Congress decided that § 3582(c) could and would enable courts to decide, in individual cases, if "there is a justification for reducing a term of imprisonment."[62] Congress amended § 3582(c) via the First Step Act even further, allowing a prisoner to petition the Court directly on her own behalf. Viewed through the lens of what Congress intended (a proposition the Government wholly ignores), Section 3582(c)(A)(i) does not turn courts into "parole boards." It allows them to decide *as Congress intended* whether, in a particular case with a certain set of "extraordinary and compelling" facts, a sentence modification is

---

Sentencing Reform Act[, a provision of the Comprehensive Crime Control Act,] abolished the United States Parole Commission and repealed the federal parole statutes.") (internal citations omitted).

[61] S. Rep No. 98-225, at 55-56 (emphasis added).

[62] *Id.* at 56.

appropriate. The Government's policy arguments should thus be disregarded.[63]

### III. The Government's New Merits-Based Arguments Further Demonstrate the District Court's Abuse of Discretion.

Finally, as previously briefed, the *only* evidence in the record supports the relief requested, so this Court may grant Reality's motion for compassionate release.[64] The Government's attempt to provide, *for the first time on appeal*, new gloss on the evidence presented below should be disregarded under this Court's

---

[63] Separately, it is more than ironic that the Government expresses concerns over "arbitrary outcomes" were this Court to grant Reality's relief. Indeed, as previously briefed, the Bureau of Prisons' entire response to the COVID-19 global pandemic has been haphazard and the inmates to whom relief has been extended by BOP and the Department of Justice has been wildly capricious. For example, the BOP released Michael Cohen, President Trump's personal attorney, in late May, and moved Paul Manafort, President Trump's former campaign manager, to home confinement. Brakkton Booker, *Michael Cohen Released From Prison Due To Coronavirus Concerns*, NPR (May 21, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/05/21/860204544/michael-cohen-released-from-prison-due-to-coronavirus-concerns; Katherine Faulders & Luke Barr, *Former Trump campaign chairman Paul Manafort released to home confinement amid coronavirus concerns*, ABCNEWS (May 13, 2020), https://abcnews.go.com/Health/trump-campaign-chairman-paul-manafort-released-home-confinement/story?id=70642927.

Indeed, the real arbitrariness of a prisoner's release lies in other influences: (a) the sentencing judge and their philosophy on the Sentencing Commission's outdated policy statement; (b) the prosecutor in the underlying case and whether they will consent to release or waive exhaustion; and (c) the warden over the prisoner's facility, who has the power to petition BOP on the prisoner's behalf or furlough an entire prison population or an individual prisoner.

[64] *Media Servs. Grp., Inc. v. Bay Cities Commc'ns, Inc.*, 237 F.3d 1326, 1330 (11th Cir. 2001) ("When a district court has failed to make a finding because of an erroneous view of the law … remand is proper unless the record permits only one resolution of the factual issue.") (citations and punctuation omitted).

precedent.[65] Also, these new arguments are irrelevant because they fail to address the central point: that the district court committed reversible error when it based its alleged merits determination on erroneous conclusions of law, failed to consider the *only* evidence in the record (submitted by Reality), and acted arbitrarily and capriciously when it denied Reality any fair opportunity for relief or prompt judicial review. These errors are memorialized in the district court's orders (i) denying her motion for expedited treatment,[66] (ii) denying her motion for an evidentiary hearing,[67] and (iii) previewing to the Government that it need not even brief the issues.[68] Because the evidence in the record only supports one conclusion, the Eleventh Circuit may reverse and award the relief requested below.

One final point must be made regarding the grave and fluid nature of this pandemic and why the district court, at the barest minimum, should have held an evidentiary hearing so it could review the evidence through the correct legal prism. Just in the last few days, the BOP has released *new* information confirming increases in active, positive COVID-19 cases at FMC Carswell, first from zero (0) to twenty-

---

[65] *See supra* note 46.

[66] *See* ECF No. 344.

[67] *Id.* at 2 ("[A] hearing in this matter is not a certainty."); *see also* ECF No. 349. The Government apparently takes issue with the fact that Reality planned to put on evidence at the evidentiary hearing she requested, which is a curious objection in light of the separate motion she filed in the district court below requesting an evidentiary motion.

[68] ECF No. 344 at 1-2.

eight (28) cases, and then from twenty-eight (28) to forty-five (45), literally overnight.[69] While the Government touted in its appeal brief that only one staff member and zero inmates were "currently positive,"[70] that information ignored the earlier death of another inmate at FMC Carswell due to COVID-19, and the information just released confirms the exigent circumstances Reality faces at FMC Carswell *right now* and why this Court should swiftly grant her relief.

## <u>Conclusion</u>

Appellant Reality Leigh Winner respectfully prays that this Court REVERSE the district court below on all enumerations of error and either apply the correct legal framework on *de novo* review to grant Reality the relief requested below, or, alternatively, REVERSE and REMAND for fresh consideration by the district court under the correct legal framework.

---

[69] The BOP reports 45 inmates with COVID-19 at FMC Carswell, which is a 4,500% increase in positive cases in the past week alone. *See* COVID-19 Update, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last accessed July 6, 2020). "The Court may take judicial notice of the information from the BOP's website. *See Dickerson v. State of Ala.*, 667 F.2d 1364, 1368 (11th Cir. 1982) ("[T]he appellate court [holds the] inherent equitable powers to supplement the record as justice requires."). *See also* FED. R. EVID. P. 201; *Cantrell v. Rhodes*, No. 14-cv-02754-GPG, 2014 WL 6755971, at *3, n.1 (D. Colo. Dec. 1, 2014) (citing *Triplet v. Franklin*, 365 Fed. App'x 86, 92 n.8 (10th Cir. Feb. 5, 2010), taking judicial notice of BOP website.); *Coastal Wellness Centers, Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 (S.D. Fla. 2018) (judicially noticing a federal government website).

[70] Gov't Br. at 23, n.14.

## <u>Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements</u>

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii). This document contains 6,213 words, excluding those parts of the motion exempt by the Eleventh Circuit Rule 26.1-3(c) and Fed. R. App. P. 32(f). This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

Respectfully submitted,

*/s/ Joe D. Whitley*
Joe D. Whitley
Georgia Bar No. 756150

*Counsel for Appellant*
*Reality Leigh Winner*

## Certificate of Service

I hereby certify that the foregoing has been served upon the following counsel of record by first class mail and/or by electronically filing the foregoing with the Court on this the 6th day of July, 2020.

Bobby L. Christine
Jennifer G. Solari
Justin G. Davids
Nancy Greenwood
U.S. Attorney's Office
P.O. Box 8970
Savannah, Georgia 31412

*/s/ Joe D. Whitley*
Joe D. Whitley
Georgia Bar No. 756150

*Counsel for Appellant*
*Reality Leigh Winner*

24